IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| FUSE, LLC, *et al.*,[1] | ) | Case No.: 19-10872 (___) |
| | ) | |
| _____ Debtors. | ) | (Joint Administration Requested) |

### MOTION OF DEBTORS PURSUANT TO SECTIONS 105, 361, 362, 363, 503, AND 507 OF THE BANKRUPTCY CODE, BANKRUPTCY RULES 2002, 4001, AND 9014 AND LOCAL RULES 2002-1(B), 4001-2, 9013-1(M) FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION, (III) MODIFYING THE AUTOMATIC STAY, AND (IV) SCHEDULING A FINAL HEARING

The above-captioned debtors and debtors in possession (collectively, the

"Debtors") hereby submit this motion (the "Motion") for entry of an interim order on an

expedited basis (the "Interim Order") substantially in the form attached hereto as **Exhibit 1**, and

following a final hearing to be set by the Court (the "Final Hearing"), entry of a final order (the

"Final Order"), pursuant to sections 105, 361, 362, 363, 503, and 507 of title 11 of the United

States Code (as amended, the "Bankruptcy Code"), Rules 2002, 4001, and 9014 of the Federal

Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2002-1(b), 4001-2, and

9013-1(m) of the Local Rules of Bankruptcy Practice and Procedure of the United States

Bankruptcy Court for the District of Delaware (the "Local Rules"), (i) authorizing the Debtors to

use cash collateral, (ii) granting adequate protection, (iii) modifying the automatic stay, and (iv)

scheduling a final hearing, as described herein.

---

[1] The Debtors and the last four digits of their taxpayer identification numbers include:  Fuse Media, Inc. (9721); Fuse Media, LLC (0560); Fuse, LLC (1888); JAAM Productions, LLC (5499); SCN Distribution, LLC (9656); Latino Events LLC (8204); Fuse Holdings LLC (5673); Fuse Finance, Inc. (8683); and FM Networks LLC (6500). The Debtors' headquarters and service address is 700 North Central Avenue, Suite 600, Glendale, CA 91203.

The Debtors have the consent of the Senior Secured Notes Trustee and a majority in holdings of the Senior Secured Noteholders (each as defined below) to access Cash Collateral on the terms described herein and set forth in the Interim Order and Final Order.

## Overview

1.     By this Motion, the Debtors seek the entry of an Interim Order and a Final Order, *inter alia*:

a.     authorizing the Debtors' use of Cash Collateral (as defined below);

b.     granting adequate protection to the Senior Secured Notes Trustee for any Diminution in Value of its interests in the Prepetition Collateral (each as defined below), including the Cash Collateral;

c.     subject to entry of a Final Order and to the extent set forth herein, waiving the Debtors' right to surcharge the Collateral (as defined below) pursuant to section 506(c) of the Bankruptcy Code;

d.     vacating or modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to permit the Debtors and the Senior Secured Notes Trustee to implement and effectuate the terms and provisions of the Interim Order; and

e.     scheduling a final hearing (the "Final Hearing") to consider the relief requested in the Motion and the entry of a Final Order, and approving the form of notice with respect to the Final Hearing.

2.     The Debtors are an active media company with employees, vendors, and customers that depend on the Debtors' continuing performance of their ongoing business obligations.  The Debtors have an urgent and immediate need for authority to use Cash Collateral subject to the terms of this Motion in order to, among other things:  (a) continue to operate their business in an orderly manner; (b) maintain their valuable relationships with employees, vendors, and customers; (c) pay various administrative professionals' fees to be incurred in the Chapter 11 Cases; and (d) support the Debtors' working capital, general corporate and overall operational

2

needs.  The foregoing expenditures are critically necessary to preserve and maintain the going concern value of the Debtors' business and, ultimately, help ensure a successful reorganization under the Debtors' proposed prepackaged plan.  Without access to Cash Collateral, the Debtors would be forced to cease operations and liquidate their assets.

3.      The Debtors intend to use Cash Collateral consistent with their ordinary course prepetition practices.  The Debtors have the consent of the Senior Secured Notes Trustee and a majority in holdings of the Senior Secured Noteholders to access Cash Collateral on the terms described in this Motion.

### Jurisdiction and Venue

4.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C.  §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C.  § 157(b)(2), and the Debtors confirm their consent pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

5.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3

6.      The statutory predicates for the relief sought herein are sections 105, 361, 362, 363, 503, and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001(b), and 9014, and Local Rules 2002-1(b), 4001-2, and 9013-1(m).

### Background

7.      On the date hereof (the "Petition Date"), the Debtors commenced these cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  The Debtors have continued in the possession of their property and have continued to operate and manage their business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner or committee has been appointed in the Debtors' chapter 11 cases.

8.      The factual background regarding the Debtors, including their current and historical business operations and the events precipitating the chapter 11 filing, is set forth in detail in the *Declaration of Miguel Roggero in Support of First Day Motions* (the "First Day Declaration") filed concurrently herewith and fully incorporated herein by reference.[2]

### Relevant Factual Background

A.      **The Debtors' Ongoing Business**

9.      The Debtors are a leading multicultural media company, composed principally of two cable networks, Fuse and FM.  The Debtors are headquartered in Glendale, California and also maintain an office in New York, New York.  The Debtors currently employ

---

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

DOCS_SF:98965.2 29402/001

approximately 98 full-time employees and 8 independent contractors. The Debtors also employ approximately 35 people on a temporary full-time basis through various staffing agencies.

10.    The Debtors intend to continue operations in the ordinary course during these chapter 11 cases, and to preserve going concern value for the benefit of all constituents.

