# EXHIBIT 1

**Proposed Interim Order**

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| FUSE, LLC, *et al.*,[1] | ) | Case No.: 19-10872 (___) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |

### INTERIM ORDER (A) AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL, (B) GRANTING ADEQUATE PROTECTION, (C) MODIFYING THE AUTOMATIC STAY, AND (D) SCHEDULING A FINAL HEARING

Upon the motion (the "Motion")[2] of Fuse, LLC and its affiliated debtors, each as debtor

and debtor-in-possession (collectively, the "Debtors") in the above-captioned chapter 11 cases

(collectively, the "Cases"), pursuant to sections 105, 361, 362, 363, 503, and 507 of title 11 of

the United States Code (as amended, the "Bankruptcy Code"), rules 2002, 4001, and 9014 of the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 2002-1(b), 4001-2,

and 9013-1(m) of the Local Rules of Bankruptcy Practice and Procedure of the United States

Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules"), seeking entry of

this interim order (this "Interim Order") and a final order (the "Final Order") *inter alia*:

(i)     authorizing the Debtors' use of Cash Collateral (as defined below);

(ii)    granting adequate protection to the Senior Secured Notes Trustee (as

defined below) for any Diminution in Value (as defined below) of its interests in the Prepetition

Collateral (as defined below), including the Cash Collateral;

---

[1]  The Debtors and the last four digits of their taxpayer identification numbers include:  Fuse Media, Inc. (9721); Fuse Media, LLC (0560); Fuse, LLC (1888); JAAM Productions, LLC (5499); SCN Distribution, LLC (9656); Latino Events LLC (8204); Fuse Holdings LLC (5673); Fuse Finance, Inc. (8683); and FM Networks LLC (6500). The Debtors' headquarters and service address is 700 North Central Avenue, Suite 600, Glendale, CA 91203.

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Motion.

(iii) subject to entry of a Final Order and to the extent set forth herein, waiving the Debtors' right to surcharge the Collateral (as defined below) pursuant to section 506(c) of the Bankruptcy Code;

(iv) vacating or modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to permit the Debtors and the Senior Secured Notes Trustee to implement and effectuate the terms and provisions of this Interim Order; and

(v) scheduling a final hearing (the "Final Hearing") to consider the relief requested in the Motion and the entry of a Final Order, and approving the form of notice with respect to the Final Hearing.

The Court (as defined below) having considered the Motion, the First Day Declaration, and the evidence submitted or adduced and the arguments of counsel made at the interim hearing held pursuant to Bankruptcy Rule 4001(b)(2) on April ___, 2019 (the "Interim Hearing"); and this Court having heard and resolved or overruled any objections to the interim relief requested in the Motion; and the Court having noted the appearances of all parties in interest; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, and creditors; and the Debtors having provided notice of the Motion as set forth in the Motion, and it appearing that no other or further notice of the Motion need be given; and after due deliberation and consideration, and for good and sufficient cause appearing therefor;

**BASED UPON THE RECORD ESTABLISHED BY THE DEBTORS AT THE INTERIM HEARING, THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[3]**

---

[3] Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact, pursuant to Bankruptcy Rule 7052.

A.    *Petition Date*:  On April 22, 2019 (the "Petition Date"), each of the Debtors filed a voluntary petition under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (this "Court") commencing these Cases.

B.    *Debtors in Possession*.    The Debtors continue to manage and operate their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these Cases.

C.    *Jurisdiction and Venue*.  The Court has jurisdiction over the Motion, these Cases, and the persons and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated February 29, 2012.  Consideration of the Motion constitutes a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent pursuant to Local Bankruptcy Rule 9013-1(f) to the entry of a final order by the Court in connection with the Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.  Venue for these Cases is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

D.    *Committee*.  As of the date hereof, the United States Trustee (the "U.S. Trustee") has not yet appointed an official committee of unsecured creditors in these Cases pursuant to section 1102 of the Bankruptcy Code (a "Committee").

E.    *Debtors' Stipulations*.    After consultation with their attorneys and financial advisors, and without prejudice to the rights of parties in interest as described in Paragraph 11

3

herein, the Debtors stipulate and agree that (collectively, Paragraphs E(i) through (iii) below are referred to herein as the "Debtors' Stipulations"):

    (i)    *Senior Secured Notes*.

    (a)    In connection with the acquisition of Fuse Media by SiTV Media in 2014, SiTV, LLC (now known as Fuse, LLC) and SiTV Finance, Inc. (now known as Fuse Finance, Inc.) issued $240 million of 10.375% Senior Secured Notes due 2019 (the "Senior Secured Notes") pursuant to that certain *Indenture* dated July 1, 2014 (as amended, supplemented, or otherwise modified from time to time, the "Senior Secured Notes Indenture," and together with the other Indenture Documents (as defined in the Senior Secured Notes Indenture), the "Senior Secured Notes Documents"), by and among Debtors Fuse, LLC and Fuse Finance, Inc., as issuers, the remaining Debtors (except Fuse Media, Inc. and Fuse Media, LLC), as guarantors, and Wilmington Trust, National Association, as indenture trustee and collateral agent (the "Senior Secured Notes Trustee," and together with the holders of the Senior Secured Notes, the "Senior Secured Noteholders").

    (b)    On August 21, 2017, Debtors Fuse, LLC and Fuse Finance, Inc. issued $2 million of additional Senior Secured Notes to certain holders.

    (c)    As of the Petition Date, the Debtors other than Fuse Media, Inc. and Fuse Media, LLC (collectively, the "Debtor Obligors" and each individually, a "Debtor Obligor") were jointly and severally indebted to the Senior Secured Noteholders pursuant to the Senior Secured Notes Documents, without defense, counterclaim, or offset of any kind, in the aggregate principal amount of $242,000,000 *plus* accrued and unpaid interest with respect

thereto and any additional fees, costs, expenses (including any attorneys', financial advisors', and other professionals' fees and expenses), reimbursement obligations, indemnification obligations, contingent obligations, and other charges of whatever nature, whether or not contingent, whenever arising, due, or owing, and all other Obligations (as defined in the Senior Secured Notes Indenture) owing under or in connection with the Senior Secured Notes Documents (collectively, the "Senior Secured Notes Obligations").

(ii)    *Senior Secured Notes Collateral.*  In connection with the Senior Secured Notes Indenture, the Debtor Obligors entered into that certain *Security Agreement*, dated as of July 1, 2014 (as amended, supplemented or otherwise modified from time to time, the "Senior Secured Notes Security Agreement"), by and between the Debtor Obligors, as pledgors, and the Senior Secured Notes Trustee, as collateral agent for the holders of the Senior Secured Notes. Pursuant to the Senior Secured Notes Security Agreement and the other Senior Secured Notes Documents, the Senior Secured Notes Obligations are secured by valid, binding, perfected first-priority security interests in and liens on (the "Senior Secured Notes Liens") the "Collateral" (the "Prepetition Collateral"), as defined in the Senior Secured Notes Security Agreement, consisting of substantially all of the Debtors' assets, including the Cash Collateral, except as may be set forth in the Senior Secured Notes Security Agreement.

