IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>FUSE, LLC, *et al.*,[1]<br><br>                Debtors. | Chapter 11<br><br>Case No. 19-10872 (KG)<br><br>(Jointly Administered) |

**Objection Deadline: May 16, 2019 at 4:00 p.m. (ET)**
**Hearing Date: May 23, 2019 at 10:00 a.m. (ET)**

**DEBTORS' MOTION FOR AN ORDER AUTHORIZING DISCOVERY
FROM AT&T SERVICES, INC. AND DIRECTV, LLC PURSUANT TO
BANKRUPTCY RULE 2004 AND LOCAL RULE 2004-1**

Fuse, LLC ("Fuse") and its debtor affiliates (collectively, the "Debtors"), as debtors and debtors in possession, hereby submit this motion (the "Motion") pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 2004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") for the entry of an order (the "Rule 2004 Order") substantially in the form annexed hereto as **Exhibit A** (the "Order") authorizing and directing discovery from AT&T Services, Inc. ("AT&T") and DirecTV, LLC ("DirecTV" and together with AT&T and their respective affiliates and representatives, "DirecTV/AT&T"). In support of the Motion, the Debtors respectfully represent as follows:

**PRELIMINARY STATEMENT**

1. Fuse is a small independent cable programmer that distributes content pursuant to an affiliation agreement with DirecTV/AT&T. DirecTV/AT&T is the nation's largest distributor of subscription television. Fuse's contract with DirecTV/AT&T is one of its

---

[1] The Debtors and the last four digits of their taxpayer identification numbers include: Fuse Media, Inc. (9721); Fuse Media, LLC (0560); Fuse, LLC (1888); JAAM Productions, LLC (5499); SCN Distribution, LLC (9656); Latino Events LLC (8204); Fuse Holdings LLC (5673); Fuse Finance, Inc. (8683); and FM Networks LLC (6500). The Debtors' headquarters and service address is 700 North Central Avenue, Suite 600, Glendale, CA 91203.

most important assets and is vital to Fuse's success. DirecTV/AT&T, a behemoth in the industry whose recent combination itself was subject to antitrust challenge, recently acquired Time Warner's programming assets, creating an even more massively vertically-integrated firm that also was subject to antitrust challenge by the U.S. Department of Justice.

2. DirecTV/AT&T is now using its unprecedented market power to destroy the few remaining independent content providers to favor its own content. Fuse has been targeted as a content provider whose fees that DirecTV/AT&T no longer wants to pay, as DirecTV/AT&T and its new acquisition, Time Warner, create their own competing programming content, and they also must now service an unprecedented and enormous debt burden that is the product of their serial mergers.

3. Accordingly, in February 2019, after a different affiliation agreement with another carrier expired by its own terms and was not renewed, DirecTV/AT&T seized the opportunity to allege frivolously and baselessly that Fuse had breached its affiliation agreement by failing to offer an "early right of termination". Fuse vigorously disputed DirecTV's allegations, particularly because DirecTV/AT&T had affirmatively agreed to waive its early right of termination as part of negotiating an earlier amendment to the Fuse affiliation agreement—something that DirecTV/AT&T simply forgot or ignored. Faced with a wrongful and fatal end to a critical revenue stream, Fuse commenced a pre-petition action for declaratory judgment and preliminary injunctive relief in California state court. In view of DirecTV/AT&T's utterly baseless allegations, and on the eve of oral argument on Fuse's preliminary injunction motion that DirecTV/AT&T was certain to lose, DirecTV/AT&T folded and offered to withdraw their ill-conceived and baseless termination letter. Fuse, however, demanded that DirecTV/AT&T stipulate to the entry of a preliminary injunction pursuant to which, among other things, they

agreed not to terminate the affiliation agreement until Fuse's declaratory judgment claim was finally adjudicated.

4.      Having acted impetuously, and caught red-handed seeking to terminate the Fuse affiliation agreement on an utterly spurious ground, DirecTV/AT&T apparently went back to the drawing board to identify other grounds on which the disfavored Fuse affiliation agreement might be eliminated. Just before commencement of these cases, DirecTV/AT&T sent another termination letter on supposedly different and equally trumped-up grounds. These termination grounds presumably will be addressed as part of any assumption dispute at final plan confirmation. In an effort to evade discovery with respect to its anticompetitive and affirmatively harmful misconduct, DirecTV/AT&T chose immediately to commence a frivolous adversary proceeding seeking a declaratory judgment that the Affiliation Agreement cannot be assumed, in hopes of limiting discovery solely to the issue of alleged contractual breaches by DirecTV. Putting aside that the adversary proceeding is premature, it is also compounding and reaffirming the harm that DirecTV already has caused.

