## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| Fuse, LLC, *et al.*,[1] | Case No.:  19-10872(KG) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date: June 5, 2019 at 10:00 a.m.** |
| | **Objections Due: 5/29/19 at 4 p.m., extended to 5/30/19 at 4 p.m. for the U.S. Trustee** |
| | **Re Docket No. 13, 14, 57** |

### U.S. TRUSTEE'S OBJECTION TO CONFIRMATION OF DEBTORS' PREPACKAGED JOINT PLAN OF REORGANIZATION

Andrew R. Vara, the Acting United States Trustee for Region 3 ("U.S. Trustee"), hereby submits this Objection to Confirmation of Debtors' Prepackaged  Joint Plan of Reorganization (the "Plan") (Docket No. 14), and respectfully states as follows:

### I. PRELIMINARY STATEMENT

1.      The U. S. Trustee objects to approval of the Disclosure Statement and to confirmation of the Debtors' Plan, for a variety of reasons, including but not limited to

    a.   The Disclosure Statement does not contain "adequate information;"

---

[1]      The Debtors and the last four digits of their taxpayer identification numbers are: Fuse Media, Inc. (9721); Fuse Media, LLC (0560); Fuse, LLC (1888); JAAM Productions, LLC (5499); SCN Distributions, LLC (9656); Latino Events LLC (8204); Fuse Holdings LLC (5673); Fuse Finance, Inc. (8683); and FM Networks LLC (6500).   The Debtors' headquarters and service address is 700 North Central Avenue, Suite 600, Glendale, CA 91203.

    b.  The Plan improperly purports to be a general settlement of all claims against the Debtors;

    c.  The Plan seeks substantive consolidation without an appropriate factual predicate;

    d.  The Debtors seek to release numerous entities without an appropriate factual predicate;

    e.  To the extent that the Plan is seeking approval of certain bonus and severance programs, it violates 11 U.S.C. § 503(c).

2.      For these reasons, as set forth in greater detail below, confirmation of the Debtors' Plan should be denied.[2]

## II. JURISDICTION

3.      Under (i) 28 U.S.C. § 1334, (ii) applicable order(s) of the United States District Court for the District of Delaware issued pursuant to 28 U.S.C. § 157(a), and (iii) 28 U.S.C. § 157(b)(2), this Court has jurisdiction to hear and determine this objection.

4.      Pursuant to 28 U.S.C. § 586(a)(3), the U.S. Trustee is charged with administrative oversight of the bankruptcy system in this District.  Such oversight is part of the U. S. Trustee's overarching responsibility to enforce the laws as written by Congress and interpreted by the courts.  *See United States Trustee v. Columbia Gas Systems, Inc.* (*In re Columbia Gas Systems, Inc.*)*,* 33 F.3d 294, 295-96 (3d Cir. 1994)

---

[2]     The U.S. Trustee's counsel believes she has reached an agreement in principle with the Debtors' counsel as to modifications to be made to the Plan relating to issues other than those addressed in this Objection, which must be reduced to writing.  These include limiting the exculpation clause to fiduciaries of the Debtors' estates.  The U.S. Trustee reserves the right to supplement this Objection, or to assert additional objections at the hearing on confirmation, if final resolution of such issues is not realized.

(noting that the U.S. Trustee has "public interest standing" under 11 U.S.C. § 307 which goes beyond mere pecuniary interest); *Morgenstern v. Revco D.S., Inc.* (*In re Revco D.S., Inc.*), 898 F.2d 498, 500 (6th Cir. 1990) (describing the "U.S. Trustee as a "watchdog").

5.      Pursuant to 28 U.S.C. § 586(a)(3)(B), the U.S. Trustee has the duty to monitor plans and disclosure statements filed in Chapter 11 cases and to comment such plans and disclosure statements.

