IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FUSE, LLC, *et al.,*[1] | Case No. 19-10872 (KG) |
| Debtors. | (Jointly Administered) |
| | **Related to Docket Nos. 13, 14** |

### DECLARATION OF MIGUEL ROGGERO IN SUPPORT OF APPROVAL OF THE DISCLOSURE STATEMENT AND CONFIRMATION OF THE DEBTORS' PREPACKAGED JOINT PLAN OF REORGANIZATION

I, Miguel Roggero, declare under penalty of perjury that, to the best of my knowledge and belief and after reasonable inquiry, the following is true and correct:

1.      I am the Chief Executive Officer of Fuse, LLC and its wholly owned subsidiaries (the "Debtors").  I submit this declaration (the "Declaration") in support of (a) the *Debtors' Prepackaged Joint Plan of Reorganization* dated April 18, 2019 and filed with the Court on April 23, 2019 [Docket No. 13] (as it may be amended, modified, or supplemented from time to time, the "Plan")[2] and (b) the *Disclosure Statement for Debtors' Prepackaged Joint Plan of Reorganization* dated April 18, 2019 and filed with the Court on April 23, 2019 [Docket No. 14] (the "Disclosure Statement").

2.      I joined Fuse Media, Inc. in November 2006, and am responsible for the Company's day to day business operations.  Prior to joining the Debtors, I founded a private

---

[1] The Debtors and the last four digits of their taxpayer identification numbers include:  Fuse Media, Inc. (9721); Fuse Media, LLC (0560); Fuse, LLC (1888); JAAM Productions, LLC (5499); SCN Distribution, LLC (9656); Latino Events LLC (8204); Fuse Holdings LLC (5673); Fuse Finance, Inc. (8683); and FM Networks LLC (6500). The Debtors' headquarters and service address is 700 North Central Avenue, Suite 600, Glendale, CA 91203.

***For the avoidance of doubt, Debtors Fuse Media, Inc. and Fuse Media, LLC are not proponents of the Plan and the provisions of the Plan shall not extend to those entities.***

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Plan.

investment company that focused on middle market companies and multi-family real estate properties from 2001 through 2006. I also served as a group executive with Reed Business Information, a division of Reed Elsevier, where I led a portfolio of international publishing businesses. During my tenure with Reed Business Information, I also served as Chief Operating Officer for its eLogic, Inc. subsidiary, a cloud-based provider of real time information and content management. I have also held executive positions at The Walt Disney Company, Pizza Hut, and Paramount Pictures. I hold a Bachelor of Science in Business Administration from the University of Southern California, and a Master of Business Administration from the University of Pennsylvania.

3.      Except as otherwise indicated, I have personal knowledge of the information contained herein, either directly or through employees of the Debtors, or the Debtors' other advisors, and am competent to testify as to the matters set forth herein. Specifically, I have been directly involved in the negotiation of the Plan and more generally in the Debtors' restructuring process, including financial planning and forecasting. I am authorized to submit this declaration on behalf of the Debtors.

## **BACKGROUND**

4.      As I discussed in my *Declaration of Miguel Roggero in Support of First Day Motions* (the "First Day Declaration") [Docket No. 3], the Debtors filed these chapter 11 cases in order to preserve the value of the Debtors' business and maintain continued operations pending the Debtors' implementation of a financial and operational restructuring. Given the

challenges from current market conditions and operating results, and the Debtors' existing debt load, the Debtors believe that the Plan represents the most favorable outcome for all constituents.

5.      Under the Plan, the Senior Secured Notes will be exchanged for: (a) Cash in the Debtors' accounts, except for Cash needed in the Reorganized Debtors' operations as mutually agreed upon by the Debtors and the Supporting Noteholders, (b) the New Secured Debt consisting of the $45 million term loan facility, (c) 100% of the New Membership Interests of Reorganized Parent, and (d) 100% of the Litigation Trust Interests in the Fuse Litigation Trust.  Allowed Other Secured Debt Claims either will be reinstated or paid in full under the Plan, or will receive the Collateral securing such claims.

6.      Because the Debtors have pledged substantially all of their assets that have any material value as Collateral to secure the Senior Secured Notes Claims and no unencumbered assets in the Estates have any material value (taking into account the deficiency claims arising under the Senior Secured Notes and the Administrative Expense Claims that the Holders of the Senior Secured Notes are expected to assert for the diminution in the value of their Collateral during the Chapter 11 Cases), the Holders of Class 4 General Unsecured Claims will receive no distributions under the Plan.

