**<u>Exhibit A</u>**

**Amended Plan**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| FUSE, LLC, *et al.*,[1] | § | Case No. 19-10872 (KG) |
| | § | |
| | § | Jointly Administered |
| Debtors. | § | |

---

### DEBTORS' AMENDED PREPACKAGED JOINT PLAN OF REORGANIZATION

---

Dated:  June \_\_\_, 2019

PACHULSKI STANG ZIEHL & JONES LLP
Richard M. Pachulski (CA Bar No. 90073)
Ira D. Kharasch (CA Bar No. 109084)
Maxim B. Litvak (CA Bar No. 215852)
James E. O'Neill (DE Bar 4042)
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Tel:  (302) 652-4100
Fax:  (302) 652-4400
E-mail: rpachulski@pszjlaw.com
         ikharasch@pszjlaw.com
         mlitvak@pszjlaw.com
         joneill@pszjlaw.com

Proposed Counsel for the Debtors and
Debtors-in-Possession

---

[1] The Debtors and the last four digits of their taxpayer identification numbers include:  Fuse Media, Inc. (9721); Fuse Media, LLC (0560); Fuse, LLC (1888); JAAM Productions, LLC (5499); SCN Distributions, LLC (9656); Latino Events LLC (8204); Fuse Holdings LLC (5673); Fuse Finance, Inc. (8683); and FM Networks LLC (6500). The Debtors' headquarters and service address is 700 North Central Avenue, Suite 600, Glendale, CA 91203.

***For the avoidance of doubt, Debtors Fuse Media, Inc. and Fuse Media, LLC are not proponents of the Plan and the provisions of the Plan shall not extend to those entities.***

ARTICLE I. RULES OF INTERPRETATION, COMPUTATION OF TIME,
      GOVERNING LAW AND DEFINED TERMS .............................................1

    A.    Rules of Interpretation, Computation of Time and Governing Law....................1

    B.    Defined Terms ...............................................................................................2

ARTICLE II. ADMINISTRATIVE AND PRIORITY TAX CLAIMS ....................................15

    A.    Administrative Expense Claims.....................................................................15

    B.    Priority Tax Claims .......................................................................................16

ARTICLE III. CLASSIFICATION AND TREATMENT OF  CLASSIFIED CLAIMS
      AND EQUITY INTERESTS ...............................................................16

    A.    Summary .......................................................................................................16

    B.    Separate Classification of Other Secured Debt Claims ...................................17

    C.    Elimination of Vacant Classes ......................................................................17

    D.    Voting; Presumptions; Solicitation in Good Faith.............................................17

    E.    Cramdown.....................................................................................................17

    F.    Classification and Treatment of Claims and Equity Interests...........................17

    G.    Special Provision Governing Unimpaired Claims ...........................................20

    H.    Discharge of Claims......................................................................................20

    I.    Subordinated Claims .....................................................................................21

    J.    Intercompany Claims .....................................................................................21

ARTICLE IV. ACCEPTANCE OR REJECTION OF THE PLAN ...........................................21

    A.    Presumed Acceptance of Plan........................................................................21

    B.    Presumed Rejection of Plan ...........................................................................21

    C.    Voting Class..................................................................................................21

    D.    Acceptance by Impaired Classes of Claims....................................................21

    E.    Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code.................21

ARTICLE V. MEANS FOR IMPLEMENTATION OF THE PLAN ........................................22

**Page**

A.  General Settlement of Claims ..................................................................22

B.  Corporate Existence .............................................................................22

C.  Vesting of Assets in the Reorganized Debtors ....................................23

D.  New Secured Debt; Sources of Cash for Plan Distributions...............23

E.  Treatment of Vacant Classes ...............................................................24

F.  Key Employee Retention Agreements..................................................24

G.  Issuance of New Membership Interests and Related Documentation ...............24

H.  Substantive Consolidation for Plan Purposes .....................................25

I.  Release of Liens, Claims and Equity Interests....................................25

J.  New Organizational Documents ...........................................................26

K.  Managers and Officers of Reorganized Debtors..................................26

L.  Corporate Action..................................................................................26

M.  Cancellation of Notes, Certificates and Instruments...........................27

N.  Cancellation of Existing Instruments Governing Security Interests...................28

O.  Equity Interests in Subsidiaries; Corporate Reorganization ...............28

P.  Restructuring Transactions ..................................................................28

Q.  Plan Supplement, Other Documents and Orders .................................29

ARTICLE VI. LITIGATION TRUST.........................................................................29

A.  The Litigation Trustee..........................................................................29

B.  The Fuse Litigation Trust.....................................................................30

C.  The Litigation Trust Oversight Committee..........................................31

ARTICLE VII. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
            LEASES ........................................................................................32

**Page**

A.    Assumption and Rejection of Executory Contracts and Unexpired Leases...................................................................................................32

B.    Assignment of Executory Contracts or Unexpired Leases .................32

C.    Claims on Account of the Rejection of Executory Contracts or Unexpired Leases...................................................................................33

D.    Cure of Defaults for Assumed Executory Contracts and Unexpired Leases...................................................................................................33

E.    Assumption of Director and Officer Insurance Policies .....................34

F.    Indemnification Provisions .................................................................34

G.    Compensation and Benefit Programs...................................................35

H.    Insurance Policies ...............................................................................35

ARTICLE VIII. PROVISIONS GOVERNING DISTRIBUTIONS ........................................35

A.    Dates of Distributions .........................................................................35

B.    Distribution Agent ..............................................................................36

C.    Cash Distributions...............................................................................36

D.    Rounding of Payments ........................................................................36

E.    Distributions on Account of Claims Allowed After the Effective Date ............37

F.    General Distribution Procedures..........................................................37

G.    Address for Delivery of Distributions..................................................37

H.    Undeliverable Distributions and Unclaimed Property .........................37

I.    Withholding Taxes...............................................................................38

J.    Setoffs .................................................................................................38

K.    Surrender of Cancelled Instruments or Securities ...............................38

L.    Lost, Stolen, Mutilated or Destroyed Securities .................................39

**Page**

ARTICLE IX. PROCEDURES FOR RESOLVING CONTINGENT,
UNLIQUIDATED AND DISPUTED CLAIMS ............................................. 39

    A.    Disputed Claims ................................................................................. 39

    B.    Procedures Regarding Disputed Claims ............................................. 40

    C.    Allowance of Claims ......................................................................... 40

ARTICLE X. CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN .......... 41

    A.    Conditions Precedent to Consummation ............................................ 41

    B.    Waiver of Conditions ........................................................................ 43

    C.    Effect of Non-Occurrence of Conditions to Consummation .............. 43

ARTICLE XI. RELEASE, INJUNCTION AND RELATED PROVISIONS ........................... 43

    A.    General .............................................................................................. 43

    B.    Release .............................................................................................. 44

ARTICLE XII. THIRD PARTY RELEASE BY HOLDERS OF CLAIMS ........................... 45

    A.    Discharge of Claims .......................................................................... 46

    B.    Exculpation ....................................................................................... 46

    C.    Injunction ......................................................................................... 46

ARTICLE XIII. BINDING NATURE OF PLAN ................................................................... 47

ARTICLE XIV. RETENTION OF JURISDICTION ............................................................... 47

ARTICLE XV. MISCELLANEOUS PROVISIONS ............................................................... 49

    A.    Dissolution of the Committee ............................................................ 49

    B.    Payment of Statutory Fees ................................................................. 49

    C.    Payment of Fees and Expenses of Senior Secured Notes Trustee ...... 49

    D.    Modification of Plan ......................................................................... 49

    E.    Revocation of Plan ............................................................................ 50

**Page**

F.    Entire Agreement ..................................................................................................50

G.    Closing of Chapter 11 Cases ...............................................................................50

H.    Successors and Assigns.........................................................................................50

I.    Reservation of Rights............................................................................................50

J.    Further Assurances................................................................................................51

K.    Severability ...........................................................................................................51

L.    Service of Documents ...........................................................................................51

M.    Exemption from Certain Transfer Taxes Pursuant to Section 1146(a) of the Bankruptcy Code.................................................................................................52

N.    Governing Law ......................................................................................................52

O.    Tax Reporting and Compliance ............................................................................52

P.    Schedules ...............................................................................................................52

Q.    No Strict Construction ..........................................................................................52

R.    Conflicts.................................................................................................................53

S.    Controlling Document ...........................................................................................53

T.    Confirmation Request ...........................................................................................53

**DEBTORS' AMENDED PREPACKAGED JOINT PLAN OF REORGANIZATION**

Fuse, LLC and its debtor subsidiaries, as debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors"), propose the following amended prepackaged joint plan of reorganization (the "Plan") for, among other things, the resolution of the outstanding Claims against, and Equity Interests in, the Debtors. ***For the avoidance of doubt, Debtors Fuse Media, Inc. and Fuse Media, LLC are not proponents of the Plan and the provisions of the Plan shall not extend to those entities.***

Unless otherwise noted, capitalized terms used in this Plan have the meanings set forth in Article I of the Plan. The Debtors (excluding Fuse Media, Inc. and Fuse Media, LLC) are the proponents of this Plan within the meaning of section 1129 of the Bankruptcy Code. Reference is made to the Disclosure Statement (as such term is defined herein and distributed contemporaneously herewith) for a discussion of the Debtors' history, business, results of operations, historical financial information, accomplishments leading up to Solicitation of the Plan, projections and properties, and for a summary and analysis of this Plan and the treatment provided for herein. There also are other agreements and documents that will be Filed with the Bankruptcy Court that are referenced in this Plan, the Plan Supplement or the Disclosure Statement as Exhibits and Plan Schedules. All such Exhibits and Plan Schedules are incorporated into and are a part of this Plan as if set forth in full herein. Subject to the requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, the Debtors reserve the right to alter, amend, modify, revoke or withdraw this Plan prior to its Consummation.

The Plan contemplates deemed substantive consolidation of the Debtors for voting and Plan Distribution purposes only with respect to the Claims. If, however, the Plan cannot be confirmed as to some or all of the Debtors, then, in the Debtors' sole discretion and subject to the terms set forth herein, (a) the Plan may be revoked as to all of the Debtors, or (b) the Debtors may revoke the Plan as to any Debtor (and any such Debtor's Chapter 11 Case may be converted to a chapter 7 liquidation, continued or dismissed in the Debtors' sole discretion) and confirm the Plan as to the remaining Debtors to the extent required. The Debtors intend to seek confirmation of the Plan pursuant to the "cram down" provisions contained in section 1129(b) of the Bankruptcy Code with respect to any non-accepting Class of Claims or Equity Interests that is Impaired as set forth in Article III hereof.

Notwithstanding any rights of approval that may exist as to the form or substance of the Disclosure Statement, the Plan or any other document relating to the transactions contemplated hereunder or thereunder, neither the Supporting Noteholders, the Senior Secured Notes Trustee, nor their respective representatives, members, financial or legal advisors, or agents, has independently verified the information contained herein or takes any responsibility therefor and none of the foregoing entities or persons makes any representations or warranties whatsoever concerning the information contained herein.

**ARTICLE I.**
**RULES OF INTERPRETATION, COMPUTATION OF TIME,**
**GOVERNING LAW AND DEFINED TERMS**

**A.      Rules of Interpretation, Computation of Time and Governing Law**

For purposes hereof:  (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the

masculine, feminine or neuter gender shall include the masculine, feminine and the neuter gender; (b) any reference herein to a contract, lease, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document, as previously amended, modified or supplemented, if applicable, shall be substantially in that form or substantially on those terms and conditions; (c) any reference herein to an existing document or exhibit having been Filed or to be Filed shall mean that document or exhibit, as it may thereafter be amended, modified or supplemented; (d) unless otherwise specified, all references herein to "Articles," "Sections," "Exhibits" and "Plan Schedules" are references to Articles, Sections, Exhibits and Plan Schedules hereof or hereto; (e) unless otherwise stated, the words "herein," "hereof," "hereunder" and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (f) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (g) any reference to an Entity as a Holder of a Claim or Equity Interest includes such Entity's successors and assigns; (h) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (i) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; and (j) "$" or "dollars" means Dollars in lawful currency of the United States of America.  The provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.

## B.    <u>Defined Terms</u>

Unless the context otherwise requires, the following terms shall have the following meanings when used in capitalized form herein:

1.    "*Accrued Professional Compensation*" means, with respect to a particular Professional, an Administrative Expense Claim of such Professional for compensation for services rendered or reimbursement of costs, expenses or other charges incurred after the Petition Date and prior to and including the Effective Date (including, without limitation, expenses of the members of any Committee incurred as members thereof in discharge of their duties as such).

2.    "*Administrative Expense Claim*" means any Claim against a Debtor for costs and expenses of administration of the Chapter 11 Cases that is Allowed pursuant to sections 327, 328, 330, 365, 503(b), 507(a)(2), 507(b) or 1114(e)(2) of the Bankruptcy Code, including, without limitation, (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estates and operating the businesses of the Debtors; (b) the Accrued Professional Compensation; (c) the Senior Secured Notes Trustee Fees; (d) the Restructuring Expenses; and (e) all fees and charges assessed against the Estates pursuant to sections 1911 through 1930 of chapter 123 of title 28 of the United States Code.

3.    "*Affiliate*" means an "affiliate" as defined in section 101(2) of the Bankruptcy Code.

4.    "*Allowed*" means, with respect to any Claim, except as otherwise provided herein:  (a) a Claim that has been allowed by a Final Order; (b) a Claim that is allowed: (i) in any stipulation of amount and nature of Claim executed by the Debtors prior to the Effective Date and approved by the Bankruptcy Court; (ii) in any stipulation of amount and nature of Claim executed by the Reorganized Debtors on or after the Effective Date; (iii) in accordance with the applicable Debtor's books and records or as set forth in the Schedules, to the extent Filed, subject

- 2 -

to any limitations on allowance imposed by section 502 of the Bankruptcy Code; (c) a Claim relating to a rejected executory contract or unexpired lease that either (i) is not a Disputed Claim or (ii) has been allowed by a Final Order; or (d) a Claim that is Allowed pursuant to the terms of this Plan.  For the avoidance of doubt, notwithstanding anything to the contrary contained herein, there shall be no requirement that the Senior Secured Notes Trustee file a Proof of Claim on behalf of the Holders of the Senior Secured Notes Claims in respect of the Senior Secured Notes Claims; *provided*, that the Senior Secured Notes Trustee is authorized, but not directed, to file in the Chapter 11 Cases, a single master proof of claim on behalf of itself and the Holders of the Senior Secured Notes Claims on account of any and all Claims arising under the Senior Secured Notes Indenture.

5.    "*Allowed Claim or Equity Interest*" means a Claim or Equity Interest of the type that has been Allowed.

6.    "*Assets*" means all of the right, title, and interest of a Debtor in and to property of whatever type or nature (including, without limitation, real, personal, mixed, intellectual, tangible, and intangible property).

7.    "*Avoidance Actions*" means any and all avoidance, recovery, subordination or other actions or remedies that may be brought by and on behalf of the Debtors or their Estates under the Bankruptcy Code or applicable nonbankruptcy law, including, without limitation, actions or remedies arising under sections 502, 510 or 542-553 of the Bankruptcy Code.  For the avoidance of doubt and notwithstanding anything to the contrary herein, "Avoidance Actions" shall not include any actions or remedies arising under sections 542-553 of the Bankruptcy Code which may be pursued against the Debtors' current and former directors and officers, or their employers or affiliates.

8.    "*Ballots*" means the ballots accompanying the Disclosure Statement upon which certain Holders of Impaired Claims entitled to vote shall, among other things, indicate their acceptance or rejection of this Plan, which includes the Master Ballots and Beneficial Holder Ballots.

9.    "*Bankruptcy Code*" means Title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as amended from time to time and as applicable to the Chapter 11 Cases.

10.    "*Bankruptcy Court*" means the United States Bankruptcy Court for the District of Delaware, or any other court having jurisdiction over the Chapter 11 Cases.

11.    "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court, in each case as amended from time to time and as applicable to the Chapter 11 Cases.

12.    "*Beneficial Holder*" means, as of the applicable date of determination, a beneficial owner of the Senior Secured Notes as reflected in the records maintained by the Registered Record Owner, or Intermediary Record Owner, as applicable.

13.    "*Beneficial Holder Ballots*" means the ballots accompanying the Disclosure Statement upon which Beneficial Holders of Senior Secured Notes Claims entitled to vote shall, among other things, indicate their acceptance or rejection of the Plan in accordance with the Plan and the procedures governing the solicitation process.

14.    "*Business Day*" means any day, other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

15.    "*Cash*" means the legal tender of the United States of America or the equivalent thereof.

16.    "*Cash Collateral Order*" means the *Final Order (A) Authorizing the Debtors to Use Cash Collateral, (B) Granting Adequate Protection, and (C) Modifying the Automatic Stay*, entered by the Bankruptcy Court in the Chapter 11 Cases in a form acceptable to the Supporting Noteholders and the Senior Secured Notes Trustee.

17.    "*Causes of Action*" means any action, claim, cross-claim, third-party claim, cause of action, controversy, demand, right, Lien, indemnity, contribution, guaranty, suit, obligation, liability, debt, damage, judgment, account, defense, remedy, offset, power, privilege, license and franchise of any kind or character whatsoever, in each case whether known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, foreseen or unforeseen, direct or indirect, choate or inchoate, secured or unsecured, assertable directly or derivatively (including, without limitation, under alter ego theories), whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity or pursuant to any other theory of law.  For the avoidance of doubt, Cause of Action includes: (a) any right of setoff, counterclaim or recoupment and any claim for breach of contract or for breach of duties imposed by law or in equity; (b) the right to object to Claims or Equity Interests; (c) any claim pursuant to section 362 or chapter 5 of the Bankruptcy Code; (d) any claim or defense including fraud, mistake, duress and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) any claims under any state or foreign law, including, any Avoidance Actions (except as otherwise limited herein).

18.    "*Chapter 11 Cases*" means, with respect to a Debtor, such Debtor's case under chapter 11 of the Bankruptcy Code commenced on the Petition Date in the Bankruptcy Court, jointly administered with all other Debtors' cases under chapter 11 of the Bankruptcy Code, and styled *In re Fuse, LLC, et al.*, Case No. 19-[_____ (____)].

19.    "*Claim*" means any "claim" against any Debtor as defined in section 101(5) of the Bankruptcy Code.

20.    "*Claims Register*" means the official register of Claims maintained by the Voting Agent.

21.    "*Class*" means a category of Holders of Claims or Equity Interests as set forth in Article III hereof pursuant to section 1122(a) of the Bankruptcy Code.

22.    "*Collateral*" means any property or interest in property of any Debtor's Estate that is subject to a valid and enforceable Lien to secure a Claim.

23.    "*Committee*" means any committee of unsecured creditors in the Chapter 11 Cases appointed pursuant to section 1102 of the Bankruptcy Code.

24.    "*Confirmation Date*" means the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court.

25. "*Confirmation Hearing*" means the hearing held by the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code to consider confirmation of this Plan, as such hearing may be adjourned or continued from time to time.

