# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FUSE, LLC, *et al.*,[1] | Case No. 19-10872 (KG) |
| Debtors. | Jointly Administered |
| | **Requested Hearing Date: June 5, 2019 at 1:30 p.m. (ET)**<br>**Requested Objection Deadline: At or Before the Hearing** |

## EMERGENCY MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR AN ORDER ADJOURNING THE HEARING WITH RESPECT TO (A) DEBTORS' CASH COLLATERAL MOTION AND CASH MANAGEMENT MOTION, (B) APPROVAL OF DISCLOSURE STATEMENT, AND (C) CONFIRMATION OF PREPACKAGED PLAN OF REORGANIZATION

The Official Committee of Unsecured Creditors (the "***Committee***") of Fuse LLC

and its affiliated debtors and debtors in possession (collectively, the "***Debtors***") hereby moves

the Court (this "***Motion***") for entry of an order, substantially in the form attached hereto as

Exhibit A (the "***Proposed Order***"), adjourning the hearing (the "***Hearing***") regarding the

approval of (i) the *Motion of Debtors Pursuant to Sections 105, 361, 362, 363, 503, and 507 of*

*the Bankruptcy Code, Bankruptcy Rules 2002, 4001, and 9014 and Local Rules 2002-1(b), 4001-*

*2, 9013-1(m) for Entry of Interim and Final Orders (I) Authorizing the Debtors to Use Cash*

*Collateral, (II) Granting Adequate Protection, (III) Modifying the Automatic Stay, and*

*(IV) Scheduling a Final Hearing* [Docket No. 11] (the "***Cash Collateral Motion***"); (ii) the

*Motion for Order Under Sections 105, 345, 363, 364, 503, 1107 and 1108 of the Bankruptcy*

*Code Authorizing (I) Maintenance of Existing Bank Accounts; (II) Continuance of Existing Cash*

*Management System, Bank Accounts, Checks and Related Forms; (III) Continued Performance*

---

[1] The Debtors and the last four digits of their taxpayer identification numbers include: Fuse Media, Inc. (9721); Fuse Media, LLC (0560); Fuse, LLC (1888); JAAM Productions, LLC (5499); SCN Distribution, LLC (9656); Latino Events LLC (8204); Fuse Holdings LLC (5673) Fuse Finance, Inc. (8683); and FM Networks LLC (6500). The Debtors' headquarters and service address is 700 North Central Avenue, Suite 600, Glendale, CA 91203.

*of Intercompany Transactions; (IV) Limited Waiver of Section 345(b) Deposit and Investment Requirements; and (V) Granting Related Relief* [Docket No. 7] (the "**Cash Management Motion**"); (iii) the *Disclosure Statement for Debtors' Prepackaged Joint Plan of Reorganization* [Docket No. 14] (the "**Disclosure Statement**"); and (iv) confirmation of the *Debtors' Prepackaged Joint Plan of Reorganization* [Docket No. 13] (as may be amended, modified, or supplemented, the "**Plan**")[2] until the hearing currently scheduled for July 11, 2019 or such other date and time as the Court deems appropriate.  In support of this Motion, the Committee respectfully represents as follows:

## BACKGROUND

1.      On April 22, 2019 (the "Petition Date"), each of the Debtors filed a petition with the Court under chapter 11 of the Bankruptcy Code.  The Debtors have continued in possession of their property and have continued to operate and manage their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.      On May 10, 2019, the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**") appointed the Committee, which consists of the following members:  (i) Association of National Advertisers; (ii) Showtime Networks, Inc.; and (iii) MGM Domestic Television Distribution, LLC.  *See* Docket No. 124.

## RELIEF REQUESTED

3.      By this emergency Motion, the Committee respectfully requests that this Court enter an order, pursuant to section 105(a) of the Bankruptcy Code, adjourning the Hearing to July 11, 2019 or such other date and time as the Court deems appropriate.

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

01:24564915.3

## BASIS FOR RELIEF REQUESTED

4.        Section 105(a) of the Bankruptcy Code grants bankruptcy courts broad authority and discretion to take such actions and implement such procedures as are necessary to enforce the provisions of the Bankruptcy Code.  Specifically, section 105(a) of the Bankruptcy Code provides:

> The court may issue any order, process, or judgment that is
> necessary or appropriate to carry out the provisions of this title.
> No provision of this title providing for the raising of an issue by a
> party in interest shall preclude the court from, sua sponte, taking
> any action or making any determination necessary or appropriate
> to enforce or implement court order or rules, or to prevent an abuse
> of process.