**B.    Senior Secured Notes**

11.    *Senior Secured Notes Indenture.* In connection with the acquisition of Fuse Media by SiTV Media in 2014, SiTV, LLC (now known as Fuse, LLC) and SiTV Finance, Inc. (now known as Fuse Finance, Inc.) issued $240 million of 10.375% Senior Secured Notes due 2019 (the "Senior Secured Notes") pursuant to that certain *Indenture* dated July 1, 2014 (as amended, supplemented, or otherwise modified from time to time, the "Senior Secured Notes Indenture," and together with the other Indenture Documents (as defined in the Senior Secured Notes Indenture), the "Senior Secured Notes Documents"), by and among Debtors Fuse, LLC and Fuse Finance, Inc., as issuers, the remaining Debtors (except Fuse Media, Inc. and Fuse Media, LLC), as guarantors, and Wilmington Trust, National Association, as indenture trustee and collateral agent (the "Senior Secured Notes Trustee," and together with the holders of the Senior Secured Notes, the "Senior Secured Noteholders").

12.    On August 21, 2017, Debtors Fuse, LLC and Fuse Finance, Inc. issued $2 million of additional Senior Secured Notes to certain holders.

13.    *Senior Secured Notes Obligations.* As of the Petition Date, the Debtors other than Fuse Media, Inc. and Fuse Media, LLC (collectively, the "Debtor Obligors" and each individually, a "Debtor Obligor") were jointly and severally indebted to the Senior Secured

Noteholders pursuant to the Senior Secured Notes Documents, without defense, counterclaim, or offset of any kind, in the aggregate principal amount of $242,000,000 *plus* accrued and unpaid interest with respect thereto and any additional fees, costs, expenses (including any attorneys', financial advisors', and other professionals' fees and expenses), reimbursement obligations, indemnification obligations, contingent obligations, and other charges of whatever nature, whether or not contingent, whenever arising, due, or owing, and all other Obligations (as defined in the Senior Secured Notes Indenture) owing under or in connection with the Senior Secured Notes Documents (collectively, the "Senior Secured Notes Obligations").

14.    *Senior Secured Notes Collateral.*  In connection with the Senior Secured Notes Indenture, the Debtor Obligors entered into that certain *Security Agreement*, dated as of July 1, 2014 (as amended, supplemented or otherwise modified from time to time, the "Senior Secured Notes Security Agreement"), by and between the Debtors Obligors, as pledgors, and the Senior Secured Notes Trustee, as collateral agent for the holders of the Senior Secured Notes. Pursuant to the Senior Secured Notes Security Agreement and the other Senior Secured Notes Documents, the Senior Secured Notes Obligations are secured by valid, binding, perfected first-priority security interests in and liens on (the "Senior Secured Notes Liens") the "Collateral" (the "Prepetition Collateral"), as defined in the Senior Secured Notes Security Agreement, consisting of substantially all of the Debtors' assets, including the Cash Collateral, except as may be set forth in the Senior Secured Notes Security Agreement.

C.    **Validity, Perfection, and Priority of Senior Secured Notes Liens**
**and Senior Secured Notes Obligations**

15.    Subject to the challenge rights of parties in interest as further described below, each of the Debtors acknowledges and agrees that:  (a) as of the Petition Date, the Senior Secured Notes Liens are valid, binding, enforceable, non-avoidable, and properly perfected liens on and security interests in the Prepetition Collateral; (b) as of the Petition Date, the Senior Secured Notes Liens are senior in priority over any and all other liens on the Prepetition Collateral, except the Existing Liens (as defined below), if any; (c) the Senior Secured Notes Obligations constitute legal, valid, binding, and non-avoidable obligations of the Debtors; (d) no offsets, challenges, objections, defenses, claims, or counterclaims of any kind or nature to any of the Senior Secured Notes Liens or Senior Secured Notes Obligations exist, and no portion of the Senior Secured Notes Liens or Senior Secured Notes Obligations is subject to any challenge or defense including, without limitation, impairment, set-off, right of recoupment, avoidance, attachment, disallowance, disgorgement, reduction, recharacterization, recovery, subordination (whether equitable or otherwise), counterclaims, or cross-claims, pursuant to the Bankruptcy Code or applicable nonbankruptcy law; and (e) the Debtors and their estates have no claims, objections, challenges, causes of actions, and/or choses in action, including, without limitation, "lender liability" causes of action or avoidance claims under chapter 5 of the Bankruptcy Code, whether arising under applicable state law or federal law (including, without limitation, any recharacterization, subordination, avoidance, disgorgement, recovery or other claims arising under or pursuant to sections 105, 510, or 542 through 553 of the Bankruptcy Code), against the Senior Secured Notes Trustee, the Senior Secured Noteholders, or any of their respective

7

affiliates, agents, attorneys, advisors, professionals, officers, directors, and employees arising out

of, based upon, or related to their loans under the Senior Secured Notes Documents, the Senior

Secured Notes Obligations, or the Senior Secured Notes Liens.

### Concise Statement of Relief Requested

16.    In accordance with Bankruptcy Rule 4001(b) and Local Rule 4001-2,

below is a summary[3] of the terms of the proposed use of cash collateral:

        a.    <u>Parties with an Interest in Cash Collateral</u>: The party with an interest in Cash Collateral is the Senior Secured Notes Trustee, for the benefit of itself and each of the Senior Secured Noteholders.

        b.    <u>Purposes for Use of Cash Collateral</u> (Interim Order Recital G; ¶3(b)): Subject to the provisions of the Interim Order, including the Budget (as defined below), the Debtors seek to use Cash Collateral during the Specified Period (as defined below) to: (i) finance their working capital needs and for any other general corporate purposes; and (ii) pay related transaction costs, fees, liabilities and expenses (including all professional fees and expenses) and other administration costs incurred in connection with and for the benefit of these Cases, in each case solely to the extent consistent with the Budget.

As part of the Interim Order, the Debtors acknowledge and agree that: (i) as of the Petition Date, each of the Debtors has neither opened nor maintains any bank accounts other than the accounts (each, a "<u>Bank Account</u>") listed on Exhibit A of any order authorizing the Debtors to continue to use the Debtors' existing cash management system, bank accounts and checks (a "<u>Cash Management Order</u>"), (ii) all cash receipts received by the Debtors from and after the Petition Date will be continuously deposited solely into operating Bank Accounts ending in 1341 and 3870 ("<u>Operating Accounts</u>"); (iii) the Debtors shall maintain a cash balance of no less than $7 million at all times (such cash, the "<u>Restricted Cash</u>") in their money market bank account ending in 8515 (the "<u>Blocked Account</u>"); and (iv) the Restricted Cash contained in the Blocked Account shall not be withdrawn or otherwise transferred from the Blocked Account without the express written approval of the Senior Secured Notes Trustee at the direction of the Senior Secured Noteholders ("<u>Noteholder Approval</u>").