(iii)    *Validity, Perfection, and Priority of Senior Secured Notes Liens and Senior Secured Notes Obligations.*  Each of the Debtors acknowledges and agrees that:  (a) as of the Petition Date, the Senior Secured Notes Liens are valid, binding, enforceable, non-avoidable, and properly perfected liens on and security interests in the Prepetition Collateral; (b) as of the

Petition Date, the Senior Secured Notes Liens are senior in priority over any and all other liens on the Prepetition Collateral, except the Existing Liens (as defined below), if any; (c) the Senior Secured Notes Obligations constitute legal, valid, binding, and non-avoidable obligations of the Debtors; (d) no offsets, challenges, objections, defenses, claims, or counterclaims of any kind or nature to any of the Senior Secured Notes Liens or Senior Secured Notes Obligations exist, and no portion of the Senior Secured Notes Liens or Senior Secured Notes Obligations is subject to any challenge or defense including, without limitation, impairment, set-off, right of recoupment, avoidance, attachment, disallowance, disgorgement, reduction, recharacterization, recovery, subordination (whether equitable or otherwise), counterclaims, or cross-claims, pursuant to the Bankruptcy Code or applicable nonbankruptcy law; and (e) the Debtors and their estates have no claims, objections, challenges, causes of actions, and/or choses in action, including, without limitation, "lender liability" causes of action or avoidance claims under chapter 5 of the Bankruptcy Code, whether arising under applicable state law or federal law (including, without limitation, any recharacterization, subordination, avoidance, disgorgement, recovery or other claims arising under or pursuant to sections 105, 510, or 542 through 553 of the Bankruptcy Code), against the Senior Secured Notes Trustee, the Senior Secured Noteholders, or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors, and employees arising out of, based upon, or related to their loans under the Senior Secured Notes Documents, the Senior Secured Notes Obligations, or the Senior Secured Notes Liens.

F.    *Adequate Protection*.  To protect the Senior Secured Notes Trustee's interests in the Prepetition Collateral, the Senior Secured Notes Trustee is entitled to receive adequate

protection for any diminution in value of its interests in the Prepetition Collateral from and after

the Petition Date resulting from, among other things, the use of Cash Collateral, the use, sale,

lease, consumption, or disposition of Prepetition Collateral, or the imposition of the automatic

stay (collectively the "Diminution in Value") pursuant to sections 361, 362, and 363 of the

Bankruptcy Code.  Pursuant to sections 361, 363, 503(b) and 507(b) of the Bankruptcy Code, as

adequate protection, the Senior Secured Notes Trustee, for the benefit of itself and the Senior

Secured Noteholders, shall receive: (i) the Adequate Protection Liens (as defined below), (ii) the

Superpriority Claim (as defined below), and (iii) the reimbursement of professional fees and

expenses.  The adequate protection provided herein and other benefits and privileges contained

herein are necessary to protect the Senior Secured Notes Trustee from any Diminution in Value

of its interests in the Prepetition Collateral and obtain the consents and agreements contained

herein, including that the adequate protection provided herein is subject and subordinate to the

Carve Out (as defined below).  Based on the Motion and on the record presented to the Court, the

terms of the proposed adequate protection arrangements and of the use of the Prepetition

Collateral (including the Cash Collateral) were negotiated in good faith, are fair and reasonable,

reflect the Debtors' prudent exercise of business judgment and constitute reasonably equivalent

value and fair consideration for the use of Cash Collateral.  The Senior Secured Notes Trustee

and the Senior Secured Noteholders reserve the right to seek additional adequate protection

beyond the adequate protection provided in this Interim Order.

G.    *Operating Accounts*.  The Debtors acknowledge and agree that: (i) as of the

Petition Date, each of the Debtors has neither opened nor maintains any bank accounts other than

the accounts (each, a "Bank Account") listed on Exhibit A of any order authorizing the Debtors to continue to use the Debtors' existing cash management system (the "Cash Management Order"); (ii) all cash receipts received by the Debtors from and after the Petition Date will be continuously deposited solely into operating Bank Accounts ending in 1341 and 3870 ("Operating Accounts"); (iii) the Debtors shall maintain a cash balance of no less than $7 million at all times (such cash, the "Restricted Cash") in their money market bank account ending in 8515 (the "Blocked Account"); and (iv) the Restricted Cash contained in the Blocked Account shall not be withdrawn or otherwise transferred from the Blocked Account without the express written approval of the Senior Secured Notes Trustee at the direction of the Senior Secured Noteholders ("Noteholder Approval").

H.    *Sections 506(c) and 552(b)*.    In light of the Senior Secured Notes Trustee's agreement to subordinate its liens and superpriority claims to the Carve Out and to permit the use of its Cash Collateral as set forth herein, the Senior Secured Notes Trustee is entitled to the rights and benefits of section 552(b) of the Bankruptcy Code and (i) upon entry of the Final Order, a waiver of any "equities of the case" claims under section 552(b) of the Bankruptcy Code and (ii) upon entry of the Final Order, a waiver of the provisions of section 506(c) of the Bankruptcy Code.

I.    *Consent by Senior Secured Notes Trustee*. The Senior Secured Notes Trustee (with the consent of the supporting Senior Secured Noteholders) has consented to, conditioned on the entry of this Interim Order, the Debtors' proposed use of Cash Collateral, on the terms and conditions set forth in this Interim Order, and the terms of the adequate protection provided for

in this Interim Order, including that the Adequate Protection Liens and Superpriority Claim are subject and subordinate to the Carve Out.

J.      *Necessity of Relief Requested*.    The ability of the Debtors to finance their operations and complete a successful chapter 11 reorganization requires continued use of Cash Collateral.  In the absence of the use of Cash Collateral, the continued operation of the Debtors' business would not be possible and immediate and irreparable harm to the Debtors, their estates, and their creditors would occur.  The Debtors do not have sufficient available sources of working capital and financing to operate their business in the ordinary course of business or to maintain their property without the use of Cash Collateral.  The relief requested in the Motion is therefore necessary for the continued operation of the Debtors' business and the preservation of their property.  The Senior Secured Notes Trustee, the Senior Secured Noteholders, and the Debtors have negotiated at arms'-length and in good faith regarding the Debtors' use of Cash Collateral to fund the continued operation of the Debtors' business during the Specified Period (as defined below).  Entry of this Interim Order is in the best interests of the Debtors and their estates.

K.      *Good Cause Shown; Best Interest*.    The Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(b)(2) and Local Bankruptcy Rule 4001-2.  Absent entry of this Interim Order, the Debtors' business, properties, and estates will be immediately and irreparably harmed.  This Court concludes that good cause has been shown and entry of this Interim Order is in the best interests of the Debtors' respective estates and creditors as its implementation will, among other things, allow for the continued operation of the Debtors' existing business and enhance the Debtors' prospects for a successful reorganization.