5.      By this Motion, Fuse seeks discovery to investigate DirecTV/AT&T/Time Warner's misconduct arising from their repeated attempts to terminate the affiliation agreement that is little more than a pretext for exercising overwhelming market power. Fuse believes that DirecTV/AT&T/Time Warner is conducting an aggressive and illegal campaign against Fuse and other independent content providers, utilizing its massive market power to squelch and destroy other content providers that compete with their own content offerings. This campaign is well known to consumers, independent cable operators and content providers alike, as channel options are removed and consumer prices increased, and has been the subject of investigations and enforcement actions by the U.S. Department of Justice over the years. Indeed, DirecTV recently

agreed to certain conditions to settle a Department of Justice lawsuit alleging that DirecTV was the ringleader of illegal information-sharing agreements with three of its rival competitors to obtain leverage in negotiations to carry the Los Angeles Dodgers' cable sports channel.[2] And DirecTV is apparently currently engaging in similar aggressive tactics wherein it is abusing its market power against even larger content providers.[3]

6. DirecTV/AT&T's brazen and aggressive actions in seeking to terminate Fuse have caused Fuse substantial damages and threaten Fuse as a going concern. Fuse seeks through this discovery to determine if DirecTV/AT&T has abused its massive market power, conspired with other distribution platforms to terminate Fuse, all in violation of state and federal law, and at great harm and tremendous damage to Fuse.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding under 28 U.S.C. § 157(b). Venue of the Debtor's bankruptcy case and this Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

8. The statutory predicates for the relief sought herein are section 105 of title 11 of the United States Code (the "Bankruptcy Code"), Bankruptcy Rule 2004, and Rule 2004-1 of the Local Rules.

---

[2] See Justice Department Settles Civil Antitrust Claim Against AT&T and DIRECTV for Orchestrating Information Sharing Agreements with Competitors, available at https://justice.gov/opa/justice-department-settles-civil-antitrurst-claim-against-att-and-directv-orchestrating (March 23, 2017).

[3] See "Viacom Goes to War with AT&T Over DirecTV Carriage Deal," Variety, March 19, 2019 ("Unfortunately, AT&T is abusing its new market position by favoring its own content – which significantly underperforms Viacom's – to stifle competition," and "AT&T-DirecTV's behavior is also consistent with a recent pattern of gouging their consumers by charging them higher prices for an inferior product with fewer channels.") (quoting Viacom letter).

## BACKGROUND

**A.  Case Background**

9. On the date hereof (the "Petition Date"), the Debtors commenced these cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors have continued in the possession of their property and have continued to operate and manage their business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or committee has been appointed in these chapter 11 cases.

10. The Debtors are a leading multicultural media company, composed principally of two cable networks, Fuse and FM. The Company is headquartered in Glendale, California and also maintains an office in New York, New York.

11. A more detailed description of the business and operations of the Debtors, and the events leading to the commencement of these chapter 11 cases, is provided in the First Day Declaration.

**B.  The Relationship of the Parties**

12. Fuse operates "*Fuse*," an independently-owned U.S. cable and satellite television channel that first launched in February 2004 (then known as "*SiTV*") as the first TV channel dedicated to providing English-language programming specifically created or curated for the Latino community. Rebranded as "*NuvoTV*" on July 4, 2011, and later as "*Fuse*" in September 2015, *Fuse* currently provides a diverse mix of television programming for a young Latino and multicultural audience.

13. On or around December 31, 2014, Fuse and DirecTV entered into an affiliation agreement (the "Affiliation Agreement"), whereby DirecTV obtained license rights to distribute the "*Nuvo*" channel (which was subsequently renamed "*Fuse*"), via the DirecTV

Platform in exchange for a per-subscriber license fee and a commitment to carry such service. DirecTV had not previously carried *Nuvo* (*i.e.*, the channel later rebranded as "*Fuse*").