6.      Under 11 U.S.C. § 307, the U.S. Trustee has standing to be heard on this objection.

### III. FACTS

7.      On April 22, 2019 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code.

8.      The Debtors remain in possession of their assets and continue to manage their business as debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

9.      The U.S. Trustee appointed an Official Committee of Unsecured Creditors on May 10, 2019.

10.      On April 23, 2019, the Debtors filed a Plan and Disclosure Statement.  See Dkt. Nos. 13 and 14.

11.      On April 24, 2019, this Court conditionally approved the Disclosure Statement.  See Dkt. No. 57.

12.      The Plan provides for one voting class, consisting of the Senior Secured

Notes Claims[3] (Class 3).

13.    Each holder of a Senior Secured Notes Claims will receive its *pro rata* share of (a) Cash in the Debtors' accounts, minus Cash needed in the Reorganized Debtors' operations and to fund the Fuse Litigation Trust, (b) New Secured Debt (a new first lien term loan in the amount of Forty-Five Million Dollars ($45,000,000); (c) 100 % of the New Membership Interests of the Reorganized Parent and (d) 100% of the Litigation Trust Interests in the Fuse Litigation Trust.

14.    General Unsecured Creditors are receiving no distribution under the Plan.

**Disclosure Statement Issues**

15.    On the Effective Date, the Litigation Trust Assets vest automatically in the Fuse Litigation Trust. The Plan defines the "Litigation Trust Assets" as "all assets held from time to time by the Fuse Litigation Trust (including the Litigation Claims) . . ."

16.    Litigation Claims are defined in the Plan as "the claims, rights of action, suits or proceedings, whether in law or in equity, whether known or unknown, that any Debtor or Estate may hold against any Entity, including any and all Causes of Action of the Debtors (other than Claims in the nature of setoff or recoupment and except as otherwise limited herein), including, but not limited to, any and all Causes of Action against AT&T Services, Inc., DirecTV, LLC, and each of their respective Related Persons."

17.    The Plan Supplement filed on April 23, 2019 at docket number 15, identified the "Preserved Causes of Action of Debtors Against Third Parties," as only,

---

[3]    Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Plan and/or Disclosure Statement.

"Any and all Causes of Action against AT&T Services, Inc., DirecTV, LLC, and each of their respective Related Persons."

18.    On May 21, 2019, five business days before the confirmation objection deadline, the Debtors filed an Amended Plan Supplement at docket number 159, which now identifies the "Preserved Causes of Action of Debtors Against Third Parties," as "Any and all claims, rights of action, suits or proceedings, whether in law or in equity, whether known or unknown, that any Debtor or Estate may hold against any Entity, including any and all Causes of Action of the Debtors, including, but not limited to, any and all Causes of Action against AT&T Services, Inc., DirecTV, LLC, and each of their respective Related Persons."

19.    The Debtors' claims agent, KCC, has a separate link on the Fuse case home page, named "Solicitation Materials."  As of May 30, 2019, the original Plan Supplement was included in this link, but the Amended Plan Supplement was not.

20.    The Disclosure Statement does not include a discussion about the claims to be transferred to the Fuse Litigation Trust, or any estimate of their potential value. Rather, the Liquidation Analysis simply states, "This Liquidation Analysis does not attribute any value to potential litigation claims that may belong to the Debtors' estates, including any claims to recover potentially avoidable preferential and/or fraudulent transfers."

21.    The Plan Supplement includes a Sale Bonus Plan, which entitles Participants to a Sale Transaction Bonus, if a Definitive Agreement for a Sale Transaction is executed on or prior to the first anniversary of the Effective Date of the Plan.  The Disclosure Statement does not include any discussion of the potential sale of

the Reorganized Debtors within the first year after the Effective Date.