7.      Equity Interests in the Debtors will be extinguished.  However, such Equity Interests shall be reinstated upon the Effective Date and deemed issued to and held by Reorganized Parent, directly or indirectly as applicable, as such Equity Interests were held prior to the Effective Date (except for the Equity Interests of Fuse, LLC, which shall be held directly by the Reorganized Parent).

8.    The Plan enjoys unanimous support among the Debtors' Impaired creditor Class that was entitled to vote on the Plan (Class 3 Senior Secured Notes Claims). The Plan and the transactions contemplated thereunder will strengthen the Debtors' balance sheet, provide liquidity support for the Debtors' enterprise, and create a sustainable capital structure to ensure the viability of the Debtors' business.

9.    I intend to continue in my current position as an officer of the Debtors following the Effective Date. I, and certain other key employees, will executed new Key Employee Retention Agreements with the Reorganized Parent substantially in the form enclosed with the Plan Supplement.

10.    The Debtors have exercised substantial efforts to provide broad-ranging notice of the Plan and Disclosure Statement to all creditors, equity holders, and other parties in interest. In assembling the list of creditors and equity holders for notice purposes, under my direction, the Debtors and their advisors relied on the Debtors' books and records, including without limitation, the Debtors' accounts payable and payroll systems and the official registers of holders of the company's debt and equity securities.

## DISCLOSURE STATEMENT

11.    I have reviewed the Disclosure Statement and related exhibits, which was drafted under my direction and supervision. The Disclosure Statement, including related exhibits, is accurate and correct to the best of my knowledge as of the date thereof. Based upon my knowledge and belief, the Disclosure Statement contains "adequate information" of a kind and in sufficient detail to enable holders of claims entitled to vote on the Plan to make an

informed judgment about whether to vote to accept or reject the Plan, as required by section 1125 of the Bankruptcy Code. Among other things, the Disclosure Statement describes the current state of affairs of the Debtors' business and their restructuring efforts, the events leading up to these chapter 11 cases, a summary of the Plan and projected recoveries thereunder, a liquidation analysis of the Debtors' assets, a valuation estimate and financial projections for the Reorganized Debtors, and certain risk factors and tax/securities implications associated with the Plan.

## THE PLAN SATISFIES ALL REQUIREMENTS FOR CONFIRMATION

**A.      The Plan Complies with the Applicable Provisions of the Bankruptcy
Code as Required by Section 1129a)(1) of the Bankruptcy Code**

12.      I believe, based on knowledge and advice, that the Plan complies with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(1) of the Bankruptcy Code, including sections 1122 and 1123(a)(1) of the Bankruptcy Code.

**a.      The Plan Properly Classifies Claims and Equity Interests as
Required by Sections 1122 and 1123(a)(1) of the Bankruptcy
Code.**

13.      Article III of the Plan provides for the separate classification of Claims and Interests as follows:

| Class | Claim |
|-------|-------|
| 1 | Other Priority Claims |
| 2 | Other Secured Debt Claims |
| 3 | Senior Secured Notes Claims |
| 4 | General Unsecured Claims |
| 5 | Equity Interests in Debtors |

14.     I believe that each Class of Claims or Equity Interests, and each instance of separate classification of Claims or Equity Interests, was based on a valid business, factual, and legal reason.  Dissimilar Claims and Equity Interests are not classified together under the Plan.  Nor has classification been made for the purpose of gerrymandering votes.

15.     The Plan's classification arrangement loosely follows the Debtors' prepetition capital structure.  The Plan separately classifies Claims (rights to payment) from Equity Interests (representing ownership in the enterprise).  Secured Claims are classified separately from unsecured Claims because the Debtors' obligations with respect to the former are secured by collateral.  Based on the advice and guidance provided to me by the Debtors' advisors, I believe that this classification of Claims and Equity Interests satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

> **b.    The Plan Specifies Unimpaired and Impaired Classes and Provides the Same Treatment to Each Holder in a Particular Class as Required by Sections 1123(a)(2)-(4) of the Bankruptcy Code.**