26. "*Confirmation Order*" means the order of the Bankruptcy Court both confirming this Plan pursuant to section 1129 of the Bankruptcy Code and approving the Disclosure Statement.

27. "*Consummation*" or "*Consummated*" means the occurrence of the Effective Date.

28. "*Credit Agreement*" means that certain credit agreement to be executed by and among Operating Subsidiary, as the borrower, Reorganized Parent and certain of its subsidiaries, as guarantors, and an administrative agent and the lenders identified from time to time thereto.

29. "*Debtor(s)*" means, individually, Fuse, LLC; JAAM Productions, LLC; SCN Distributions, LLC; Latino Events LLC; Fuse Holdings LLC; Fuse Finance, Inc.; and FM Networks LLC, in each case, in their capacities as debtors in the Chapter 11 Cases. *For the avoidance of doubt, Debtors Fuse Media, Inc. and Fuse Media, LLC are not proponents of the Plan and the provisions of the Plan shall not extend to those entities.*

30. "*Debtor(s) in Possession*" means, individually, each Debtor, as debtor in possession in their Chapter 11 Cases as of the Petition Date and, collectively, all Debtors, as debtors in possession in the Chapter 11 Cases.

31. "*Deficiency Claim*" means the unsecured deficiency Claim arising under the Senior Secured Notes.

32. "*Disallowed*" means any Claim that is not Allowed.

33. "*Disclosure Statement*" means that certain *Disclosure Statement for Debtors' Prepackaged Joint Plan of Reorganization*, as amended, supplemented, or modified from time to time and describes the Plan, including all exhibits and schedules thereto and references therein that relate to the Plan.

34. "*Disputed*" means, with respect to a Claim, (a) any Claim, which Claim is disputed under Article IX of this Plan or as to which the Debtors have interposed and not withdrawn an objection or request for estimation that has not been determined by a Final Order; (b) any Claim that is listed in the Schedules, if any are Filed, as unliquidated, contingent or disputed, and as to which no request for payment or proof of claim has been Filed; or (c) any Claim that is otherwise disputed by any of the Debtors or Reorganized Debtors in accordance with applicable law or contract, which dispute has not been withdrawn, resolved or overruled by a Final Order.  To the extent the Debtors dispute only the amount of a Claim, such Claim shall be deemed Allowed in the amount the Debtors do not dispute, if any, and Disputed as to the balance of such Claim.

35. "*Distribution Agent*" means Reorganized Parent or any party designated by Reorganized Parent to serve as distribution agent under this Plan.

36.      "*Distribution Record Date*" means the date for determining which Holders of Claims are eligible to receive distributions hereunder, as such date shall be fixed by order of the Bankruptcy Court.

37.      "*D&O Liability Insurance Policies*" means all insurance policies for directors' and officers' liability maintained by the Debtors as of the Petition Date, including tail coverage with a term of at least six (6) years from and after the termination of any such policies and containing the same coverage that exists under such policies as of the Effective Date.

38.      "*DTC*" means the Depository Trust Company.

39.      "*Effective Date*" means the Business Day that this Plan becomes effective as provided in Article X hereof.

40.      "*Entity*" means an "entity" as defined in section 101(15) of the Bankruptcy Code.

41.      "*Equity Interest*" means any Equity Security in any Debtor, including, without limitation, all issued, unissued, authorized or outstanding shares of stock or limited company interests, together with (i) any options, warrants or contractual rights to purchase or acquire any such Equity Securities at any time with respect to such Debtor, and all rights arising with respect thereto and (ii) the rights of any Entity to purchase or demand the issuance of any of the foregoing and shall include:  (1) conversion, exchange, voting, participation, and dividend rights; (2) liquidation preferences; (3) options, warrants, and put rights; and (4) stock-appreciation rights.  The term "Equity Interest" also includes any Claim that has been subordinated to the status of an Equity Security.

42.      "*Equity Security*" means an "equity security" as defined in section 101(16) of the Bankruptcy Code.

43.      "*Estates*" means the bankruptcy estates of the Debtors created by virtue of section 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Cases.

44.      "*Exchange Act*" means the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a *et seq.*, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder, and any similar federal, state or local law.

45.      "*Exculpated Parties*" means, collectively:  (a) the Debtors, (b) the Reorganized Debtors, and (c) their respective current and former officers, directors, managers, financial advisors, attorneys, accountants, investment bankers, and other professionals, in each case acting in such capacity at any time.

46.      "*Exculpation*" means the exculpation provision set forth in Article X.B hereof.

47.      "*Executory Contract*" means a contract to which any Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

48.      "*Exhibit*" means an exhibit annexed hereto, to the Plan Supplement or as an appendix to the Disclosure Statement (as such exhibits are amended, modified or otherwise supplemented from time to time), which are incorporated by reference herein.

- 6 -

49.     "*File*" or "*Filed*" or "*Filing*" means file, filed or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Cases.

50.     "*Final Order*" means an order of the Bankruptcy Court, which is in full force and effect and has not been reversed, modified or amended, that is not stayed, and to which the time to appeal, petition for *certiorari*, or move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for *certiorari*, or other proceedings for a new trial, reargument or rehearing shall then be pending or as to which any right to appeal, petition for *certiorari*, new trial, reargument, or rehearing shall have been waived in writing in form and substance satisfactory to the Debtors or the Reorganized Debtors and the Supporting Noteholders, or, in the event that an appeal, writ of *certiorari*, new trial, reargument, or rehearing thereof has been sought, no stay pending appeal has been granted or such order of the Bankruptcy Court shall have been determined by the highest court to which such order was appealed, or *certiorari*, new trial, reargument or rehearing shall have been denied and the time to take any further appeal, petition for *certiorari*, or move for a new trial, reargument or rehearing shall have expired; *provided, however*, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be Filed with respect to such order shall not preclude such order from being a Final Order.

51.     "*Fuse Litigation Trust*" means the trust established pursuant to the Litigation Trust Agreement.

52.     "*General Unsecured Claim*" means any Claim against any Debtor, including the Deficiency Claim, that is not a/an:  (a) Administrative Expense Claim; (b) Priority Tax Claim; (c) Other Priority Claim; (d) Other Secured Debt Claim; (e) Senior Secured Notes Claim; (f) Intercompany Claim, or (g) Equity Interest.

53.     "*Governmental Unit*" means a "governmental unit" as defined in section 101(27) of the Bankruptcy Code.

54.     "*Holder*" means an Entity holding a Claim against, or Equity Interest in, any Debtor and, with respect to the Senior Secured Notes Claims, the Beneficial Holder thereof as of the applicable date of determination or any authorized agent of such Entity who has completed and executed a Ballot or on whose behalf a Master Ballot has been completed and executed in accordance with the voting instructions that are attached to the Ballot or Master Ballot, as applicable.

55.     "*Impaired*" means, when used in reference to a Claim or Equity Interest, a Claim or Equity Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

56.     "*Indemnification Provision*" means each of the indemnification provisions currently in place (whether in the bylaws, certificates of incorporation, board resolutions, employment contracts or otherwise) for the current and former directors, officers, employees, attorneys, other professionals and agents of the Debtors who served in such capacity on or any time after the Petition Date.

57.      "*Initial Distribution Date*" means, subject to the "Treatment" sections in Article III hereof, the date that is as soon as reasonably practicable after the Effective Date, when distributions under this Plan shall commence to Holders of Allowed Claims.

58.     "*Intercompany Claim*" means any Claim of a Debtor against any other Debtor.  Intercompany Claims are extinguished by virtue of the substantive consolidation of the Debtors for allowance and distribution purposes under the Plan.

59.     "*Intermediary Record Owners*" means, as of the applicable date of determination, the banks, brokerage firms, or the agents thereof as the Entity through which the Beneficial Holders hold Senior Secured Notes.

60.     "*Key Employee Retention Agreements*" means the (i) the individual key employee retention plan 1 bonus agreement to be entered into by and among the Reorganized Debtors and certain key employees of the Reorganized Debtors, (ii) Fuse, LLC Sale Bonus Plan and the award agreements entered into thereunder, and (iii) Fuse, LLC Retention Plan 2 and the award agreements entered into thereunder, in each case, the form of which is included in the Plan Supplement in form and substance satisfactory to the Supporting Noteholders.

61.     "*Lien*" means a "lien" as defined in section 101(37) of the Bankruptcy Code and, with respect to any asset, includes, without limitation, any mortgage, lien, pledge, charge, security interest or other encumbrance of any kind, or any other type of preferential arrangement that has the practical effect of creating a security interest, in respect of such asset.

62.     "*Litigation Claims*" means the claims, rights of action, suits or proceedings, whether in law or in equity, whether known or unknown, that any Debtor or Estate may hold against any Entity, including any and all Causes of Action of the Debtors (other than Claims in the nature of setoff or recoupment and except as otherwise limited herein), including, but not limited to, any and all Causes of Action against AT&T Services, Inc., DirecTV, LLC, and each of their respective Related Persons.

63.     "*Litigation Trust Oversight Committee*" means the committee formed pursuant to Article VI.C of the Plan to, among other things, select the Litigation Trustee, oversee the Fuse Litigation Trust, the work of the Litigation Trustee and the prosecution of the Litigation Claims.

64.     "*Litigation Trust Agreement*" means that certain agreement made by and among the Debtors, as depositor of the Litigation Claims, and the Litigation Trustee or the Litigation Trust Oversight Committee, as applicable, establishing  and delineating the terms and conditions of the Fuse Litigation Trust, substantially in the form to be filed as part of the Plan Supplement.

65.     "*Litigation Trust Assets*" means all assets held from time to time by the Fuse Litigation Trust (including the Litigation Claims), the proceeds of which shall be distributed to the Holders of Litigation Trust Interests on a Pro Rata basis after payment in full of any and all Litigation Trust Expenses.

66.     "*Litigation Trust Beneficiaries*" means the Holders of Allowed Senior Secured Notes Claims.

67.     "*Litigation Trust Expenses*" means the fees and expenses of the Litigation Trustee, including, without limitation, professional fees and expenses incurred in connection with the prosecution of the Litigation Claims.

68.    "*Litigation Trust Interests*" means the interests to be issued to the Holders of Allowed Senior Secured Notes Claims evidencing their interests in the Fuse Litigation Trust and the right to receive Pro Rata distributions therefrom as set forth in the Litigation Trust Agreement.

69.    "*Litigation Trustee*" means that Person selected by the Litigation Trust Oversight Committee to act as the trustee of the Fuse Litigation Trust or any of his, hers or its successors.

70.    "*Local Rules*" means the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware.

71.    "*Master Ballots*" means the ballot distributed to the Registered Record Owners or Intermediary Record Owners, as applicable, of the Senior Secured Notes to record the votes of the Beneficial Holders of the Senior Secured Notes as of the Voting Record Date applicable to Senior Secured Notes Claims.

72.    "*Moelis Sellside Engagement Letter*" means that engagement letter dated prior to the Petition Date, as amended and supplemented, by and between Fuse, LLC and Moelis & Company LLC, which shall become effective on or after the Effective Date.

73.    "*New Board*" means the initial board of managers of Reorganized Parent.

74.    "*New Membership Interests*" means the new membership interests in Reorganized Parent to be issued on the Effective Date pursuant to the New Organizational Documents of Reorganized Parent.

75.    "*New Operating Agreement*" means that certain operating agreement of the Reorganized Parent to be entered into by the holders of New Membership Interests, which shall be included in the Plan Supplement in substantially final form and in form and substance as mutually agreed to between the Debtors and the Supporting Noteholders. For the avoidance of doubt, and notwithstanding anything to the contrary contained herein, the New Operating Agreement shall provide, among other things, that (i) in the event of a sale of the Reorganized Debtors to a third party, including a sale to any shareholder of the Reorganized Debtors, the Reorganized Debtors shall have the right to drag along all shareholders and each shareholder shall have the right to tag along in connection with any such sale, and (ii) with respect to any sale to a third party by any shareholder of the Reorganized Debtors of all or a portion of the Reorganized Debtors' shares, all other shareholders of the Reorganized  Debtors will have tag along rights, provided however, that such tag along rights shall only be triggered in a sale or a series of sales by such selling shareholder that are with respect to more than 5% of the issued and outstanding shares or interests of the Reorganized Debtors in the aggregate.

76.    "*New Organizational Documents*" means the New Operating Agreement and other applicable organizational documents of Reorganized Parent to be Filed with the Plan Supplement, in each case, in substantially final form and in form and substance as mutually agreed to between the Debtors and the Supporting Noteholders.

77.    "*New Secured Debt*" means a new first lien term loan in the amount of Forty-Five Million Dollars ($45,000,000) that will be owed by the Reorganized Debtors to the holders of the Senior Secured Notes Claims pursuant to the New Secured Debt Documents.

78.     "*New Secured Debt Documents*" means the Credit Agreement governing the New Secured Debt and the related notes, guarantees, and security documents, as the case may be, each in form and substance mutually agreed between the Debtors and the Supporting Noteholders, which shall be included in the Plan Supplement.

79.     "*Operating Subsidiary*" means Fuse, LLC, as reorganized pursuant to this Plan on or after the Effective Date.

80.     "*Ordinary Course Professionals Order*" means any Order approving the motion to employ ordinary course professionals to be Filed on or after the Petition Date in the Chapter 11 Cases.

81.     "*Other Priority Claim*" means any Claim against a Debtor accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than a Priority Tax Claim or an Administrative Expense Claim.

82.     "*Other Secured Debt Claim*" means any Secured Claim against a Debtor other than an Administrative Expense Claim or Senior Secured Notes Claim.

83.     "*Person*" means a "person" as defined in section 101(41) of the Bankruptcy Code and also includes any natural person, corporation, general or limited partnership, limited liability company, firm, trust, association, government, governmental agency or other Entity, whether acting in an individual, fiduciary or other capacity.

84.     "*Petition Date*" means the date on which the Debtors commenced the Chapter 11 Cases.

85.     "*Plan*" means this *Debtors' Amended Prepackaged Joint Plan of Reorganization*, including the Exhibits and Plan Schedules and all supplements, appendices, and schedules thereto, either in its present form or as the same may be altered, amended, modified or otherwise supplemented from time to time.

86.     "*Plan Distribution*" means the payment or distribution of consideration to holders of Allowed Claims and Equity Interests under this Plan.

87.     "*Plan Documents*" means any of the documents, other than this Plan, to be executed, delivered, assumed, or performed in connection with the occurrence of the Effective Date, including, without limitation, the documents to be included in the Plan Supplement, the New Operating Agreement, the New Secured Debt Documents, the Litigation Trust Agreement, and the Key Employee Retention Agreements, in each case, subject to the approval of the Supporting Noteholders.

88.     "*Plan Schedule*" means a schedule annexed to either the Plan Supplement or as an appendix to the Disclosure Statement (as amended, modified or otherwise supplemented from time to time), or Filed as part of the Plan Supplement.

89.     "*Plan Supplement*" means, collectively, the compilation of documents and forms of documents, and all exhibits, attachments, schedules, agreements, documents and instruments referred to therein, ancillary or otherwise, including, without limitation, the Exhibits, Plan Documents and Plan Schedules, all of which are incorporated by reference into, and are an integral part of, this Plan, as all of the same may be amended, modified, replaced and/or

supplemented from time to time, which shall be Filed with the Bankruptcy Court on or before five (5) Business Days prior to the Confirmation Hearing.

90. "*Postpetition*" means the time period beginning immediately upon the filing of the Chapter 11 Cases and ending on the Effective Date.

91. "*Priority Tax Claim*" means any Claim of a Governmental Unit against a Debtor of the kind specified in section 507(a)(8) of the Bankruptcy Code.

92. "*Pro Rata*" means the proportion that (a) the Allowed amount of a Claim in a particular Class (or several Classes taken as a whole) bears to (b) the aggregate Allowed amount of all Claims in such Class (or several Classes taken as a whole), unless this Plan provides otherwise.

93. "*Professional*" means (a) any Entity employed in the Chapter 11 Cases pursuant to section 327, 363 or 1103 of the Bankruptcy Code or otherwise and (b) any Entity seeking compensation or reimbursement of expenses in connection with the Chapter 11 Cases pursuant to section 503(b)(4) of the Bankruptcy Code.

94. "*Professional Fee Claim*" means a Claim under sections 328, 330(a), 331, 363, 503 or 1103 of the Bankruptcy Code for Accrued Professional Compensation.

95. "*Proof of Claim*" means a proof of Claim or Equity Interest Filed against any Debtor in the Chapter 11 Cases.

96. "*Registered Record Owners*" means, as of the applicable date of determination, the Holders of Senior Secured Notes on the books and records of DTC.

97. "*Reinstated*" means, with respect to any Claim, (a) leaving unaltered the legal, equitable, and contractual rights to which a Claim entitles the holder of such Claim in accordance with Section 1124 of the Bankruptcy Code or (b) notwithstanding any contractual provision or applicable law that entitles the holder of such Claim to demand or receive accelerated payment of such Claim after the occurrence of a default: (i) curing any such default that occurred before or after the Petition Date, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code or of a kind that section 365(b)(2) of the Bankruptcy Code expressly does not require to be cured; (ii) reinstating the maturity of such Claim as such maturity existed before such default; (iii) compensating the holder of such Claim for any damages incurred as a result of any reasonable reliance by such Holder on such contractual provision or such applicable law; (iv) if such Claim arises from any failure to perform a non-monetary obligation, other than a default arising from failure to operate a non-residential real property lease subject to section 365(b)(1)(A) of the Bankruptcy Code, compensating the Holder of such Claim (other than any Debtor or an insider of any Debtor) for any actual pecuniary loss incurred by such Holder as a result of such failure; and (v) not otherwise altering the legal, equitable, or contractual rights to which such Claim entitles the Holder of such Claim.

98. "*Related Persons*" means, with respect to any Person, such Person's predecessors, successors, assigns and present and former Affiliates (whether by operation of law or otherwise) and subsidiaries, and each of their respective current and former officers, directors, principals, employees, employers, shareholders, members (including *ex officio* members), general partners, limited partners, agents, managers, managing members, financial advisors, attorneys, accountants, investment bankers, investment advisors, consultants, representatives,

and other professionals, in each case acting in such capacity at any time, and any Person claiming by or through any of them.

99.    "*Release*" means the release given by the Releasing Parties to the Released Parties as set forth in Article XI.B hereof.

100.    "*Released Party*" means, collectively, each in its capacity as such:  (a) the Debtors; (b) the Debtors' current and former directors and officers; (c) the Reorganized Debtors; (d) the Senior Secured Notes Trustee; (e) the Supporting Noteholders; (f) the Holders of the Senior Secured Notes Claims who vote in favor of the Plan; and (g) the Related Persons of each of (a) through (f) of the foregoing.

101.    "*Releasing Party*" has the meaning set forth in Article XI.B hereof.