5.        Since its formation, the Committee has engaged with the Debtors in good faith to both investigate the Debtors' prepetition affairs and attempt to consensually resolve the Chapter 11 cases.  In the midst of its investigation, on June 2, 2019, the Committee, the Debtors, and the Senior Secured Noteholders reached an agreement in principle with respect to the Cash Collateral Motion, the Cash Management Motion, the Scheduling Motion [Docket No. 12], the Disclosure Statement, and the Plan.[3]  Despite the Committee's best efforts and the Debtors' representations that a negotiated settlement regarding the Committee's objections to certain first day motions, including the Plan, had been reached, the Committee and the Debtors have heretofore been unable to finalize the terms of such agreement. Accordingly, the Committee was left with no alternative but to file this emergency Motion to adjourn the Hearing until July 11, 2019, which is two days after the July 9, 2019 investigation period of the Senior Secured Noteholders' liens and claims.  *See* Del. Bankr. L. R. 4001-2.

---

[3] The Committee has filed the *Official Committee of Unsecured Creditors' Reservation of Rights with Respect to (A) Debtors' Cash Collateral Motion and Cash Management Motion, (B) Approval of Disclosure Statement, and (C) Confirmation of Prepackaged Plan of Reorganization* [Docket No. 198], reserving their rights to, among other things, object to the Cash Collateral Motion, Cash Management Motion, approval of the Disclosure Statement, and confirmation of the Plan.

6.      Since its appointment on May 10, 2019, the Committee has undertaken an expedited investigation of the Senior Secured Noteholders' liens and claims and the Debtors' pre-petition affairs.  The Committee has reviewed the Debtors' partial responses to diligence requests, served supplemental discovery requests, and intends to depose the Debtors' current and former chief executive officers.  In the course of the Committee's investigation, which remains ongoing, the Debtors have identified potentially significant unencumbered or unperfected assets that are not part of the Senior Secured Noteholders' prepetition collateral package, including potential derivative claims against the Debtors' current and former directors and officers, commercial tort claims, avoidance actions, and certain insurance policies (including D&O Liability Insurance Policies).  In their brief in support of confirmation [Docket No. 174] (the "***Confirmation Brief***"), the Debtors concede that they "do not *yet* have an analysis of all of their potential claims."  Confirmation Brief at ¶ 117 (emphasis added).  However, given that the Plan contemplates turning all Litigation Claims (including all Causes of Action, which include Avoidance Actions) over to the Litigation Trust for the sole benefit of the Senior Secured Noteholders immediately upon the Effective Date, the word "yet" seems misplaced as it is clear that the Debtors have *no* intention of *ever* analyzing such claims before giving them over to the Senior Secured Noteholders, notwithstanding that such claims are unencumbered assets whose proceeds should be available for distribution to unsecured creditors.

7.      Throughout their pleadings, the Debtors have treated this case as if it were a fully consensual, ordinary-course prepackaged bankruptcy case.  This is far from the truth.  The Debtors' Plan is "unusual," as was stated by this Court at the initial hearing in these chapter 11 cases, but based on the facts of this case is also unprecedented.  *See* Apr. 24, 2019 Hr'g Tr. 13:8-15.  Indeed, this Court has already refused to confirm such a "prepackaged" plan that provided

no recovery to general unsecured creditors, stating that "[m]y disposition is to deny this request for confirmation . . . I don't think you can do in a prepack what you're doing," and observing that the plan was "unprecedented" and that "general unsecured creditors are being treated unfairly." *In re True Temper Sports, Inc., et al.*, Case No. 09-13446 (PJW) (Bankr. D. Del. Nov. 30, 2009) H'rg. Tr. 15:12-14; 31:2-3. In fact, the Committee has identified only a handful of examples where debtors ever even *proposed* such plans in this District. *Confirming* such a plan, particularly on an expedited basis before the completion of a committee investigation, is another matter entirely. The myriad issues raised by the Debtors' approach in these cases amply illustrate why an expedited prepack process is wholly inappropriate for a plan proposing to zero out all non-priority unsecured creditors. Examples abound:

- The Debtors seek to provide an unjustifiably sweeping adequate protection package to the Senior Secured Noteholders that includes both available unencumbered assets (including potentially valuable litigation claims such as breach of fiduciary duty claims against current and former directors and officers), as well as all of the assets of the Debtors that are not obligors on the Senior Secured Notes, without any evidence that their cash collateral is declining in value. To the contrary, funding the chapter 11 cases has preserved and enhanced the value of the Senior Secured Noteholders' collateral. Further, the entire case (and all expenses incurred in connection therewith) is being run for the principal benefit of the Senior Secured Noteholders, which is grounds for a 506(c) surcharge, not the granting of adequate protection.