---

[3] The summaries and descriptions of the terms and conditions for the use of cash collateral and the provisions of the Interim Order set forth in this Motion are intended solely for informational purposes to provide the Court and parties in interest with an overview of the significant terms thereof. The summaries and descriptions are qualified in their entirety by the proposed Interim Order. In the event that there is any conflict between this Motion and the Interim Order, the Interim Order will control in all respects.

      c.     Budget (Interim Order ¶3, 4(d)):  The Debtors would be authorized to use Cash Collateral in accordance with the Budget, the initial version of which is attached to the Interim Order as Exhibit A (the "Budget"), from the Petition Date through the date (the "Specified Period") which is the earliest to occur of (i) the expiration of the Remedies Notice Period (as defined below), (ii) the date that is forty (40) days from the Petition Date if the Court has not entered the Final Order on or before such date, and (iii) the date that is 6 months after the Petition Date.  The Debtors would ensure that at no time any of the following occur (together, the "Budget Covenants"):  (i) a negative variance of ten percent (10%) or more from the aggregate of operating disbursements, as set forth in the Budget, to be tested over a rolling two (2) week period but reported on a weekly basis, with the initial testing date occurring after the first two (2) weeks following the Petition Date; (ii) a negative variance of fifteen percent (15%) or more from the total cash balance, as set forth in the Budget (including the Restricted Cash), to be reported on a weekly basis, which negative variance shall not be exceeded by the Debtors in two (2) consecutive weeks, with the initial reporting date after the first week following the Petition Date; (iii) any Debtor making any disbursement not contemplated by the Budget (after giving effect to the foregoing variances) without the prior written consent of the supporting Senior Secured Noteholders; or (iv) reducing the amount of Restricted Cash below $7 million at any time without Noteholder Approval.

All collections (whether paid by wire or check) received by the Debtors from and after the Petition Date shall be deposited by the Debtors in the Operating Accounts.  Without Noteholder Approval, the Debtors shall not withdraw or otherwise transfer Restricted Cash from the Blocked Account.

      d.     Adequate Protection Liens (Interim Order ¶4(a)):  As adequate protection of the interests of the Senior Secured Notes Trustee in the Prepetition Collateral against any diminution in value of its interests in the Prepetition Collateral from and after the Petition Date (the "Diminution in Value"), pursuant to sections 361 and 363(e) of the Bankruptcy Code, the Senior Secured Notes Trustee, for the benefit of itself and each of the Senior Secured Noteholders for which it acts as agent, would be granted additional and replacement continuing valid, binding, enforceable, non-avoidable, and automatically perfected first-priority (subject only to the Carve-Out and Existing Liens, if any) postpetition security interests in and liens on (together, the "Adequate Protection Liens") all of each Debtor's presently owned or hereafter acquired property and assets, whether such property and assets were acquired by such Debtor before or after the Petition Date, of any kind or nature, whether real or personal, tangible or intangible, wherever located, including, without limitation, all inventory, accounts receivable, general intangibles, payment intangibles, chattel paper, contracts, owned real estate, real and personal property leaseholds, property, plants, fixtures and machinery and equipment, vehicles, vessels, deposit accounts, cash and any investment thereof, letter of credit rights, commercial tort claims, patents, copyrights, trademarks, trade names, rights under license agreements and other intellectual property and stock of subsidiaries of the Debtors, and the proceeds and products of the foregoing and any accessions thereto (collectively, together with the Prepetition Collateral and the Cash Collateral, the "Collateral").  The Collateral would exclude only any avoidance actions under chapter 5 of the Bankruptcy Code or applicable non-bankruptcy law (the "Avoidance Actions"),

9

but, subject only to and effective upon entry of the Final Order, the Collateral would include any proceeds of property recovered, unencumbered or otherwise, on account of successful Avoidance Actions, whether by judgment, settlement or otherwise ("Avoidance Proceeds").

The Adequate Protection Liens granted to the Senior Secured Notes Trustee, for the benefit of itself and each of the Senior Secured Noteholders (collectively, the "Adequate Protection Liens"), would be subject and subordinate only to the Carve Out (as defined below) and any existing, valid, enforceable, and unavoidable prior perfected security interests and liens that are senior to the Senior Secured Notes Liens as of the Petition Date (the "Existing Liens").

      e.     Adequate Protection Superpriority Claim (Interim Order ¶4(b)): To the extent of any Diminution in Value of the interests of the Senior Secured Notes Trustee in the Prepetition Collateral, the Senior Secured Notes Trustee, on behalf of itself and the Senior Secured Noteholders for which it acts as agent, would be granted, subject only to the payment of the Carve Out, an allowed superpriority administrative expense claim pursuant to sections 503(b), 507(a), and 507(b) of the Bankruptcy Code (collectively, the "Superpriority Claims"), which Superpriority Claim would be an allowed claim against each of the Debtors (jointly and severally), with priority over any and all administrative expenses and all other claims against the Debtors now existing or hereafter arising, of any kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and all other administrative expenses or other claims arising under any other provision of the Bankruptcy Code, including, without limitation, sections 105, 326, 327, 328, 330, 331, 503(b), 507(a), 507(b), or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other nonconsensual lien, levy, or attachment.  The Superpriority Claim would be payable from and have recourse to all prepetition and postpetition property of the Debtors and the proceeds thereof (excluding Avoidance Actions, but including Avoidance Proceeds upon entry of the Final Order).