L.    *Final Hearing*.  The Debtors will seek final approval of the relief requested in the Motion pursuant to a Final Order at the Final Hearing, notice of which will be provided in accordance with Paragraph 22 of this Interim Order.

M.    *Notice*.  In accordance with Bankruptcy Rules 2002, 4001(b), (c), and (d), and 9014, and the Local Bankruptcy Rules, notice of the Interim Hearing and the emergency relief requested in the Motion has been provided by the Debtors.  The parties have made reasonable efforts to afford the best notice possible under the circumstances to permit the relief set forth in this Interim Order, and no other or further notice is or shall be required.

Based upon the foregoing findings and conclusions, the Motion and the record before the Court with respect to the Motion, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.    Motion Granted.  The Motion is granted on an interim basis as set forth herein, and the use of Cash Collateral on an interim basis is authorized, subject to the terms of this Interim Order.

2.    Objections Overruled.  All objections to the Motion to the extent not withdrawn or resolved are overruled.  This Interim Order shall become effective immediately upon its entry.

3.    Authorization to Use Cash Collateral.

(a)    Specified Period.  Subject to the terms and conditions of this Interim Order, the Debtors are authorized to use Cash Collateral in accordance with the Budget  for the period (the "Specified Period") from the Petition Date through the date which is the earliest to occur of (i) the expiration of the Remedies Notice Period (as defined herein), (ii) the date that is

forty (40) days from the Petition Date if the Court has not entered the Final Order on or before such date (unless such date is extended with the written consent of the Senior Secured Notes Trustee), and (iii) the date that is six (6) months after the Petition Date.

      (b)   <u>Use of Cash Collateral</u>.  Subject to the provisions of this Interim Order, and in accordance with the Budget, Cash Collateral may be used during the Specified Period by the Debtors to:  (i) finance their working capital needs and for any other general corporate purposes; and (ii)  pay related transaction costs, fees, liabilities and expenses (including all professional fees and expenses) and other administration costs incurred in connection with and for the benefit of these Cases, in each case solely to the extent consistent with the Budget. Nothing in this Interim Order shall authorize the disposition of any assets of the Debtors or their estates outside the ordinary course of business, or any Debtor's use of any Cash Collateral or proceeds resulting therefrom, except as permitted in this Interim Order and in accordance with the Budget.

      (c)   <u>Ongoing Cash Deposits; Use of Restricted Cash</u>.  All collections (whether paid by wire or check) received by the Debtors from and after the Petition Date shall be deposited by the Debtors in the Operating Accounts.  Without Noteholder Approval, the Debtors shall not withdraw or otherwise transfer Restricted Cash from the Blocked Account.

    4.   <u>Adequate Protection</u>.  The Senior Secured Notes Trustee is entitled, pursuant to sections 361 and 363(e) of the Bankruptcy Code, to adequate protection of its interests in the Prepetition Collateral (including Cash Collateral) to the extent of any Diminution in Value of its interests in the Prepetition Collateral (which, subject to entry of the Final Order, shall be valued

as of the Petition Date on a going-concern basis) (such adequate protection as set forth in clauses (a)-(f) below, the "Adequate Protection Obligations"). The Senior Secured Notes Trustee, on behalf of itself and for the benefit of each of the Senior Secured Noteholders, is hereby granted, as applicable, to the extent of any Diminution in Value of its interests in the Prepetition Collateral from and after the Petition Date, the following:

(a)    Adequate Protection Liens. As adequate protection of the interests of the Senior Secured Notes Trustee in the Prepetition Collateral against any Diminution in Value of such interests, pursuant to sections 361 and 363(e) of the Bankruptcy Code, the Debtors are authorized to, and as of entry of this Interim Order are deemed to have granted, to the Senior Secured Notes Trustee, for the benefit of itself and each of the Senior Secured Noteholders, additional and replacement continuing, valid, binding, enforceable, non-avoidable, and automatically perfected postpetition security interests in and liens on (together, the "Adequate Protection Liens") all of each Debtor's presently owned or hereafter acquired property and assets, whether such property and assets were acquired by such Debtor before or after the Petition Date, of any kind or nature, whether real or personal, tangible or intangible, wherever located, including, without limitation, all inventory, accounts receivable, general intangibles, payment intangibles, chattel paper, contracts, real and personal property, leaseholds, property, plants, fixtures and machinery and equipment, vehicles, vessels, deposit accounts, cash and any investment thereof, letter of credit rights, commercial tort claims, patents, copyrights, trademarks, trade names, rights under license agreements and other intellectual property and stock of subsidiaries of the Debtors, and the proceeds and products of the foregoing and any

12

accessions thereto (collectively, together with the Prepetition Collateral and the Cash Collateral, the "Collateral"). The Collateral shall exclude only any avoidance actions under chapter 5 of the Bankruptcy Code or applicable non-bankruptcy law (the "Avoidance Actions"), but, subject only to and effective upon entry of the Final Order, the Collateral shall include any proceeds of property recovered, unencumbered or otherwise, on account of Avoidance Actions, whether by judgment, settlement or otherwise ("Avoidance Proceeds"). The Adequate Protection Liens granted to the Senior Secured Notes Trustee, for the benefit of itself and the Senior Secured Noteholders (collectively, the "Adequate Protection Liens") shall be subject and subordinate only to the Carve Out and any existing, valid, enforceable, and unavoidable prior perfected security interests and liens that are senior to the Senior Secured Notes Liens as of the Petition Date (the "Existing Liens"). The Adequate Protection Liens shall secure the Senior Secured Notes Obligations to the extent of any Diminution in Value of the Senior Secured Notes Trustee's interests in the Prepetition Collateral from and after the Petition Date. The Adequate Protection Liens shall be enforceable against the Debtors, their estates, and any successors thereto, including, without limitation, any trustee or other estate representative appointed in these Cases, or any case under chapter 7 of the Bankruptcy Code upon the conversion of any of these Cases, or in any other proceedings superseding or related to any of the foregoing (collectively, "Successor Cases"). Except as expressly provided herein (including with respect to the Carve Out), the Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted in the Cases or any Successor Cases, and the Adequate Protection Liens shall be valid and enforceable against any trustee or other estate

representative appointed in any of these Cases or any Successor Cases, or upon the dismissal of any of these Cases or Successor Cases.  The Adequate Protection Liens shall not be subject to sections 510, 549, or 550 of the Bankruptcy Code and, if approved in the Final Order, the Adequate Protection Liens shall not be subject to section 506(c) of the Bankruptcy Code.  The Adequate Protection Liens shall be deemed legal, valid, binding, enforceable, and perfected first-priority (subject only to Carve Out and Existing Liens, if any) liens, not subject to subordination, impairment, or avoidance, for all purposes in these Cases and any Successor Cases.  For the avoidance of doubt, the Adequate Protection Liens shall be deemed to be effective and perfected automatically as of the Petition Date and without the necessity of the execution by the Debtors, or the filing of, as applicable, mortgages, security agreements, pledge agreements, control agreements, financing statements, state or federal notices, recordings (including, without limitation, any recordings with the United States Patent and Trademark or Copyright Office), or other agreements and without the necessity of taking possession or control of any Prepetition Collateral.  Except as otherwise expressly provided herein, under no circumstances shall the Adequate Protection Liens be made subordinate to the lien of any other party, no matter when arising.