14. On or about January 8, 2016, after AT&T acquired DirecTV, Fuse, AT&T and DirecTV entered into a letter agreement (the "Letter Agreement") pursuant to which Fuse agreed to extend many of the favorable terms granted to DirecTV in the Affiliation Agreement to AT&T.[4]

C. **DirecTV/AT&T Baselessly Threaten to Terminate the Affiliation Agreement (Twice)**

15. On February 19, 2019, DirecTV threatened to terminate the Affiliation Agreement, contending that Fuse had allegedly violated a "most favored nations" clause by failing to offer DirecTV an "early termination" provision granted to Comcast Cable Communications LLC ("Comcast"). In particular, the Targets contended that Comcast had a right of "early termination" that should have been offered to DirecTV by application of its "most favored nations" rights.

16. Fuse disputed the Targets' contention because the Letter Agreement expressly and unambiguously eliminated the "early termination" clause contained in the Affiliation Agreement. Faced with the Targets' unjustified threats to sever a critical source of the Debtors' revenue, Fuse commenced an action in the Superior Court of the State of California, County of Los Angeles (Central District), captioned *Fuse, LLC and FM Networks, LLC v. DirecTV, LLC and AT&T Services, Inc.*, Case No. 19STCV05333.

17. Prior to the Petition Date, Fuse and the Targets entered into a stipulation whereby the Targets agreed, among other things, to refrain from terminating the Affiliation

---

[4] This was done because AT&T had recently acquired DirecTV and sought from Fuse the same favorable terms DirecTV had negotiated with Fuse in the 2014 Affiliation Agreement.

Agreement based on any purported "early termination" right before Fuse's action for declaratory judgment was finally determined.

18. By letter dated April 16, 2019, DirecTV again claimed that Fuse had breached its affiliation agreement with DirecTV by: (a) failing to provide satisfactory programming content and (b) offering more favorable promotional previews, free of charge, to new subscribers of another distributor. DirecTV's notice of breach provided Fuse with 60 days to cure the alleged default under item (a) in the foregoing sentence and 30 days to cure the alleged default under item (b) in the foregoing sentence, and suggests that DirecTV might take steps to terminate the affiliation agreement if the Company did not timely cure the claimed breaches. As with DirecTV's prior notice of breach, the Debtors dispute that DirecTV has a legitimate basis to claim that Fuse has violated the terms of its agreement with DirecTV or to terminate its distribution obligations with respect to the *Fuse* network.

19. The Debtors have proposed a pre-packaged chapter 11 plan in these cases (the "Plan"). The Debtors intend to assume the Affiliation Agreement and related agreements with DirecTV/AT&T as part of the Plan.

20. The threats of wrongful termination by DirecTV/AT&T have caused and are continuing to cause Fuse substantial damages. DirecTV/AT&T are acting purely out of self-interest to avoid the contractual bargain with Fuse that they agreed upon. More pointedly, DirecTV/AT&T are acquiring Time Warner and HBO, one of the largest content providers in the world, and seek to favor content provided by Time Warner and HBO over content provided by Fuse. Fuse seeks to determine whether in doing so DirecTV/Time Warner have violated federal and state law, as well as breached the affiliation agreement. Such claims are valuable estate assets.

**RELIEF REQUESTED**

21. The Debtors seek to determine the nature and extent of any causes of action they may have against the Targets arising from their wrongful attempt to terminate the Affiliation Agreement including, among other things, whether the Targets had a good faith basis to threaten Fuse with termination.

22. By this Motion, the Debtors seek entry of an order directing the Targets to produce documents responsive to the requests set forth in **Exhibit B** (the "Document Requests") attached to this Motion. The Debtors further request that responses to the Document Requests be delivered to John A. Morris, Pachulski Stang Ziehl & Jones LLP, 780 Third Avenue, 34th Floor, New York, New York 10017 within ten (10) days after entry of an order granting this Motion or at such other place and time as may be agreed upon by the parties. Finally, the Debtors seek depositions pursuant to Fed. R. Civ. P. 30(b)(6) on the topics set forth in **Exhibit C**.

**BASIS FOR RELIEF**

23. Bankruptcy Rule 2004 provides that the Court may order the examination and the production of documentary evidence of "any entity" concerning any matter that relates "to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or . . . any matter relevant to the case or the formulation of a plan." Fed. R. Bankr. P. 2004(b); *see also Harrow v. Street (In re Fruehauf Trailer Corp.)*, 369 B.R. 817, 827-28 (Bankr. D. Del. 2007) (noting the "extensive document discovery" that occurred pursuant to a subpoena issued under Fed. R. Bankr. P. 2004). The term "entity" includes individuals, partnerships and corporations. *See* 11 U.S.C. §§ 101(15) and (41).