**Provisions of the Plan Related to Debtor Releases**

22.    Section XI.B. of the Plan provides:

Effective as of the effective date, for good and valuable consideration
provided by each of the released parties, the adequacy of which is hereby
acknowledged and confirmed, the debtors and the reorganized debtors, in
their individual capacities and as debtors-in-possession, the fuse litigation
trust and the litigation trustee (collectively, the "releasing parties") will be
deemed to have conclusively, absolutely, unconditionally, irrevocably, and
forever provided a full discharge, waiver and release to the released parties
(and each such released party so released shall be deemed forever
released, waived and discharged by the releasing parties) and their
respective properties from any and all claims, causes of action, litigation
claims and any other debts, obligations, rights, suits, damages, actions,
remedies, and liabilities whatsoever, whether known or unknown, foreseen
or unforeseen, existing as of the effective date or thereafter arising, in law,
at equity, whether for tort, contract, or otherwise, based in whole or in part
upon any act or omission, transaction, or other occurrence or
circumstances existing or taking place prior to or on the effective date
arising from or related in any way in whole or in part to the debtors, the
chapter 11 cases, the disclosure statement, the plan or the solicitation of
votes on the plan that such releasing party would have been legally
entitled to assert (whether individually or collectively) or that any holder
of a claim or equity interest or other entity would have been legally
entitled to assert for or on behalf of the debtors, their estates or the
reorganized debtors (whether directly or derivatively) against any of the
released parties; provided, however, that the foregoing provisions of this
release shall not operate to waive or release (i) any offset, defense,
counterclaim, reduction, or credit that the debtors or reorganized debtors
may have with regard to any claim asserted against them by a released
party, (ii) any causes of action expressly set forth in and preserved by the
plan or the plan supplement; (iii) any causes of action arising from fraud,
gross negligence, or willful misconduct as determined by final order of the
bankruptcy court or any other court of competent jurisdiction; and/or (iv)
the rights of such releasing party to enforce the plan and the contracts,
instruments, releases, indentures, and other agreements or documents
delivered under or in connection with the plan or assumed pursuant to the
plan or assumed pursuant to final order of the bankruptcy court. The
foregoing release shall be effective as of the effective date without further
notice to or order of the bankruptcy court, act or action under applicable
law, regulation, order, or rule and without need for any notice to or any
vote, consent, authorization, approval, ratification or other action by any
entity or other person or any director, stockholder, security holder,

manager, member, or partner (or board thereof) of any entity and the confirmation order will permanently enjoin the commencement or prosecution by any person or entity, whether directly, derivatively or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action, or liabilities released pursuant to this release. Notwithstanding the foregoing, the debtors are not releasing the debtors (but they are releasing the related persons to the debtors pursuant to this paragraph).

23.    Released Party is defined as:

"Released Party" means, collectively, each in its capacity as such: (a) the Debtors; (b) the Debtors' current and former directors and officers; (c) the Reorganized Debtors; (d) the Senior Secured Notes Trustee; (e) the Supporting Noteholders; (f) the Holders of the Senior Secured Notes Claims who vote in favor of the Plan; and (g) the Related Persons of each of (a) through (f) of the foregoing.

24.    Related Persons are defined as:

"Related Persons" means, with respect to any Person, such Person's predecessors, successors, assigns and present and former Affiliates (whether by operation of law or otherwise) and subsidiaries, and each of their respective current and former officers, directors, principals, employees, employers, shareholders, members (including ex officio members), general partners, limited partners, agents, managers, managing members, financial advisors, attorneys, accountants, investment bankers, investment advisors, consultants, representatives, and other professionals, in each case acting in such capacity at any time, and any Person claiming by or through any of them.

25.    The Plan also effectuates a waiver of Avoidance Actions against current

and former officers and directors through the definition of Avoidance Action:

""Avoidance Actions" means any and all avoidance, recovery, subordination or other

actions or remedies that may be brought by and on behalf of the Debtors or their Estates

under the Bankruptcy Code or applicable nonbankruptcy law, including, without

limitation, actions or remedies arising under sections 502, 510 or 542-553 of the

Bankruptcy Code.  For the avoidance of doubt and notwithstanding anything to the

contrary herein, "Avoidance Actions" shall not include any actions or remedies arising

7

under sections 542-553 of the Bankruptcy Code which may be pursued against the

Debtors' current and former directors and officers, or their employers or affiliates."