16.     Article III and various other provisions of the Plan provide for, among other things, the following: (a) specified Classes of Unimpaired Claims and Equity Interests, including Classes 1 and 2; (b) specified treatment of Classes of Impaired Claims and Equity Interests, including with respect to Classes 3, 4 and 5; and (c) the same treatment for each Allowed Claim or Equity Interest in a particular Class.  As such, based on the advice and guidance provided to me by the Debtors' advisors, I believe that the Plan satisfies the requirements of sections 1123(a)(2) through (a)(4) of the Bankruptcy Code.

        c.      **The Plan Provides for Adequate Means of Implementation as Required by Section 1123(a)(5) of the Bankruptcy Code.**

17.     I believe that Article V and various other provisions of the Plan provide adequate means for the Plan's implementation by, among other things, providing for the following:  (a) vesting of assets in the Reorganized Debtors; (b) issuance of the New Secured Debt; (c) issuance of the New Membership Interests of Reorganized Parent; (d) implementation of the Key Employee Retention Agreements; (e) appointment of the New Board of Reorganized Parent; and (f) cancellation of the existing Equity Interests in Debtors, except as set forth in the Plan.

        d.      **The Plan Prohibits the Issuance of Non-Voting Securities as Required by Section 1123(a)(6) of the Bankruptcy Code.**

18.     Article V.J of the Plan will prohibit the issuance of non-voting equity securities to the extent required by the Bankruptcy Code.

        e.      **The Plan Provides for the Selection of Directors and Officers as Required by Sections 1123(a)(7) of the Bankruptcy Code.**

19.     I believe, based on knowledge and advice, that the provisions with respect to the manner of selection of any officer, director, or trustee under the Plan, or successor thereof, are consistent with the interests of creditors, equity security holders, and public policy.  As such, I believe that the Debtors have satisfied section 1123(a)(7) of the Bankruptcy Code.

        f.      **The Plan Complies with the Discretionary Provisions of Section 1123(b) of the Bankruptcy Code.**

20.     It is my understanding that the Plan employs various provisions in accordance with the discretionary authority of section 1123(b) of the Bankruptcy Code.  For example, Article III.F of the Plan leaves certain Classes of Claims and Equity Interests

Unimpaired, while others are Impaired.  Specifically, Classes 1 and 2 are Unimpaired because the Plan will not alter the legal, equitable, and contractual rights of the holders of Claims and Equity Interests in those Classes.  On the other hand, Classes 3, 4 and 5 are Impaired because the Plan modifies the rights of the holders of Claims and Equity Interests within such Classes.  The Plan also provides a structure for Claim allowance and disallowance under Article VIII and proposes appropriate treatment for executory contracts and unexpired leases under Article VII.

21.     Further, pursuant to Article XI and XII, the Plan seeks to implement certain release, exculpation, and injunction provisions.  I believe that these provisions:  (a) are appropriate because they are integral to the success of the Plan and the transactions contemplated by the Plan, as evidenced by the facts and circumstances of these cases; (b) are the product of extensive good faith, arms' length negotiations among the Debtors and their key constituents; (c) are given for valuable consideration; (d) are fair and equitable and in the best interests of the Debtors' estates; and (e) do not release claims or liabilities arising from fraud, willful misconduct, or gross negligence.  Additionally, the Plan, including the release, exculpation, and injunction provisions, has been unanimously accepted by Class 3 (Senior Secured Notes Claims), which was the only Class entitled to vote on the Plan.  *See Declaration of David Hartie of Kurtzman Carson Consultants, LLC Regarding the Mailing, Voting, and Tabulation of Ballots Accepting and Rejecting the Debtors' Prepackaged Joint Chapter 11 Plan of Reorganization* [Docket No. 133] (the "Voting Declaration").

22.     The parties providing and receiving releases pursuant to Article XI of the Plan consist of, collectively, and in each case in its capacity as such:  (a) the Debtors; (b) the

Debtors' current and former directors and officers; (c) the Reorganized Debtors; (d) the Senior

Secured Notes Trustee; (e) the Supporting Noteholders; (f) the Holders of the Senior Secured

Notes Claims who vote in favor of the Plan; and (g) the Related Persons of each of (a) through

(f) of the foregoing (together, the "Released Parties").