102.    "*Reorganized Debtors*" means (i) the Reorganized Parent, (ii) the Operating Subsidiary and (iii) each other Debtor, as reorganized pursuant to this Plan on or after the Effective Date.  ***For the avoidance of doubt, Debtors Fuse Media, Inc. and Fuse Media, LLC are not Reorganized Debtors.***

103.    "*Reorganized Parent*" means Fuse Holding, LLC, a newly created limited liability company to be formed pursuant to this Plan on or prior to the Effective Date. Reorganized Parent is not a Debtor under these Chapter 11 Cases.

104.    "*Restructuring*" means the financial restructuring of the Debtors, the principal terms of which are set forth in this Plan, the Disclosure Statement, and the Plan Supplement.

105.    "*Restructuring Expenses*" means the documented reasonable fees and expenses incurred by the Supporting Noteholders in connection with the Restructuring, the Supporting Noteholders Professional Reimbursement Letters, and any documentation relating thereto, including, without limitation, the fees and expenses of (a) Fried, Frank, Harris, Shriver & Jacobson LLP; (b) Moelis & Company; (c) Richards, Layton & Finger, PA (in each case, as counsel or financial advisor to certain of the Supporting Noteholders); and (d) any other advisor to the Supporting Noteholders, as approved by the Debtors, in each case, payable without the requirement for the filing of retention applications, fee applications, or any other applications in the Chapter 11 Cases, which shall be Allowed in full as Administrative Expense Claims upon incurrence and shall not be subject to any offset, defense, counterclaim, reduction, or credit.

106.    "*Restructuring Transactions*" means one or more transactions pursuant to section 1123(a)(5)(D) of the Bankruptcy Code to occur on the Effective Date or as soon as reasonably practicable thereafter that may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, including (a) the execution and delivery of appropriate agreements or other documents containing terms that are consistent with or reasonably necessary to implement the terms of this Plan and that satisfy the requirements of applicable law; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any property, right, liability, duty, or obligation on terms consistent with the terms of the Plan and the Plan Documents; and (c) all other actions that the Debtors or Reorganized Debtors, as applicable, determine are necessary or appropriate and consistent with the Plan and the Plan Documents.

107. "*Schedules*" means the schedules of Assets and liabilities, statements of financial affairs, lists of holders of Claims and Equity Interests and all amendments or supplements thereto Filed by the Debtors with the Bankruptcy Court.

108. "*SEC*" means the Securities and Exchange Commission, or any successor agency.

109. "*Secured Claim*" means a Claim that is secured by a Lien on property in which any Debtor's Estate has an interest or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Claim holder's interest in such Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code or, in the case of setoff, pursuant to section 553 of the Bankruptcy Code.

110. "*Securities Act*" means the Securities Act of 1933, 15 U.S.C. §§ 77c-77aa, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder, and any similar federal, state or local law.

111. "*Security*" or "*security*" means any security as such term is defined in section 101(49) of the Bankruptcy Code.

112. "*Senior Secured Notes*" means, collectively, the 10.375% Senior Secured Notes due 2019 issued by Fuse, LLC (formerly known as SiTV, LLC) and Fuse Finance, Inc. (formerly known as SiTV Financing, Inc.) pursuant to the Senior Secured Notes Indenture.

113. "*Senior Secured Notes Claims*" means all Claims against a Debtor arising under or relating to (a) the Senior Secured Notes and/or the Senior Secured Notes Indenture, and (b) all agreements and instruments relating to the foregoing (including, but not limited to, any guarantees with respect thereto) that remain unpaid and outstanding as of the Effective Date.

114. "*Senior Secured Notes Indenture*" means the Indenture dated as of July 1, 2014, pursuant to which the Senior Secured Notes were issued, as amended, waived, supplemented, refinanced or as otherwise modified from time to time, among Fuse, LLC (formerly known as SiTV, LLC) and Fuse Finance, Inc. (formerly known as SiTV Finance, Inc.), as issuers, certain guarantors, and the Senior Secured Notes Trustee.

115. "*Senior Secured Notes Trustee*" means Wilmington Trust, National Association, in its capacity as indenture trustee and collateral agent under the Senior Secured Notes Indenture, or any successor trustee.

116. "*Senior Secured Notes Trustee Charging Lien*" means any Lien or other priority in payment to which the Senior Secured Notes Trustee is entitled under the terms of the Senior Secured Notes Indenture to assert against distributions to be made to Beneficial Holders under such Senior Secured Notes Indenture.

117. "*Senior Secured Notes Trustee Fees*" means the reasonable fees and unpaid out-of-pocket costs and expenses incurred by the Senior Secured Notes Trustee through the Effective Date in accordance with the Senior Secured Notes Indenture and the Cash Collateral Order, including, without limitation, the fees and expenses of (a) Wilmer Cutler Pickering Hale and Dorr LLP and (b) local counsel retained by the Senior Secured Notes Trustee, payable without the requirement for the filing of retention applications, fee applications,

or any other applications in the Chapter 11 Cases, which shall be Allowed in full as Administrative Expense Claims upon incurrence and shall not be subject to any offset, defense, counterclaim, reduction, or credit.

118.    "*Solicitation*" means the solicitation of votes of those parties entitled to vote to accept or reject the Plan.

119.    "*Stamp or Similar Tax*" means any stamp tax, recording tax, personal property tax, conveyance fee, intangibles or similar tax, real estate transfer tax, sales tax, use tax, transaction privilege tax (including, without limitation, such taxes on prime contracting and owner-builder sales), privilege taxes (including, without limitation, privilege taxes on construction contracting with regard to speculative builders and owner builders), and other similar taxes imposed or assessed by any Governmental Unit.

120.    "*Supporting Noteholders*" means the following Holders of the Senior Secured Notes, each in its capacity as the beneficial holder of the Senior Secured Notes or in its capacity as investment advisor, investment manager of, or advisor or subadvisor to, certain fund(s) and account(s) that are beneficial holders of the Senior Secured Notes:  (a) Amzak Capital Management, LLC, (b) Ascribe III Investments LLC, (c) ICE Canyon LLC, on behalf of its participating clients, (d) Millstreet Capital Management LLC, as investment manager on behalf of multiple noteholders, and (e) Phoenix Investment Advisor LLC.

121.    "*Supporting Noteholders Professionals*" mean (a) Fried, Frank, Harris, Shriver & Jacobson LLP; (b) Moelis & Company; (c) Richards, Layton & Finger, PA and (d) any other advisor to Supporting Noteholders as approved by the Debtors.

122.    "*Supporting Noteholders Professional Reimbursement Letters*" means that certain (a) reimbursement agreement dated as of December 21, 2018, as amended and supplemented, by and between the Debtors and Fried, Frank, Harris, Shriver, & Jacobson, LLP; (b) reimbursement agreement dated as of January 10, 2019, as amended and supplemented, by and between the Debtors and Moelis & Company and (c) any reimbursement agreement, as amended and supplemented, by and between the Debtors and Richards Layton & Finger, PA.

123.    "*Transfer*" means, with respect to any security or the right to receive a security or to participate in any offering of any security, (i) the sale, transfer, pledge, hypothecation, encumbrance, assignment, constructive sale, participation in, or other disposition of such security or right or the beneficial ownership thereof, (ii) the offer to make such a sale, transfer, constructive sale, or other disposition, and (iii) each option, agreement, arrangement, or understanding, whether or not in writing and whether or not directly or indirectly, to effect any of the foregoing.  The term "constructive sale" for purposes of this definition means (i) a short sale with respect to such security or right, (ii) entering into or acquiring an offsetting derivative contract with respect to such security or right, (iii) entering into or acquiring a futures or forward contract to deliver such security or right, or (iv) entering into any transaction that has substantially the same effect as any of the foregoing.  The term "beneficially owned" or "beneficial ownership" as used in this definition shall include, with respect to any security or right, the beneficial ownership of such security or right by a Person and by any direct or indirect subsidiary of such Person.

124.    "*Unexpired Lease*" means a lease to which any Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

125.    "*Unimpaired*" means, with respect to a Class of Claims or Equity Interests that is not impaired within the meaning of section 1124 of the Bankruptcy Code.

126.    "*Voting Agent*" means Kurtzman Carson Consultants LLC and any successor.

127.    "*Voting Class*" means Class 3 under this Plan.

128.    "*Voting Record Date*" means the date for determining which Holders of Claims are entitled to receive the Disclosure Statement and vote to accept or reject this Plan, which date is April 5, 2019, for all Holders of Claims in the voting class.

## ARTICLE II.
## ADMINISTRATIVE AND PRIORITY TAX CLAIMS

### A.    Administrative Expense Claims

On the later of the Effective Date or the date on which an Administrative Expense Claim becomes an Allowed Administrative Expense Claim, or, in each such case, as soon as practicable thereafter, each Holder of an Allowed Administrative Expense Claim will receive, in full and final satisfaction of, and in exchange for, such Claim either (i) payment in full in Cash for the unpaid portion of such Allowed Administrative Expense Claim; or (ii) such other less favorable treatment as agreed to in writing by the Debtors or Reorganized Debtors, as applicable, and such Holder; *provided, however*, that Administrative Expense Claims incurred by the Debtors in the ordinary course of business may be paid in the ordinary course of business in the discretion of the Debtors or Reorganized Debtors in accordance with such applicable terms and conditions relating thereto without further notice to or order of the Bankruptcy Court.  All statutory fees payable under 28 U.S.C. § 1930(a) shall be paid as such fees become due.

*Professional Fee Claims*.  Professionals or other Entities asserting a Professional Fee Claim for services rendered through the Effective Date must File, within thirty (30) days after the Effective Date, and serve on the Reorganized Debtors and such other Entities who are designated by the Bankruptcy Rules, the Confirmation Order or other order of the Bankruptcy Court an application for final allowance of such Professional Fee Claim; *provided* that the Reorganized Debtors will pay Professionals in the ordinary course of business, for any work performed after the Effective Date, including those fees and expenses incurred by Professionals in connection with the implementation and consummation of the Plan, in each case without further application or notice to or order of the Bankruptcy Court in full, in Cash, in such amounts as are Allowed by the Bankruptcy Court in accordance with the order(s) relating to or allowing any such Fee Claim; *provided, further*, that any professional who may receive compensation or reimbursement of expenses pursuant to the Ordinary Course Professionals Order may continue to receive such compensation and reimbursement of expenses for services rendered before the Effective Date, without further Bankruptcy Court order, pursuant to the Ordinary Course Professionals Order.

Objections to any Professional Fee Claim must be Filed and served on the Reorganized Debtors and the requesting party twenty-one days (21) days after the Filing of the applicable request for payment of the Professional Fee Claim.  Each Holder of an Allowed Professional Fee Claim will be paid by the Reorganized Debtors in Cash within five (5) Business Days of entry of the order approving such Allowed Professional Fee Claim.

*Restructuring Expenses and Senior Secured Notes Trustee Fees* .  The fees and expenses incurred by the Supporting Noteholder Professionals and the Senior Secured Notes Trustee Fees will be paid in connection with this Plan or any applicable orders entered by the Bankruptcy Court, including, as applicable, the Cash Collateral Order, on the Effective Date or as soon as reasonably practicable thereafter.  Nothing herein shall require such professionals (or the Senior Secured Notes Trustee) to file applications with, or otherwise seek approval of, the Bankruptcy Court as a condition to the payment of such fees and expenses.

**B.**    **Priority Tax Claims**

On or as soon as reasonably practicable after the later of (i) the Initial Distribution Date if such Priority Tax Claim is an Allowed Priority Tax Claim as of the Effective Date or (ii) the date on which such Priority Tax Claim becomes an Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim will receive in full and final satisfaction of, and in exchange for, such Allowed Priority Tax Claim, at the election of the Debtors or Reorganized Debtors:  (a) Cash in an amount equal to the amount of such Allowed Priority Tax Claim; or (b) such other less favorable treatment as agreed to in writing by the Debtors or Reorganized Debtors, as applicable, and such Holder.  Payment of statutory fees due pursuant to 28 U.S.C. § 1930(a)(6) will be made at all appropriate times until the entry of a final decree or order converting or dismissing the Chapter 11 Cases *provided, however*, that the Debtors may prepay any or all such Claims at any time, without premium or penalty.

**ARTICLE III.**
**CLASSIFICATION AND TREATMENT OF**
**CLASSIFIED CLAIMS AND EQUITY INTERESTS**

**A.**    **Summary**

All Claims and Equity Interests, except Administrative Expense Claims and Priority Tax Claims, are placed in the Classes set forth below.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims have not been classified as described in Article III, Section B of the Plan.

The categories of Claims and Equity Interests listed below classify Claims and Equity Interests for all purposes including, without limitation, voting, confirmation and distribution pursuant to the Plan and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.  The Plan deems a Claim or Equity Interest to be classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and will be deemed classified in a different Class to the extent that any remainder of such Claim or Equity Interest qualifies within the description of such different Class.  A Claim or Equity Interest is in a particular Class only to the extent that any such Claim or Equity Interest is Allowed in that Class and has not been paid, released or otherwise settled prior to the Effective Date.

**Summary of Classification and Treatment of Classified Claims and Equity Interests**

| Class | Claim | Status | Voting Rights |
| --- | --- | --- | --- |
| 1 | Other Priority Claims | Unimpaired | Deemed to Accept |
| 2 | Other Secured Debt Claims | Unimpaired | Deemed to Accept |
| 3 | Senior Secured Notes Claims | Impaired | Entitled to Vote |

| Class | Claim | Status | Voting Rights |
|-------|-------|--------|---------------|
| 4 | General Unsecured Claims | Impaired | Deemed to Reject |
| 5 | Equity Interests in Debtors | Impaired | Deemed to Reject |

**B.**     **Separate Classification of Other Secured Debt Claims**

Although all Other Secured Debt Claims have been placed in one Class for purposes of nomenclature within this Plan, each Other Secured Claim, to the extent secured by a Lien on Collateral different from the Collateral securing a different Other Secured Claim, shall be treated as being in a separate sub-Class for the purposes of voting to accept or reject this Plan and receiving Plan Distributions.

**C.**     **Elimination of Vacant Classes**

Any Class that, as of the commencement of the Confirmation Hearing, does not have at least one holder of a Claim or Interest that is Allowed in an amount greater than zero for voting purposes shall be considered vacant, deemed eliminated from this Plan for purposes of voting to accept or reject this Plan, and disregarded for purposes of determining whether this Plan satisfies section 1129(a)(8) of the Bankruptcy Code with respect to such Class.

**D.**     **Voting; Presumptions; Solicitation in Good Faith**

Only holders of Allowed Claims in Class 3 are entitled to vote to accept or reject this Plan.  An Impaired Class of Claims shall have accepted this Plan if (i) the holders of at least two-thirds (2/3) in amount of the Allowed Claims actually voting in such Class have voted to accept this Plan and (ii) the holders of more than one-half (1/2) in number of the Allowed Claims actually voting in such Class have voted to accept this Plan.  Holders of Claims in Class 3 have received ballots containing detailed voting instructions.

The Debtors have, and upon the Effective Date the Reorganized Debtors shall be deemed to have, solicited votes on the Plan from the Voting Class in good faith and in compliance with the applicable provisions of the Bankruptcy Code.  Accordingly, the Debtors and the Reorganized Debtors and each of their respective Related Persons shall be entitled to, and upon the Confirmation Date are hereby granted, the protections of section 1125(e) of the Bankruptcy Code.

**E.**     **Cramdown**

If any Class of Claims is deemed to reject this Plan or is entitled to vote on this Plan and does not vote to accept this Plan, the Debtors intend to (i) seek confirmation of this Plan under section 1129(b) of the Bankruptcy Code or (ii) amend or modify this Plan in accordance with the terms hereof and the Bankruptcy Code.  If a controversy arises as to whether any Claims or Interests, or any class of Claims or Interests, are impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

**F.**     **Classification and Treatment of Claims and Equity Interests**

1.     Class 1 – Other Priority Claims

- *Classification*:  Class 1 consists of the Other Priority Claims.

- *Treatment*:  The legal, equitable and contractual rights of the Holders of Class 1 Claims are unaltered by the Plan.  With respect to each Allowed Class 1 Claim, on or as soon as reasonably practicable after the later of (i) the Initial Distribution Date if such Class 1 Claim is an Allowed Class 1 Claim on the Effective Date or (ii) the date on which such Class 1 Claim becomes an Allowed Class 1 Claim, each Holder of an Allowed Class 1 Claim will receive in full and final satisfaction of, and in exchange for, such Allowed Class 1 Claim, at the election of the Debtors or Reorganized Debtors:  (A) Cash equal to the amount of such Allowed Class 1 Claim; (B) such other less favorable treatment as to which the Debtors or Reorganized Debtors and the Holder of such Allowed Class 1 Claim will have agreed upon in writing; or (C) such other treatment such that it will not be impaired pursuant to section 1124 of the Bankruptcy Code.

- *Impairment and Voting*:  Class 1 is an Unimpaired Class, and the Holders of Class 1 Claims are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the Holders of Class 1 Claims will not be entitled to vote to accept or reject the Plan and will not be solicited.

2.    Class 2 – Other Secured Debt Claims

- *Classification*:  Each Class 2 Claim is an Other Secured Debt Claim against the Debtors.  This Class will be further divided into subclasses designated by letters of the alphabet (Class 2A, Class 2B and so on), so that each holder of any Allowed Other Secured Debt Claim against the Debtors is in a Class by itself, except to the extent that there are Other Secured Debt Claims that are substantially similar to each other and may be included within a single Class.

- *Treatment*:  The legal, equitable and contractual rights of the Holders of Class 2 Claims are unaltered by the Plan.  With respect to each Allowed Class 2 Claim, on or as soon as reasonably practicable after the later of (i) the Initial Distribution Date if such Class 2 Claim is an Allowed Class 2 Claim on the Effective Date or (ii) the date on which such Class 2 Claim becomes an Allowed Class 2 Claim, each Holder of an Allowed Class 2 Claim will receive in full and final satisfaction of, and in exchange for, such Allowed Class 2 Claim, at the election of the Debtors or Reorganized Debtors:  (A) Cash equal to the amount of such Allowed Class 2 Claim; (B) return of the collateral securing such Allowed Class 2 Claim; (C) such other less favorable treatment as to which the Debtors or Reorganized Debtors and the Holder of such Allowed Class 2 Claim will have agreed upon in writing; (D) any defaults shall be cured and shall be paid or satisfied in accordance with and pursuant to the terms of the applicable agreement between the Debtors and the Holder of the Allowed Class 2 Claim; or (E) Reinstatement or such other treatment such

that it will not be impaired pursuant to section 1124 of the Bankruptcy Code.  Except with respect to Claims that are treated in accordance with the preceding clause (B), each Holder of an Allowed Class 2 Claim will retain the Liens securing its Allowed Class 2 Claim as of the Effective Date until full and final payment of such Allowed Class 2 Claim is made as provided herein.

- *Impairment and Voting*:  Class 2 is an Unimpaired Class, and the Holders of Class 2 Claims are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the Holders of Class 2 Claims will not be entitled to vote to accept or reject the Plan and will not be solicited.