- The cash collateral order provides an absurdly small and inadequate Committee investigation budget, as well as an illusory challenge period that runs thirty-four days past the Debtors' proposed confirmation date, at which time the Debtors expect to grant complete control over (and a 100% economic interest in) a litigation trust to the Senior Secured Noteholders. This inadequate time period and budget precludes the Committee from, among other things, properly investigating breach of fiduciary duty claims and whether and to what extent the upstream guaranties granted to the Senior Secured Noteholders may be avoidable under section 544 of the Bankruptcy Code—a potential result that would

fundamentally alter the relative rights of the creditors in these cases.

- The proposed treatment of general unsecured creditors, considered together with the Debtors' apparent plan to run a post-confirmation sale process, raises questions as to whether the Plan was filed in good faith or for the principal benefit of the Senior Secured Noteholders. If the Plan is confirmed as proposed, the Senior Secured Noteholders will (a) discharge all of the Debtors' unsecured claims and interests without providing any recovery on account of such claims and interests, (b) receive extensive releases from the Debtors, (c) acquire all of the Debtors' assets free and clear of all prepetition claims, liens, and interests without a valuation or court-supervised sale process, and (d) monetize their newly acquired assets post-bankruptcy.

- Conflating claim dilution with claim negation, the Plan provides not a cent of recovery to general unsecured creditors on the grounds that the Senior Secured Creditors purportedly have a massive deficiency claim. *See* Plan § III-F-4. Yet, the Plan fails to provide the valuation information necessary to quantify this claim. Further, the Plan distributes the Debtors' potentially significant unencumbered value to the Senior Secured Noteholders alone, increasing the likelihood that the Senior Secured Noteholders stand to receive value in excess of the value of their collateral and offending both the absolute priority and equal treatment provisions of the Bankruptcy Code.

- The Plan provides impermissible and abusive releases to a vast and overbroad group of non-debtors, including current and former directors and officers that have not made a legally cognizable substantial contribution to the estates.

- Although the Debtors provide no evidence or rationale to support substantive consolidation, the Debtors seek a "deemed" substantive consolidation on a non-consensual basis that may impermissibly disadvantage certain of the Debtors' creditors.

8.    The Committee is at a loss to understand any exigency that would justify the truncated schedule of these Chapter 11 Cases, and indeed the Debtors have identified no such circumstance. Far from representing the proverbial melting ice cube, the Debtors' businesses are currently stable and generating cash flow. This leads to the inescapable conclusion that the Debtors' approach, undertaken at the apparent behest of the Senior Secured Noteholders, is

intended to allow the Senior Secured Noteholders to subvert the purposes of the Bankruptcy Code—gaming the chapter 11 process while minimizing or avoiding the associated costs and burdens by, among other things, upending the transparency that underpins the Bankruptcy Code. By declining to prepare and file schedules and statements of financial affairs—despite the provision of additional time to do so—and devoting their energies instead to neutering the Committee's ability to investigate estate causes of action, the Debtors are depriving unsecured creditors of critical procedural protections to which they are entitled and must not be denied.

9.     Accordingly, the Committee respectfully requests that the Court adjourn the Hearing until July 11, 2019, or such other date and time as the Court deems appropriate, to allow the Committee, the Debtors and the Senior Secured Noteholders time to work in good faith to finalize and document the terms of the parties' negotiated settlement, or alternatively for the Committee to complete the discovery process it had initiated, conclude its investigation into the Debtors' affairs, and prosecute its objections to the Plan, Cash Collateral Motion, and Cash Management Motion.

## CONCLUSION

WHEREFORE, the Committee respectfully requests that the Court enter an order,

substantially in the form attached hereto as Exhibit A, granting the relief requested herein, and

such other and further relief as the Court deems just and appropriate.

Dated:  June 5, 2019
        Wilmington, Delaware

*/s/ Jordan E. Sazant*

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Sean M. Beach, Esq. (No. 4070)
Sean T. Greecher, Esq. (No. 4484)
Jordan E. Sazant, Esq. (No. 6515)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone:     (302) 571-6600
Facsimile:     (302) 571-1253

-and-

GIBSON, DUNN & CRUTCHER LLP
David M. Feldman, Esq. (admitted *pro hac vice*)
Shireen A. Barday, Esq. (admitted *pro hac vice*)
Matthew P. Porcelli, Esq. (admitted *pro hac vice*)
John Conte, Esq. (admitted *pro hac vice*)
Christina M. Brown, Esq. (admitted *pro hac vice*)
200 Park Avenue
New York, New York 10166
Telephone:  (212) 351-4000
Facsimile:  (212) 351-4035

*Proposed Counsel to the Official*
*Committee of Unsecured Creditors*

01:24564915.3