      f.     Reimbursement of Fees and Expenses (Interim Order ¶4(c)): The Debtors would be authorized and directed to pay, within ten (10) business days of delivery of an invoice (which shall include reasonable supporting detail, which may be redacted to protect privileged or confidential information), all reasonable and documented fees and expenses of:  (i) the Senior Secured Notes Trustee; (ii) Wilmer Cutler Pickering Hale & Dorr LLP, as counsel to the Senior Secured Notes Trustee, and local counsel retained by the Senior Secured Notes Trustee; (iii) Fried, Frank, Harris, Shriver & Jacobson LLP and Richards, Layton & Finger, PA, as counsel to certain supporting Senior Secured Noteholders; and (iii) Moelis & Company, as financial advisor to certain supporting Senior Secured Noteholders.  Payment of all such fees and expenses shall not be subject to allowance by the Court and such professionals shall not be required to comply with the U.S. Trustee fee guidelines; provided, however, that any party submitting fees and expenses pursuant to this Order promptly provide copies of its invoices to the U.S. Trustee and counsel to any Committee appointed in the Cases, if any, and the Court shall have exclusive jurisdiction over any objections raised by the Committee or the U.S. Trustee to the invoiced amount of the fees and expenses proposed

10

to be paid, which objections may only be raised within five (5) business days after delivery of an invoice(s) therefor and shall be limited to the issue of the reasonableness of such fees and expenses. In the event that within five (5) business days from delivery of such invoices the U.S. Trustee or counsel to the Committee raises an objection to a particular invoice, and the parties are unable to resolve such objection, the Court shall hear and determine such dispute; <u>provided</u>, that payment of invoices shall not be delayed based on any such objections and the relevant professional shall only be required to disgorge amounts objected to upon being "so ordered" pursuant to a final order of the Court.

   g. <u>Modification of Automatic Stay</u> (Interim Order ¶5): The automatic stay imposed under section 362(a) of the Bankruptcy Code would be modified as necessary to effectuate all of the terms and provisions of the Interim Order, including, without limitation, to: (a) permit the Debtors to grant the Adequate Protection Liens and the Superpriority Claim; (b) permit the Debtors to perform such acts as the Senior Secured Notes Trustee may request in their reasonable discretion to assure the perfection and priority of the liens granted in the Interim Order; (c) permit the Debtors to incur all liabilities and obligations to the Senior Secured Notes Trustee and the Senior Secured Noteholders under the Interim Order; and (d) authorize the Debtors to pay, and the Senior Secured Notes Trustee and the supporting Senior Secured Noteholders to retain and apply, payments made in accordance with the terms of the Interim Order.

   h. <u>Automatic Perfection</u> (Interim Order ¶6): The Adequate Protection Liens would be valid, binding, enforceable, non-avoidable and automatically perfected without the necessity of filing or recording any financing statement, deed of trust, mortgage, or other instrument or document which otherwise may be required under the laws of any jurisdiction to validate or perfect such security interests and liens.

   i. <u>Credit Bid</u> (Interim Order ¶7): Subject to entry of the Final Order and the requirements of section 363(k) of the Bankruptcy Code, the Senior Secured Notes Trustee shall have the right (acting at the direction of the requisite Senior Secured Noteholders) to credit bid under section 363(k) of the Bankruptcy Code all or any portion of its claims in connection with a sale of the Debtors' assets, without the need for further order of the Court, and whether the sale is effectuated under section 363 of the Bankruptcy Code, under a chapter 11 plan of reorganization for any or all of the Debtors, by a chapter 7 trustee under section 725 of the Bankruptcy Code, or otherwise; provided the Senior Secured Notes Trustee shall be deemed a qualified bidder (or such analogous term) in connection with any such sale.

   j. <u>Events of Default</u> (Interim Order ¶8): The occurrence and continuance of any of the following events, unless waived in writing by the Senior Secured Notes Trustee (acting at the direction of the requisite Senior Secured Noteholders), shall constitute an event of default (collectively, the "<u>Events of Default</u>"): (i) the failure to obtain a Final Order in form and substance reasonably acceptable to the Senior Secured Notes Trustee (acting at the direction of the requisite Senior Secured Noteholders) within forty (40) days after the Petition Date (unless such date is extended by written consent of the Senior Secured Notes Trustee); (ii) the Debtors shall have filed

11

a motion seeking to create any postpetition liens or security interests, other than those granted or permitted pursuant to the Interim Order or approved by the Senior Secured Notes Trustee in writing; (iii) the Debtors shall have filed a disclosure statement or chapter 11 plan that is not reasonably acceptable to the Senior Secured Notes Trustee (acting at the direction of the requisite Senior Secured Noteholders); (iv) the entry of a final order by the Court, other than the Interim Order, granting relief from or modifying the automatic stay of section 362 of the Bankruptcy Code (A) to allow any creditor to execute upon or enforce a lien on or security interest in any Collateral, or (B) with respect to any lien of or the granting of any lien on any Collateral to any state or local environmental or regulatory agency or authority, except as approved by the Senior Secured Notes Trustee in writing; (v) the Court shall enter an order approving any claims for recovery of amounts under section 506(c) of the Bankruptcy Code or otherwise arising from the preservation of any Collateral; (vi) the Debtors shall support, commence, or join as an adverse party in any suit or other proceeding against the Senior Secured Notes Trustee or any of the Senior Secured Noteholders relating to the Senior Secured Notes Obligations or the Collateral, including any proceeding seeking to avoid or require repayment of any payments to the Senior Secured Notes Trustee or any supporting Senior Secured Noteholder hereunder; (vii) reversal, amendment, supplement, vacatur, or modification of the Interim Order without the express prior written consent of the Senior Secured Notes Trustee (acting at the direction of the requisite Senior Secured Noteholders); (viii) dismissal of any of these Cases or conversion of any of these Cases to chapter 7 cases, or appointment of a trustee, receiver, interim receiver or manager, or appointment of a responsible officer or examiner with enlarged powers in any of these Cases (having powers beyond those set forth in Bankruptcy Code sections 1106(a)(3) and (4)); (ix) the Debtors' exclusive right to file and solicit acceptances of a plan of reorganization is terminated or terminates; (x) the failure to make any material payments as set forth herein when due and such failure shall remain unremedied for more than five (5) business days after receipt by the Debtors of written notice thereof from the Senior Secured Notes Trustee; and (xi) the failure by the Debtors to perform, in any material respect (or, in the case of Paragraph 3(c) and the Budget Covenants in Paragraph 4(d) of the Interim Order, in all respects), any of the terms, provisions, conditions, or obligations under the Interim Order.