(b)    Adequate Protection Superpriority Claim.    To the extent of any Diminution in Value of the interests of the Senior Secured Notes Trustee in the Prepetition Collateral, the Senior Secured Notes Trustee, on behalf of itself and the Senior Secured Noteholders, shall be granted, subject only to the payment of the Carve Out, allowed superpriority administrative expense claim pursuant to sections 503(b), 507(a), and 507(b) of the

Bankruptcy Code (collectively, the "Superpriority Claim"), which Superpriority Claim shall be an allowed claim against each of the Debtors (jointly and severally), with priority over any and all administrative expenses and all other claims against the Debtors now existing or hereafter arising, of any kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and all other administrative expenses or other claims arising under any other provision of the Bankruptcy Code, including, without limitation, sections 105, 326, 327, 328, 330, 331, 503(b), 507(a), 507(b), or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other nonconsensual lien, levy, or attachment.  The Superpriority Claim shall be payable from and have recourse to all prepetition and postpetition property of the Debtors and the proceeds thereof (excluding Avoidance Actions, but including Avoidance Proceeds upon entry of the Final Order).

(c)    Fees and Expenses.  The Debtors shall pay, within ten (10) business days of delivery of an invoice (which shall include reasonable supporting detail, which may be redacted to protect privileged or confidential information), all reasonable and documented fees and expenses of:  (i) the Senior Secured Notes Trustee; (ii) Wilmer Cutler Pickering Hale & Dorr LLP, as counsel to the Senior Secured Notes Trustee, and local counsel retained by the Senior Secured Notes Trustee; (iii) Fried, Frank, Harris, Shriver & Jacobson LLP and Richards, Layton & Finger, PA, as counsel to certain supporting Senior Secured Noteholders; and (iii) Moelis & Company, as financial advisor to certain supporting Senior Secured Noteholders.  Payment of all such fees and expenses shall not be subject to allowance by the Court and such professionals shall not be required to comply with the U.S. Trustee fee guidelines; provided, however, that any

party submitting fees and expenses pursuant to this Order promptly provide copies of its invoices to the U.S. Trustee and counsel to any Committee appointed in the Cases, if any, and the Court shall have exclusive jurisdiction over any objections raised by the Committee or the U.S. Trustee to the invoiced amount of the fees and expenses proposed to be paid, which objections may only be raised within five (5) business days after delivery of an invoice(s) therefor and shall be limited to the issue of the reasonableness of such fees and expenses.  In the event that within five (5) business days from delivery of such invoices the U.S. Trustee or counsel to the Committee raises an objection to a particular invoice, and the parties are unable to resolve such objection, the Court shall hear and determine such dispute; provided, that payment of invoices shall not be delayed based on any such objections and the relevant professional shall only be required to disgorge amounts objected to upon being "so ordered" pursuant to a final order of the Court.

(d)    Budget and Variance Reporting.    Attached as **Exhibit A** hereto and incorporated herein by reference is a 13-week cash flow forecast for the Debtors (the "Budget"), including the anticipated uses of the Cash Collateral for such period.  On the third (3rd) business day of each calendar week following entry of the Interim Order, the Debtors will provide the Senior Secured Notes Trustee and counsel to the supporting Senior Secured Noteholders with an updated Budget for the subsequent 13-week period.  The initial Budget and each subsequent Budget shall be in form and substance acceptable to the supporting Senior Secured Noteholders and each such subsequent Budget shall be deemed to constitute the "Budget" for purposes of this Interim Order unless counsel to the supporting Senior Secured Noteholders has notified counsel for the Debtors in writing within five (5) calendar days following delivery thereof to the

contrary.  In the event of such notification, the prior approved Budget shall remain in full force and effect.  On the third (3rd) business day of each calendar week following entry of the Interim Order, the Debtors will also provide to the Senior Secured Notes Trustee and counsel to the supporting Senior Secured Noteholders a Budget variance report/reconciliation (the "Budget Variance Report") setting forth in reasonable detail actual cash receipts and disbursements for the prior week, and all variances, on an individual line item basis and an aggregate basis, as compared to the previously delivered Budget on a cumulative weekly basis over a rolling four (4) week period, together with a statement confirming compliance with the Budget Covenants set forth below.  The Budget Variance Report shall include an explanation, in reasonable detail, of any material variance.  The Debtors shall ensure that at no time any of the following occur (together, the "Budget Covenants"):  (i) a negative variance of ten percent (10%) or more from the aggregate of operating disbursements, as set forth in the Budget, to be tested over a rolling two (2) week period but reported on a weekly basis, with the initial testing date occurring after the first two (2) weeks following the Petition Date; (ii) a negative variance of fifteen percent (15%) or more from the total cash balance, as set forth in the Budget (including the Restricted Cash), to be reported on a weekly basis, which negative variance shall not be exceeded by the Debtors in two (2) consecutive weeks, with the initial reporting date after the first week following the Petition Date; (iii) any Debtor making any disbursement not contemplated by the Budget (after giving effect to the foregoing variances) without the prior written consent of the supporting Senior Secured Noteholders; or (iv) reducing the amount of Restricted Cash below $7 million at any time without Noteholder Approval.

(e)    <u>Access to Records</u>.  Upon reasonable notice, at reasonable times during normal business hours, the Debtors shall permit representatives, agents, and employees of the Senior Secured Notes Trustee and the supporting Senior Secured Noteholders to have reasonable access to (i) inspect the Debtors' properties, and (ii) all information (including historical information and the Debtors' books and records) and personnel, including regularly scheduled meetings as mutually agreed with senior management of the Debtors and other company advisors (during normal business hours), and the Senior Secured Notes Trustee and the supporting Senior Secured Noteholders shall be provided with access to all information they shall reasonably request, excluding privileged items.

(f)    <u>Right to Seek Additional Adequate Protection</u>.  This Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the rights of the Senior Secured Notes Trustee and the Senior Secured Noteholders to request further or alternative forms of adequate protection at any time or the rights of the Debtors or any other party to contest such request.

5.    <u>Modification of Automatic Stay</u>.  The automatic stay imposed under section 362(a) of the Bankruptcy Code is modified as necessary to effectuate all of the terms and provisions of this Interim Order, including, without limitation, to:  (a) permit the Debtors to grant the Adequate Protection Liens and the Superpriority Claim; (b) permit the Debtors to perform such acts as the Senior Secured Notes Trustee may request in its reasonable discretion to assure the perfection and priority of the liens granted herein; (c) permit the Debtors to incur all liabilities and obligations to the Senior Secured Notes Trustee and the Senior Secured

Noteholders under this Interim Order; and (d) authorize the Debtors to pay, and the Senior

Secured Notes Trustee and the supporting Senior Secured Noteholders to retain and apply,

payments made in accordance with the terms of this Interim Order.