24. The scope of a Rule 2004 examination is "unfettered and broad," as the plain language of the rule indicates. *See In re Countrywide Home Loans, Inc.*, 384 B.R. 373, 400 (Bankr. W.D. Pa. 2008). Indeed, Bankruptcy Rule 2004 affords parties-in-interest an extremely

broad right of discovery and "is even broader than that of discovery permitted under [the Federal Rules of Civil Procedure], which themselves contemplate broad, easy access to discovery." *In re Valley Forge Plaza Assocs.*, 109 B.R. 669, 674 (Bankr. E.D. Pa. 1990) (citations omitted). *See also In re Teleglobe Communications Corp.*, 493 F.3d 345, 354 n. 6 (3rd Cir. 2007) (Rule 2004 allows parties with an interest in the bankruptcy estate to conduct discovery into matters affecting the estate); *In re Washington Mutual*, 408 B.R. 45, 50 (Bankr. D. Del. 2009) (a "Rule 2004 [examination] is commonly recognized as more in the nature of a 'fishing expedition'") (citations omitted).

25. In addition, the Court may order DirecTV and AT&T to designate informed persons to testify on their behalf regarding the bases for their threatened termination of the Affiliation Agreement. *See e.g., In re Analytical Sys., Inc.*, 71 B.R. 408, 412 (Bankr. N.D. Ga. 1987) ("The application of the discovery device of Bankruptcy Rule 7030 (Fed.R.Civ.P. 30, for a corporation to designate and inform persons to testify on its behalf to Bankruptcy Rule 2004 examinations is both consistent with and assists in the accomplishment of expeditious administration.").

26. Plainly, the broad access afforded by Rule 2004 extends to third parties such as DirecTV and AT&T. *See e.g., In re Wilcher*, 56 B.R. 428, 433 (Bankr. N.D. Ill. 1985) (Bankruptcy Rule 2004 examination "may extend to creditors and third parties who have had dealings with the debtor'). This is because "[t]h clear intent of Rule 2004 . . . is to give parties in interest an opportunity to examine individuals having knowledge of the financial affairs of the debtor in order to preserve the rights of creditors." *In re GHR Cos., Inc.*, 41 B.R. 655, 660 (Bankr. D. Mass. 1984).

27. In this case, an Order pursuant to Rule 2004 is both appropriate and necessary. The Debtor seeks discovery from DirecTV and AT&T to evaluate whether the Debtors' estates have viable causes of action. This inquiry falls squarely within the permissible scope of discovery under Bankruptcy Rule 2004.

28. In an apparent effort to escape their contractual obligations, DirecTV/AT&T have willfully, and now on two separate occasions, alleged specious breaches of the Affiliation Agreement by Fuse and threatened to terminate such agreement if such alleged breaches are not promptly cured. The Affiliation Agreement is a critical component of the Debtors' ongoing business. Their baseless actions have harmed, and will continue to harm, the Debtors and have required the Debtor to commence litigation against the Targets in California state court.

29. The Debtors are entitled to investigate the bases for the actions taken by DirecTV/AT&T, the massive damages that they have caused, and whether the Debtors may have claims against them.

## CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 2004-1

30. Attached hereto as **Exhibit D** is a certification of James O'Neill, counsel to the Debtors, demonstrating compliance with Local Rule 2004-1, and stating that prior to the filing of this Motion, he conferred with counsel with respect to the subject matter of this Motion and no agreement was reached.

## NOTICE

31. Notice of this Motion has been given to the following parties or, in lieu thereof, to their counsel, if known: (a) the Office of the United States Trustee for the District of Delaware; (b) counsel to DirecTV; (c) counsel to AT&T; and (d) those persons who have

requested notice pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

### NO PRIOR REQUEST

No prior request for the relief requested herein has been presented to this or any other court.

Dated: May 1, 2019

PACHULSKI STANG ZIEHL & JONES LLP

By: /s/ *James E. O'Neill*
Richard M. Pachulski (CA Bar No. 90073)
Ira D. Kharasch (CA Bar No. 109084)
James E. O'Neill (DE Bar 4042)
Maxim B. Litvak (CA Bar No. 215852)
919 N. Market Street, 17th Floor
Wilmington, DE 91899
Tel: (302) 652-4100
Fax: (302) 652-4400
E-mail: rpachulski@pszjlaw.com
ikharasch@pszjlaw.com
joneill@pszjlaw.com
mlitvak@pszjlaw.com

*Proposed Attorneys for Debtors and Debtors in Possession*