**Provisions of the Plan Relating to General Settlement of Claims**

26.    Article V.A. of the Plan provides:

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule
9019, and in consideration for the classification, distributions, releases and
other benefits provided under the Plan, upon the Effective Date, the
provisions of the Plan will constitute a good faith compromise and
settlement of all Claims and Equity Interests and controversies resolved
pursuant to the Plan.

**Provisions of the Plan Relating to Substantive Consolidation**

27.    Article V.H. of the Plan provides:

The Plan serves as a motion by the Debtors seeking entry, pursuant to
section 105 of the Bankruptcy Code, of an order authorizing, on the
Effective Date, the substantive consolidation of the Estates of all of the
Debtors for purposes of classifying and treating all Claims under the Plan,
including for voting, confirmation, and distribution purposes only.
Substantive consolidation will not (i) alter the state of organization of any
Debtor for purposes of determining applicable law of any of the Causes of
Action, (ii) alter or impair the legal and equitable rights of the Debtors to
enforce any of the Causes of Action, or (iii) otherwise impair, release,
discharge, extinguish or affect any of the Causes of Action or issues raised
as a part thereof. If substantive consolidation is ordered, then on and after
the Effective Date, all Assets and liabilities of the Debtors shall be treated
as though they were merged into a single estate for purposes of treatment
of and distributions on Claims. All duplicative Claims (identical in both
amount and subject matter) Filed against more than one of the Debtors
shall automatically be expunged so that only one Claim survives against
the consolidated Debtors. All guarantees by any Debtor of the obligations
of any other Debtor shall be eliminated so that any Claim and any
guarantee thereof by any other Debtor, as well as any joint and/or several
liability of any Debtor with respect to any other Debtor, shall be treated as
one collective obligation of the Debtors.  Any alleged defaults under any
applicable agreement with the Debtors arising from substantive
consolidation under this Plan shall be deemed cured as of the Effective
Date.

## IV. LAW AND ANALYSIS

**The Disclosure Statement Fails to Provide Adequate Disclosure**

28.    Section 1125 of the Bankruptcy Code prohibits solicitation of votes on a reorganization plan prior to court approval of a written disclosure statement, which contains "adequate information." *See* 11 U.S.C. § 1125(b).  An exception to that prohibition is for plan solicited prior to the commencement of the case.  *Id.*  However, a prepetition solicitation must still be accompanied by a disclosure statement containing adequate information, and a debtor proceeds at its own risk by making a prepetition solicitation as the Court must still approve the disclosure statement.

29.    Bankruptcy Rule 3017(d) mandates that all impaired creditors and equity holders, whether in a voting class or otherwise, must be provided with a copy of the Disclosure Statement.

30.    "Adequate information" is defined in section 1125 as being:

> information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of debtor's books and records, that would enable a reasonable hypothetical investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan, but adequate information need not include such information about any other possible or proposed plan.

11 U.S.C. § 1125(a)(1).

31.    The disclosure statement requirements of Section 1125 are "crucial to the effective functioning of the federal bankruptcy system[;] . . . the importance of full and honest disclosure cannot be overstated."  *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.,* 81 F.3d 355, 362 (3d Cir. 1996) (*citing Oneida Motor Freight, Inc. v. United Jersey Bank (In re Oneida Motor Freight, Inc.*), 848 F.2d 414 (3d Cir. 1988)).

32.    "Adequate information" under § 1125 is "determined by the facts and

circumstances of each case." *See Oneida*, 848 F.2d at 417 (citing H.R. Rep. No. 595, 97th Cong., 2d Sess. 266 (1977)). The "adequate information" requirement is designed to help creditors in their negotiations with debtors over proposed plans. *See Century Glove, Inc. v. First American Bank*, 860 F.2d 94 (3d Cir. 1988).