23.    The releases given by the Debtors in Article XI.B (the "Debtor Release")

are essential to the Plan.  The Debtor Release was the subject of negotiations with the Debtors'

key constituents and is given in exchange for significant value contributed by creditors in

furtherance of the global resolution embodied in, and the transactions contemplated under, the

Plan.  The Released Parties were generally instrumental to the settlements and resolutions

incorporated into the Plan with the Supporting Noteholders and the Holders of Senior Secured

Notes Claims who have now unanimously voted in favor of the Plan.  No other parties are

affected by the releases in the Plan because all other creditors are either Unimpaired under the

Plan, as in the case of Class 1 and Class 2, or receive no recovery under the Plan, as in the case

of Class 4 and Class 5.  Further, the Debtors are not aware of the existence of any viable claims

being released and an identity of interest exists between the Debtors and the parties to be

released.  Most of the Released Parties are stakeholders and critical participants in the Plan

process and share a common goal with the Debtors in seeing the Plan succeed.  Like the Debtors,

these parties seek to confirm the Plan and implement the transactions contemplated thereunder.

As to the Debtors' current and former directors and officers who are being released, there is an

identity of interest between the Debtors and these parties as they would have indemnity

obligations against the Debtors to the extent of any liability.  All such indemnification

obligations are Reinstated under the Plan, at Article VI.F.  Finally, the Debtor Release includes

the Senior Secured Notes Trustee, the Supporting Noteholders, and the Holders of the Senior

Secured Notes Claims who vote in favor of the Plan.  Without the support of these parties, there

would be no Plan and no ability by the Debtors to successfully reorganize.  As to the Debtors'

Related Persons, these parties have provided direct benefits to the Debtors' estates by diligently

discharging their duties and contributing to the overall success of the Plan and these cases.

Further, the terms of the Plan, including the Debtor Release, were vigorously negotiated amongst

the Released Parties.  The result is a compromise that reflects a true arm's-length negotiation

process.

       24.     Similarly, I believe that the provisions for releases by holders of Claims

against the Released Parties in Article XII (the "Third Party Release") are essential to the Plan.

All parties in interest benefit from the Restructuring Transactions contemplated by the Plan

which will greatly improve the Debtors' liquidity profile and position them for future success.

The alternative is the potential for a value-destructive, fire-sale liquidation.  Without the Third

Party Release, it is my understanding that the Supporting Noteholders would not have been

willing to agree to the transactions contemplated by the Plan.  Holders of Senior Secured Notes

Claims were given the option to vote to reject the Plan and to opt-out of the Third Party Release.

None exercised that option.  As such, the Third Party Release is consensual.

       25.     In addition, I believe that the exculpation provisions in Article XII.B. (the

"Exculpation") are essential to the Plan.  The Exculpation, as amended, covers:  (a) the Debtors,

(b) the Reorganized Debtors, (c) and their Related Persons.  The Exculpation was the product of

negotiations with the Debtors' key constituents, and is integral to the restructuring encompassed in the Plan. The Exculpation is necessary and appropriate to protect parties who made substantial contributions in good faith to the Debtors' bankruptcy cases and are relying upon the protections afforded to them under the Exculpation. I believe, based on knowledge and advice, that the protections afforded by the Exculpation are reasonable and appropriate.

26.      Further, I believe the injunction provisions in Article XII.C. of the Plan (the "Injunction") are essential to the Plan because the Injunction enforces the discharge, the Debtor Release, the Third Party Release, and the Exculpation, which are centrally important to the Plan. The Injunction permanently enjoins all entities from commencing or maintaining an action on account of any Claims or Equity Interests that are discharged, released, or subject to exculpation pursuant to the Plan. To the extent that the Court finds that the Debtor Release, the Third Party Release, and the Exculpation are appropriate, I believe that the Injunction also would be appropriate for the same reasons.

g.      **The Principal Purpose of the Plan is Not the Avoidance of Taxes, Thereby Satisfying Section 1129(d) of the Bankruptcy Code.**

27.      It is my understanding that a Plan may not be confirmed if, upon request by a governmental unit, the Court finds that the principal purpose of the plan is the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933. First, it is my understanding that no governmental unit has made such request. And second, I believe the principal purpose of the Plan is not for the avoidance of taxes or section 5 of the Securities Act of 1933. As such, I believe the Plan satisfies section 1129(d) of the Bankruptcy Code.

**B.**    **The Debtors Have Complied with the Provisions of the Bankruptcy**
**Code, as Required under Section 1129(a)(2) of the Bankruptcy Code.**

28.    I believe, based on knowledge and advice, that the Debtors, as proponents

of the Plan, have complied with all applicable provisions of the Bankruptcy Code as required by

section 1129(a)(2) of the Bankruptcy Code, including sections 1125 and 1126(b) of the

Bankruptcy Code, for reasons similar to those provided above in section A above.