3.    Class 3 – Senior Secured Notes Claims

- *Classification*:  Class 3 consists of the Senior Secured Notes Claims.

- *Allowance*:  Notwithstanding any provisions of Article IX to the contrary, the Senior Secured Notes Claims will be deemed Allowed, without offset, counterclaim or defense of any kind, in the aggregate principal amount of Two Hundred Forty-Two Million Dollars ($242,000,000), plus accrued interest, fees, costs and expenses and other amounts in accordance with the Cash Collateral Order.

- *Treatment*:  On the Effective Date, each and every Holder of an Allowed Senior Secured Notes Claim, in full and final satisfaction of, and in exchange for, such Claim, shall receive its Pro Rata share of:  (a) Cash in the Debtors' accounts, except for Cash needed in the Reorganized Debtors' operations and to fund the Fuse Litigation Trust, as mutually agreed upon by the Debtors and the Supporting Noteholders, (b) the New Secured Debt, (c) 100% of the New Membership Interests of Reorganized Parent and (d) 100% of the Litigation Trust Interests in the Fuse Litigation Trust.

- *Impairment and Voting*:  Class 3 is an Impaired Class, and Holders of Class 3 Claims are entitled to vote to accept or reject the Plan.

4.    Class 4 – General Unsecured Claims

- *Classification*:  Class 4 consists of the General Unsecured Claims.

- *Treatment*:  Because the Debtors have pledged substantially all of their assets that have any material value as Collateral to secure the Senior Secured Notes Claims and no unencumbered assets in the Estates have any material value (taking into account the deficiency claims arising under the Senior Secured Notes and the Administrative Expense Claims that the Holders of the Senior Secured Notes are expected to assert for the diminution in the value of their Collateral during the Chapter 11 Cases), the Holders

of Class 4 General Unsecured Claims will receive no distributions under the Plan.

- *Impairment and Voting*: Class 4 is Impaired and the Holders of Class 5 Claims are deemed to reject the Plan and will not be solicited.

5.    Class 5 – Equity Interests in Debtors

- *Classification*: Class 5 consists of the Equity Interests in the Debtors.

- *Treatment*: All Class 5 Equity Interests in the Debtors will be deemed cancelled upon the Effective Date and will be of no further force and effect, whether surrendered for cancellation or otherwise. The Holders of Class 5 Equity Interests in the Debtors will receive no distributions under the Plan.  Notwithstanding the foregoing, the Equity Interests in the Debtors shall be Reinstated upon the Effective Date and deemed issued to and held by Reorganized Parent, directly or indirectly as applicable, as such Equity Interests were held prior to the Effective Date (except for the Equity Interests of Fuse, LLC, which shall be held directly by the Reorganized Parent).

- *Impairment and Voting*: Class 5 is Impaired and the Holders of Equity Interests in the Debtors are deemed to reject the Plan and will not be solicited.

## G.    **Special Provision Governing Unimpaired Claims**

Except as otherwise provided in the Plan, nothing under the Plan will affect the Debtors' rights in respect of any Unimpaired Claims, including, without limitation, all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claims, including the right to cure any arrears or defaults that may exist with respect to contracts to be assumed under the Plan.

## H.    **Discharge of Claims**

Except as otherwise provided in the Plan and effective as of the Effective Date:  (i) the rights afforded herein and the treatment of all Claims and Equity Interests will be in exchange for and in complete discharge of all Claims and Equity Interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, against the Debtors or any of their Assets, property, or Estates; (ii) the Plan will bind all Holders of Claims and Equity Interests, notwithstanding whether any such Holders abstained from voting to accept or reject the Plan or voted to reject the Plan; (iii) all Claims and Equity Interests will be discharged and the Debtors' liability with respect thereto will be extinguished completely, including any liability of the kind specified under section 502(g) of the Bankruptcy Code; and (iv) all Entities will be precluded from asserting against the Debtors, the Debtors' Estates, the Reorganized Debtors, each of their successors and assigns, and each of their Assets and properties, any other Claims or Equity Interests based upon any documents, instruments or any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date.

## I.     Subordinated Claims

The allowance, classification, and treatment of all Claims under the Plan shall take into account and conform to the contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise.  Pursuant to section 510 of the Bankruptcy Code, the Reorganized Debtors, with the consent of the Supporting Noteholders, reserve the right to re-classify, or to seek to subordinate, any Claim in accordance with any contractual, legal, or equitable subordination relating thereto, and the treatment afforded any Claim under the Plan that becomes a subordinated Claim at any time shall be modified to reflect such subordination.  Unless the Confirmation Order provides otherwise, no distributions under the Plan shall be made on account of any subordinated Claim.

## J.     Intercompany Claims

Intercompany Claims are extinguished by virtue of the substantive consolidation of the Debtors for allowance and distribution purposes under the Plan.

## ARTICLE IV.
## ACCEPTANCE OR REJECTION OF THE PLAN

## A.     Presumed Acceptance of Plan

Classes 1 and 2 are Unimpaired under the Plan, and are, therefore, presumed to have accepted the Plan pursuant to section 1126 of the Bankruptcy Code.

## B.     Presumed Rejection of Plan

Classes 4 and 5 are Impaired and shall receive no distribution under the Plan on account of such Claims and Equity Interests and are, therefore, deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.

## C.     Voting Class

Each Holder of an Allowed Claim as of the applicable Voting Record Date in the Voting Class (Class 3) will be entitled to vote to accept or reject the Plan.

## D.     Acceptance by Impaired Classes of Claims

Pursuant to section 1126(c) of the Bankruptcy Code and except as otherwise provided in section 1126(e) of the Bankruptcy Code, an Impaired Class of Claims has accepted the Plan if the Holders of at least two-thirds in dollar amount and more than one-half in number of the Allowed Claims in such Class actually voting have voted to accept the Plan.

## E.     Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code

The Debtors request confirmation of the Plan under section 1129(b) of the Bankruptcy Code with respect to any Impaired Class that does not accept the Plan pursuant to section 1126 of the Bankruptcy Code.  The Debtors, subject to the consent of the Supporting Noteholders, reserve the right to modify the Plan or any Exhibit thereto or Plan Schedule in order to satisfy the requirements of section 1129(b) of the Bankruptcy Code, if necessary.

## ARTICLE V.
## MEANS FOR IMPLEMENTATION OF THE PLAN

### A.      General Settlement of Claims

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan will constitute a good faith compromise and settlement of all Claims and Equity Interests and controversies resolved pursuant to the Plan.

### B.      Corporate Existence

The Debtors will continue to exist after the Effective Date as separate legal entities, with all of the powers of corporations, limited liability companies, partnerships, associations, or other business entities pursuant to the applicable law in their states of incorporation or organization.

Prior to the Effective Date, the Debtors shall take all actions as necessary and required to form Reorganized Parent. After the Effective Date, Reorganized Parent shall exist with all of the powers pursuant to the New Operating Agreement and the New Organizational Documents.

On or after the Effective Date, without prejudice to the rights of any party to a contract or other agreement with any Reorganized Debtor, each Reorganized Debtor may, in its sole discretion, take such action as permitted by applicable law, the New Organizational Documents, and such Reorganized Debtor's organizational documents, as such Reorganized Debtor may determine is reasonable and appropriate, including, without limitation, causing: (i) a Reorganized Debtor to be merged into another Reorganized Debtor or an affiliate of a Reorganized Debtor; (ii) a Reorganized Debtor to be dissolved; (iii) the legal name of a Reorganized Debtor to be changed; or (iv) the closure of a Reorganized Debtor's Chapter 11 Case on the Effective Date or any time thereafter.

On the Effective Date or as soon thereafter as is reasonably practicable, and without need for any notice to or any vote, consent, authorization, approval, ratification or other action by any Entity or any director, stockholder, securityholder, manager, member, or partner (or board thereof) of any Entity, the Reorganized Debtors may take all actions as may be necessary or appropriate to effect any transaction described in, approved by, or necessary or appropriate to effectuate this Plan, including, without limitation:  (i) the execution and delivery of appropriate agreements or other documents of merger, consolidation, restructuring, conversion, disposition, transfer, dissolution, or liquidation containing terms that are consistent with the terms of this Plan and the Plan Documents and that satisfy the requirements of applicable law and any other terms to which the applicable entities may agree; (ii) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any Asset, property, right, liability, debt, or obligation on terms consistent with the terms of this Plan and having other terms to which the applicable parties agree; (iii) the filing of appropriate certificates or articles of incorporation and amendments thereto, reincorporation, merger, consolidation, conversion, or dissolution pursuant to applicable law; (iv) the Restructuring Transactions; and (v) all other actions that the applicable entities determine to be necessary or appropriate, including, without limitation, making filings or recordings that may be required by applicable law.

## C.     Vesting of Assets in the Reorganized Debtors

Except as otherwise provided in the Plan or the Confirmation Order, on or after the Effective Date, all property and Assets of the Estates (including, without limitation, Causes of Action) and any property and Assets acquired by the Debtors pursuant to the Plan will vest in the Reorganized Debtors, free and clear of all Liens, Claims, charges or other encumbrances.  Except as may be otherwise provided in the Plan, on and after the Effective Date, the Reorganized Debtors may operate their businesses and may use, acquire or dispose of property and compromise or settle any Claims without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and the Confirmation Order.  Without limiting the foregoing, the Reorganized Debtors will pay the charges that they incur after the Effective Date for Professionals' fees, disbursements, expenses or related support services (including reasonable fees relating to the preparation of Professional fee applications) in the ordinary course of business and without application or notice to, or order of, the Bankruptcy Court.  For the avoidance of doubt, the Litigation Trust Assets shall not revest in the Reorganized Debtors and instead the Litigation Trust Assets shall vest in the Fuse Litigation Trust pursuant to Article VI.B of the Plan.

## D.     New Secured Debt; Sources of Cash for Plan Distributions

(a)     *New Secured Debt*.  On the Effective Date, Operating Subsidiary, as borrower, and Reorganized Parent and certain other Debtors, as guarantors, will incur the New Secured Debt, which will consist of a first lien term loan in the aggregate principal amount of Forty-Five Million Dollars ($45,000,000).  The lenders under the New Secured Debt will be each of the existing Holders of the Senior Secured Notes.

The New Secured Debt will mature in five years from the date of the issuance thereof and will accrue interest at the rate of 12.00% per annum, which shall be payable in Cash, quarterly in arrears.  Excess cash flow of the Reorganized Debtors (to be defined in the New Secured Debt Documents as mutually agreed upon by the Debtors and the Supporting Noteholders), shall be distributed to the Holders of the New Secured Debt on a quarterly basis.  The New Secured Debt shall have a first lien on substantially all of the assets of the Reorganized Debtors, including the New Membership Interests of Reorganized Parent, subject to customary exceptions to be set forth in the New Secured Debt Documents.

On the Effective Date, the Reorganized Debtors will be authorized to execute and deliver the New Secured Debt Documents, and any related instruments and documents, and will be authorized to execute, deliver, file, record and issue any other notes, guarantees, security agreements, documents (including UCC financing statements, intellectual property security agreements to be filed in the U.S. Patent & Trademark Office and deposit account control agreements with the Debtors' depositary banks), amendments to the foregoing, or agreements in connection therewith, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule and without need for any notice to or any vote, consent, authorization, approval, ratification or other action by any Entity or any director, stockholder, securityholder, manager, member, or partner (or board thereof) of any Entity, subject to the lien limitations set forth herein.

(b)     *Sources of Cash for Plan Distribution.*  Except as otherwise provided in the Plan or the Confirmation Order, all Cash necessary for the Reorganized Debtors to make payments required pursuant to the Plan will be obtained from the New Secured Debt and the Reorganized

Debtors' Cash balances, including Cash from operations.  Cash payments to be made pursuant to the Plan will be made by the Reorganized Debtors.

## E.      Treatment of Vacant Classes

Any Claim or Interest in a Class is considered vacant under Article III.C of this Plan shall receive no Plan Distribution.

## F.      Key Employee Retention Agreements

The Key Employee Retention Agreements shall be Filed with the Plan Supplement and implemented on or soon after the Effective Date.

Except as otherwise set forth therein, the Key Employee Retention Agreements shall supersede any existing employment agreement or retention agreement with respect to any individual covered by, included in or receiving compensation under any of the Key Employee Retention Agreements, including any severance benefit plans or policies, any "Liquidation Event" bonuses and any other bonuses, benefits or form of compensation, including accrued vacation or paid time off benefits, and such existing agreements shall be deemed rejected and all Claims arising under or relating thereto shall be forever waived, extinguished and discharged (other than as set forth in the Key Employee Retention Agreements).

## G.      Issuance of New Membership Interests and Related Documentation

On the Effective Date, the Reorganized Parent will be authorized to and will issue the New Membership Interests without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule and without need for any notice to or any vote, consent, authorization, approval, ratification or other action by any Entity or any director, stockholder, securityholder, manager, member, or partner (or board thereof) of any Entity.  From and after the Effective Date, the Reorganized Debtors will cease to be under any disclosure or other obligations under the Senior Secured Notes Indenture.

The New Membership Interests of Reorganized Parent to be issued and distributed pursuant to the Plan will be exempt from the registration requirements of federal, state or local securities laws to the fullest extent permitted by section 3(a)(9) of the Securities Act, section 4(a)(2) of the Securities Act and Regulation D promulgated thereunder, and/or Section 1145(a) of the Bankruptcy Code.  Without limiting the effects of such provisions, all financing documents, agreements, and instruments entered into and delivered on or as of the Effective Date contemplated by or in furtherance of the Plan, including, without limitation, the New Membership Interests and any other agreement or document related to or entered into in connection with any of the foregoing, will become effective and binding in accordance with their respective terms and conditions upon execution and delivery by the parties thereto, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule and without need for any notice to or any vote, consent, authorization, approval, ratification or other action by any Entity or any director, stockholder, securityholder, manager, member, or partner (or board thereof) of any Entity (other than as expressly required by such applicable agreement).

The New Membership Interests of Reorganized Parent shall constitute a single class of Equity Security in Reorganized Parent and there shall exist no other Equity Securities, warrants, options, or other agreements to acquire any equity interest in Reorganized Parent.  Upon the

Effective Date, after giving effect to the transactions contemplated hereby, the New Membership Interests of Reorganized Parent shall be governed by the New Organizational Documents.

On the Effective Date, as a condition to receiving any distribution of New Membership Interests, all holders of the New Membership Interests shall be deemed parties to and bound by the New Operating Agreement that will be filed with the Plan Supplement and that shall contain customary terms including transfer restrictions, preemptive rights, right of first offer, tag-along rights, drag-along rights, and certain information rights. The New Operating Agreement shall be binding on Reorganized Parent and all parties receiving, and all holders of, the New Membership Interests (whether received under the Plan or otherwise) regardless of whether such parties execute the New Operating Agreement.

## H.    **Substantive Consolidation for Plan Purposes**

The Plan serves as a motion by the Debtors seeking entry, pursuant to section 105 of the Bankruptcy Code, of an order authorizing, on the Effective Date, the substantive consolidation of the Estates of all of the Debtors for purposes of classifying and treating all Claims under the Plan, including for voting, confirmation, and distribution purposes only. Substantive consolidation will not (i) alter the state of organization of any Debtor for purposes of determining applicable law of any of the Causes of Action, (ii) alter or impair the legal and equitable rights of the Debtors to enforce any of the Causes of Action, or (iii) otherwise impair, release, discharge, extinguish or affect any of the Causes of Action or issues raised as a part thereof.

If substantive consolidation is ordered, then on and after the Effective Date, all Assets and liabilities of the Debtors shall be treated as though they were merged into a single estate for purposes of treatment of and distributions on Claims. All duplicative Claims (identical in both amount and subject matter) Filed against more than one of the Debtors shall automatically be expunged so that only one Claim survives against the consolidated Debtors. All guarantees by any Debtor of the obligations of any other Debtor shall be eliminated so that any Claim and any guarantee thereof by any other Debtor, as well as any joint and/or several liability of any Debtor with respect to any other Debtor, shall be treated as one collective obligation of the Debtors. Any alleged defaults under any applicable agreement with the Debtors arising from substantive consolidation under this Plan shall be deemed cured as of the Effective Date.

## I.    **Release of Liens, Claims and Equity Interests**

Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan, all Liens, Claims, Equity Interests, mortgages, deeds of trust, or other security interests against the property of the Estates will be fully released, terminated, extinguished and discharged, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule and without need for any notice to or any vote, consent, authorization, approval, ratification or other action by any Entity or any director, stockholder, securityholder, manager, member, or partner (or board thereof) of any Entity. Any Entity holding such Liens or Interests will, pursuant to section 1142 of the Bankruptcy Code, promptly execute and deliver to the Reorganized Debtors such instruments of termination, release, satisfaction and/or assignment (in recordable form) as may be reasonably requested by the Reorganized Debtors.

J.  **New Organizational Documents**

The New Organizational Documents shall satisfy the provisions of the Plan and the Bankruptcy Code, and will (i) include, among other things, pursuant to section 1123(a)(6) of the Bankruptcy Code, a provision prohibiting the issuance of non-voting equity securities, but only to the extent required by section 1123(a)(6) of the Bankruptcy Code; (ii) authorize the issuance of New Membership Interests in an amount not less than the amount necessary to permit the distributions thereof required or contemplated by the Plan; (iii) to the extent necessary or appropriate, include restrictions on the Transfer of New Membership Interests; and (iv) to the extent necessary or appropriate, include such provisions as may be needed to effectuate and consummate the Plan and the transactions contemplated herein. After the Effective Date, the Reorganized Debtors may amend and restate their operating agreement and other applicable organizational documents, as permitted by applicable law.

K.  **Managers and Officers of Reorganized Debtors**

The New Board will be comprised initially of five (5) members designated by the Supporting Noteholders, including a lead director who shall have such authority and duties as the New Board may determine.

As of the Effective Date, the initial officers of the Reorganized Debtors will be the officers of the Debtors existing immediately prior to the Effective Date. As of the Effective Date, the Reorganized Parent shall be the sole member of Fuse, LLC, and Fuse, LLC shall be the sole member and manager of the Reorganized Debtors, other than Reorganized Parent, FM Networks LLC, and Fuse Finance, Inc. Fuse Holdings, LLC shall be the sole member and manager of FM Networks LLC. Fuse, LLC shall be the sole shareholder of Fuse Finance, Inc. Except as set forth in the Plan, any other managers of the Debtors shall be deemed removed as of the Effective Date.

Pursuant to section 1129(a)(5) of the Bankruptcy Code, the Debtors will disclose, prior to the Confirmation Hearing, the identity and affiliations of any Person proposed to serve on the initial board of managers or directors or as an officer of the Reorganized Debtors and, to the extent such Person is an insider other than by virtue of being a director or officer, the nature of any compensation for such Person. Each such manager, director, and officer will serve from and after the Effective Date pursuant to applicable law and the terms of the New Organizational Documents and the other constituent and organizational documents of the Reorganized Debtors. Except as set forth herein, the existing directors and managers of the Debtors will be deemed to have resigned on and as of the Effective Date, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule and without need for any notice to or any vote, consent, authorization, approval, ratification or other action by any Entity or any other Person or any director, stockholder, securityholder, manager, member, or partner (or board thereof) of any Entity.