        k.      Rights and Remedies Upon Default (Interim Order ¶9): Upon occurrence of an Event of Default and following the giving of three (3) business days' notice to the Debtors and any Committee appointed in the Cases (the "Remedies Notice Period"), the Senior Secured Notes Trustee and the Senior Secured Noteholders may exercise the remedies available to them under this Interim Order and applicable non-bankruptcy law, including, but not limited to, revoking the Debtors' right to use Cash Collateral and collecting and applying any proceeds of the Collateral in accordance with the terms of this Interim Order and the Senior Secured Notes Documents. During the Remedies Notice Period, the Debtors may request that this Court order the continued use of Cash Collateral and, if such order is granted, the Debtors may continue to use Cash Collateral during the Remedies Notice Period in the ordinary course of business, consistent with past practices and the most recently delivered Budget, but may not (i) use any Restricted Cash (whether or not in compliance with the Budget) or (ii) enter into any transactions or arrangements (including, without limitation, the incurrence of

12

indebtedness or liens, making investments, restricted payments, asset sales, or entering into transactions with non-Debtor affiliates) that are not in the ordinary course of business. Unless the Court orders otherwise during the Remedies Notice Period, at the end of the Remedies Notice Period, the Debtors shall automatically, without further notice or order of the Court, no longer have the right to use Cash Collateral, the automatic stay pursuant to section 362 of the Bankruptcy Code shall be automatically terminated at the end of the Remedies Notice Period, without further notice or order of the Court, and the Senior Secured Notes Trustee and the Senior Secured Noteholders shall be permitted to exercise all rights and remedies set forth in this Interim Order, the Senior Secured Notes Documents, and as otherwise available at law without further order or application or motion to the Court, including, without limitation, foreclosing upon and selling all or a portion of the Collateral in order to collect any amounts payable to the Senior Secured Notes Trustee and the Senior Secured Noteholders pursuant to this Interim Order and apply the same to such obligations, without restriction or restraint by any stay under section 362 or 105 of the Bankruptcy Code. Notwithstanding anything herein to the contrary, the automatic stay pursuant to section 362 of the Bankruptcy Code shall be automatically terminated for the purposes of giving any notice contemplated hereunder. The delay or failure to exercise rights and remedies under this Interim Order or the Senior Secured Notes Documents shall not constitute a waiver of the Senior Secured Notes Trustee's or the Senior Secured Noteholders' rights thereunder or otherwise. Notwithstanding the occurrence of the Event of Default, all of the rights, benefits and protections provided to the Senior Secured Notes Trustee and the Senior Secured Noteholders shall survive the termination of this Interim Order due to such Event of Default.

l.     Carve-Out (Interim Order ¶10): As used in the Interim Order, the "Carve-Out" means the sum of: (i) all fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set forth in (iii) below); (ii) all reasonable fees and expenses up to $25,000 in the aggregate incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in (iii) below); (iii) to the extent allowed by this Court, all unpaid fees and expenses (the "Allowed Professional Fees") incurred by persons or firms retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code (the "Debtor Professionals") and any Committee appointed in the Cases (the "Committee Professionals" and, together with the Debtor Professionals, the "Professional Persons") at any time before delivery by the Senior Secured Notes Trustee of a Carve Out Trigger Notice (as defined below), whether allowed by the Court prior to or after delivery of a Carve Out Trigger Notice; and (iv) Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed $250,000 incurred after delivery by the Senior Secured Notes Trustee of the Carve Out Trigger Notice, to the extent allowed by this Court (the amounts set forth in this clause (iv) being the "Post-Carve Out Trigger Notice Cap"). For purposes of the foregoing, "Carve Out Trigger Notice" shall mean a written notice delivered by email (or other electronic means) by the Senior Secured Notes Trustee to counsel to the Debtors, the U.S. Trustee, and counsel to the Committee, which notice may be delivered following the occurrence of an Event of Default, stating that the Post-Carve Out Trigger Notice Cap has been invoked. Notwithstanding anything to the

13

contrary in the Interim Order, following the delivery of a Carve Out Trigger Notice, any of the statutory, Allowed Professional Fees or other fees covered by this Carve Out shall be paid by the Debtors from the proceeds of the Collateral, including the Cash Collateral.

m.    Debtors' Stipulations/Reservation of Committee and Certain Third Party Rights (Interim Order at Recital E, ¶11):  The Debtors propose to stipulate to the validity, priority and enforceability of, and waive any right to contest, the liens and claims of the Senior Secured Notes Trustee and the Senior Secured Noteholders, subject to the investigation rights set forth in paragraph 11 of the Interim Order, which would require a party in interest with proper standing granted by order of the Court (or other court of competent jurisdiction) to file an adversary proceeding or contested matter before the earlier of (a) the date on which this Court enters an order confirming the Debtors' chapter 11 plan of reorganization and (b) in the case of any such adversary proceeding or contested matter filed by a party-in-interest other than the Committee (if any), seventy-five (75) calendar days after entry of the Interim Order, and in the case of any such adversary proceeding or contested matter filed by the Committee, if any, sixty (60) calendar days after the appointment of the Committee, subject to further extension by written agreement of the Debtors and the Senior Secured Notes Trustee.