6.      <u>Grant and Perfection of Adequate Protection Liens</u>.  This Interim Order shall be

sufficient and conclusive evidence of the granting, attachment, validity, perfection,

enforceability, and priority of the Adequate Protection Liens without the necessity of obtaining

or filing, as applicable, mortgages, security agreements, pledge agreements, control agreements,

financing statements, state or federal notices, recordings (including, without limitation, any

recordings with the United States Patent and Trademark or Copyright Office), or other

agreements and without the necessity of taking possession or control of any Prepetition

Collateral, or other instrument or document that may otherwise be required under the law or

regulation of any jurisdiction or the taking of possession of, or control over, assets, or the taking

of any other action (including, for the avoidance of doubt, entering into any deposit account

control agreement and any other action required to obtain "control" pursuant to section 9-104, 9-

105, 9-106, and/or 9-107 of the Uniform Commercial Code) to grant, attach, validate or perfect

(in accordance with applicable nonbankruptcy law) the Adequate Protection Liens, or to entitle

the Senior Secured Notes Trustee and the Senior Secured Noteholders to the priorities granted

herein.  Notwithstanding the foregoing, the Senior Secured Notes Trustee is authorized, but not

required, to file, enter into or record, as it deems necessary or advisable in its discretion, such

financing statements, control agreements security agreements, vehicle lien applications, patent

filings, trademark filings, copyright filings, fixture filing, mortgages, notices of liens, and other

instruments or documents to perfect in accordance with applicable non-bankruptcy law or to otherwise evidence the Adequate Protection Liens, and all such financing statements, control agreements, security agreements, vehicle lien applications, patent filings, trademark filings, copyright filings, fixture filings, mortgages, notices of lien, and other documents shall be deemed to have been filed or recorded as of the Petition Date; provided, however, that no such filing or recordation shall be necessary or required in order to create, evidence, or perfect the Adequate Protection Liens.  The Debtors are authorized and directed to execute and deliver promptly upon demand to the Senior Secured Notes Trustee all such financing statements, control agreements, security agreements, vehicle lien applications, mortgages, notices, instruments, and other documents as the Senior Secured Notes Trustee may reasonably request.  The Senior Secured Notes Trustee may file a copy of this Interim Order as a financing statement or notice with any filing or recording office or with any registry of deeds or similar office, in addition to, or in lieu of, such financing statements, mortgages, notices of lien, instrument, or similar document.  In furtherance of the foregoing and without further approval of the Court, each Debtor is authorized to do and perform all acts to make, execute, and deliver all instruments and documents and to pay all fees that may be reasonably required or necessary for the Debtors' performance hereunder.

7.     Credit Bid.  Subject to entry of the Final Order and the requirements of section 363(k) of the Bankruptcy Code, the Senior Secured Notes Trustee shall have the right (acting at the direction of the requisite Senior Secured Noteholders) to credit bid under section 363(k) of the Bankruptcy Code all or any portion of its claims in connection with a sale of the Debtors'

assets, without the need for further order of the Court, and whether the sale is effectuated under section 363 of the Bankruptcy Code, under a chapter 11 plan of reorganization for any or all of the Debtors, by a chapter 7 trustee under section 725 of the Bankruptcy Code, or otherwise; provided the Senior Secured Notes Trustee shall be deemed a qualified bidder (or such analogous term) in connection with any such sale.

8.    <u>Events of Default</u>.   The occurrence and continuance of any of the following events, unless waived in writing by the Senior Secured Notes Trustee (acting at the direction of the requisite Senior Secured Noteholders), shall constitute an event of default (collectively, the "<u>Events of Default</u>"):

(a)    the failure to obtain a Final Order in form and substance reasonably acceptable to the Senior Secured Notes Trustee (acting at the direction of the requisite Senior Secured Noteholders) within forty (40) days after the Petition Date (unless such date is extended by written consent of the Senior Secured Notes Trustee);

(b)    the Debtors shall have filed a motion seeking to create any postpetition liens or security interests, other than those granted or permitted pursuant to this Interim Order or approved by the Senior Secured Notes Trustee in writing;

(c)    the Debtors shall have filed a disclosure statement or chapter 11 plan that is not reasonably acceptable to the Senior Secured Notes Trustee (acting at the direction of the requisite Senior Secured Noteholders);

(d)    the entry of a final order by the Court, other than this Interim Order, granting relief from or modifying the automatic stay of section 362 of the Bankruptcy Code (i) to

allow any creditor to execute upon or enforce a lien on or security interest in any Collateral, or (ii) with respect to any lien of or the granting of any lien on any Collateral to any state or local environmental or regulatory agency or authority, except as approved by the Senior Secured Notes Trustee in writing;

(e)      the Court shall enter an order approving any claims for recovery of amounts under section 506(c) of the Bankruptcy Code or otherwise arising from the preservation of any Collateral;

(f)      the Debtors shall support, commence, or join as an adverse party in any suit or other proceeding against the Senior Secured Notes Trustee or any of the Senior Secured Noteholders relating to the Senior Secured Notes Obligations or the Collateral, including any proceeding seeking to avoid or require repayment of any payments to the Senior Secured Notes Trustee or any supporting Senior Secured Noteholder hereunder;

(g)      reversal, amendment, supplement, vacatur, or modification of this Interim Order without the express prior written consent of the Senior Secured Notes Trustee (acting at the direction of the requisite Senior Secured Noteholders);

(h)      dismissal of any of these Cases or conversion of any of these Cases to chapter 7 cases, or appointment of a trustee, receiver, interim receiver or manager, or appointment of a responsible officer or examiner with enlarged powers in any of these Cases (having powers beyond those set forth in Bankruptcy Code sections 1106(a)(3) and (4));

(i)      the Debtors' exclusive right to file and solicit acceptances of a plan of reorganization is terminated or terminates;

(j)    the failure to make any material payments as set forth herein when due and such failure shall remain unremedied for more than five (5) business days after receipt by the Debtors of written notice thereof from the Senior Secured Notes Trustee; and

(k)    the failure by the Debtors to perform, in any material respect (or, in the case of Paragraph 3(c) and the Budget Covenants in Paragraph 4(d), in all respects), any of the terms, provisions, conditions, or obligations under this Interim Order.