33.    The Disclosure Statement here is defective for a number of reasons. First, it fails to include any discussion of the Litigation Claims to be transferred to the Fuse Litigation Trust. There is no discussion of the numbers of claims, the types of claims, or an estimate as to the value of these claims.

34.    Second, General Unsecured Creditors may have been lulled into believing that, while they are not receiving any distribution on their claims, they would not be subject to any avoidance actions. The Plan Supplement filed on April 23, 2019, stated that only the Debtors' claims against DirecTV and its affiliates were being preserved. Thus, unsecured creditors would have reasonably concluded that the Debtors were not preserving *any* avoidance actions.

35.    However, the Amended Plan Supplement, filed on May 21, 2019, altered the claims that are being preserved. Rather than preserving only those claims against DirecTV, the Debtors disclosed that they intended to preserve any and all causes of action, including avoidance actions. Unsecured Creditors may have objected to the transfer of avoidance actions against them solely for the benefit of the Debtors' prepetition lenders had they timely and unambiguously been informed.

36.    This confusion is exacerbated by the fact that the "Solicitation Materials" tab at the Debtors' claims agent site was not updated to include the Amended Plan Supplement. Thus, creditors who were sophisticated enough to check to see whether the Debtors filed an amended supplement by the deadline to do so may have concluded that no such amendment had been filed. In addition, the Disclosure Statement does not

expressly disclose that avoidance actions are being included in the Trust Assets for the benefit of the secured lender, whose prepetition security interest would not have extended to such assets.

37.     Third, while the Plan Supplement includes a Sale Bonus Plan, disclosing a possibility of a sale of the Reorganized Debtors within one year after the Effective Date, there is no mention of such sale in the Disclosure Statement.

38.     These missing and inconsistent disclosures fail to meet the standard of "adequate information" and final approval of the Disclosure Statement should be denied.

**The Debtors' Releases Must Be Supported By An Appropriate Factual Record**

39.     The Plan provides releases by the Debtors and their estates of numerous non-debtor parties, including (a) all of the Debtors' predecessors, successors, assigns and present and former Affiliates (whether by operation of law or otherwise) and subsidiaries, and each of their respective current and former officers, directors, principals, employees, employers, shareholders, members (including ex officio members), general partners, limited partners, agents, managers, managing members, financial advisors, attorneys, accountants, investment bankers, investment advisors, consultants, representatives, and other professionals, in each case acting in such capacity at any time, and any Person claiming by or through any of them, (b) the Senior Secured Notes Trustee, the Supporting Noteholders; and the Holders of the Senior Secured Notes Claims who vote in favor of the Plan; and (c) each of the "Related Persons" (including Affiliates, subsidiaries, officers, directors, professionals, etc.) of the Senior Secured Notes Trustee, the Supporting Noteholders, and the Holders of the Senior Secured Notes Claims who vote in favor of the Plan.

40.     Pursuant to this Court's decision in *In re Tribune Company,* 464 B.R. 126

(Bankr. D. Del. 2011),  and *In re Washington Mutual, Inc.,* 442 B.R. 314 (Bankr. D. Del.

2011), among others, the five factors set forth in *In* re *Zenith Elecs. Corp.,* 241 B.R. 92,

110 (Bankr. D. Del 1999) and *In re Master Mortgage Inv. Fund, Inc.,* 168 B.R. 930, 937-

38 (Bankr. W. D. Mo. 1994) should be considered to determine whether, notwithstanding

§ 524(e) of the Code, a plan may provide for releases by debtors of non-debtor entities.

Those factors are as follows:

1.      identity of interests between debtor and non-debtor releasee, so
        that a suit against the non-debtor will deplete the estate's resources
        (e.g., due to a debtor's indemnification of a non-debtor);

2.      substantial contribution to the plan by non-debtor;

3.      necessity of release to the reorganization;

4.      overwhelming acceptance of plan and release by creditors; and

5.      payment of all or substantially all of the claims of the creditors and
        interest holders under the plan.