**C.**    **The Debtors Have Proposed the Plan in Good Faith in Compliance**
**with Section 1129(a)(3) of the Bankruptcy Code.**

29.    I believe that the Plan was proposed in good faith, with the legitimate and

honest purposes of reorganizing the Debtors' capital structure and maximizing the value of each

of the Debtors' Estates for the benefit of creditors and other stakeholders.  As such, the Plan

satisfies the purposes of the Bankruptcy Code.  The Plan is the product of arms' length

negotiations among the Debtors, the Supporting Noteholders, and other stakeholders.  The

acceptance of the Plan by the Impaired voting Class 3 Senior Secured Notes Claims evidences

this view.

**D.**    **The Plan Provides That the Debtors' Payment of Professional Fees**
**and Expenses are Subject to Court Approval, as Required by**
**Section 1129(a)(4) of the Bankruptcy Code.**

30.    It is my understanding that professional fees are subject to Court approval

and the reasonableness requirements under sections 328 and/or 330 of the Bankruptcy Code, as

applicable.

**E.     The Debtors Have Disclosed All Necessary Information Regarding
         Directors, Officers and Insiders in Compliance with
         Section 1129(a)(5) of the Bankruptcy Code.**

      31.    The Debtors have filed a Plan Supplement which, among other items,

sufficiently discloses the identity and compensation of the New Board of Reorganized Parent.

Further, as set forth in Article V.K. of the Plan, all current officers of the Debtors, including

myself, will remain in place from and after the Effective Date in our current positions as officers

of the Reorganized Debtors.  I believe that such appointments are consistent with the interests of

creditors, equity holders, and public policy.  As such, I believe that the Debtors have satisfied

section 1129(a)(5) of the Bankruptcy Code.

**F.     The Plan Does Not Require Governmental Regulatory
         Approval Required by Section 1129(a)(6) of the Bankruptcy Code.**

      32.    I do not believe that any governmental regulatory approval of the Plan

with respect to any rate changes is required.  Section 1129(a)(6) of the Bankruptcy Code is

therefore inapplicable.

**G.     The Plan is in the Best Interests of Creditors under
         Section 1129(a)(7) of the Bankruptcy Code.**

      33.    I understand that a plan must be in the best interest of creditors in order for

it to be confirmed.  The liquidation analysis set forth as Exhibit C to the Disclosure Statement

shows that the Plan will provide at least as much recovery to creditors as would a chapter 7

liquidation.  The liquidation analysis, prepared by the Debtors with the assistance of FTI

Consulting, Inc., estimates that creditors will realize approximately $16.9 million to $21.5

million in a chapter 7 liquidation, which translates into a recovery of 6% to 8% for Holders of

Senior Secured Notes Claims, and no recovery for Holders of General Unsecured Claims.  By

contrast, under the Plan, Holders of Senior Secured Notes Claims are projected to realize a materially higher recovery under the Plan. Further detail regarding the liquidation analysis is provided in the *Declaration of Asher Cohen of FTI Consulting, Inc., Support of Confirmation of the Debtors' Prepackaged Joint Plan of Reorganization.* Accordingly, I believe that section 1129(a)(7) of the Bankruptcy Code is satisfied.

**H.    The Plan Provides for Appropriate Treatment of Claims
       Under Section 1129(a)(9) of the Bankruptcy Code.**

34.    It is my understanding that the Plan, under Article II., provides for appropriate treatment of Administrative Expense Claims and Priority Tax Claims that is consistent with the requirements of section 1129(a)(9) of the Bankruptcy Code, as those Claims are not required to be designated as separate Classes pursuant to section 1123(a)(1) of the Bankruptcy Code.

**I.    At Least One Impaired Class Has Voted to Accept the Plan,
       Satisfying Section 1129(a)(10) of the Bankruptcy Code.**

35.    To confirm, the Plan must have at least one impaired class vote in favor, determined without including any acceptances of the Plan by an insider. As set forth in the Voting Declaration, Class 3 Senior Secured Notes Claims, which was the only voting Impaired Class under the Plan, voted to accept the Plan. To my knowledge, no holder of a Class 3 Senior Secured Notes Claim is an insider of the Debtors. I therefore believe that section 1129(a)(10) of the Bankruptcy Code is satisfied.