L.  **Corporate Action**

Each of the Debtors and the Reorganized Debtors, as applicable, may take any and all actions to execute, deliver, File or record such contracts, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and implement the provisions of the Plan, including, without limitation, the distribution of the securities to be issued pursuant hereto in the name of and on behalf of the Reorganized Debtors and in each case without further notice to or order of the Bankruptcy Court, act or action under

applicable law, regulation, order, or rule and without need for any notice to or any vote, consent, authorization, approval, ratification or other action by any Entity or any other Person or any director, stockholder, securityholder, manager, member, or partner (or board thereof) of any Entity (except for those expressly required pursuant to the Plan).

Prior to, on or after the Effective Date (as appropriate), all matters provided for pursuant to the Plan that would otherwise require approval of any stockholders, securityholders, directors, managers, members or partners of any Debtor (as of prior to the Effective Date) will be deemed to have been so approved and will be in effect prior to, on or after the Effective Date (as appropriate) pursuant to applicable law and without any requirement of further notice to or any vote, consent, authorization, approval, ratification or other action by the stockholders, directors, managers or members of such Debtors, or the need for any notice to or any vote, consent, authorization, approval, ratification or other, action by any Person.

All matters provided for in the Plan involving the legal or corporate structure of any Debtor or any Reorganized Debtor, as applicable, and any legal or corporate action required by any Debtor or any Reorganized Debtor as applicable, in connection with the Plan, will be deemed to have occurred and will be in full force and effect in all respects, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule and without need for any notice to or any vote, consent, authorization, approval, ratification or other action by any Entity or any other Person or any director, stockholder, manager, member, or partner (or board thereof) of any Entity. On the Effective Date, the appropriate officers of each Debtor and each Reorganized Debtor, as applicable, are authorized to issue, execute, deliver, and consummate the transactions contemplated by, the contracts, agreements, documents, guarantees, pledges, consents, securities, certificates, resolutions and instruments contemplated by or described in the Plan in the name of and on behalf of the Debtor and each Reorganized Debtor, as applicable, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule and without need for any notice to or any vote, consent, authorization, approval, ratification or other action by any Entity or other Person or any director, stockholder, manager, member, or partner (or board thereof) of any Entity. The secretary and any assistant secretary of each Debtor and each Reorganized Debtor, as applicable, will be authorized to certify or attest to any of the foregoing actions.

**M.    Cancellation of Notes, Certificates and Instruments**

Except for the purpose of evidencing a right to a distribution under this Plan and except as otherwise set forth in this Plan, on the Effective Date, all agreements, instruments, Securities and other documents evidencing any prepetition Claim against or Interest in any Reorganized Debtor and any rights of any holder in respect thereof shall be deemed cancelled, discharged, and of no force or effect, including any relating to the Equity Interests in Fuse, LLC. The holders of or parties to such cancelled instruments, Securities, and other documentation will have no rights arising from or related to such instruments, Securities, or other documentation or the cancellation thereof, except the rights provided for pursuant to this Plan and the obligations of the Debtors thereunder or in any way related thereto will be fully released, terminated, extinguished and discharged, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule and without need for any notice to or any vote, consent, authorization, approval, ratification or other action by any Entity or other Person or any director, stockholder, manager, member, or partner (or board thereof) of any Entity. Notwithstanding such cancellation and discharge, the Senior Secured Notes Indenture shall continue in effect to the extent necessary to: (1) allow the Senior Secured Notes Trustee to

enforce the rights, Claims and interests of the Senior Secured Notes Trustee and any predecessor thereto vis-à-vis the Holders of Senior Secured Notes and any parties other than the Debtors or any other Released Party; (2) allow Holders of Senior Secured Notes Claims to receive Plan Distributions; (3) allow the Reorganized Debtors to make distributions pursuant to the Plan; (4) allow the Senior Secured Notes Trustee to receive distributions under the Plan on account of the Senior Secured Notes Claims for further distribution in accordance with the Senior Secured Notes Indenture; (5) allow the Senior Secured Notes Trustee to seek compensation and/or reimbursement of fees and expenses in accordance with the Plan and the Cash Collateral Order; (6) preserve any rights of the Senior Secured Notes Trustee to payment of fees, expenses, and indemnification obligations as against any parties other than the Debtors or the Reorganized Debtors, and any money or property distributable to the Beneficial Holders under the relevant instrument, including any rights to priority of payment or to exercise charging liens (including the Senior Secured Notes Charging Lien); and (7) appear and be heard in the Chapter 11 Cases or in any proceeding in the Bankruptcy Court, including to enforce any obligation owed to the Senior Secured Notes Trustee or the Holders of Senior Secured Notes Claims under the Plan. Except as provided pursuant to this Plan, the Senior Secured Notes Trustee and its respective agents, successors, and assigns shall be discharged of all of their obligations associated with the Senior Secured Notes Indenture.  The commitments and obligations (if any) of the Holders of the Senior Secured Notes to extend any further or future credit or financial accommodations to any of the Debtors, any of their respective subsidiaries or any of their respective successors or assigns under the Senior Secured Notes Indenture shall fully terminate and be of no further force or effect on the Effective Date.

**N.**     **Cancellation of Existing Instruments Governing Security Interests**

Upon the full payment or other satisfaction of an Allowed Other Secured Claim, or promptly thereafter, the holder of such Allowed Other Secured Claim shall deliver to the Debtors or Reorganized Debtors, as applicable, any Collateral or other property of a Debtor held by such holder, together with any termination statements, instruments of satisfaction, or releases of all security interests with respect to its Allowed Other Secured Claim that may be reasonably required to terminate any related financing statements, mortgages, mechanics' or other statutory Liens, or lis pendens, or similar interests or documents.

**O.**     **Equity Interests in Subsidiaries; Corporate Reorganization**

On the Effective Date and without need for any notice to or any vote, consent, authorization, approval, ratification or other action by any Entity or other Person or any director, stockholder, manager, member, or partner (or board thereof) of any Entity, the certificates and all other documents representing the Equity Interests in the Debtors, shall be deemed to be in full force and effect as they existed prior to the Petition Date except for the Equity Interests of Fuse, LLC, which shall be held directly by the Reorganized Parent, and except as expressly modified by this Plan.

**P.**     **Restructuring Transactions**

On the Effective Date or as soon as reasonably practicable thereafter, and without need for any notice to or any vote, consent, authorization, approval, ratification or other action by any Entity or other Person or any director, stockholder, manager, member, or partner (or board thereof) of any Entity, the Debtors or Reorganized Debtors, as applicable, may take all actions consistent with this Plan as may be necessary or appropriate to effect any transaction described

in, approved by, contemplated by, or necessary to effectuate the Restructuring Transactions under and in connection with this Plan.

## Q.    Plan Supplement, Other Documents and Orders

The documents to be Filed as part of the Plan Supplement and the other documents and orders referenced herein, or otherwise to be executed in connection with the transactions contemplated hereunder, shall be subject to the consent and the approval of the Supporting Noteholders.

# ARTICLE VI.
# LITIGATION TRUST

## A.    The Litigation Trustee

*Appointment of the Litigation Trustee*.  The Litigation Trustee shall be selected by the Supporting Noteholders.  The Litigation Trustee will be compensated by the Fuse Litigation Trust.

*Powers of the Litigation Trustee*.  The Litigation Trustee shall be a representative of the Debtors' Estates and shall, subject to the terms of the Litigation Trust Agreement, have the power to make all decisions with respect to the prosecution of the Litigation Claims; *provided*, *however*, that the following actions will require prior written approval of the Litigation Trust Oversight Committee: (a) the selection of any successor Litigation Trustee; (b) any determination to borrow money or incur funded indebtedness; (c) the retention of counsel and other professionals to assist in prosecution of the Litigation Claims and the terms of each professional's engagement, including any alternative fee arrangements; (d) settlement of all or any portion of the Litigation Claims, and (e) any arrangement for compensation of the Litigation Trustee.

The Litigation Trustee shall consult with, and obtain approval of, the Litigation Trust Oversight Committee with respect to all material decisions regarding (x) the prosecution of the Litigation Claims, including (without limitation) the litigation strategy with respect thereto, and the filing and prosecution of any dispositive or other substantive motions or pleadings, and (y) the assertion or waiver of the Debtors' attorney-client privilege (to which the Litigation Trust shall succeed with respect to the Litigation Trust Assets).

*The Litigation Trustee as the Representative of the Debtors' Estates*.  On the Effective Date, the Litigation Trustee, and not the Reorganized Debtors shall be deemed the Estates' representative in accordance with Section 1123 of the Bankruptcy Code and shall have all the rights and powers set forth in the Litigation Trust Agreement, including, without limitation, the right to (1) effect all actions and execute all agreements, instruments and other documents necessary to implement the provisions of the Litigation Trust Agreement; (2) administer the Litigation Trust Assets, including prosecuting, settling, abandoning or compromising any actions that are or relate to the Litigation Trust Assets; (3) employ and compensate professionals and other agents consistent with this Article VI.A of the Plan, *provided, however*, that any such compensation shall be paid by the Fuse Litigation Trust to the extent not inconsistent with the status of the Fuse Litigation Trust as a liquidating trust within the meaning of Treas. Reg. § 301.7701-4(d) for federal income tax purposes; and (4) control attorney/client privilege relating to or arising from the Litigation Trust Assets.

B.    **The Fuse Litigation Trust**

On the Effective Date, the Fuse Litigation Trust shall be established pursuant to the Litigation Trust Agreement for the purpose of prosecuting the Litigation Claims.  The Fuse Litigation Trust is intended to qualify as a liquidating trust pursuant to United States Treasury Regulation Article 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business.

On the Effective Date, the Litigation Trust Assets shall vest automatically in the Fuse Litigation Trust.  The Plan shall be considered a motion pursuant to Sections 105, 363 and 365 of the Bankruptcy Code for such relief.  The transfer of the Litigation Trust Assets to the Fuse Litigation Trust shall be made for the benefit and on behalf of the Litigation Trust Beneficiaries. The assets comprising the Litigation Trust Assets will be treated for tax purposes as being transferred by the Debtors to the Litigation Trust Beneficiaries pursuant to the Plan in exchange for their Allowed Claims and then by the Litigation Trust Beneficiaries to the Fuse Litigation Trust in exchange for the Litigation Trust Interests in the Fuse Litigation Trust.  The Litigation Trust Beneficiaries shall be treated as the grantors and owners of the Fuse Litigation Trust. Upon the transfer of the Litigation Trust Assets, the Fuse Litigation Trust shall succeed to all of the Debtors' rights, title and interest in the Litigation Trust Assets, and the Debtors will have no further interest in or with respect to the Litigation Trust Assets.  In pursuing the Litigation Claims, the Litigation Trustee shall be entitled to the tolling provisions provided under section 108 of the Bankruptcy Code, and shall succeed to the Debtors' rights with respect to the time periods in which any of the Litigation Claims may be brought under section 546 of the Bankruptcy Code. The Litigation Trust Agreement will require consistent valuation of the Litigation Trust Assets by the Reorganized Debtors, the Litigation Trustee and the Litigation Trust Beneficiaries for all U.S. federal income tax and reporting purposes.  The Fuse Litigation Trust will not be permitted to receive or retain Cash in excess of a reasonable amount to meet claims and contingent liabilities or to maintain the value of the Litigation Trust Assets.

In connection with the prosecution of the Litigation Claims, any attorney-client privilege, work-product privilege, joint interest privilege or other privilege or immunity attaching to any documents or communications (in any form, including, without limitation, written, electronic or oral) relating to the Litigation Claims shall be transferred to and shall vest in the Fuse Litigation Trust.  The Fuse Litigation Trust's receipt of such privileges associated with the Litigation Claims shall not operate as a waiver of those privileges possessed or retained by the Debtors, nor shall it operate to eliminate the rights of any co-defendant to any applicable joint privilege.  The Fuse Litigation Trust shall also be vested with the Debtors' rights, as such rights existed prior to the Effective Date, to conduct discovery and oral examinations of any party under Bankruptcy Rule 2004.  The Fuse Litigation Trust, however, shall not be considered a successor of any Debtor and shall not assume any obligations of the Debtors other than expressly provided for by the Plan.

Except as otherwise ordered by the Bankruptcy Court, the Litigation Trust Expenses on or after the Effective Date shall be paid in accordance with the Litigation Trust Agreement without further order of the Bankruptcy Court.

The Fuse Litigation Trust shall file annual reports regarding the liquidation or other administration of property comprising the Litigation Trust Assets, the distributions made by it and other matters required to be included in such report in accordance with the Litigation Trust Agreement.  In addition, the Fuse Litigation Trust will file tax returns as a grantor trust pursuant to United States Treasury Regulation Article 1.671-4(a).

The Litigation Trust Interests are not intended to constitute "securities."  To the extent the Litigation Trust Interests are deemed to be "securities," the issuance of such interests shall be exempt from registration under the Securities Act and any applicable state and local laws requiring registration of securities pursuant to section 1145 of the Bankruptcy Code or another available exemption from registration under the Securities Act.  If the Litigation Trustee determines, with the advice of counsel, that the Fuse Litigation Trust is required to comply with registration or reporting requirements under the Securities Act, the Exchange Act or other applicable law, then the Litigation Trustee shall take any and all actions to comply with such registration and reporting requirements, if any, and to file reports with the SEC to the extent required by applicable law.

The Fuse Litigation Trust shall be dissolved as soon as practicable after the date that is the earlier to occur of: (a) the distribution of all proceeds from the Litigation Claims available for distribution pursuant to the Plan, or (b) the determination of the Litigation Trust Oversight Committee that the continued prosecution of the Litigation Claims is not likely to yield sufficient additional proceeds to justify further pursuit.  For the avoidance of doubt, if certain Litigation Claims are compromised and settled by the Debtors prior to the Effective Date, or if the Supporting Noteholders determine that the continued prosecution of the Litigation Claims is not likely to yield sufficient proceeds to justify the pursuit of such Litigation Claims by the Fuse Litigation Trust, then notwithstanding the formation of the Fuse Litigation Trust in accordance with the terms of the Plan, the Fuse Litigation Trust may not be funded and the Litigation Trust Oversight Committee may determine to dissolve the Fuse Litigation Trust, in which case the Litigation Trust Assets shall revest in the Reorganized Debtors and shall not be deemed transferred to the Fuse Litigation Trust.

To the extent that the terms of the Plan with respect to the Fuse Litigation Trust are inconsistent with the terms set forth in the Litigation Trust Agreement, then the terms of the Litigation Trust Agreement shall govern.

## C.    The Litigation Trust Oversight Committee

(a)  The Litigation Trust Oversight Committee shall be comprised of five (5) members with each of the Supporting Noteholders designating one member to serve on the Litigation Trust Oversight Committee.  The identity of the members of the Litigation Trust Oversight Committee shall be disclosed in accordance with Section 1129(a)(5) of the Bankruptcy Code.

(b)  The Litigation Trust Oversight Committee shall oversee the Fuse Litigation Trust and the Litigation Trustee.

(c)  The Litigation Trust Oversight Committee shall be authorized to retain and employ Professionals to assist it with and advise it with respect to its duties under the Plan.  All fees and expenses of such Professionals shall be satisfied by the Fuse Litigation Trust.

(d)  The duties and powers of the Litigation Trust Oversight Committee shall terminate upon the final resolution of the Litigation Claims and the final distribution of all proceeds in accordance with the terms of the Litigation Trust Agreement.

## D.    Closing the Chapter 11 Cases

If applicable, the Fuse Litigation Trust shall seek authority from the Bankruptcy Court to close the Chapter 11 Cases in accordance with the Bankruptcy Code and the Bankruptcy Rules;

*provided, however*, that the Fuse Litigation Trust may keep one or more of the Debtors' cases open in order to resolve any Disputed Claims or to pursue Causes of Action or until the Fuse Litigation Trust has been terminated and all remaining Litigation Trust Assets have been distributed.  For the avoidance of doubt, the Chapter 11 Cases may be closed prior to termination of the Fuse Litigation Trust.

## ARTICLE VII.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### A.    Assumption and Rejection of Executory Contracts and Unexpired Leases

On the Effective Date, all Executory Contracts and Unexpired Leases of the Debtors will be deemed rejected in accordance with, and subject to, the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, except for those Executory Contracts and Unexpired Leases that:

1.    have previously expired or terminated pursuant to their own terms or by agreement of the parties thereto;

2.    have been assumed by order of the Bankruptcy Court;

3.    are the subject of a motion to assume pending on the Effective Date;

4.    are identified on a schedule of assumed contracts in the Plan Supplement; or

5.    are assumed pursuant to the terms of the Plan.

Without amending or altering any prior order of the Bankruptcy Court approving the assumption or rejection of any Executory Contract or Unexpired Lease, entry of the Confirmation Order by the Bankruptcy Court will constitute approval of such assumptions and rejections pursuant to sections 365(a) and 1123 of the Bankruptcy Code.  To the extent any provision in any Executory Contract or Unexpired Lease assumed pursuant to the Plan (including, without limitation, any "change of control" provision) restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the Reorganized Debtors' assumption of such Executory Contract or Unexpired Lease, then such provision will be deemed modified such that the transactions contemplated by the Plan will not entitle the non-debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto.  Each Executory Contract and Unexpired Lease assumed pursuant to this Article of the Plan will revest in and be fully enforceable by the Reorganized Debtors in accordance with its terms, except as modified by the provisions of the Plan, any order of the Bankruptcy Court authorizing and providing for its assumption, or applicable law.  Notwithstanding any of the foregoing, the Moelis Sellside Engagement Letter shall be assumed by the Debtors and shall be deemed effective on the Effective Date.

### B.    Assignment of Executory Contracts or Unexpired Leases

In the event of an assignment of an Executory Contract or Unexpired Lease, at least ten (10) days prior to the Confirmation Hearing, the Debtors will serve upon counterparties to such Executory Contracts and Unexpired Leases a notice of the proposed assumption and assignment that will:  (a) list the applicable cure amount, if any; (b) identify the party to which the Executory

Contract or Unexpired Lease will be assigned; (c) describe the procedures for filing objections thereto; and (d) explain the process by which related disputes will be resolved by the Bankruptcy Court; additionally, the Debtors will file with the Bankruptcy Court a list of such Executory Contracts and Unexpired Leases to be assigned and the proposed cure amounts. Any applicable cure amounts will be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the cure amount in Cash on the Effective Date or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree.

Any objection by a counterparty to an Executory Contract or Unexpired Lease to a proposed assignment or any related cure amount must be Filed, served and actually received by the Debtors at least three (3) Business Days prior to the Confirmation Hearing. Any counterparty to an Executory Contract and Unexpired Lease that fails to object timely to the proposed assignment or cure amount will be deemed to have consented to such assignment of its Executory Contract or Unexpired Lease. The Confirmation Order will constitute an order of the Bankruptcy Court approving any proposed assignments of Executory Contracts or Unexpired Leases pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date.