n.    Limitations on the Use of Cash Collateral (Interim Order ¶12):  The Debtors would not be permitted to assert or prosecute, and no portion of the proceeds of the Collateral, including any Cash Collateral or the Carve Out, and no disbursements set forth in the Budget, shall be used in connection with (a) preventing, hindering, or delaying the Senior Secured Notes Trustee's or Senior Secured Noteholders' enforcement or realization upon any of the Collateral once an Event of Default has occurred and after the Remedies Notice Period has expired, (b) objecting or challenging or contesting in any manner, or raising any defenses to, the validity, extent, amount, perfection, priority, or enforceability of any of the Senior Secured Notes Obligations or Collateral, or any other rights or interest of the Senior Secured Notes Trustee, (c) asserting, commencing, or prosecuting any claims or causes of action, including, without limitation, any actions under chapter 5 of the Bankruptcy Code, against the Senior Secured Notes Trustee or any Senior Secured Noteholder or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors, or employees, or (d) paying any amount on account of any claims arising prior to the Petition Date or any non-ordinary course administrative claims unless such payments are (i) approved by an order of this Court and (ii) in accordance with the Budget Covenants; provided, however, that up to $25,000 of Cash Collateral may be used to pay the allowed fees and expenses incurred solely by the Committee in investigating (but not commencing or prosecuting), the validity, enforceability, perfection, priority, or extent of the liens under the Senior Secured Notes Indenture (the "Committee Investigation Budget").

o.    Waiver of Section 506(c) Claims (Interim Order ¶14):  Upon entry of the Final Order, no costs or expenses of administration which have been or may be incurred in these Cases at any time, or any future proceeding that may result therefrom, including any Successor Cases, shall be charged against or recovered from the Senior Secured Notes Trustee or any Senior Secured Noteholder or any of their respective claims or the Collateral (including the Prepetition Collateral) pursuant to sections 105 or

14

506(c) of the Bankruptcy Code, or otherwise, without the prior express written consent of the Senior Secured Notes Trustee, and no such consent shall be implied, directly or indirectly, from any other action, inaction, or acquiescence by any such representatives, agents, or lenders.  Upon entry of the Final Order, the Debtors and their estates shall be deemed to have irrevocably waived, and shall be prohibited from asserting, any surcharge claim, under section 506(c) or otherwise, for any costs incurred, including those in connection with the preservation, protection, or enhancement of, or realization by the Senior Secured Notes Trustee or any Senior Secured Noteholder upon, the Collateral.

        p.      <u>No Marshaling/Application of Proceeds</u> (Interim Order ¶17): Upon entry of the Final Order, the Senior Secured Notes Trustee and the Senior Secured Noteholders shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Collateral (including the Prepetition Collateral), as the case may be, and proceeds or payments shall be received and applied in accordance with the Senior Secured Notes Documents, notwithstanding any other agreement or provision to the contrary.

        q.      <u>Section 552(b)</u> (Interim Order ¶18):  Upon entry of the Final Order, the Senior Secured Notes Trustee and the Senior Secured Noteholders shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to Senior Secured Notes Trustee or the Senior Secured Noteholders with respect to proceeds, product, offspring, or profits of any of the Collateral (including the Prepetition Collateral).

<u>Disclosures</u>

17.      Pursuant to Bankruptcy Rule 4001 and Local Rule 4001-2, a debtor in possession seeking authority to use cash collateral or obtain financing must disclose the presence and location of certain provisions contained in the documentation evidencing the cash collateral usage or financing.  The debtor in possession must also justify the inclusion of such provisions. Set forth below are the disclosures required in accordance with such rules:

        a.      Local Rule 4001-2(a)(i)(A) requires a debtor to disclose whether it has granted cross-collateralization to a prepetition secured creditor in connection with the debtor's cash collateral usage or additional financing.  **The proposed Interim Order does not provide for the granting of cross-collateralization protection to any prepetition secured creditor (except as adequate protection to the Senior Secured Notes Trustee against any Diminution in Value).**

        b.      Local Rule 4001-2(a)(i)(B) and Bankruptcy Rule 4001(c)(1)(B)(iii) require the disclosure of provisions or findings of fact that (i) bind the estate or other

15

parties in interest with respect to the validity, perfection or amount of a secured creditor's prepetition lien or (ii) the waiver of claims against the secured creditor without first giving parties in interest at least seventy-five (75) days from the entry of the order and the Committee at least sixty (60) days from the date of its formation to investigate such matters. **The proposed Interim Order contains findings or admissions by the Debtors relating to the validity, perfection, enforceability and amount of the Senior Secured Notes Trustee's prepetition liens and claims, subject to a challenge period for any committee or other party in interest through the earlier of (a) the date on which this Court enters an order confirming the Debtors' chapter 11 plan of reorganization and (b) in the case of any such adversary proceeding or contested matter filed by a party-in-interest other than the Committee (if any), seventy-five (75) calendar days after entry of the Interim Order, and in the case of any such adversary proceeding or contested matter filed by the Committee, if any, sixty (60) calendar days after the appointment of the Committee, subject to further extension by written agreement of the Debtors and the Senior Secured Notes Trustee.  Interim Order ¶11.**

      c.     Local Rule 4001-2(a)(i)(C) and Bankruptcy Rule 4001(c)(1)(B)(x) require the disclosure of provisions that seek to waive a debtor's rights without notice under section 506(c) of the Bankruptcy Code. **The proposed Interim Order provides, subject to entry of the Final Order, for a waiver of the Debtors' rights under section 506(c) of the Bankruptcy Code as to the Senior Secured Notes Trustee or any Senior Secured Noteholder or any of their respective claims or the Collateral (including the Prepetition Collateral).  Interim Order ¶14.**

      d.     Local Rule 4001-2(a)(i)(D) requires disclosure of provisions that immediately grant to the prepetition secured creditor liens on the debtor's claims and causes of action arising under sections 544, 545, 547, 548 and 549 of the Bankruptcy Code. **The proposed Interim Order expressly carves out any liens on Avoidance Actions, but, subject only to and effective upon entry of the Final Order, the Collateral would include Avoidance Proceeds.  Interim Order ¶4(a).**

      e.     Local Rule 4001-2(a)(i)(E) requires disclosure of provisions that deem prepetition secured debt to be postpetition debt or use postpetition loans from a prepetition secured creditor to pay part or all of that secured creditor' prepetition debt (other than as provided in section 552(b) of the Bankruptcy Code). **The proposed Interim Order does not contain provisions that deem prepetition secured debt to be postpetition debt or use postpetition loans from a prepetition secured creditor to pay part or all of that secured creditor' prepetition debt (other than as provided in section 552(b) of the Bankruptcy Code).**