9.    <u>Rights and Remedies Upon Event of Default</u>.  Upon occurrence of an Event of Default and following the giving of three (3) business days' notice to the Debtors and any Committee appointed in the Cases (the "<u>Remedies Notice Period</u>"), the Senior Secured Notes Trustee and the Senior Secured Noteholders may exercise the remedies available to them under this Interim Order and applicable non-bankruptcy law, including, but not limited to, revoking the Debtors' right to use Cash Collateral and collecting and applying any proceeds of the Collateral in accordance with the terms of this Interim Order and the Senior Secured Notes Documents. During the Remedies Notice Period, the Debtors may request that this Court order the continued use of Cash Collateral and, if such order is granted, the Debtors may continue to use Cash Collateral during the Remedies Notice Period in the ordinary course of business, consistent with past practices and the most recently delivered Budget, but may not (i) use any Restricted Cash (whether or not in compliance with the Budget) or (ii) enter into any transactions or arrangements (including, without limitation, the incurrence of indebtedness or liens, making investments, restricted payments, asset sales, or entering into transactions with non-Debtor affiliates) that are not in the ordinary course of business.  Unless the Court orders otherwise

during the Remedies Notice Period, at the end of the Remedies Notice Period, the Debtors shall automatically, without further notice or order of the Court, no longer have the right to use Cash Collateral, the automatic stay pursuant to section 362 of the Bankruptcy Code shall be automatically terminated at the end of the Remedies Notice Period, without further notice or order of the Court, and the Senior Secured Notes Trustee and the Senior Secured Noteholders shall be permitted to exercise all rights and remedies set forth in this Interim Order, the Senior Secured Notes Documents, and as otherwise available at law without further order or application or motion to the Court, including, without limitation, foreclosing upon and selling all or a portion of the Collateral in order to collect any amounts payable to the Senior Secured Notes Trustee and the Senior Secured Noteholders pursuant to this Interim Order and apply the same to such obligations, without restriction or restraint by any stay under section 362 or 105 of the Bankruptcy Code.  Notwithstanding anything herein to the contrary, the automatic stay pursuant to section 362 of the Bankruptcy Code shall be automatically terminated for the purposes of giving any notice contemplated hereunder.  The delay or failure to exercise rights and remedies under this Interim Order or the Senior Secured Notes Documents shall not constitute a waiver of the Senior Secured Notes Trustee's or the Senior Secured Noteholders' rights thereunder or otherwise.  Notwithstanding the occurrence of the Event of Default, all of the rights, benefits and protections provided to the Senior Secured Notes Trustee and the Senior Secured Noteholders shall survive the termination of this Interim Order due to such Event of Default.

10.    Carve Out.  As used in this Interim Order, the "Carve-Out" means the sum of: (i) all fees required to be paid to the Clerk of the Court and to the Office of the United States

Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set forth in (iii) below); (ii) all reasonable fees and expenses up to $25,000 in the aggregate incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in (iii) below); (iii) to the extent allowed by this Court, all unpaid fees and expenses (the "Allowed Professional Fees") incurred by persons or firms retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code (the "Debtor Professionals") and any Committee appointed in the Cases (the "Committee Professionals" and, together with the Debtor Professionals, the "Professional Persons") at any time before delivery by the Senior Secured Notes Trustee of a Carve Out Trigger Notice (as defined below), whether allowed by the Court prior to or after delivery of a Carve Out Trigger Notice; and (iv) Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed $250,000 incurred after delivery by the Senior Secured Notes Trustee of the Carve Out Trigger Notice, to the extent allowed by this Court (the amounts set forth in this clause (iv) being the "Post-Carve Out Trigger Notice Cap").  For purposes of the foregoing, "Carve Out Trigger Notice" shall mean a written notice delivered by email (or other electronic means) by the Senior Secured Notes Trustee to counsel to the Debtors, the U.S. Trustee, and counsel to the Committee, which notice may be delivered following the occurrence of an Event of Default, stating that the Post-Carve Out Trigger Notice Cap has been invoked.  Notwithstanding anything to the contrary in this Interim Order, following the delivery of a Carve Out Trigger Notice, any of the statutory, Allowed Professional Fees or other fees covered by this Carve Out shall be paid by the Debtors from the proceeds of the Collateral, including the Cash Collateral.

11.    <u>Reservation of Certain Committee and Third Party Rights and Bar of Challenges</u>

<u>and Claims</u>.  The stipulations and admissions contained in this Interim Order, including, without

limitation, the Debtors' Stipulations, shall be binding upon the Debtors, their affiliates, and any

of their respective successors (including, without limitation, any chapter 7 or chapter 11 trustee

appointed or elected for a Debtor) in all circumstances and for all purposes, and the Debtors are

deemed to have irrevocably waived and relinquished all Challenges (as defined below) as of the

Petition Date.   The stipulations and admissions contained in this Interim Order, including,

without limitation, the Debtors' Stipulations, shall be binding upon all other parties in interest,

including, without limitation, the Committee, if any, and any other person acting on behalf of the

Debtors' estates, unless and to the extent that a party in interest with proper standing granted by

order of the Court (or other court of competent jurisdiction) has filed an adversary proceeding or

contested matter (i) before the earlier of (a) the date on which this Court enters an order

confirming the Debtors' chapter 11 plan of reorganization, (b) except as to the Committee, if

any, seventy-five (75) calendar days after entry of this Interim Order and (c) in the case of  any

such adversary proceeding or contested matter filed by the Committee, if any, sixty (60) calendar

days after the appointment of the Committee, subject to further extension by written agreement

of the Debtors and the Senior Secured Notes Trustee, each acting in their sole discretion (in each

case, a "<u>Challenge Period</u>" and the date of expiration of each Challenge Period being a

"<u>Challenge Period Termination Date</u>"), (ii) seeking to avoid, object to, or otherwise challenge the

findings or Debtors' Stipulations regarding:  (a) the validity, enforceability, extent, priority, or

perfection of the mortgages, security interests, and liens of the Senior Secured Notes Trustee and

the Senior Secured Noteholders; or (b) the validity, enforceability, allowability, priority, secured

status, or amount of the Senior Secured Notes Obligations (any such claim, a "Challenge"), and

(iii) in which the Court enters a final order in favor of the plaintiff sustaining any such Challenge

in any such timely filed adversary proceeding or contested matter.  Upon the expiration of the

Challenge Period Termination Date without the filing of a Challenge (or if any such Challenge is

filed and overruled):  (a) any and all such Challenges by any party (including, without limitation,

the Committee, any chapter 11 trustee, and/or any examiner or other estate representative

appointed or elected in these Cases, and any chapter 7 trustee and/or examiner or other estate

representative appointed or elected in any Successor Case) shall be deemed to be forever waived,

released, and barred; (b) the Senior Secured Notes Obligations shall constitute allowed claims,

not subject to counterclaim, setoff, recoupment, reduction, subordination, recharacterization,

defense, or avoidance for all purposes in the Debtors' Cases and any Successor Cases; (c) the

Senior Secured Notes Liens shall be deemed to have been, as of the Petition Date, legal, valid,

binding and perfected, not subject to recharacterization, subordination, or avoidance; and (d) all

of the Debtors' stipulations and admissions contained in this Interim Order, including, without

limitation, the Debtors' Stipulations, and all other waivers, releases, affirmations, and other

stipulations as to the priority, extent, and validity as to the Senior Secured Notes Trustee's and

Senior Secured Noteholders' claims, liens, and interests contained in this Interim Order shall be

of full force and effect and forever binding upon the Debtors, the Debtors' bankruptcy estates,

and all creditors, interest holders, and other parties in interest in these Cases and any Successor

Cases.  If any such adversary proceeding or contested matter is timely filed, the stipulations and

admissions contained in this Interim Order, including the Debtors' Stipulations, shall nonetheless remain binding and preclusive on any Committee and any other person or entity except to the extent that such stipulations and admissions were expressly challenged in such adversary proceeding or contested matter prior to the Challenge Period Termination Date. Nothing in this Interim Order vests or confers on any Person (as defined in the Bankruptcy Code), including any Committee appointed in these Cases, standing or authority to pursue any cause of action belonging to the Debtors or their estates, including, without limitation, any Challenges with respect to the Senior Secured Notes Obligations, and an order of the Court conferring such standing on a Committee or other party-in-interest shall be a prerequisite for the prosecution of a Challenge by the Committee or such other party-in-interest.