*Tribune,* 464 B.R. at 186 (citing *Washington Mutual*, 442 B.R. at 346 (citing *Zenith*,  241

B.R. at 110)); *see also In re Spansion, Inc.*, 426 B.R. 114, 142-43, n. 47 (Bankr. D. Del.

2010); *In re Coram Healthcare Corp.*, 315 B.R. 321, 335 (Bankr. D. Del. 2004).  "The

factors are neither exclusive nor conjunctive requirements, but simply provide guidance

in the Court's determination of fairness."  *Tribune,* 464 B.R. at 186 (citing *Washington*

*Mutual*, 442 B.R. at 346).

41.     The Debtors have the burden to establish whether the *Zenith* factors have

been met as to each of the non-debtors who are the beneficiaries of the Debtor Releases.

In the present cases, neither the Plan nor the Disclosure Statement address whether any of

the *Zenith* factors are met for any of the Released Parties.   It is clear, however, that the

fifth *Zenith* factor, which is the payment of all or substantially all of the claims of the

Debtors' creditors and interest holders, will not be met, because General Unsecured

Creditors will not be receiving any distribution.

42.    Moreover, this Court on numerous occasions has expressly rejected

releases to be given by debtors in favor of their directors, officers, employees and

professionals.  In *Washington Mutual*, this Court found that there was insufficient basis

for the debtors' release of their directors, officers and professionals, even though one of

the *Zenith* factors, identity of interest, was present.  442 B.R. at 349-350 (citing

*Continental Airlines*, 203 F.3d at 216).  The Court held as follows:

> With respect to the directors, officers or professionals of the Debtors
> and the Committee who served in the chapter 11 cases, they are
> *receiving exculpations* .  . . . Consequently, the releases as to them are
> unnecessary, duplicative or *exceed the limits of what they are entitled
> to receive*."

*Id*. at 350 (emphasis added).

43.    In *Washington Mutual,* this Court rejected the argument that the Debtors'

directors and  officers made a "contribution" to the case, finding that their only

contribution was the negotiation of a global settlement and the plan, which activities "are

nothing more than what is required of directors and officers of debtors in possession (for

which they have received compensation *and will be exculpated*) . . . " *Id.* at 354

(emphasis added)."

44.    In *Tribune*, this Court rejected the release by the debtors in that case of the

debtors' Related Persons, which, as here, included all the debtors' "current and former

officers, directors, employees, attorneys, advisors and professionals." 464 B.R. at 187.

Applying the *Zenith/Master Mortgage* factors, the Court held:

> There is no basis in the record to support any finding that any "substantial contribution" has been made by the Debtors' Related Persons or that a release is necessary to the reorganization. Despite acceptance by a majority of creditors, I cannot conclude that the Plan's release of the Debtors' Related Persons, based on this record, would be fair.

*Id*. at 188.

45.     Likewise, this Court in *In re Genesis Health Ventures, Inc.*, 266 B.R. at 606–07, similarly rejected the debtors' release of their officers, directors, employees and professionals, holding that:

> [T]he release of the debtors' pre-petition claims against the officers, directors, employees and professionals of the debtors is beyond the post-petition focus of the *PWS Holding Corporation* [228 F.3d 224 (3d Cir. 2000)] release clause. . . . As in *Zenith*, the officers and directors of the debtors no doubt made meaningful contribution to the reorganization by designing and implementing the operational restructuring of the companies, and negotiating the financial restructuring with parties in interest. However, the officers, directors and employees have been otherwise compensated for their contributions, and the management functions they performed do not constitute contributions of "assets" to the reorganization.