**J.** **The Plan is Feasible Under Section 1129(a)(11) of the Bankruptcy Code.**

36.    I believe that the Debtors will be able to satisfy the conditions precedent to

the Effective Date in Article X of the Plan.  I further believe that the Debtors will have sufficient

financial resources to meet all of their obligations under the Plan, including post-Confirmation

and Effective Date obligations to pay for the costs of administering and fully consummating the

Plan, as evidenced by the financial projections attached as Exhibit D to the Disclosure Statement.

As such, I believe that section 1129(a)(11) of the Bankruptcy Code is satisfied.

**K.** **The Plan Provides for the Payment of U.S. Trustee Fees**
**as Required under Section 1129(a)(12) of the Bankruptcy Code.**

37.    I understand that Article XV.B of the Plan provides for the payment of

U.S. Trustee fees on the Effective Date and thereafter the Reorganized Debtors will pay the

quarterly fees due to the U.S. Trustee until the entry of a final decree in these chapter 11 cases.

As such, I believe that section 1129(a)(12) of the Bankruptcy Code is satisfied.

**L.** **The Plan Provides for the Continuation of Retiree Benefits, if any,**
**as Required under Section 1129(a)(13) of the Bankruptcy Code.**

38.    It is my understanding that, to the extent section 1129(a)(13) of the

Bankruptcy Code is applicable to the Debtors, the Reorganized Debtors will continue to pay, in

accordance with applicable law, any retiree benefits (as defined in section 1114 of the

Bankruptcy Code) for the period during which the Debtors have obligated themselves to provide

such benefits.  Consequently, I believe section 1129(a)(13) of the Bankruptcy Code is satisfied.

**M.**    **Sections 1129(a)(14)-(16) of the Bankruptcy Code are Not Applicable.**

39.    I believe that sections 1129(a)(14), (15), and (16) of the Bankruptcy Code are not applicable because the Debtors owe no domestic support obligations, are not individuals, and are not nonprofit corporations.

**N.**    **The Plan is Fair and Equitable and Does Not Unfairly Discriminate with Respect to the Deemed Rejecting Class of Equity Holders.**

40.    I understand that to confirm a plan when impaired classes have rejected the plan, with respect to each impaired class, the plan must be "fair and equitable" and not discriminate unfairly. Here, there are two Impaired Classes that were deemed to reject the Plan: Class 4 General Unsecured Claims and Class 5 Equity Interests in Debtors.

41.    I believe that the Plan is fair and equitable and does not unfairly discriminate. Holders of Class 3 Senior Secured Notes Claims are not receiving a full recovery under the Plan. The Debtors estimate that the total enterprise value of the Reorganized Debtors to be substantially greater than liquidation value, but substantially less than the face amount of the Senior Secured Notes Claims. Hence, it is entirely fair and equitable and not unfairly discriminatory for Holders of Class 4 General Unsecured Claims and Class 5 Equity Interests in Debtors to receive no recovery under the Plan.

42.    As such, I believe that the Plan satisfies the requirements of section 1129(b)(1) of the Bankruptcy Code.

## **THE PLAN SATISFIES SECTION 1123(d) OF THE BANKRUPTCY CODE**

43.   The Plan appropriately provides for the assumption and rejection of executory contracts and unexpired leases.  Under the Plan, the Debtors have chosen to reject all executory contracts and unexpired leases except those that are specifically identified as assumed.

44.   For assumed contracts, I understand that assumption may require the payment of certain cure amounts and the Reorganized Debtors will do so.

## **GOOD CAUSE EXISTS TO WAIVE THE STAY OF THE CONFIRMATION ORDER**

45.   I understand that certain Bankruptcy Rules provide for the stay of an order confirming a plan, but that such stay may be waived upon court order after a showing of good cause.

46.   I believe there is good cause for the proposed Confirmation Order to be effective immediately upon its entry.  Although the Debtors in consultation with the Supporting Noteholders may decide that the Plan not go effective immediately, there is no reason for further delay if the Debtors determine that declaring the effectiveness of the Plan should occur on an earlier date.  I believe that good cause exists to waive any stay imposed by the Bankruptcy Rules so that the proposed Confirmation Order may be effective immediately upon its entry.

*[Remainder of page intentionally left blank]*

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated:  May 31, 2019

Miguel Roggero