In the event of a dispute regarding (a) the amount of any cure payment, (b) the ability of any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assigned or (c) any other matter pertaining to assignment, the applicable cure payments required by section 365(b)(1) of the Bankruptcy Code will be made following the entry of a Final Order or orders resolving the dispute and approving the assignment. If an objection to assignment or cure amount is sustained by the Bankruptcy Court, the Reorganized Debtors, in their sole option, may elect to reject such Executory Contract or Unexpired Lease in lieu of assuming and assigning it.

## C.    Claims on Account of the Rejection of Executory Contracts or Unexpired Leases

All Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to the Plan or the Confirmation Order, if any, must be Filed with the Bankruptcy Court within thirty (30) days after service of notice of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection. The Debtor or Reorganized Debtor, as the case may be, will provide notice of such rejection and specify the appropriate deadline for the filing of such Proof of Claim.

Any Entity that is required to File a Proof of Claim arising from the rejection of an Executory Contract or an Unexpired Lease that fails to do so will be forever barred, estopped and enjoined from asserting such Claim, and such Claim will not be enforceable, against the Debtors, the Reorganized Debtors or the Estates, and the Debtors, the Reorganized Debtors and their Estates and property will be forever discharged from any and all indebtedness and liability with respect to such Claim unless otherwise ordered by the Bankruptcy Court or as otherwise provided in the Plan. All such Claims will, as of the Effective Date, be subject to the permanent injunction set forth in Article XII.D of the Plan. All claims arising from the rejection of any Executory Contract or Unexpired Lease shall be treated as General Unsecured Claims, subject to any applicable limitation or defense under the Bankruptcy Code and applicable law.

## D.    Cure of Defaults for Assumed Executory Contracts and Unexpired Leases

Any monetary amounts by which any Executory Contract or Unexpired Lease to be assumed hereunder is in default shall be satisfied, under section 365(b)(1) of the Bankruptcy

- 33 -

Code, by the Debtors or Reorganized Debtors, as applicable, upon assumption thereof, by payment of the default amount in Cash as and when due in the ordinary course or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree. Following the Petition Date, the Debtors may serve a notice on parties to executory contracts and unexpired leases to be assumed reflecting the Debtors' intention to assume the contract or lease in connection with this Plan and setting forth the proposed Cure Amount (if any). If a counterparty to any executory contract or unexpired lease that the Debtors or Reorganized Debtors, as applicable, intend to assume does not receive such a notice, the proposed Cure Amount for such executory contract or unexpired lease shall be deemed to be zero dollars ($0).

Any objection by a counterparty to an Executory Contract or Unexpired Lease to a proposed assumption must be Filed, served and actually received by the Debtors at least five (5) Business Days prior to the Confirmation Hearing. Any counterparty to an Executory Contract and Unexpired Lease that fails to object timely to the proposed assumption will be deemed to have assented and will be deemed to have forever released and waived any objection to the proposed assumption. In the event of a dispute regarding (1) the amount of any payments to cure a default, (2) the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed or (3) any other matter pertaining to assumption, the cure payments required by section 365(b)(1) of the Bankruptcy Code will be made following the entry of a Final Order or orders resolving the dispute and approving the assumption. If an objection to cure is sustained by the Bankruptcy Court, the Debtors or Reorganized Debtors, as applicable, in their sole option, may elect to reject such Executory Contract or Unexpired Lease in lieu of assuming it.

**E.     Assumption of Director and Officer Insurance Policies**

The Debtors and, upon the Effective Date, the Reorganized Debtors, will assume all of the D&O Liability Insurance Policies pursuant to section 365(a) of the Bankruptcy Code. Unless previously effectuated by separate order entered by the Bankruptcy Court, entry of the Confirmation Order will constitute the Bankruptcy Court's approval of the Debtors' foregoing assumption of each of the D&O Liability Insurance Policies. Notwithstanding anything to the contrary contained in the Plan, confirmation of the Plan will not discharge, impair or otherwise modify any indemnity obligations assumed by the foregoing assumption of the D&O Liability Insurance Policies, and each such indemnity obligation will be deemed and treated as an Executory Contract that has been assumed by the Debtors under the Plan as to which no Proof of Claim need be Filed. Notwithstanding anything to the contrary contained in the Plan, confirmation of the Plan will not impair or otherwise modify any rights of the Reorganized Debtors under the D&O Liability Insurance Policies.

Further, the Reorganized Debtors shall be authorized and required to purchase tail coverage with a term of at least three (3) years from and after the termination of any existing director and officers' liability insurance policies and containing the same coverage that exists under such policies as of the Effective Date.

**F.     Indemnification Provisions**

All Indemnification Provisions currently in place (whether in the by-laws, operating agreements, certificate of incorporation or organization, board resolutions, member consents, contracts, or otherwise) for the following: (i) the Senior Secured Notes Trustee; and (ii) directors, managers, officers and employees of the Debtors who served in such capacity as of the

Petition Date with respect to or based upon any act or omission taken or omitted in such capacities, for or on behalf of the Debtors, will be Reinstated (or assumed, as the case may be), and will survive effectiveness of the Plan.  No such Reinstatement or assumption shall in any way extend the scope or term of any Indemnification Provision beyond that contemplated in the underlying contract or document as applicable.

## G.    Compensation and Benefit Programs

Except as otherwise provided in the Plan, including Article V.F hereof, which exclusively governs all compensation and benefits for parties covered by or included in the Key Employee Retention Agreements and except for any employee equity or equity-based compensation or incentive plan, all employment and severance policies, and all compensation and benefit plans, policies, and programs of the Debtors applicable to their employees employed as of the Effective Date and retirees that are not parties to, covered by or included in the Key Employee Retention Agreements, including, without limitation, all accrued vacation (other than accrued vacation for any employee above such employee's applicable cap, which excess accrual shall be governed by a separate arrangement between the Debtors and such employee) vacation plans, savings plans, retirement plans, healthcare plans, disability plans, severance benefit plans, life, and accidental death and dismemberment insurance plans, are treated as Executory Contracts under the Plan and on the Effective Date will be assumed pursuant to the provisions of sections 365 and 1123 of the Bankruptcy Code and the Reorganized Debtors shall honor, in the ordinary course of business, all such arrangements with such employees; provided however, that the Debtors' or Reorganized Debtors' performance under any employment agreement will not entitle any person to any benefit or alleged entitlement under (a) the Key Employee Retention Agreements unless such person is explicitly named and identified in such agreements or (b) any policy, program, employment agreement or plan that has expired or been terminated, or restore, reinstate or revive any such benefit or alleged entitlement under any such policy, program, employment agreement or plan.

## H.    Insurance Policies

Other than the insurance policies otherwise discussed herein, all other insurance policies to which any Debtor is a party as of the Effective Date shall be deemed to be and treated as Executory Contracts and shall be assumed by the Reorganized Debtors and shall continue in full force and effect thereafter in accordance with their respective terms.  All existing insurance policies shall vest in the Reorganized Debtors.

## ARTICLE VIII.
## PROVISIONS GOVERNING DISTRIBUTIONS

## A.    Dates of Distributions

Except as otherwise provided in the plan, on the Effective Date or as soon as reasonably practicable thereafter (or if a Claim is not an Allowed Claim on the Effective Date, on the date that such Claim becomes an Allowed Claim, or as soon as reasonably practicable thereafter), each Holder of an Allowed Claim against the Debtors shall receive the full amount of the distributions that the Plan provides for Allowed Claims in the applicable Class and in the manner provided herein.  In the event that any payment or act under the Plan is required to be made or performed on a date that is not on a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.  If and to the extent there are Disputed

Claims, distributions on account of any such Disputed Claims shall be made pursuant to the provisions provided in the Plan.  Except as otherwise provided in the Plan, Holders of Claims shall not be entitled to interest, dividends or accruals on the distributions provided for therein, regardless of whether distributions are delivered on or at any time after the Effective Date.

Upon the Effective Date, all Debts of the Debtors shall be deemed fixed and adjusted pursuant to the Plan and the Reorganized Debtors shall have no liability on account of any Claims or Equity Interests except as set forth in the Plan and in the Confirmation Order.  All payments and all distributions made by the Distribution Agent under the Plan shall be in full and final satisfaction, settlement and release of all Claims against the Reorganized Debtors.

At the close of business on the Distribution Record Date, the transfer ledgers for the Senior Secured Notes shall be closed, and there shall be no further changes in the record holders of such indebtedness.  The Reorganized Debtors, the Distribution Agent, the Senior Secured Notes Trustee, and each of their respective agents, successors, and assigns shall have no obligation to recognize the transfer of any Senior Secured Notes occurring after the Distribution Record Date and shall be entitled instead to recognize and deal for all purposes hereunder with only those record holders stated on the transfer ledgers as of the close of business on the Distribution Record Date irrespective of the number of distributions to be made under the Plan to such Persons or the date of such distributions.

## B.    Distribution Agent

Except as provided therein, all distributions under the Plan shall be made by the Reorganized Debtors as Distribution Agent, or by such other Entity designated by the Debtors as a Distribution Agent on the Effective Date or thereafter.  The Reorganized Debtors, or such other Entity designated by the Debtors to be the Distribution Agent, shall not be required to give any bond or surety or other security for the performance of such Distribution Agent's duties unless otherwise ordered by the Bankruptcy Court.

The Distribution Agent shall be empowered to (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (b) make all distributions contemplated hereby; (c) employ professionals, transfer agents and registrars to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Distribution Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Distribution Agent to be necessary and proper to implement the provisions hereof.

## C.    Cash Distributions

Distributions of Cash may be made either by check drawn on a domestic bank or wire transfer from a domestic bank, at the option of the Reorganized Debtors, except that Cash payments made to foreign creditors may be made in such funds and by such means as are necessary or customary in a particular foreign jurisdiction.

## D.    Rounding of Payments

Whenever payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding down of such fraction to the nearest whole dollar or zero if the amount is less than one dollar.  To the extent that Cash, New Secured Debt, or New Membership Interests to be distributed under the Plan remain undistributed as a result of the rounding of such

fraction to the nearest whole dollar, such Cash or stock shall be treated as unclaimed property under Article VIII.H of the Plan.

Whenever payment of a fraction of a dollar would otherwise be called for, the actual payment shall reflect a rounding down of such fraction to the nearest whole dollar. To the extent that Cash, New Secured Debt, or New Membership Interests to be distributed under the Plan remain undistributed as a result of the rounding of such fraction to the nearest whole dollar, such Cash or stock shall be treated as unclaimed property under Article VIII.H of the Plan.

No fractional shares shall be issued or distributed under the Plan. Each Person entitled to receive New Membership Interests shall receive the total number of whole New Membership Interests to which such Person is entitled. Whenever any distribution to a particular Person would otherwise call for distribution of a fraction of New Membership Interests, the actual distribution of such interests shall be rounded to the next lower whole number.

### E.  Distributions on Account of Claims Allowed After the Effective Date

Except as otherwise agreed by the Holder of a particular Claim or as provided in the Plan, all distributions shall be made pursuant to the terms of the Plan and the Confirmation Order. Distributions to any Holder of an Allowed Claim shall be allocated first to the principal amount of any such Allowed Claim, as determined for U.S. federal income tax purposes and then, to the extent the consideration exceeds such amount, to the remainder of such Claim comprising accrued but unpaid interest, if any (but solely to the extent that interest is an allowable portion of such Allowed Claim). Whenever any payment of a fraction of a dollar would otherwise be called for, the actual distribution shall reflect a rounding of such fraction down to the nearest dollar.

### F.  General Distribution Procedures

The Reorganized Debtors, or any other duly appointed Distribution Agent, shall make all distributions of Cash or other property required under the Plan, unless the Plan specifically provides otherwise. All Cash and other property held by the Reorganized Debtors for distribution under the Plan shall not be subject to any claim by any Person, except as provided under the Plan.

### G.  Address for Delivery of Distributions

Distributions to Holders of Allowed Claims, to the extent provided for under the Plan, shall be made (1) at the address set forth on any proofs of claim Filed by such Holders (to the extent such proofs of claim are Filed in the Chapter 11 Cases), (2) at the addresses set forth in any written notices of address change delivered to the Debtors, or (3) at the addresses in the Debtors' books and records. Notwithstanding the foregoing, distributions to Beneficial Holders of Senior Secured Notes Claims shall be made to the Senior Secured Notes Trustee or its designee for further distribution in accordance with the Senior Secured Notes Indenture.

### H.  Undeliverable Distributions and Unclaimed Property

If the distribution to the Holder of any Allowed Claim is returned to the Reorganized Debtors as undeliverable, no further distribution shall be made to such Holder, and the Reorganized Debtors shall have no obligation to make any further distribution to the Holder,

unless and until the Reorganized Debtors is notified in writing of such Holder's then current address.

Any Entity that fails to claim any Cash, New Secured Debt, or New Membership Interests within the applicable limitations period under nonbankruptcy law from the date upon which a distribution is first made to such Entity shall forfeit all rights to any distribution under the Plan. Entities that fail to claim Cash shall forfeit their rights thereto and shall have no claim whatsoever against the Debtors or the Reorganized Debtors or against any Holder of an Allowed Claim to whom distributions are made by the Reorganized Debtors.

## I.      Withholding Taxes

In connection with the Plan, to the extent applicable, the Reorganized Debtors shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions made pursuant to the Plan shall be subject to such withholding and reporting requirements. The Reorganized Debtors shall be entitled to deduct any U.S. federal, state or local withholding taxes from any Cash payments made with respect to Allowed Claims, as appropriate. As a condition to receiving any distribution under the Plan, the Reorganized Debtors may require that the Holder of an Allowed Claim entitled to receive a distribution pursuant to the Plan provide such Holder's taxpayer identification number and such other information and certification as may be deemed necessary for the Reorganized Debtors to comply with applicable tax reporting and withholding laws. Any amounts withheld pursuant hereto shall be deemed to have been distributed to and received by the applicable recipient for all purposes of the Plan. In connection with the distribution of the New Membership Interests to each Holder of an Allowed Senior Secured Notes Claim, the Reorganized Debtors may take whatever actions are necessary to comply with applicable U.S. federal, state, local and non-U.S. tax withholding obligations, including, after consultation with each such Holder of an Allowed Senior Secured Notes Claim, either withholding from distributions a portion of the New Membership Interests and selling such securities or requiring such Holder of an Allowed Senior Secured Notes Claim to contribute the necessary cash to satisfy the tax withholding obligations.

## J.      Setoffs

The Reorganized Debtors may, to the extent permitted under applicable law, setoff against any Allowed Claim and any distributions to be made pursuant to the Plan on account of such Allowed Claim, the claims, rights and Causes of Action of any nature that the Reorganized Debtors may hold against the Holder of such Allowed Claim that are not otherwise waived, released or compromised in accordance with the Plan; *provided, however*, that neither such a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release by the Reorganized Debtors of any such claims, rights and Causes of Action that the Reorganized Debtors possesses against such Holder.

## K.      Surrender of Cancelled Instruments or Securities

As a condition precedent to receiving any distribution pursuant to the Plan on account of an Allowed Claim evidenced by the instruments, securities, notes, or other documentation canceled pursuant to Article V, Section M or Section N of the Plan, the Holder of such Claim will tender the applicable instruments, securities, notes or other documentation evidencing such Claim (or a sworn affidavit identifying the instruments, securities, notes or other documentation formerly held by such Holder and certifying that they have been lost), to Reorganized Parent or

another applicable Distribution Agent unless waived in writing by the Debtors or the Reorganized Debtors, as applicable.

If the record holder of the Senior Secured Notes is DTC or its nominee or another securities depository or custodian thereof, and such Senior Secured Notes are represented by a global security held by or on behalf of DTC or such other securities depository or custodian, then, upon satisfaction of the Senior Secured Notes Claims, each such Holder of the Senior Secured Notes shall be deemed to have surrendered such Holder's note, debenture or other evidence of indebtedness upon surrender of such global security by DTC or such other securities depository or custodian thereof.

Notwithstanding anything in this Plan to the contrary, in connection with any distribution under this Plan to be effected through the facilities of DTC (whether by means of book-entry exchange, free delivery, or otherwise), the Debtors and the Reorganized Debtors, as applicable, will be entitled to recognize and deal for all purposes under this Plan with holders of New Membership Interests in a manner consistent with the customary practices of DTC used in connection with such distributions. All New Membership Interests to be distributed under this Plan shall be issued in the names of such holders or their nominees in accordance with DTC's book-entry exchange procedures; *provided*, that such New Membership Interests are permitted to be held through DTC's book-entry system; and *provided, further*, that to the extent the New Membership Interests are not eligible for distribution in accordance with DTC's customary practices, Reorganized Parent will take all such reasonable actions as may be required to cause distributions of the New Membership Interests under this Plan.

**L.      Lost, Stolen, Mutilated or Destroyed Securities**

In addition to any requirements under any applicable agreement and applicable law, any Holder of a Claim or Equity Interest evidenced by a security or note that has been lost, stolen, mutilated, or destroyed will, in lieu of surrendering such security or note to the extent required by the Plan, deliver to Reorganized Parent and other applicable Distribution Agent: (x) evidence reasonably satisfactory to Reorganized Parent and other applicable Distribution Agent of such loss, theft, mutilation, or destruction; and (y) such security or indemnity as may be required by Reorganized Parent and other applicable Distribution Agent to hold such party harmless from any damages, liabilities, or costs incurred in treating such individual as a Holder of an Allowed Claim or Allowed Equity Interest. Upon compliance with Article VIII.K of the Plan as determined by the Debtors or Reorganized Debtors by a Holder of a Claim or Equity Interest evidenced by a security or note, such Holder will, for all purposes under the Plan, be deemed to have surrendered such security or note to Reorganized Parent and other applicable Distribution Agents.

**ARTICLE IX.**
**PROCEDURES FOR RESOLVING CONTINGENT,**
**UNLIQUIDATED AND DISPUTED CLAIMS**

**A.      Disputed Claims**

The Reorganized Debtors may, in their discretion, file with the Bankruptcy Court an objection to the allowance of any Disputed Claim or any other appropriate motion or adversary proceeding with respect thereto. All such objections shall be litigated to Final Order, *provided, however*, that the Reorganized Debtors, may compromise, settle, withdraw or resolve any objections to Claims without further order of the Bankruptcy Court. Unless otherwise provided

in the Confirmation Order, the Reorganized Debtors are authorized to settle, or withdraw any objections to, any Disputed Claim following the Effective Date without further notice to creditors or authorization of the Bankruptcy Court, in which event such Claim shall be deemed to be an Allowed Claim in the amount compromised for purposes of the Plan.  Under no circumstances will any distributions be made on account of Disallowed Claims.  The Reorganized Debtors are under no obligation to object to the allowance of any Claim to the extent that there are no assets available to make a distribution to the Holder of such Claim or such Class of Claims under the Plan.