      f.     Local Rule 4001-2(a)(i)(F) requires disclosure of provisions that provide disparate treatment for the professionals retained by a creditors' committee from those professionals retained by the debtor with respect to a professional fee carve-out. **The proposed Interim Order does not provide for disparate treatment for committee professionals.**

g.      Local Rule 4001-2(a)(i)(G) requires disclosure of provisions that provide for the priming of any secured lien without the consent of that lienholder.  **The proposed Interim Order does not provide for the priming of any secured lien without the consent of that lienholder.**

h.      Bankruptcy Rule 4001(c)(1)(B)(ii) requires disclosure of the provision of adequate protection or priority for claims arising prior to the commencement of the case.  **The proposed Interim Order specifies the adequate protection to be provided to the Senior Secured Notes Trustee.  Interim Order ¶4.**

i.      Bankruptcy Rule 4001(c)(1)(B)(iv) requires disclosure of provisions that constitute a waiver or modification of the automatic stay.  **The proposed Interim Order describes the modification of the automatic stay to the extent necessary to implement the Interim Order.  Interim Order ¶5.**

j.      Bankruptcy Rule 4001(c)(1)(B)(vii) requires disclosure of provisions that waive or modify the applicability of nonbankruptcy law relating to the perfection of a lien on property of the estate.  **The proposed Interim Order includes provisions that provide for the automatic perfection and validity of the Adequate Protection Liens in favor of the Senior Secured Notes Trustee without the necessity of any further filing or recording under the laws of any jurisdiction.  Interim Order ¶6.**

### Need for Use of Cash Collateral

18.     The Debtors have an urgent and immediate need for the use of the Cash Collateral.  Such funding is necessary in order for the Debtors to have sufficient liquidity to operate their business, satisfy their vendor and customer obligations, and pay their employees. Without immediate access to Cash Collateral, the Debtors would be forced to terminate operations and liquidate their assets, which would put the Debtors' dedicated employees out of work and irreparably damage the Debtors' efforts to maintain going concern value or to maximize recoveries for all stakeholders through the proposed prepackaged chapter 11 plan. Accordingly, the Debtors strongly urge the Court to authorize the continued use of Cash Collateral on the terms contemplated herein, initially on an interim basis and, following a final hearing, on a final basis.  The Debtors have the consent of the Senior Secured Notes Trustee and

a majority of the Senior Secured Noteholders to access Cash Collateral on the terms set forth in this Motion.

## Basis for Relief

### A.    The Debtors Have An Immediate Need to Use Cash Collateral

19.    Bankruptcy Rule 4001(b) permits a court to approve a debtor's request for use of cash collateral during the 14-day period following the filing of a motion requesting authorization to use cash collateral, "only . . . as is necessary to avoid immediate and irreparable harm to the estate pending a final hearing." Bankruptcy Rule 4001(b)(2).  In examining requests for interim relief under this rule, courts apply the same business judgment standard applicable to other business decisions.  *See, e.g., In re Simasko Production Co.*, 47 B.R. 444, 449 (D. Colo. 1985); *see also In re Ames Dep't Stores Inc.,* 115 B.R. 34, 38 (Bankr. S.D.N.Y. 1990).  After the 14-day period, the request for use of cash collateral is not limited to those amounts necessary to prevent harm to the debtor's business.

20.    As previously noted, in order to continue to operate their business and maintain going concern value, the Debtors require the use of Cash Collateral.  Such use will provide the Debtors with the necessary funds to fully honor all of their ongoing obligations to employees, vendors, and customers and allow the Debtors to proceed promptly towards confirmation of their proposed prepackaged plan.  The Debtors' goal is to make this bankruptcy process as seamless as possible from the perspective of the Debtors' employees, vendors, and customers.

DOCS_SF:98965.2 29402/001

21.     Absent access to Cash Collateral, the Debtors would face immediate and irreparable harm.  The Debtors' business would be shut down and their assets liquidated, which would result in the termination of the Debtors' employees and loss of going concern value at the expense of the Debtors' stakeholders.  Thus, immediate access to Cash Collateral is essential to the Debtors' continued viability and ability to successfully reorganize.

**B.    Sections 105 and 363 of the Bankruptcy Code Authorize the Debtors' Use of Cash Collateral**

22.     Section 363(c)(2) of the Bankruptcy Code provides that a debtor in possession may not use cash collateral unless (i) each entity that has an interest in such cash collateral provides consent, or (ii) the court approves the use of cash collateral after notice and a hearing.  11 U.S.C. § 363(c).  Section 105(a) of the Bankruptcy Code provides that the court may issue any order that is necessary or appropriate to carry out the provisions of title 11.  11 U.S.C. § 105(a).  Here, the Debtors have the consent of the Senior Secured Notes Trustee and a majority in holdings of the Senior Secured Noteholders to access Cash Collateral on the terms described in the Motion and set forth in the Interim Order and Final Order.

23.     The Debtors submit that the Senior Secured Notes Trustee's interests in the Collateral are adequately protected by a combination of protections proposed in the Interim Order and through the preservation of going concern value in the Debtors' assets.

**C.    The Proposed Adequate Protection of the Senior Secured Notes Trustee is Warranted**

24.     Section 363(e) of the Bankruptcy Code provides that, "on request of an entity that has an interest in property used . . . or proposed to be used . . . by the [debtor in

possession], the court . . . shall prohibit or condition such use . . . as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e). Courts typically authorize a debtor to use cash collateral to continue operations so long as the interests asserted by affected creditors in such collateral, which equal the value of the collateral rather than of the debt, are adequately protected or they consent to such use. *Id.*; *U.S. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365 (1988) (interest in property referenced in 11 U.S.C. § 363(e) refers to the value of the collateral as opposed to the value of the loan). What constitutes adequate protection must be decided on a case-by-case basis. *See, e.g., MBank Dallas v. O'Connor (In re O'Connor)*, 808 F.2d 1393, 1396-97 (10th Cir. 1987) (citing *Martin v. United States (In re Martin)*, 761 F.2d 472, 474 (8th Cir. 1985)); *Metro. Life Ins. Co. v. Monroe Park (In re Monroe Park)*, 17 B.R. 934, 940 (D. Del. 1982) (citations omitted).