12.      Limitations on the Use of Cash Collateral.  Notwithstanding anything herein to the contrary, the Debtors shall not assert or prosecute, and no portion of the proceeds of the Collateral, including any Cash Collateral or the Carve Out, and no disbursements set forth in the Budget, shall be used in connection with (a) preventing, hindering, or delaying the Senior Secured Notes Trustee's or Senior Secured Noteholders' enforcement or realization upon any of the Collateral once an Event of Default has occurred and after the Remedies Notice Period has expired, (b) objecting or challenging or contesting in any manner, or raising any defenses to, the validity, extent, amount, perfection, priority, or enforceability of any of the Senior Secured Notes Obligations or Collateral, or any other rights or interest of the Senior Secured Notes Trustee, (c) asserting, commencing, or prosecuting any claims or causes of action, including, without limitation, any actions under chapter 5 of the Bankruptcy Code, against the Senior Secured Notes

Trustee or any Senior Secured Noteholder or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors, or employees, or (d) paying any amount on account of any claims arising prior to the Petition Date or any non-ordinary course administrative claims unless such payments are (i) approved by an order of this Court and (ii) in accordance with the Budget Covenants; provided, however, that up to $25,000 of Cash Collateral may be used to pay the allowed fees and expenses incurred solely by the Committee in investigating (but not commencing or prosecuting), the validity, enforceability, perfection, priority, or extent of the liens under the Senior Secured Notes Indenture (the "Committee Investigation Budget").

13.    No Third Party Rights.   Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, or incidental beneficiary.

14.    Section 506(c) Claims.   Upon entry of the Final Order, no costs or expenses of administration which have been or may be incurred in these Cases at any time, or any future proceeding that may result therefrom, including any Successor Cases, shall be charged against or recovered from the Senior Secured Notes Trustee or any Senior Secured Noteholder or any of their respective claims or the Collateral (including the Prepetition Collateral) pursuant to sections 105 or 506(c) of the Bankruptcy Code, or otherwise, without the prior express written consent of the Senior Secured Notes Trustee, and no such consent shall be implied, directly or indirectly, from any other action, inaction, or acquiescence by any such representatives, agents, or lenders. Upon entry of the Final Order, the Debtors and their estates shall be deemed to have irrevocably waived, and shall be prohibited from asserting, any surcharge claim, under section 506(c) or

otherwise, for any costs incurred, including those in connection with the preservation, protection, or enhancement of, or realization by the Senior Secured Notes Trustee or any Senior Secured Noteholder upon, the Collateral.

15.     <u>No Waiver of Senior Secured Noteholders' Rights; Reservation of Rights</u>. Notwithstanding any provision in this Interim Order to the contrary, this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, any Senior Secured Noteholder's rights with respect to any person or entity or with respect to any other collateral owned or held by any person or entity.  The rights of the Senior Secured Noteholders are expressly reserved and entry of this Interim Order shall be without prejudice to, and does not constitute a waiver, expressly or implicitly, of:  (a) the Senior Secured Noteholders' rights under any of the Senior Secured Notes Documents; (b) the Senior Secured Noteholders' rights to seek any other or supplemental relief in respect of the Debtors; (c) the Senior Secured Noteholders' rights to seek modification of the grant of adequate protection provided under this Interim Order so as to provide different or additional adequate protection at any time; or (d) any other rights, claims, or privileges (whether legal, equitable, or otherwise) of the Senior Secured Noteholders.

16.     <u>No Liability to Third Parties</u>.  In permitting the Debtors to use Cash Collateral under the terms set forth herein or in taking any other actions related to this Interim Order, the Senior Secured Trustee and the Senior Secured Noteholders (a) shall have no liability to any third party and shall not be deemed to be in control of the operations of any Debtors or to be acting as a "controlling person," "responsible person," or "owner or operator" with respect to the operation or management of any Debtors (as such term, or any similar terms, are used in the

Internal Revenue Code, the United States Comprehensive Environmental Response, Compensation and Liability Act, as amended, or any similar Federal or state statute), and (b) shall not owe any fiduciary duty to any of the Debtors, their creditors, or their estates, and shall not be party to or be deemed to be party to a joint venture or partnership with any of the Debtors.  Furthermore, nothing in this Interim Order shall in any way be construed or interpreted to impose or allow the imposition upon the Senior Secured Notes Trustee or the Senior Secured Noteholders of any liability for any claims arising from the prepetition or postpetition activities of any of the Debtors and their affiliates (as defined in section 101(2) of the Bankruptcy Code).

17.    <u>No Marshaling/Applications of Proceeds</u>.  Upon entry of the Final Order, the Senior Secured Notes Trustee and the Senior Secured Noteholders shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Collateral (including the Prepetition Collateral), as the case may be, and proceeds or payments shall be received and applied in accordance with the Senior Secured Notes Documents, notwithstanding any other agreement or provision to the contrary.

18.    <u>Section 552(b)</u>.  Upon entry of the Final Order, the Senior Secured Notes Trustee and the Senior Secured Noteholders shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to Senior Secured Notes Trustee or the Senior Secured Noteholders with respect to proceeds, product, offspring, or profits of any of the Collateral (including the Prepetition Collateral).

19.    <u>Proofs of Claim</u>.  Notwithstanding any order entered by the Court in relation to the establishment of a bar date in any of these Cases or Successor Cases to the contrary, the Senior Secured Notes Trustee and the Senior Secured Noteholders will not be required to file proofs of claim in any of these Cases or Successor Cases for any claim described herein, and the Debtors' Stipulations in Paragraph E herein shall be deemed to constitute a timely filed proof of claim for the Senior Secured Notes Trustee and the Senior Secured Noteholders.

20.    <u>Binding Effect of Interim Order</u>.  Immediately upon entry by this Court (notwithstanding any applicable law or rule to the contrary), the terms and provisions of this Interim Order shall become valid and binding upon and inure to the benefit of the Debtors, the Senior Secured Notes Trustee, the Senior Secured Noteholders, all other creditors of any of the Debtors, any Committee or any other Court-appointed committee appointed in any Cases, and all other parties in interest and the respective successors and assigns of each of the foregoing, including any chapter 7 or chapter 11 trustee or other fiduciary hereafter appointed or elected for the estates of the Debtors or with respect to the property of the estate of any Debtors in any of these Cases, any Successor Cases, or upon dismissal of any Case or Successor Case.  In the event of any inconsistency between the provisions of this Interim Order and the Senior Secured Notes Documents, the provisions of this Interim Order shall govern and control.  Any payments to be made by any of the Debtors under any order (including any "first day" order) shall be made in accordance with this Interim Order.