*Id.*

46.     The Court's rejection, in *Washington Mutual, Tribune,* and *Genesis,* of releases by debtors in favor of their own directors, officers and professionals and employees is supported by the ruling of the Third Circuit in *Continental.* In that case, although ruling in the context of non-consensual third party releases, the Third Circuit stated, "we have found no evidence that the non-debtor D & Os provided a critical financial contribution to the Continental Debtors' plan that was necessary to make the

14

plan feasible in exchange for receiving a release of liability." 203 F.3d at 215; *see also*

*Spansion*, 426 B.R. at 145 (rejecting the argument that debtors' officers and directors

made a "critical *financial* contribution" to the Debtors' plan by working long hours for no

additional pay, and ruling the same with respect to the debtors' professionals).

47.    As the Court in *Washington Mutual* pointed out, the Debtors directors,

officers and professionals are to receive exculpations under the Plan, and as such should

not be able to "exceed the limits of what they are entitled to receive" under the

exculpation clause by getting a broader form of exculpation through a release.  442 B.R.

at 350.  The limits of exculpations were set forth by the Third Circuit in  *In re PWS*

*Holding Corp.*, 228 F.3d 224 (3d Cir. 2000), and they must exclude "willful misconduct

or gross negligence."  *Id*. at 246; *see Washington Mutual,* 442 B.R. at 350, *citing PWS*.

48.    This Court has also rejected releases of parties similar to the Related

Parties in these cases.  In *Washington Mutual,* as here, the parties to be released by the

debtors included the "respective present and former Affiliates and each of their respective

current and former members, partners, equity holders, officers, directors, employees,

managers, shareholders, [and] partners."  442 B.R. at 350.  The Court found that "[t]here

is no explanation why all present and former Affiliates of Released Parties are included in

the broad release granted by the Debtors; this should be deleted."  *Id.*  The same is true

here.

49.    The Debtors have the burden to establish whether the *Zenith* factors have

been met as to each of the non-debtors who are the beneficiaries of the Debtor Releases.

Because an evidentiary predicate is necessary to approve the Debtor Releases, the U.S.

Trustee reserves argument on this issue until the record at the confirmation hearing is closed.

**The Proposed Compromise Language is Overbroad**

50.     Article V.A. of the Plan provides that, pursuant to Section 1123 of the Bankruptcy Code and Bankruptcy Code 9019, "the provisions of the Plan will constitute a good faith compromise and settlement of all Claims and Equity Interests and controversies resolved pursuant to the Plan."

51.     Section 1123(b)(3)(A) of the Bankruptcy Code permits a plan proponent to propose: "…the settlement or adjustment of any claim or interest *belonging to* the debtor or to the estate." (Emphasis added). This provision does not authorize a plan proponent to settle claims against the debtor or estate.   Rather, that is called a discharge.

52.     A Debtor may not do by indirection what it cannot do directly.  This principle was most recently restated by the Supreme Court in the case of *Law v. Siegel*, --- U.S. ---, 134 S. Ct. 1188 (2014).  In discussing the principle that Section 105(a) of the Bankruptcy Code may not be used to override explicit mandates of the Bankruptcy Code, the court noted:  "That is simply an application of the axiom that a statute's general permission to take actions of a certain type must yield to a specific prohibition found elsewhere."  134 S. Ct. at 1194.  Thus here, the attempt to invoke Sections 363 and 1123 to otherwise circumvent the provisions of Chapter 11 and Section 1141(d)(3) is inappropriate.

53.     Sections 1129 (a) (1) and (7) of the Bankruptcy Code require a debtor to make distributions pursuant to the priorities of the Bankruptcy Code.  The distributions under the Plan are pursuant to the priorities set forth in Chapter 11 and in Section 726 of

the Bankruptcy Code and not on any other basis.

**The Debtors Must Meet the Standards for Substantive Consolidation**.

54.     The Plan seeks to substantively consolidate the Debtors solely for voting and distribution purposes, while each Debtor continues its separate existence after the Effective Date.