## B.      Procedures Regarding Disputed Claims

No payment or other distribution or treatment shall be made on account of a Disputed Claim, even if a portion of the Claim is not disputed, unless and until such Disputed Claim becomes an Allowed Claim and the amount of such Allowed Claim is determined by a Final Order or by stipulation between the Debtors and the Holder of the Claim.  No distribution or other payment or treatment shall be made on account of a Disallowed Claim at any time.

The Debtors (prior to the Effective Date) or the Reorganized Debtors (after the Effective Date) may, at any time and from time to time, request that the Bankruptcy Court estimate any Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether an objection was previously Filed with the Bankruptcy Court with respect to such Claim, and the Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to such objection.  Any Final Order of the Bankruptcy Court that estimates a Disputed Claim pursuant to the Plan shall irrevocably constitute and be a conclusive and final determination of the maximum allowable amount of Claim, should it become an Allowed Claim.  Accordingly, the Holder of a Disputed Claim that is estimated by the Bankruptcy Court pursuant to the Plan will not be entitled to any subsequent reconsideration or upward adjustment of the maximum allowable amount of such Claim as a result of any subsequent adjudication or actual determination of the allowed amount of such Disputed Claim or otherwise, and the Holder of such Claim shall not have recourse to the Debtors or the Reorganized Debtors in the event the allowed amount of the Claim of such Holder is at any time later determined to exceed the estimated maximum allowable amount.

## C.      Allowance of Claims

Following the date on which a Disputed Claim becomes an Allowed Claim after the Distribution Date, the Reorganized Debtors shall pay directly to the Holder of such Allowed Claim the amount provided for under the Plan, as applicable, and in accordance therewith.

### 1.      Allowance of Claims

Notwithstanding anything to the contrary herein, after the Effective Date and subject to the other provisions of the Plan, the Reorganized Debtors will have and will retain any and all rights and defenses under bankruptcy or nonbankruptcy law that the Debtors had with respect to any Claim or Equity Interest, except with respect to any Claim or Equity Interest deemed Allowed under the Plan or by orders of the Bankruptcy Court.  Except as expressly provided in the Plan or in any order entered in the Chapter 11 Cases prior to the Effective Date (including, without limitation, the Confirmation Order), no Claim or Equity Interest will become an Allowed Claim unless and until such Claim or Equity Interest is deemed Allowed under the Plan or the Bankruptcy Code or the Bankruptcy Court has entered a Final Order, including, without

limitation, the Confirmation Order, in the Chapter 11 Cases allowing such Claim or Equity Interest.

2.    Prosecution of Objections to Claims and Equity Interests

After the Confirmation Date but before the Effective Date, the Debtors and, after the Effective Date, the Reorganized Debtors, will have the exclusive authority to File objections to Claims and settle, compromise, withdraw or litigate to judgment objections to any and all Claims, regardless of whether such Claims or Equity Interests are in an Unimpaired Class or otherwise.  From and after the Effective Date, the Reorganized Debtors may settle or compromise any Disputed Claim or Equity.

Interest without any further notice to or action, order or approval of the Bankruptcy Court.  The Reorganized Debtors will have the sole authority to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order or approval of the Bankruptcy Court.

3.    Estimation

The Debtors (prior to the Effective Date) or the Reorganized Debtors (after the Effective Date) may, at any time, request that the Bankruptcy Court estimate (a) any Disputed Claim or Equity Interest pursuant to applicable law and (b) any contingent or unliquidated Claim or Equity Interest pursuant to applicable law, including, without limitation, section 502(c) of the Bankruptcy Code, and the Bankruptcy Court will retain jurisdiction under 28 U.S.C.  §§ 157 and 1334 to estimate any Disputed Claim or Equity Interest, contingent Claim or Equity Interest or unliquidated Claim or Equity Interest, including during the litigation concerning any objection to any Claim or Equity Interest or during the pendency of any appeal relating to any such objection. All of the aforementioned objection, estimation and resolution procedures are cumulative and not exclusive of one another.  Claims or Equity Interests may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.  The rights and objections of all parties are reserved in connection with any such estimation proceeding.

**ARTICLE X.**
**CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN**

**A.    Conditions Precedent to Consummation**

Consummation of the Plan will be conditioned upon the satisfaction or waiver pursuant to the provisions of Article X.B of the Plan of the following:

a.    The Bankruptcy Court will have entered a Final Order by no later than June 30, 2019 (unless such date is extended with the written consent of the Debtors and the Supporting Noteholders) in form and in substance satisfactory to the Debtors and the Supporting Noteholders approving the Disclosure Statement with respect to the Plan as containing adequate information within the meaning of section 1125 of the Bankruptcy Code and confirming the Plan.

b.    The Plan and Plan Supplement and all schedules, documents, supplements and exhibits to the Plan will have been Filed in form and substance acceptable to the Debtors and the Supporting Noteholders.

c.      The proposed Confirmation Order will be in form and substance acceptable to the Debtors and the Supporting Noteholders.

d.      The Confirmation Order shall have been entered and shall be a Final Order in form and substance acceptable to the Debtors and Supporting Noteholders.  The Confirmation Order will provide that, among other things, (a) the Debtors, the Reorganized Debtors, the Litigation Trustee, the Litigation Trust Oversight Committee and the Fuse Litigation Trust, as applicable, are authorized to take all actions necessary or appropriate to consummate the Plan and the Restructuring Transactions, including, without limitation, (i) entering into, implementing and consummating the contracts, instruments, releases, leases, indentures and other agreements or documents created in connection with or described in the Plan, (ii) distributing the New Membership Interests pursuant to the exemptions from registration under section 3(a)(9) and/or section 4(a)(2) of the Securities Act, Rule 701 et seq. under the Securities Act or section 1145 of the Bankruptcy Code or other exemption from such registration or pursuant to one or more registration statements, (iii) making all distributions and issuances as required under the Plan, including Cash and the New Membership Interests; and (iv) entering into any agreements, transactions, and sales of property as set forth in the Plan Supplement, including the New Secured Debt and the Key Employee Retention Agreements and the awards contemplated thereunder; (b) the provisions of the Confirmation Order and the Plan are nonseverable and mutually dependent; (c) the implementation of the Plan in accordance with its terms is authorized; and (d) pursuant to section 1146 of the Bankruptcy Code, the assignment or surrender of any lease or sublease, and the delivery of any deed or other instrument or transfer order, in furtherance of, or in connection with the Plan, including any deeds, bills of sale, or assignments executed in connection with any disposition or transfer of Assets contemplated under the Plan, shall not be subject to any Stamp or Similar Tax.

e.      The Bankruptcy Court will have entered one or more Final Orders (which may include the Confirmation Order), in form and substance acceptable to the Debtors and Supporting Noteholders, authorizing the assumption and rejection of Executory Contracts and Unexpired Leases by the Debtors as contemplated in the Plan and the Plan Supplement.

f.      All documents and agreements necessary to implement the Plan, including without limitation, the New Secured Debt Documents, the New Membership Interests, the New Organizational Documents and the Key Employee Retention Agreements, in each case in form and substance acceptable to the Debtors and the Supporting Noteholders, will have (a) been tendered for delivery, and (b) been effected by, executed by, or otherwise deemed binding upon, all Entities party thereto.  All conditions precedent to such documents and agreements will have been satisfied or waived pursuant to the terms of such documents or agreements.

g.      All consents, actions, documents, certificates and agreements necessary to implement the Plan, including, without limitation, the New Organizational Documents, will have been effected or executed and delivered to the required parties and, to the extent required, filed with the applicable governmental units in accordance with applicable laws.

h. The Confirmation Date will have occurred.

i. The New Secured Debt Documents shall have been executed and delivered by all of the parties thereto, and all conditions precedent (other than any conditions related to the occurrence of the Effective Date) to the consummation of the New Secured Debt, if applicable, shall have been waived or satisfied in accordance with the terms thereof, and the closing of the New Secured Debt, if applicable, shall be deemed to occur concurrently with the occurrence of the Effective Date.

j. The Restructuring Expenses and the Senior Secured Notes Trustee Fees shall have been paid in full to the extent not otherwise paid in accordance with the Cash Collateral Order.

k. The Debtors shall have implemented the Restructuring Transactions in a manner consistent with the Plan pursuant to the documentation acceptable to the Debtors and the Supporting Noteholders.

## B.    **Waiver of Conditions**

The conditions to Consummation of the Plan set forth in this Article X may be waived by the Debtors with the consent of the Supporting Noteholders and the Senior Secured Notes Trustee (solely with respect to the condition set forth in Article X.A(j)) without notice, leave or order of the Bankruptcy Court or any formal action other than proceeding to confirm or consummate the Plan. To the extent that a condition to Consummation of the Plan requires the consent of the Supporting Noteholders or the Senior Secured Notes Trustee, such conditions may only be waived by the Debtors with the consent of the Supporting Noteholders or the Senior Secured Notes Trustee, as applicable. The failure to satisfy or waive a condition to Consummation may be asserted by the Debtors or the Reorganized Debtors, the Supporting Noteholders or the Senior Secured Notes Trustee (solely with respect to the condition set forth in Article X.A(j)) regardless of the circumstances giving rise to the failure of such condition to be satisfied.  The failure of the Debtors or Reorganized Debtors, the Supporting Noteholders or the Senior Secured Notes Trustee to exercise any of the foregoing rights will not be deemed a waiver of any other rights, and each right will be deemed an ongoing right that may be asserted at any time.

## C.    **Effect of Non-Occurrence of Conditions to Consummation**

If the Consummation of the Plan does not occur, the Plan will be null and void in all respects and nothing contained in the Plan or the Disclosure Statement will:  (a) constitute a waiver or release of any claims by or Claims against or Equity Interests in the Debtors; (b) prejudice in any manner the rights of the Debtors, any Holders or any other Entity; (c) constitute an Allowance of any Claim or Equity Interest; or (d) constitute an admission, acknowledgment, offer or undertaking by the Debtors, any Holders or any other Entity in any respect.

## ARTICLE XI.
## RELEASE, INJUNCTION AND RELATED PROVISIONS

## A.    **General**

Notwithstanding anything contained in the Plan to the contrary, the allowance, classification and treatment of all Allowed Claims and Equity Interests and their respective

DOCS_SF:101225.2 29402/002

- 43 -

distributions and treatments under the Plan shall take into account the relative priority and rights of the Claims and the Equity Interests in each Class in connection with any contractual, legal and equitable subordination rights relating thereto whether arising under general principles of equitable subordination, section 510 of the Bankruptcy Code or otherwise.

In accordance with the provisions of the Plan and pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, without any further notice to or action, order or approval of the Bankruptcy Court, after the Effective Date (1) the Reorganized Debtors may, in their sole and absolute discretion, compromise and settle Claims against them and (2) the Reorganized Debtors may, in their sole and absolute discretion, compromise and settle Causes of Action against other Entities.

## B.     <u>Release</u>

EFFECTIVE AS OF THE EFFECTIVE DATE, FOR GOOD AND VALUABLE CONSIDERATION PROVIDED BY EACH OF THE RELEASED PARTIES, THE ADEQUACY OF WHICH IS HEREBY ACKNOWLEDGED AND CONFIRMED, THE DEBTORS AND THE REORGANIZED DEBTORS, IN THEIR INDIVIDUAL CAPACITIES AND AS DEBTORS-IN-POSSESSION, THE FUSE LITIGATION TRUST AND THE LITIGATION TRUSTEE (COLLECTIVELY, THE "<u>RELEASING PARTIES</u>") WILL BE DEEMED TO HAVE CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER PROVIDED A FULL DISCHARGE, WAIVER AND RELEASE TO THE RELEASED PARTIES (AND EACH SUCH RELEASED PARTY SO RELEASED SHALL BE DEEMED FOREVER RELEASED, WAIVED AND DISCHARGED BY THE RELEASING PARTIES) AND THEIR RESPECTIVE PROPERTIES FROM ANY AND ALL CLAIMS, CAUSES OF ACTION, LITIGATION CLAIMS AND ANY OTHER DEBTS, OBLIGATIONS, RIGHTS, SUITS, DAMAGES, ACTIONS, REMEDIES, AND LIABILITIES WHATSOEVER, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, EXISTING AS OF THE EFFECTIVE DATE OR THEREAFTER ARISING, IN LAW, AT EQUITY, WHETHER FOR TORT, CONTRACT, OR OTHERWISE, BASED IN WHOLE OR IN PART UPON ANY ACT OR OMISSION, TRANSACTION, OR OTHER OCCURRENCE OR CIRCUMSTANCES EXISTING OR TAKING PLACE PRIOR TO OR ON THE EFFECTIVE DATE ARISING FROM OR RELATED IN ANY WAY IN WHOLE OR IN PART TO THE DEBTORS, THE CHAPTER 11 CASES, THE DISCLOSURE STATEMENT, THE PLAN OR THE SOLICITATION OF VOTES ON THE PLAN THAT SUCH RELEASING PARTY WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR THAT ANY HOLDER OF A CLAIM OR EQUITY INTEREST OR OTHER ENTITY WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT FOR OR ON BEHALF OF THE DEBTORS, THEIR ESTATES OR THE REORGANIZED DEBTORS (WHETHER DIRECTLY OR DERIVATIVELY) AGAINST ANY OF THE RELEASED PARTIES; *PROVIDED, HOWEVER*, THAT THE FOREGOING PROVISIONS OF THIS RELEASE SHALL NOT OPERATE TO WAIVE OR RELEASE (I) ANY OFFSET, DEFENSE, COUNTERCLAIM, REDUCTION, OR CREDIT THAT THE DEBTORS OR REORGANIZED DEBTORS MAY HAVE WITH REGARD TO ANY CLAIM ASSERTED AGAINST THEM BY A RELEASED PARTY, (II) ANY CAUSES OF ACTION EXPRESSLY SET FORTH IN AND PRESERVED BY THE PLAN OR THE PLAN SUPPLEMENT; (III) ANY CAUSES OF ACTION ARISING FROM FRAUD, GROSS NEGLIGENCE, OR WILLFUL MISCONDUCT AS DETERMINED BY FINAL ORDER OF THE BANKRUPTCY COURT OR ANY OTHER COURT OF COMPETENT JURISDICTION; AND/OR (IV) THE RIGHTS OF SUCH RELEASING PARTY TO ENFORCE THE PLAN AND THE CONTRACTS, INSTRUMENTS, RELEASES, INDENTURES, AND OTHER

AGREEMENTS OR DOCUMENTS DELIVERED UNDER OR IN CONNECTION WITH THE PLAN OR ASSUMED PURSUANT TO THE PLAN OR ASSUMED PURSUANT TO FINAL ORDER OF THE BANKRUPTCY COURT.  THE FOREGOING RELEASE SHALL BE EFFECTIVE AS OF THE EFFECTIVE DATE WITHOUT FURTHER NOTICE TO OR ORDER OF THE BANKRUPTCY COURT, ACT OR ACTION UNDER APPLICABLE LAW, REGULATION, ORDER, OR RULE AND WITHOUT NEED FOR ANY NOTICE TO OR ANY VOTE, CONSENT, AUTHORIZATION, APPROVAL, RATIFICATION OR OTHER ACTION BY ANY ENTITY OR OTHER PERSON OR ANY DIRECTOR, STOCKHOLDER, SECURITY HOLDER, MANAGER, MEMBER, OR PARTNER (OR BOARD THEREOF) OF ANY ENTITY AND THE CONFIRMATION ORDER WILL PERMANENTLY ENJOIN THE COMMENCEMENT OR PROSECUTION BY ANY PERSON OR ENTITY, WHETHER DIRECTLY, DERIVATIVELY OR OTHERWISE, OF ANY CLAIMS, OBLIGATIONS, SUITS, JUDGMENTS, DAMAGES, DEMANDS, DEBTS, RIGHTS, CAUSES OF ACTION, OR LIABILITIES RELEASED PURSUANT TO THIS RELEASE.  NOTWITHSTANDING THE FOREGOING, THE DEBTORS ARE NOT RELEASING THE DEBTORS (BUT THEY ARE RELEASING THE RELATED PERSONS TO THE DEBTORS PURSUANT TO THIS PARAGRAPH).

## ARTICLE XII.
## THIRD PARTY RELEASE BY HOLDERS OF CLAIMS

AS OF AND SUBJECT TO THE OCCURRENCE OF THE EFFECTIVE DATE, EXCEPT FOR THE RIGHTS THAT REMAIN IN EFFECT FROM AND AFTER THE EFFECTIVE DATE TO ENFORCE THIS PLAN AND THE PLAN DOCUMENTS, FOR GOOD AND VALUABLE CONSIDERATION, THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, INCLUDING, WITHOUT LIMITATION, THE SERVICE OF THE RELEASED PARTIES TO FACILITATE THE REORGANIZATION OF THE DEBTORS AND THE IMPLEMENTATION OF THE RESTRUCTURING AND THE RESTRUCTURING TRANSACTIONS, AND EXCEPT AS OTHERWISE PROVIDED IN THIS PLAN OR IN THE CONFIRMATION ORDER, THE RELEASED PARTIES ARE DEEMED FOREVER RELEASED AND DISCHARGED BY THE (I) THE HOLDERS OF ALL CLAIMS WHO VOTE TO ACCEPT THIS PLAN, (II) HOLDERS OF CLAIMS THAT ARE UNIMPAIRED UNDER THIS PLAN (ONCE SUCH HOLDERS' CLAIMS HAVE BEEN SATISFIED IN FULL CONSISTENT WITH THE PLAN), (III) HOLDERS OF CLAIMS WHOSE VOTE TO ACCEPT OR REJECT THIS PLAN IS SOLICITED BUT WHO DO NOT VOTE EITHER TO ACCEPT OR TO REJECT THIS PLAN, (IV) HOLDERS OF CLAIMS WHO VOTE TO REJECT THIS PLAN BUT DO NOT OPT OUT OF GRANTING THE RELEASES SET FORTH HEREIN, AND (V) THE SENIOR SECURED NOTES TRUSTEE, FROM ANY AND ALL CLAIMS, INTERESTS, OBLIGATIONS, SUITS, JUDGMENTS, DAMAGES, DEMANDS, DEBTS, RIGHTS, CAUSES OF ACTION, LOSSES, REMEDIES, AND LIABILITIES WHATSOEVER, INCLUDING ANY DERIVATIVE CLAIMS, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, EXISTING OR HEREINAFTER ARISING, IN LAW, EQUITY, OR OTHERWISE, THAT SUCH HOLDERS OR THEIR AFFILIATES WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM OR OTHER ENTITY, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS, THE CHAPTER 11 CASES, THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY SECURITY OF THE DEBTORS OR THE REORGANIZED DEBTORS, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THIS PLAN, THE BUSINESS OR

CONTRACTUAL ARRANGEMENTS BETWEEN ANY DEBTOR AND ANY RELEASED PARTY, THE RESTRUCTURING, THE RESTRUCTURING OF ANY CLAIM OR INTEREST BEFORE OR DURING THE CHAPTER 11 CASES, THE RESTRUCTURING TRANSACTIONS, THE NEGOTIATION, FORMULATION, OR PREPARATION OF THE DISCLOSURE STATEMENT, THIS PLAN, THE NEW SECURED DEBT DOCUMENTS AND RELATED AGREEMENTS, INSTRUMENTS, AND OTHER DOCUMENTS (INCLUDING THE PLAN DOCUMENTS), THE SOLICITATION OF VOTES WITH RESPECT TO THIS PLAN, OR ANY OTHER ACT OR OMISSION, OTHER THAN CLAIMS OR CAUSES OF ACTION ARISING OUT OF OR RELATED TO ANY ACT OR OMISSION OF A RELEASED PARTY THAT IS A CRIMINAL ACT OR CONSTITUTES INTENTIONAL FRAUD, GROSS NEGLIGENCE, OR WILLFUL MISCONDUCT.