      25.     Section 361 of the Bankruptcy Code authorizes a debtor to provide adequate protection by granting replacement liens, making periodic cash payments, or granting such other relief "as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property." 11 U.S.C. § 361. According to the legislative history of section 361 of the Bankruptcy Code, a finding of adequate protection is "left to case-by-case interpretation and development. It is expected that the courts will apply the concept [of adequate protection] in light of the facts of each case and general equitable principles." H.R. Rep. No. 595, 95th Cong., 1st Sess. 339 (1977), reprinted in 1978 U.S.C.C.A.N. 5787, 6295; *see also O'Connor*, 808 F.2d at 1396-97 ("[T]he courts have considered 'adequate protection' a concept which is to be decided flexibly on the proverbial 'case-by-case' basis.").

DOCS_SF:98965.2 29402/001

26.    The Interim Order authorizes the Debtors to use Cash Collateral in exchange for providing adequate protection to the Senior Secured Notes Trustee by: (i) granting, solely to the extent of any Diminution of Value, additional and replacement security interests in and liens on the Debtors' assets (excluding Avoidance Actions but, subject only to and effective upon entry of the Final Order, the Collateral would include Avoidance Proceeds); (ii) granting, solely to the extent of any Diminution of Value, to the extent provided by sections 503(b) and 507(b) of the Bankruptcy Code, an allowed administrative claim in these chapter 11 cases; and (iii) reimbursing the Senior Secured Notes Trustee's and the supporting Senior Secured Noteholders reasonable fees and costs in connection with these bankruptcy cases, in accordance with the Interim Order.  Further, the Debtors request to modify the automatic stay imposed pursuant to section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the Interim Order and the Final Order.

27.    The various cash collateral protections described above are sufficient under the present circumstances to provide adequate protection to the Senior Secured Notes Trustee.  The Budget contemplates that the Debtors will use the Cash Collateral to satisfy their ordinary course obligations.

28.    In sum, the proposed adequate protection components described above are fair and reasonable and compensate the Senior Secured Notes Trustee for any possible diminution in value of the Debtors' assets securing the Senior Secured Notes Trustee's liens.  Given the significant value that the Debtors stand to lose in the event that they are denied access to the continued use of Cash Collateral, such protections are appropriate.  Without the use of

Cash Collateral, the Debtors' operations will cease and the Debtors' estates and their creditors will be irreparably damaged.

## Interim Order and Final Hearing

29.     Pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2), the Debtors request that the Court set a date for the Final Hearing that is as soon as practicable, and fix the time and date prior to the final hearing for parties to file objections to the Motion.

30.     The urgent need to preserve going concern value, and avoid immediate and irreparable harm to all of the Debtors' estates, makes it imperative that the Debtors be authorized to use the Cash Collateral, pending the Final Hearing, in order to continue their operations and to allow the Debtors to administer their cases.  Without the ability to use Cash Collateral, the Debtors would be unable to meet their ongoing obligations and would be unable to fund their working capital needs, thus causing irreparable harm to the Debtors and the value of these estates.  Accordingly, the Debtors respectfully request that, pending the hearing on a Final Order, the Interim Order be approved in all respects and that the terms and provisions of the Interim Order be implemented and be deemed binding and that, after the Final Hearing, the Final Order be approved in all respects and the terms and provisions of the Final Order be implemented and be deemed binding.

## Notice of Motion

31.     Notice of this Motion shall be given to the following parties or, in lieu thereof, to their counsel, if known: (a) the Office of the United States Trustee; (b) counsel for the supporting Senior Secured Noteholders; (c) the Senior Secured Notes Trustee and its counsel;

22

and (d) the Debtors' largest unsecured creditors on a consolidated basis. As the Motion is

seeking "first day" relief, within two business days after the hearing on the Motion, the Debtors

will serve copies of the Motion and any order entered respecting the Motion as required by Del.

Bankr. LR 9013-1(m). The Debtors submit that, in light of the nature of the relief requested, no

other or further notice need be given.

### Notice with Respect to Final Hearing

32.     No trustee, examiner or statutory committee has been appointed in the

Debtors' cases. Pursuant to Bankruptcy Rule 4001, the Debtors respectfully request that they be

authorized to provide notice of the Final Hearing by serving a copy of this Motion, together with

the Interim Order, by hand or overnight mail or courier service (or for those set up to receive

electronic transmissions, by electronic transmission), upon the parties referenced above that

received notice of the Motion and all parties that have filed notices of appearance and requests

for notices in these cases. The Debtors respectfully request that such notice is sufficient and

request that this Court find that no further notice of the Final Hearing and Final Order is

required.

### No Prior Request

33.     No prior request for the relief requested herein has been made to this or

any other court.

WHEREFORE, the Debtors request entry of the Interim Order and the Final

Order under sections 105, 361, 362, 363, 503, and 507 of the Bankruptcy Code, Bankruptcy Rules

2002, 4001, and 9014, and Local Rules 2002-1(b), 4001-2, and 9013-1(m), (i) authorizing the

Debtors to use cash collateral, (ii) granting adequate protection, (iii) modifying the automatic

stay, and (iv) scheduling a final hearing, as described herein.

Dated:    April 22, 2019                    PACHULSKI STANG ZIEHL & JONES LLP

                                           By: _____
                                                Richard M. Pachulski (CA Bar No. 90073)
                                                Ira D. Kharasch (CA Bar No. 109084)
                                                James E. O'Neill (DE Bar 4042)
                                                Maxim B. Litvak (CA Bar No. 215852)
                                                919 N. Market Street, 17th Floor
                                                Wilmington, DE 91899
                                                Tel:  (302) 652-4100
                                                Fax: (302) 652-4400
                                                E-mail:  rpachulski@pszjlaw.com
                                                         ikharasch@pszjlaw.com
                                                         joneill@pszjlaw.com
                                                         mlitvak@pszjlaw.com

                                                Proposed Attorneys for Debtors and Debtors in
                                                Possession