21.    Survival.

(a)    The provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any order which may be entered:  (a) confirming any plan of reorganization in any of these Cases; (b) converting any of these Cases to a case under chapter 7 of the Bankruptcy Code; or (c) dismissing any of these Cases or any Successor Cases.  The terms and provisions of this Interim Order, including, without limitation, the granting of the Adequate Protection Liens and Superpriority Claim, and the other protections granted to the Senior Secured Notes Trustee or the Senior Secured Noteholders pursuant to this Interim Order, shall continue in full force and effect notwithstanding entry of any such order.

(b)    If any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated or stayed, such reversal, modification, vacation or stay shall not affect the validity and enforceability of the Adequate Protection Obligations granted in connection therewith, to the extent consistent with section 364(e) of the Bankruptcy Code.

(c)    Except as expressly provided in this Interim Order, the Adequate Protection Obligations and all other rights and remedies of the Senior Secured Notes Trustee and the Senior Secured Noteholders granted by the provisions of this Interim Order shall survive, and shall not be modified, impaired or discharged by the entry of an order converting any of these Cases to a case under chapter 7, dismissing these Cases, approving the sale of any Collateral (including any Prepetition Collateral) pursuant to section 363(b) of the Bankruptcy Code or the entry of an order confirming a plan of reorganization in these Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors have waived any discharge as to any remaining

Adequate Protection Obligations. The terms and provisions of this Interim Order shall continue in these Cases, in any Successor Cases, or in any superseding chapter 7 case under the Bankruptcy Code, and the Adequate Protection Obligations and all other rights and remedies of the Senior Secured Notes Trustee and the Senior Secured Noteholders granted by the provisions of this Interim Order shall continue in full force and effect until the Adequate Protection Obligations are indefeasibly paid in full in cash.

22.    <u>Final Hearing</u>. The Final Hearing shall be held on _____, 2019, at __:__ __.m., prevailing Eastern Time. The Debtors shall provide notice of the Final Hearing in accordance with applicable rules. Any objections or responses to the Motion must be filed on or before _____, 2019, at 4:00 p.m., prevailing Eastern Time. If no objections are filed to the Motion, the Court may enter the Final Order without further notice or hearing.

23.    <u>Effect of this Interim Order</u>. This Interim Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be enforceable immediately upon execution hereof.

24.    <u>Retention of Jurisdiction</u>. The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation of this Interim Order.

Wilmington, Delaware
Dated: _____, 2019

HONORABLE _____
UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT A

**Budget**

Fuse
*13-Week Cash Flow Forecast*
Forecast Petition Date 4/22

($ in Thousands)

| Cash Flow Week | | BK Week | | | | | | | BK Exit | | | | | | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Week Number | | Week 17 | Week 18 | Week 19 | Week 20 | Week 21 | Week 22 | Week 23 | Week 24 | Week 25 | Week 26 | Week 27 | Week 28 | Week 29 | Forecast |
| Week Ending | | 4/28/19 | 5/5/19 | 5/12/19 | 5/19/19 | 5/26/19 | 6/2/19 | 6/9/19 | 6/16/19 | 6/23/19 | 6/30/19 | 7/7/19 | 7/14/19 | 7/21/19 | |
| Receipts | [1] | 324 | 911 | 345 | 3,996 | 359 | 443 | 738 | 343 | 3,969 | 353 | 918 | 325 | 4,124 | 17,149 |
| **Operating Disbursements** | | | | | | | | | | | | | | | |
| Personnel | [2] | (25) | (754) | (9) | (629) | (25) | (754) | (9) | (82) | (572) | (207) | (556) | (629) | (25) | (4,274) |
| Programming | [3] | (768) | - | (88) | (869) | (10) | - | (176) | (445) | - | (274) | (154) | (88) | (79) | (2,951) |
| Other Operating Disbursements | [4] | (438) | (368) | (557) | (555) | (276) | (492) | (557) | (388) | (348) | (397) | (638) | (264) | (211) | (5,488) |
| Total Operating Disbursements | | (1,231) | (1,122) | (654) | (2,053) | (311) | (1,246) | (742) | (914) | (920) | (877) | (1,347) | (981) | (315) | (12,712) |
| Cash Flow from Operations | | (906) | (210) | (309) | 1,943 | 48 | (804) | (4) | (571) | 3,049 | (525) | (430) | (656) | 3,809 | 4,436 |
| **Restructuring Disbursements** | | | | | | | | | | | | | | | |
| Critical Vendors | [5] | (250) | | | | | | | | | | | | | (250) |
| Professional Fees | [6] | (31) | | (210) | | | | (310) | (3,000) | | | | (2,783) | | (6,334) |
| US Trustee Fees | | | | | | | | | | | | | | | |
| Utility Deposits | [7] | | | | | | | | (121) | | | | | | (121) |
| Other Deposits | [7] | (10) | | | | | | | | | | | | | (10) |
| Total Restructuring Disbursements | | (291) | - | (210) | - | - | - | (310) | (3,121) | - | - | - | (2,783) | - | (6,715) |
| Net Cash Flow | | (1,197) | (210) | (519) | 1,943 | 48 | (804) | (314) | (3,692) | 3,049 | (525) | (430) | (3,439) | 3,809 | (2,278) |
| Beginning Cash Balance | | 11,897 | 10,699 | 10,489 | 9,970 | 11,913 | 11,962 | 11,158 | 10,845 | 7,153 | 10,202 | 9,678 | 9,248 | 5,809 | 11,897 |
| Net Cash Flow | | (1,197) | (210) | (519) | 1,943 | 48 | (804) | (314) | (3,692) | 3,049 | (525) | (430) | (3,439) | 3,809 | (2,278) |
| Ending Cash Balance | | 10,699 | 10,489 | 9,970 | 11,913 | 11,962 | 11,158 | 10,845 | 7,153 | 10,202 | 9,678 | 9,248 | 5,809 | 9,618 | 9,618 |
| Less: Inaccessible Cash | | (1,055) | (1,055) | (1,055) | (1,055) | (1,055) | (1,055) | (1,055) | (1,055) | (1,055) | (1,055) | (1,055) | (1,055) | (1,055) | (1,055) |
| Ending Accessible Cash Balance | | 9,645 | 9,434 | 8,915 | 10,859 | 10,907 | 10,103 | 9,790 | 6,098 | 9,147 | 8,623 | 8,193 | 4,754 | 8,563 | 8,563 |

Notes:
[1] Receipts due to affiliates, ad sales, and other receipts
[2] Disbursements for salary, benefits, payroll taxes, and other compensation
[3] Disbursements for acquired programming license fees and original programming costs
[4] Disbursements for network infrastructure, insurance, rent, taxes, and other operating costs
[5] Assumes critical vendor payments made in same week as motion approved
[6] Professional fees for Debtor and Lender professionals
[7] Utility and finance deposits