55.     As set forth by the Third Circuit Court of Appeals in *Genesis Health*, 402 F.3d 416 (3d Cir. 2005), "[s]ubstantive consolidation treats separate legal entities as if they were merged into a single survivor left with all the cumulative assets and labilities. . . . The result is that claims of creditors against separate debtors morph to claims against the consolidated survivor."  Id. at 423.

56.     Substantive consolidation is a "remedy to be used 'sparingly.'"  *In re Owens Corning*, 419 F. 3d 19, 205 (3d Cir. 2005)(citations omitted); *Genesis,* 402 F.3d at 423 ("Because its effect radically rearranges legal boundaries, assets and liabilities, substantive consolidation is typically a sparingly used remedy.")  The standard for substantive consolidation was enunciated by Third Circuit in Owens Corning as follows: "In our Court what must be proven (absent consent) concerning the entities for whom substantive consolidation is sought is that (i) prepetition they disregarded separateness so significantly their creditors relied on the breakdown of entity borders and treated them as one legal entity, or (ii) post-petition their assets and liabilities are so scrambles that separating them is prohibitive and hurts all creditors." 419 F. 3d at 211.

57.     The Court in *Owens Corning* further indicated that "[p]roponents of substantive consolidation have the burden of showing one or the other rationale for consolidation.  The second rationale needs no explanation.  The first, however, is more

nuanced. A *prima facie* case for it typically exists when based on the parties' prepetition

dealings, a proponent proves corporate disregard creating contractual expectations of

creditors that they were dealing with debtors as one indistinguishable entity." *Id*.

(citations omitted).

58.     The purpose of substantive consolidation is to "rectify the seldom-seen

situation that calls for this last-resort remedy" that merges the assets and liabilities of

separate entities, and cannot be used for improper purposes, such as, "a ploy to deprive

one group of creditors of their right while providing a windfall to other creditors." *Id.* at

199-200.

59.     Because an evidentiary predicate is necessary on whether the elements

required for substantive consolidation have been met, the U.S. Trustee reserves argument

on this issue until the record on the hearing is closed.

**Bonus Plans and Severance Policies That May Implicate Section 503(c) of the Code**

60.     The Plan provides for the assumption of certain employee plans, and

provides that the Reorganized Debtors will enter into other bonus and severance

agreements with employees.

61.     Depending on the circumstances, the assumption of bonus and severance

policies, as well as any court approval of or order requiring the Reorganized Debtors to

enter into such policies post-effective date, could implicate 11 U.S.C. § 503(c).  The U.S.

Trustee objects to any assumption or approval of any agreement that would violate 11

U.S.C. § 503(c).

18

## V. RESERVATION OF RIGHTS

62.     The U.S. Trustee leaves the Debtors to their burden of proof and reserves any and all rights, remedies and obligations to, *inter alia*, complement, supplement, augment, alter and/or modify this objection, file an appropriate Motion and/or conduct any and all discovery as may be deemed necessary or as may be required and to assert such other grounds as may become apparent upon further factual discovery.

WHEREFORE, the U.S. Trustee respectfully requests that this Court issue an order denying confirmation of the Plan, and/or granting such other relief as this Court deems appropriate, fair and just.

Dated: May 30, 2019                          Respectfully submitted,
      Wilmington, Delaware

                                                  **ANDREW R. VARA**
                                                  **ACTING UNITED STATES TRUSTEE**
                                                  **Region 3**

                                                  By:  */s/ Linda J. Casey*
                                                  Linda J. Casey, Esquire
                                                  Trial Attorney
                                                  United States Department of Justice
                                                  Office of the United States Trustee
                                                  J. Caleb Boggs Federal Building
                                                  844 King Street, Suite 2207, Lockbox 35
                                                  Wilmington, DE 19801
                                                  (302) 573-6491
                                                  (302) 573-6497 (Fax)
                                                  Linda.Casey@usdoj.gov