### A.    Discharge of Claims

To the fullest extent provided under section 1141(d)(1)(A) and other applicable provisions of the Bankruptcy Code, except as otherwise expressly provided by the Plan or the Confirmation Order, all consideration distributed under the Plan will be in exchange for, and in full and final satisfaction of, all Claims and Equity Interests of any kind or nature whatsoever against the Debtors or any of their Assets or properties, and regardless of whether any property will have been distributed or retained pursuant to the Plan on account of such Claims or Equity Interests.  Except as otherwise expressly provided by the Plan or the Confirmation Order, upon the Effective Date, the Debtors and their Estates will be deemed discharged and released under and to the fullest extent provided under section 1141(d)(1)(A) and other applicable provisions of the Bankruptcy Code from any and all Claims and Equity Interests of any kind or nature whatsoever, including, but not limited to, demands and liabilities that arose before the Confirmation Date, and all debts of the kind specified in section 502(g), 502(h), or 502(i) of the Bankruptcy Code.

### B.    Exculpation

The Exculpated Parties will neither have nor incur any liability to any Entity for any claims or Causes of Action arising before, on or after the Petition Date and prior to or on the Effective Date for any act taken or omitted to be taken in connection with, or related to formulating, negotiating, preparing, disseminating, implementing, administering, confirming or effecting the Consummation of the Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created or entered into in connection with the Plan or any other prepetition or postpetition act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Debtors, the approval of the Disclosure Statement or confirmation or Consummation of the Plan; *provided, however*, that the foregoing provisions will have no effect on the liability of any Entity that results from any such act or omission that is determined in a Final Order of the Bankruptcy Court or other court of competent jurisdiction to have constituted gross negligence or willful misconduct; *provided, further*, however that the foregoing provisions will not apply to any acts, omissions, Claims, Causes of Action or other obligations expressly set forth in and preserved by the Plan or the Plan Supplement.

### C.    Injunction

EXCEPT AS OTHERWISE PROVIDED IN THE PLAN, FROM AND AFTER THE EFFECTIVE DATE, ALL ENTITIES ARE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER, ANY SUIT, ACTION OR OTHER PROCEEDING, OR CREATING, PERFECTING OR ENFORCING ANY LIEN OF ANY

KIND, ON ACCOUNT OF OR RESPECTING ANY CLAIM, DEMAND, LIABILITY, OBLIGATION, DEBT, RIGHT, CAUSE OF ACTION, EQUITY INTEREST, OR REMEDY RELEASED OR TO BE RELEASED, EXCULPATED OR TO BE EXCULPATED, OR DISCHARGED OR TO BE DISCHARGED PURSUANT TO THE PLAN OR THE CONFIRMATION ORDER.  ALL INJUNCTIONS OR STAYS PROVIDED FOR IN THE CHAPTER 11 CASES UNDER SECTION 105 OR 362 OF THE BANKRUPTCY CODE, OR OTHERWISE, AND IN EXISTENCE ON THE CONFIRMATION DATE, WILL REMAIN IN FULL FORCE AND EFFECT UNTIL THE EFFECTIVE DATE.

## ARTICLE XIII.
## BINDING NATURE OF PLAN

ON THE EFFECTIVE DATE, AND EFFECTIVE AS OF THE EFFECTIVE DATE, THE PLAN WILL BIND, AND WILL BE DEEMED BINDING UPON, ALL HOLDERS OF CLAIMS AGAINST AND EQUITY INTERESTS IN THE DEBTORS AND SUCH HOLDER'S RESPECTIVE SUCCESSORS AND ASSIGNS, TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, NOTWITHSTANDING WHETHER OR NOT SUCH HOLDER (I) WILL RECEIVE OR RETAIN ANY PROPERTY OR INTEREST IN PROPERTY UNDER THE PLAN, (II) HAS FILED A PROOF OF CLAIM OR INTEREST IN THE CHAPTER 11 CASES OR (III) FAILED TO VOTE TO ACCEPT OR REJECT THE PLAN OR AFFIRMATIVELY VOTED TO REJECT THE PLAN.

## ARTICLE XIV.
## RETENTION OF JURISDICTION

Pursuant to sections 105(c) and 1142 of the Bankruptcy Code and notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall, after the Effective Date, retain such jurisdiction over the Chapter 11 Cases and all Entities with respect to all matters related to the Chapter 11 Cases, the Debtors and this Plan as legally permissible, including, without limitation, jurisdiction to:

1.    allow, disallow, determine, liquidate, classify, estimate or establish the priority, secured, unsecured, or subordinated status of any Claim or Equity Interest, including, without limitation, the resolution of any request for payment of any Administrative Expense Claim and the resolution of any and all objections to the allowance or priority of any Claim or Equity Interest;

2.    grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or this Plan, for periods ending on or before the Confirmation Date; *provided*, *however*, that, from and after the Effective Date, the Reorganized Debtors and the Fuse Litigation Trust shall pay Professionals in the ordinary course of business for any work performed after the Effective Date and such payment shall not be subject to the approval of the Bankruptcy Court;

3.    resolve any matters related to the assumption, assignment or rejection of any Executory Contract or Unexpired Lease to which any Debtor is party or with respect to which any Debtor or Reorganized Debtor may be liable and to adjudicate and, if necessary, liquidate, any Claims arising therefrom, including, without limitation, those matters related to any amendment to this Plan after the Effective Date to add Executory Contracts or Unexpired Leases to the list of Executory Contracts and Unexpired Leases to be assumed;

4. resolve any issues related to any matters adjudicated in the Chapter 11 Cases;

5. ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of this Plan;

6. decide or resolve any motions, adversary proceedings, contested or litigated matters and any other Causes of Action that are pending as of the Effective Date or that may be commenced in the future, and grant or deny any applications involving the Debtors that may be pending on the Effective Date or instituted by the Reorganized Debtors after the Effective Date, *provided* that the Reorganized Debtors shall reserve the right to commence actions in all appropriate forums and jurisdictions;

7. enter such orders as may be necessary or appropriate to implement or consummate the provisions of this Plan and all other contracts, instruments, releases, indentures and other agreements or documents adopted in connection with this Plan, the Plan Supplement or the Disclosure Statement;

8. resolve any cases, controversies, suits or disputes that may arise in connection with the Consummation, interpretation or enforcement of this Plan or any Entity's obligations incurred in connection with this Plan; *provided*, *however*, that any dispute arising under or in connection with the New Secured Debt Documents shall be dealt with in accordance with the provisions of the applicable document;

9. hear and determine all Causes of Action that are pending as of the Effective Date or that may be commenced in the future;

10. issue injunctions and enforce them, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of this Plan, except as otherwise provided in this Plan;

11. enforce the terms and condition of this Plan and the Confirmation Order;

12. resolve any cases, controversies, suits or disputes with respect to the Release, the Exculpation, the Indemnification Provisions and other provisions contained in Article XI and XII hereof and enter such orders or take such others actions as may be necessary or appropriate to implement or enforce all such releases, injunctions and other provisions;

13. hear and determine the Litigation Claims by or on behalf of the Debtors or Reorganized Debtors;

14. enter and implement such orders or take such others actions as may be necessary or appropriate if the Confirmation Order is modified, stayed, reversed, revoked or vacated;

15. resolve any other matters that may arise in connection with or relate to this Plan, the Disclosure Statement, the Confirmation Order, the Litigation Trust Agreement or any contract, instrument, release, indenture or other agreement or document adopted in connection with this Plan or the Disclosure Statement; *provided*, *however*, that any dispute arising under or in connection with the New Secured Debt Documents shall be dealt with in accordance with the provisions of the applicable document; and

16.     enter an order concluding or closing the Chapter 11 Cases.

### ARTICLE XV.
### MISCELLANEOUS PROVISIONS

**A.     Dissolution of the Committee**

On the Effective Date, the Committee (if any) and any other statutory committee formed in connection with the Chapter 11 Cases shall dissolve automatically and all members thereof shall be released and discharged from all rights, duties and responsibilities arising from, or related to, the Chapter 11 Cases.

**B.     Payment of Statutory Fees**

All outstanding fees payable pursuant to 28 U.S.C. § 1930 shall be paid on the Effective Date.  All such fees payable after the Effective Date shall be paid prior to the closing of the Chapter 11 Case when due or as soon thereafter as practicable.

**C.     Payment of Fees and Expenses of Senior Secured Notes Trustee**

On the Effective Date or as soon as reasonably practicable thereafter (and, thereafter, upon request by the Senior Secured Notes Trustee with respect to fees and expenses of the Senior Secured Notes Trustee relating to post-Effective Date service under this Plan), the Reorganized Debtors shall pay in full in Cash all outstanding Senior Secured Notes Trustee Fees to the extent not otherwise paid in accordance with the Cash Collateral Order and subject to the terms of the Senior Secured Notes Indenture; *provided, however*, that the Reorganized Debtors shall have the right to object to the reasonableness of any such fees and expenses.  Nothing herein shall be deemed to limit the right of the Senior Secured Notes Trustee to exercise the Senior Secured Notes Trustee Charging Lien (including with respect to any Senior Secured Notes Trustee Fees and expenses that are not paid by the Reorganized Debtors pursuant to this section).

**D.     Modification of Plan**

Effective as of the date hereof and subject to the limitations and rights contained in this Plan:  (a) the Debtors reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, with the consent of the Senior Secured Notes Trustee (solely with respect to the condition set forth in Article X.A(j) and the inclusion of the Senior Secured Notes Trustee and the Supporting Noteholders as "Released Parties" and "Exculpated Parties"), to amend or modify this Plan prior to the entry of the Confirmation Order; and (b) after the entry of the Confirmation Order, the Debtors or the Reorganized Debtors, as applicable, may, after notice and hearing and entry of an order of the Bankruptcy Court, amend or modify this Plan, in accordance with section 1127(b) of the Bankruptcy Code or remedy any defect or omission or reconcile any inconsistency in this Plan in such manner as may be necessary to carry out the purpose and intent of this Plan.  A Holder of a Claim or Equity Interest that has accepted this Plan shall be deemed to have accepted this Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of such Claim or Equity Interest of such Holder.

E.     **Revocation of Plan**

The Debtors reserve the right to revoke or withdraw this Plan prior to the Confirmation Date and to File subsequent chapter 11 plans.  If the Debtors revoke or withdraw this Plan, or if confirmation of this Plan or Consummation of this Plan does not occur, then:  (1) this Plan shall be null and void in all respects; (2) any settlement or compromise embodied in this Plan, assumption or rejection of Executory Contracts or Unexpired Leases effected by this Plan and any document or agreement executed pursuant hereto shall be deemed null and void except as may be set forth in a separate order entered by the Bankruptcy Court; and (3) nothing contained in this Plan shall:  (a) constitute a waiver or release of any Claims by or against, or any Equity Interests in, the Debtors or any other Entity; (b) prejudice in any manner the rights of the Debtors or any other Entity; or (c) constitute an admission, acknowledgement, offer or undertaking of any sort by the Debtors or any other Entity.

F.     **Entire Agreement**

Except as otherwise described herein, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

G.     **Closing of Chapter 11 Cases**

The Reorganized Debtors shall, promptly after the full administration of the Chapter 11 Cases, file with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Cases.

H.     **Successors and Assigns**

This Plan shall be binding upon and inure to the benefit of the Debtors and their respective successors and assigns, including, without limitation, the Reorganized Debtors and the Fuse Litigation Trust.  The rights, benefits, and obligations of any Person or Entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such Person or Entity.

I.     **Reservation of Rights**

Except as expressly set forth herein, this Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order and this Plan is Consummated. Neither the filing of this Plan, any statement or provision contained herein, nor the taking of any action by the Debtors or any other Entity with respect to this Plan shall be or shall be deemed to be an admission or waiver of any rights of:  (1) the Debtors with respect to the Holders of Claims or Equity Interests or other Entity; or (2) any Holder of a Claim or an Equity Interest or other Entity prior to the Effective Date.

Neither the exclusion or inclusion by the Debtors of any contract or lease on any exhibit, schedule, or other annex to this Plan or in the Plan Supplement, nor anything contained in this Plan, will constitute an admission by the Debtors that any such contract or lease is or is not an executory contract or unexpired lease or that the Debtors or the Reorganized Debtors or their respective affiliates has any liability thereunder.

Except as explicitly provided in this Plan, nothing herein shall waive, excuse, limit, diminish, or otherwise alter any of the defenses, claims, Causes of Action, or other rights of the Debtors or the Reorganized Debtors under any executory or non-executory contract or unexpired or expired lease.

Nothing in this Plan will increase, augment, or add to any of the duties, obligations, responsibilities, or liabilities of the Debtors or the Reorganized Debtors, as applicable, under any executory or non-executory contract or unexpired or expired lease.

If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of its assumption under this Plan, the Debtors or Reorganized Debtors, as applicable, shall have thirty (30) days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

**J.      Further Assurances**

The Debtors or the Reorganized Debtors, as applicable, all Holders of Claims or Equity Interests receiving distributions hereunder and all other Entities shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan or the Confirmation Order.  On or before the Effective Date, the Debtors shall File with the Bankruptcy Court all agreements and other documents that may be necessary or appropriate to effectuate and further evidence the terms and conditions hereof.

**K.      Severability**

If, prior to the Confirmation Date, any term or provision of this Plan is determined by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court will have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision will then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order will constitute a judicial determination and will provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**L.      Service of Documents**

All notices, requests, and demands to or upon the Debtors, the Reorganized Debtors or the Fuse Litigation Trust to be effective shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

> Fuse, LLC, *et al*.
> 700 North Central Avenue, Suite 600
> Glendale, CA 91203
> Attn:   Miguel Roggero, Interim Chief Executive Officer

**with copies to:**

Pachulski Stang Ziehl & Jones LLP
919 North Market Street, 17th Floor
Wilmington, DE 19899-8705 (Courier 19801)
Attn:    Richard M. Pachulski, Esq., Ira D. Kharasch, Esq.,
          Maxim B. Litvak, Esq., James E. O'Neill, Esq.

**M.    Exemption from Certain Transfer Taxes Pursuant to Section 1146(a) of the Bankruptcy Code**

To the extent permitted by applicable law, pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant hereto shall not be subject to any Stamp or Similar Tax or governmental assessment in the United States, and the Confirmation Order shall direct the appropriate federal, state or local governmental officials or agents or taxing authority to forego the collection of any such Stamp or Similar Tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such Stamp or Similar Tax or governmental assessment.  Such exemption specifically applies, without limitation, to (i) all actions, agreements and documents necessary to evidence and implement the provisions of and the distributions to be made under this Plan, including the New Secured Debt Documents; (ii) the issuance of New Membership Interests; (iii) the maintenance or creation of security or any Lien as contemplated by the New Secured Debt Documents; (iv) the transfer by the Debtors of the Litigation Trust Assets to the Fuse Litigation Trust and (v) assignments executed in connection with any transaction occurring under the Plan.

**N.    Governing Law**

Except to the extent that the Bankruptcy Code, the Bankruptcy Rules or other federal law is applicable, or to the extent that an exhibit or schedule to this Plan provides otherwise, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of New York, without giving effect to the principles of conflicts of law of such jurisdiction.

**O.    Tax Reporting and Compliance**

The Reorganized Debtors are hereby authorized, on behalf of the Debtors, to request an expedited determination under section 505(b) of the Bankruptcy Code of the tax liability of the Debtors are for all taxable periods ending after the Petition Date through, and including, the Effective Date.

**P.    Schedules**

All exhibits and schedules to this Plan, including the Exhibits and Plan Schedules, are incorporated and are a part of this Plan as if set forth in full herein.

**Q.    No Strict Construction**

This Plan is the product of extensive discussions and negotiations between and among, *inter alia*, the Debtors, the Supporting Noteholders, and their respective professionals.  Each of

the foregoing was represented by counsel of its choice who either participated in the formulation and documentation of, or was afforded the opportunity to review and provide comments on, this Plan, the Disclosure Statement, Exhibits and Plan Schedules, and the agreements and documents ancillary or related thereto.  Accordingly, unless explicitly indicated otherwise, the general rule of contract construction known as "contra proferentem" or other rule of strict construction shall not apply to the construction or interpretation of any provision of this Plan, the Disclosure Statement, Exhibits, and Plan Schedules, and the documents ancillary and related thereto.

**R.**    **Conflicts**

In the event that a provision of the Disclosure Statement conflicts with a provision of this Plan, the terms of this Plan shall govern and control to the extent of such conflict.

**S.**    **Controlling Document**

In the event of an inconsistency between this Plan and the Plan Supplement, the terms of this Plan shall control.  In the event of an inconsistency between this Plan and any other instrument or document created or executed pursuant to this Plan, or between this Plan and the Disclosure Statement, this Plan shall control.  The provisions of this Plan and of the Confirmation Order shall be construed in a manner consistent with each other so as to effectuate the purposes of each; *provided, however*, that if there is determined to be any inconsistency between any provision of this Plan and any provision of the Confirmation Order that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of the Confirmation Order shall govern, and any such provisions of the Confirmation Order shall be deemed a modification of this Plan.

**T.**    **Confirmation Request**

The Debtors request the Bankruptcy Court confirm the Plan and that it do so, if applicable, pursuant to section 1129(b) of the Bankruptcy Code notwithstanding any rejection of the Plan by an Impaired Class.

*[Remainder of Page Intentionally Blank]*

Dated: June ___, 2019

Respectfully submitted,

_____/s/_____

Miguel Roggero
Interim Chief Executive Officer
FUSE, LLC, *et al.*

**FILED BY:**

PACHULSKI STANG ZIEHL & JONES LLP

*/s/*
_____

Richard M. Pachulski (CA Bar No. 62337)
Ira D. Kharasch (CA Bar No. 109084)
Maxim B. Litvak (CA Bar No. 215852)
James E. O'Neill (DE Bar No. 4042)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile:  (302) 652-4400
E-mail:      rpachulski@pszjlaw.com
                 ikharasch@pszjlaw.com
                 mlitvak@pszjlaw.com
                 joneill@pszjlaw.com

Proposed Counsel for the Debtors
and Debtors-in-Possession

**[Signature Page to Debtors' Amended Prepackaged Joint Plan of Reorganization]**