# **Exhibit 1**

## **Revised Proposed Confirmation Order**

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FUSE, LLC, *et al.*,[1] | Case No. 19-10872 (KG) |
| Debtors. | (Jointly Administered) |
| | **Re:  Docket Nos. 13, 14, 194** |

### ORDER APPROVING THE DEBTORS' DISCLOSURE STATEMENT FOR, AND CONFIRMING, DEBTORS' AMENDED PREPACKAGED JOINT PLAN OF REORGANIZATION

The above-captioned debtors (collectively, the "<u>Debtors</u>") having:

a.  commenced, on April 18, 2019, a prepetition solicitation of votes to accept or reject the *Debtors' Prepackaged Joint Plan of Reorganization* [Docket No. 13] (as modified, amended, or supplemented from time to time, the "<u>Plan</u>"), and distributed therewith (i) *the Disclosure Statement for the Debtors' Prepackaged Joint Plan of Reorganization* [Docket No. 14] (the "<u>Disclosure Statement</u>"),[2] and (ii) ballots for voting on the Plan to Holders of Claims entitled to vote on the Plan, namely Holders of Class 3 Senior Secured Notes Claims, in accordance with the terms of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "<u>Bankruptcy Code</u>"), the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and the Local Rules of Bankruptcy Practice and Procedure for the United States Bankruptcy Court for the District of Delaware (the "<u>Bankruptcy Local Rules</u>");

---

[1]  The Debtors and the last four digits of their taxpayer identification numbers include:  Fuse Media, Inc. (9721); Fuse Media, LLC (0560); Fuse, LLC (1888); JAAM Productions, LLC (5499); SCN Distribution, LLC (9656); Latino Events LLC (8204); Fuse Holdings LLC (5673); Fuse Finance, Inc. (8683); and FM Networks LLC (6500). The Debtors' headquarters and service address is 700 North Central Avenue, Suite 600, Glendale, CA 91203.

***For the avoidance of doubt, Debtors Fuse Media, Inc. and Fuse Media, LLC are not proponents of the Plan and the provisions of the Plan shall not extend to those entities.***

[2]  Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Plan, the Disclosure Statement, or the Bankruptcy Code (as defined herein), as applicable.  The rules of interpretation set forth in Article I.A of the Plan apply.

b.     commenced, on April 22, 2019 (the "<u>Petition Date</u>"), these chapter 11 cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code;

c.     filed,[3] on April 23, 2019, the Plan and the Disclosure Statement;

d.     filed, on April 23, 2019, the *Debtors' Motion for Entry of an Order (I) Scheduling Combined Hearing on (A) Adequacy of Disclosure Statement, (B) Confirmation of Prepackaged Plan of Reorganization, and (C) the Assumption of Executory Contracts and Cure Amounts; (II) Fixing the Deadlines to Object to Disclosure Statement, Prepackaged Plan, and Proposed Assumption or Rejection of Executory Contracts and Cure Amounts; (III) Approving (A) Prepetition Solicitation Procedures and (B) Form and Manner of Notice of Commencement, Combined Hearing, Assumption of Executory Contracts and Cure Amounts Related Thereto, and Objection Deadlines; (IV) Conditionally (A) Directing the United States Trustee not to Convene Section 341(a) Meeting of Creditors and (B) Waiving Requirement of Filing Statements of Financial Affairs and Schedules of Assets and Liabilities; and (V) Granting Related Relief* [Docket No. 12] (the "<u>Scheduling Motion</u>");

e.     filed, on April 23, 2019, the *Declaration of Miguel Roggero in Support of First Day Motions* [Docket No. 3] detailing the facts and circumstances of these chapter 11 cases;

f.     filed, on April 23, 2019, the original *Plan Supplement* [Docket No. 15] and on May 21, 2019, the *Amended Plan Supplement* [Docket No. 151] (as modified, amended, or supplemented from time to time, the "<u>Plan Supplement</u>" and which, for purposes of the Plan and this Confirmation Order, is included in the definition of "<u>Plan</u>");

g.     filed, on May, 2019 and thereafter, the affidavits of service of the Confirmation Hearing Notice [Docket Nos. 96, 99, 115, 145] (the "<u>Confirmation Hearing Notice Affidavit</u>"), consistent with the *Order (I) Scheduling Combined Hearing on (A) Adequacy of Disclosure Statement, (B) Confirmation of Prepackaged Plan of Reorganization, and (C) The Assumption of Executory Contracts and Cure Amounts; (II) Fixing the Deadlines to Object to Disclosure Statement, Prepackaged Plan, and Proposed Assumption or Rejection of Executory Contracts and Cure Costs; (III) Approving (A) Prepetition Solicitation Procedures and (B)*

---

[3]  Unless otherwise indicated, use of the term "filed" herein refers also to the service of the applicable document filed on the docket in these chapter 11 cases, as applicable.

*Form and Manner of Notice of Commencement, Combined Hearing, Assumption of Executory Contracts and Cure Amounts Related Thereto, and Objection Deadlines; (IV) Conditionally (A) Directing the United States Trustee not to Convene Section 341(a) Meeting of Creditors and (B) Waiving Requirement of Filing Statements of Financial Affairs and Schedules of Assets and Liabilities; and (V) Granting Related Relief* [Docket No. 57] (the "Scheduling Order");

h.      filed, on May 1, 2019, the *Notice of (I) Commencement of Prepackaged Chapter 11 Bankruptcy Cases; (II) Combined Hearing on the Disclosure Statement, Confirmation of the Prepackaged Joint Plan of Reorganization, and Related Matters; and (III) Objection Deadlines, and Summary of the Debtors' Prepackaged Joint Plan of Reorganization* [Docket No. 91] (the "Confirmation Hearing Notice"), which contained notice of the commencement of these chapter 11 cases, the date and time set for the hearing (the "Confirmation Hearing") to consider approval of the Disclosure Statement and confirmation of the Plan ("Confirmation"), and the deadline for filing objections to the Plan and the Disclosure Statement;

i.      filed, on May 1, 2019, the *Debtors' Notice of (I) Assumption of Contracts and Leases, (II) Fixing of Cure Amounts, and (III) Deadline to Object Thereto* [Docket No. 95] (as modified, amended, or supplemented from time to time, the "Assumption Notice"), identifying the contracts that the Debtors intend to assume through the Plan;

j.      filed, on May 14, 2017, the *Declaration of David Hartie of Kurtzman Carson Consultants, LLC Regarding the Mailing, Voting, and Tabulation of Ballots Accepting and Rejecting the Debtors' Prepackaged Joint Chapter 11 Plan of Reorganization* [Docket No. 133], which detailed the results of the Plan voting process (the "Voting Declaration");

k.      filed, on June 4, 2019, the *Debtors' Amended Prepackaged Joint Plan of Reorganization* [Docket No. 194], incorporating certain revisions requested by the Office of the U.S. Trustee;

l.      filed, on May 31, 2019, the *Debtors' Memorandum of Law in Support of Order Approving the Debtors' Disclosure Statement for, and Confirming, the Debtors' Prepackaged Joint Plan of Reorganization* (the "Confirmation Brief"), along with (i) the *Declaration of Miguel Roggero in Support of Confirmation of Debtors' Prepackaged Joint Plan of Reorganization*; and (ii) the *Declaration of Asher Cohen of FTI Consulting, Inc. in Support of Confirmation of Debtors' Prepackaged Joint Plan of Reorganization* (together, the "Declarations"); and

m.    operated their businesses and managed their properties during these chapter 11 cases as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

The Court having:

a.    entered, on April 24, 2019, the Scheduling Order;

b.    set June 5, 2019, at 10:00 a.m. (prevailing Eastern Time), as the date and time for the Confirmation Hearing, pursuant to Bankruptcy Rules 3017 and 3018 and sections 1126, 1128, and 1129 of the Bankruptcy Code, as set forth in the Scheduling Order;

c.    reviewed the Plan, the Disclosure Statement, the Scheduling Motion, the Plan Supplement, the Assumption Notice, the Confirmation Brief, the Voting Declaration, the Confirmation Hearing Notice, the Confirmation Hearing Notice Affidavit, the Declarations, and all filed pleadings, exhibits, statements, and comments regarding approval of the Disclosure Statement and Confirmation, including all objections, statements, and reservations of rights;

d.    held the Confirmation Hearing;

e.    heard the statements and arguments made by counsel in respect of approval of the Disclosure Statement and Confirmation; and

f.    considered all oral representations, testimony, documents, filings, and other evidence regarding approval of the Disclosure Statement and Confirmation.

NOW, THEREFORE, it appearing to the Court that notice of the Confirmation Hearing and the opportunity for any party in interest to object to approval of the Disclosure Statement and Confirmation having been adequate and appropriate as to all parties affected or to be affected by the Plan and the transactions contemplated thereby, and the legal and factual bases set forth in the documents filed in support of approval of the Disclosure Statement and Confirmation and other evidence presented at the Confirmation Hearing having established just cause for the relief granted herein; and having considered any and all objections to the Plan and

4

its confirmation and the Disclosure Statement and all such objections being consensually resolved or withdrawn, or overruled on the merits; and after due deliberation thereon and good cause appearing therefor, the Court makes and issues the following findings of fact and conclusions of law, and orders:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

IT IS DETERMINED, FOUND, ADJUDGED, DECREED, AND ORDERED THAT:

**A.      Findings and Conclusions.**

1.      The findings and conclusions set forth herein, in the recitals and in the record of the Confirmation Hearing constitute the Court's findings of fact and conclusions of law under Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014.  To the extent any of the following conclusions of law constitute findings of fact, or vice versa, they are adopted as such.

**B.      Jurisdiction, Venue, and Core Proceeding.**

2.      The Court has jurisdiction over these chapter 11 cases pursuant to section 1334 of title 28 of the United States Code.  The Court has exclusive jurisdiction to determine whether the Disclosure Statement and the Plan comply with the applicable provisions of the Bankruptcy Code and should be approved and confirmed, respectively.  Venue is proper in this district pursuant to sections 1408 and 1409 of title 28 of the United States Code.  Approval of the Disclosure Statement, including associated solicitation procedures, and the Confirmation of the

Plan are core proceedings within the meaning of section 157(b)(2) of title 28 of the United States

Code.

**C.    Eligibility for Relief.**

> 3.    The Debtors were and are entities eligible for relief under section 109 of

the Bankruptcy Code.

**D.    Commencement and Joint Administration of these Chapter 11 Cases;
Committee Appointment.**

> 4.    On the Petition Date, each of the Debtors commenced voluntary cases

under chapter 11 of the Bankruptcy Code.  In accordance with the *Order Authorizing Joint

Administration of Related Chapter 11 Cases for Procedural Purposes Only* [Docket No. 47],

these chapter 11 cases have been consolidated for procedural purposes only and are being jointly

administered pursuant to Bankruptcy Rule 1015.  Since the Petition Date, the Debtors have

operated their businesses and managed their properties as debtors in possession pursuant to

sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed

in these chapter 11 cases.

> 5.    On May 10, 2019, the United States Trustee (the "U.S. Trustee")

appointed an official committee of unsecured creditors in these cases pursuant to section 1102 of

the Bankruptcy Code [Docket No. 124] (the "Committee").

**E.    Burden of Proof – Confirmation of the Plan.**

> 6.    The Debtors, as proponents of the Plan, have met their burden of proving

the applicable elements of sections 1129(a) and 1129(b) of the Bankruptcy Code by a

preponderance of the evidence, which is the applicable evidentiary standard for Confirmation.  In

addition, and to the extent applicable, the Plan is confirmable under the clear and convincing evidentiary standard.

**F.    Notice.**

7.    As evidenced by the Confirmation Hearing Notice Affidavit, due, adequate, and sufficient notice of the Disclosure Statement, the Plan, and the Confirmation Hearing, together with all deadlines for voting to accept or reject the Plan as well as objecting to the Disclosure Statement, the Plan, and all other materials distributed by the Debtors in connection with the Confirmation in compliance with the Bankruptcy Rules, has been provided to: (a) all known Holders of Claims and Equity Interests; (b) all non-Debtor parties to the Debtors' Executory Contracts and Unexpired Leases; (c) the Office of the United States Trustee for the District of Delaware; (d) the entities listed on the Consolidated List of Creditors Holding the Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d); (e) the Internal Revenue Service; (f) the Securities and Exchange Commission; (g) the United States Attorney for the District of Delaware; (h) counsel to the Senior Secured Notes Trustee, (i) counsel to the Supporting Noteholders; and (j) all other parties entitled to notice in these Chapter 11 Cases. Such notice was adequate and sufficient under the facts and circumstances of these chapter 11 cases pursuant to section 1128 of the Bankruptcy Code, Bankruptcy Rules 2002 and 3020, and other applicable law and rules, and no other or further notice is or shall be required.

**G.    Disclosure Statement.**

8.    The Disclosure Statement contains (a) sufficient information of a kind necessary to satisfy the disclosure requirements of all applicable nonbankruptcy laws, rules, and

regulations, including the Securities Act, and (b) "adequate information" (as such term is defined in section 1125(a) of the Bankruptcy Code and used in section 1126(b)(2) of the Bankruptcy Code) with respect to the Debtors, the Plan, and the transactions contemplated therein. The filing of the Disclosure Statement with the clerk of the Court satisfied Bankruptcy Rule 3016(b).

**H.**     **Ballots.**

9.     The only class of Claims entitled to vote to accept or reject the Plan is Class 3 Senior Secured Notes Claims (the "Voting Class").

10.     As approved by the Scheduling Order, the ballots that the Debtors used to solicit votes to accept or reject the Plan from Holders of Claims in the Voting Class adequately addressed the particular needs of these chapter 11 cases and were appropriate for Holders of Claims in the Voting Class to vote to accept or reject the Plan.

**I.**     **Solicitation.**

11.     As described in the Voting Declaration, the solicitation of votes on the Plan complied with the solicitation procedures set forth in the Scheduling Motion (the "Solicitation Procedures"), was appropriate and satisfactory based upon the circumstances of these chapter 11 cases, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and any other applicable rules, laws, and regulations, including any applicable registration requirements and exemptions from the registration requirements under the Securities Act, and any exemptions from registration under "Blue Sky" requirements.

12.     Prior to the Petition Date, the Plan, the Disclosure Statement, and the ballots (collectively, the "Solicitation Packages") and, following the Petition Date, the Confirmation Hearing Notice, were transmitted and served, including to all Holders of Claims in the Voting Class, in compliance with the Bankruptcy Code, including sections 1125 and 1126 thereof, the Bankruptcy Rules, including Bankruptcy Rules 3017 and 3018, the Bankruptcy Local Rules, including Del. Bankr. L.R. 3016-2 and 3017-1, the Scheduling Order, and any applicable nonbankruptcy law.  Transmission and service of the Solicitation Packages and the Confirmation Hearing Notice were timely, adequate, and sufficient under the facts and circumstances of these chapter 11 cases.  No further notice is required.

13.     As set forth in the Voting Declaration, the Solicitation Packages were distributed to Holders of Claims in the Voting Class that held a Claim as of April 5, 2019 (the date specified in such documents for the purpose of the solicitation).  The establishment and notice of the Voting Record Date were reasonable and sufficient.

14.     The period during which the Debtors solicited acceptances or rejections to the Plan was a reasonable and sufficient period of time for Holders of Claims in the Voting Class to make an informed decision to accept or reject the Plan.

15.     Under section 1126(f) of the Bankruptcy Code, Holders of Claims in Class 1 (Other Priority Claims) and Class 2 (Other Secured Debt Claims) (collectively, the "Deemed Accepting Classes") are Unimpaired and conclusively presumed to have accepted the Plan.  Also, the Debtors were not required to solicit votes from Class 4 (General Unsecured

9

Claims) and Class 5 (Equity Interest in Debtors), which were deemed to reject the Plan (the "Deemed Rejecting Classes").

**J.**    **Voting.**

16.    As evidenced by the Voting Declaration and approved by the Scheduling Order, votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith, and in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, the Disclosure Statement, and any applicable nonbankruptcy law, rule, or regulation.

**K.**    **Plan Supplement.**

17.    On April 23, 2019, and as amended on May 21, 2019, the Debtors filed the Plan Supplement with the Court.  The Plan Supplement complies with the Bankruptcy Code and the terms of the Plan, and the filing and notice of such documents was good and proper in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Bankruptcy Local Rules, and no other or further notice is required.  All documents included in the Plan Supplement are integral to, part of, and incorporated by reference into the Plan (as amended, modified, or supplemented in accordance therewith).  Subject to the terms of the Plan, and only consistent therewith, the Debtors reserve the right to alter, amend, update, or modify the documents included in the Plan Supplement before the Effective Date.  All creditors and parties in interest were provided due, adequate, and sufficient notice of the Plan Supplement.  No other or further notice is or will be required with respect to the Plan Supplement.

**L.      Compliance with Bankruptcy Code Requirements—Section 1129(a)(1).**

18.      The Plan complies with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(1) of the Bankruptcy Code.  In addition, the Plan is dated and identifies the entities submitting it, thereby satisfying Bankruptcy Rule 3016(a).

**a.      Proper Classification—Sections 1122 and 1123.**

19.      The Plan satisfies the requirements of sections 1122(a) and 1123(a)(1) of the Bankruptcy Code.  Article III of the Plan provides for the separate classification of Claims and Equity Interests into 5 Classes.  Valid business, factual, and legal reasons exist for the separate classification of such Classes of Claims and Equity Interests.  The classifications reflect no improper purpose and do not unfairly discriminate between, or among, Holders of Claims or Equity Interests.  Each Class of Claims and Equity Interests contains only Claims or Equity Interests that are substantially similar to the other Claims or Equity Interests within that Class.

**b.      Specified Unimpaired Classes—Section 1123(a)(2).**

20.      The Plan satisfies the requirements of section 1123(a)(2) of the Bankruptcy Code.  Article III of the Plan specifies that Claims and Equity Interests, as applicable, in the following Classes (the "Unimpaired Classes") are Unimpaired under the Plan within the meaning of section 1124 of the Bankruptcy Code:

| Class | Designation |
|:-----:|-------------|
| 1 | Other Priority Claims |
| 2 | Other Secured Debt Claims |

21.      Additionally, Article II of the Plan specifies that Allowed Administrative Expense Claims, Professional Fee Claims, Restructuring Expenses and Senior Secured Notes

Trustee Fees, and Priority Tax Claims will be paid in full in accordance with the terms of the

Plan (unless otherwise agreed by the Debtors or Reorganized Debtors, as applicable, and the

relevant Holder(s) in accordance with the terms of the Plan), although these Claims are not

classified under the Plan.

c.    **Specified Treatment of Impaired Classes—Section 1123(a)(3).**

22.    The Plan satisfies the requirements of section 1123(a)(3) of the

Bankruptcy Code.  Article III of the Plan specifies that Claims and Equity Interests, as

applicable, in the following three Classes (the "Impaired Classes") are Impaired under the Plan

within the meaning of section 1124 of the Bankruptcy Code, and describes the treatment of such

Classes:

| Class | Designation |
|---|---|
| 3 | Senior Secured Notes Claims |
| 4 | General Unsecured Claims |
| 5 | Equity Interests in Debtors |

d.    **No Discrimination—Section 1123(a)(4).**

23.    The Plan satisfies the requirements of section 1123(a)(4) of the

Bankruptcy Code.  The Plan provides for the same treatment by the Debtors for each Claim or

Equity Interest in each respective Class unless the holder of a particular Claim or Equity Interest

has agreed to a less favorable treatment of such Claim or Equity Interest.

e.    **Adequate Means for Plan Implementation—Section 1123(a)(5).**

24.    The Plan satisfies the requirements of section 1123(a)(5) of the

Bankruptcy Code.  The provisions in Article V and elsewhere in the Plan, and in the exhibits and

attachments to the Plan and the Disclosure Statement, provide, in detail, adequate and proper

DOCS_SF:101132.12

means for the Plan's implementation, including regarding: (a) the issuance and distribution of the

New Membership Interests; (b) the Reorganized Debtors' entry into the New Secured Debt;

(c) implementation and approval of the Restructuring Transactions; (d) authorization of the

Debtors and/or Reorganized Debtors to take all actions necessary to effectuate the Plan,

including those actions necessary to effect the Restructuring Transactions; (e) implementation of

the Key Employee Retention Agreements; (f) authorization of the adoption of and entry into the

Plan Documents; (g) cancellation of existing securities and agreements, and the surrender of

existing securities (except as otherwise provided in the Plan); (h) settlement of Claims and

Equity Interests; (i) vesting of Estate assets in the Reorganized Debtors; (j) the vesting of the

Litigation Trust Assets in the Fuse Litigation Trust; and (k) the appointment and designation of

the directors of the New Board and officers of each of the Reorganized Debtors.

> f.    **Voting Power of Equity Securities—Section 1123(a)(6).**

25.    The Plan provides that the New Organizational Documents of will include,

among other things, pursuant to section 1123(a)(6) of the Bankruptcy Code, a provision

prohibiting the issuance of non-voting equity securities, but only to the extent required by section

1123(a)(6) of the Bankruptcy Code.

> g.    **Directors and Officers—Section 1123(a)(7).**

26.    The Plan satisfies the requirements of section 1123(a)(7) of the

Bankruptcy Code.  In accordance with Article V.O of the Plan, the identities of the directors and

officers of each of the Reorganized Debtors are identified in the Article V.K of the Plan and in

Exhibit F of the Plan Supplement, which exhibit may be modified and/or supplemented prior to

the Effective Date.  The selection of the officers and directors of the Reorganized Parent and

each of the Reorganized Debtors is consistent with the interests of Holders of Claims and Equity

Interests, and public policy.  No Litigation Trustee has yet been selected.

> h.    **Impairment/Unimpairment of Classes—Section 1123(b)(1).**

27.    The Plan is consistent with section 1123(b)(1) of the Bankruptcy Code.

Article III of the Plan impairs or leaves Unimpaired each Class of Claims and Equity Interests.

> i.    **Assumption and Rejection—Section 1123(b)(2).**

28.    The Plan is consistent with section 1123(b)(2) of the Bankruptcy Code.

Article VII of the Plan provides for the assumption of the Debtors' Executory Contracts and

Unexpired Leases not previously assumed, assumed and assigned, or rejected during these

chapter 11 cases under section 365 of the Bankruptcy Code, and the payment of cures, if any,

related thereto.

> j.    **Compromise, Settlement, Releases, Exculpation, Injunction, and Preservation of Claims and Causes of Action—Section 1123(b)(3).**

29.    The Plan is consistent with section 1123(b)(3) of the Bankruptcy Code.

As provided in Article V of the Plan, and in accordance with section 363 of the Bankruptcy

Code, and in consideration of the distributions, settlements, and other benefits provided under the

Plan, except as stated otherwise in the Plan, the provisions of the Plan constitute a good faith

compromise of all Claims, Equity Interests, and controversies relating to the contractual,

subordination, and other legal rights that a holder of a Claim or Equity Interest may have with

respect to any Allowed Claim or Equity Interest, or any distribution to be made on account of

such Allowed Claim or Equity Interest.  The compromise and settlement of such Claims and

14

Equity Interests embodied in the Plan and reinstatement and unimpairment of other Classes identified in the Plan are in the best interests of the Debtors, the Estates, and all Holders of Claims and Equity Interests, and are fair, equitable, and reasonable.

30.     Article XI of the Plan describes certain releases granted by the Debtors (the "Debtor Releases").  The Debtors have satisfied the business judgment standard with respect to the propriety of the Debtor Releases.  Such releases are a necessary and integral element of the Plan, and are fair, reasonable, and in the best interests of the Debtors, the Estates, and Holders of Claims and Equity Interests.  Also, the Debtor Releases are: (a) in exchange for the good and valuable consideration provided by the Released Parties; (b) a good faith settlement and compromise of the Claims released by the Debtors under the Plan; and (c) given, and made, after due notice and opportunity for hearing.  Creditors have voted in favor of the Plan, including the Debtor Releases.  The Plan, including the Debtor Releases, was negotiated by sophisticated parties represented by able counsel and financial advisors.  The Debtor Releases are therefore the result of an arm's-length negotiation process.

31.     Article XII of the Plan describes certain releases granted by Holders of Claims and Equity Interests against the Debtors (the "Third-Party Release").  With respect to the Holders of Senior Secured Notes Claims who do not properly opt-out, the Third-Party Release provides finality for the Debtors, the Reorganized Debtors, and the Released Parties regarding the parties' respective obligations under the Plan and with respect to the Debtors and the Reorganized Debtors.  The Confirmation Hearing Notice sent to Holders of Claims and Equity Interests, and the ballots sent to all Holders of Senior Secured Notes Claims entitled to vote on

15

the Plan, in each case, unambiguously and prominently stated that the Plan contains the Third-

Party Release and provided therein a copy of the Third-Party Release excerpted from the Plan.

32.     Furthermore, the Third-Party Release is consensual as parties entitled to

vote on the Plan were provided with the option of opting out of the Third Party Release and all

parties in interest were provided notice of the chapter 11 proceedings, the Plan, and the deadline

to object to confirmation of the Plan and properly informed that all Holders of Unimpaired

Claims against the Debtors that did not file an objection with the Court in the chapter 11 cases

that expressly objected to the inclusion of such holder as a Releasing Party under the provisions

contained in Article XII of the Plan would be deemed to have expressly, unconditionally,

generally, individually, and collectively consented to the release and discharge of all claims and

Causes of Action against the Debtors and the Released Parties.  Additionally, the release

provisions of the Plan were conspicuous, emphasized with boldface type and/or capital letters in

the Plan, the Disclosure Statement, the ballots, and the applicable notices.

33.     The exculpation, described in Article XII.B. of the Plan (the

"Exculpation"), is appropriate under applicable law because it was proposed in good faith, was

formulated following extensive good-faith, arm's-length negotiations with key constituents, and

is appropriately limited in scope.  Without limiting anything in the Exculpation, each Exculpated

Party has participated in these chapter 11 cases in good faith and is appropriately released and

exculpated from any obligation, Cause of Action, or liability for any prepetition or postpetition

act taken or omitted to be taken in connection with, relating to, or arising out of the Debtors'

restructuring efforts, the other Plan Documents, the Restructuring Transactions, these chapter 11

DOCS_SF:101132.12

cases, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement or the Plan or any contract, instrument, release, or other agreement or document created or entered into, in connection with, the Disclosure Statement or the Plan, the filing of these chapter 11 cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, or the distribution of property under the Plan. The Exculpation, including its carve-out for gross negligence or willful misconduct, is consistent with established practice in this jurisdiction and others.

34.     The injunction provision set forth in Article XII.C. of the Plan is necessary to implement, preserve, and enforce the Debtors' discharge, the Debtor Releases, the Third-Party Release, and the Exculpation, and is narrowly tailored to achieve this purpose.

35.     Article V.C of the Plan appropriately provides that, except as otherwise provided for in the Plan or this Confirmation Order, that the Reorganized Debtors or Litigation Trust, as applicable, will retain, and may enforce, all rights to commence and pursue, as appropriate, any and all Causes of Action except for Causes of Action that have been expressly waived, settled, or otherwise released as provided under the Plan, whether arising before or after the Petition Date, including any actions specifically enumerated in the Plan Supplement, in accordance with section 1123(b)(3)(B) of the Bankruptcy Code.  The provisions regarding the preservation of Causes of Action in the Plan, including the Plan Supplement, are appropriate, fair, equitable, and reasonable, and are in the best interests of the Debtors, the Estates, and Holders of Claims and Equity Interests.

36.    The release and discharge of all mortgages, deeds of trust, Liens, pledges, or other security interests against property of the Estates described in Article V.I of the Plan (the "Lien Release") is necessary to implement the Plan.  The provisions of the Lien Release are appropriate, fair, equitable, and reasonable and are in the best interests of the Debtors, the Estates, and Holders of Claims and Equity Interests.

k.    **Additional Plan Provisions—Section 1123(b)(6).**

37.    The other discretionary provisions of the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1123(b)(6) of the Bankruptcy Code.

## M.    **Debtor Compliance with the Bankruptcy Code—Section 1129(a)(2).**

38.    The Debtors and their agents have complied in good faith with the applicable provisions of the Bankruptcy Code and, thus, satisfied the requirements of section 1129(a)(2) of the Bankruptcy Code.  Specifically, each Debtor:

a.    is an eligible debtor under section 109, and a proper proponent of the Plan under section 1121(a), of the Bankruptcy Code;

b.    has complied with applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of the Court; and

c.    complied with the applicable provisions of the Bankruptcy Code, including sections 1125 and 1126, the Bankruptcy Rules, the Bankruptcy Local Rules, any applicable nonbankruptcy law, rule and regulation, the Scheduling Order, and all other applicable law, in transmitting the Solicitation Packages, and related documents and notices, and in soliciting and tabulating the votes on the Plan.

**N.     Plan Proposed in Good Faith—Section 1129(a)(3).**

39.     The Plan satisfies the requirements of section 1129(a)(3) of the Bankruptcy Code.  The Debtors have proposed the Plan in good faith and not by any means forbidden by law.  In so determining, the Court has examined the totality of the circumstances surrounding the filing of these chapter 11 cases, the Plan, the process leading to Confirmation, including the support of Holders of Claims in the Voting Class for the Plan, and the transactions to be implemented pursuant thereto.  These chapter 11 cases were filed, and the Plan was proposed, with the legitimate purpose of allowing the Debtors to implement the Restructuring Transactions, reorganize, and emerge from bankruptcy with a capital and organizational structure that will allow them to conduct their businesses and satisfy their obligations with sufficient liquidity and capital resources.

**O.     Payment for Services or Costs and Expenses—Section 1129(a)(4).**

40.     The procedures set forth in the Plan for the Court's review and ultimate determination of the fees and expenses to be paid by the Debtors in connection with these chapter 11 cases, or in connection with the Plan and incident to these chapter 11 cases, satisfy the objectives of, and are in compliance with, section 1129(a)(4) of the Bankruptcy Code.

**P.     Directors, Officers, and Insiders—Section 1129(a)(5).**

41.     The Debtors have satisfied the requirements of section 1129(a)(5) of the Bankruptcy Code.  Article V.K of the Plan, in conjunction with Exhibit F of the Plan Supplement, disclose the identity and affiliations of the individuals proposed to serve as the initial directors and officers of the Reorganized Debtors, and the identity and nature of any

19

compensation for any insider who will be employed or retained by the Reorganized Debtors. The proposed directors and officers for the Reorganized Debtors are qualified, and the elections to, or continuance in, such offices by the proposed directors and officers is consistent with the interests of the Holders of Claims and Equity Interests and with public policy.

**Q.      No Rate Changes—Section 1129(a)(6).**

42.      Section 1129(a)(6) of the Bankruptcy Code is not applicable to these chapter 11 cases.  The Plan proposes no rate change subject to the jurisdiction of any governmental regulatory commission.

**R.      Best Interest of Creditors—Section 1129(a)(7).**

43.      The Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code.  The liquidation analysis attached to the Disclosure Statement and the other evidence related thereto in support of the Plan that was proffered or adduced at, prior to, or in connection with the Confirmation Hearing: (a) are reasonable, persuasive, and credible as of the dates such analysis or evidence was prepared, presented, or proffered; (b) utilize reasonable and appropriate methodologies and assumptions; (c) have not been controverted by other evidence; and (d) establish that each Holder of an Allowed Claim or Equity Interest in each Class will recover at least as much under the Plan on account of such Claim or Equity Interest, as of the Effective Date, as such holder would receive if the Debtors were liquidated on the Effective Date under chapter 7 of the Bankruptcy Code.

**S.      Acceptance by Certain Classes—Section 1129(a)(8).**

       44.    Classes 1 and 2 constitute Unimpaired Classes, each of which is conclusively presumed to have accepted the Plan in accordance with section 1126(f) of the Bankruptcy Code.  The Voting Class has voted to accept the Plan.  Holders of General Unsecured Claims in Class 4 and Holders of Equity Interests in Debtors in Class 5 receive no recovery pursuant to the Plan, and are deemed to have rejected the Plan.  The Plan is confirmable because it satisfies sections 1129(a)(10) and 1129(b) of the Bankruptcy Code.

**T.      Treatment of Claims Entitled to Priority Under Section 507(a)**
**of the Bankruptcy Code—Section 1129(a)(9).**

       45.    The treatment of Administrative Expense Claims, Professional Fee Claims, Restructuring Expenses and Senior Secured Notes Trustee Fees, and Priority Tax Claims, under Article II of the Plan, and of Other Priority Claims under Article III of the Plan, satisfies the requirements of, and complies in all respects with, section 1129(a)(9) of the Bankruptcy Code.

**U.      Acceptance by at Least One Impaired Class—Section 1129(a)(10).**

       46.    The Plan satisfies the requirements of section 1129(a)(10) of the Bankruptcy Code.  As evidenced by the Voting Declaration, the Voting Class, which is impaired, voted to accept the Plan by the requisite numbers and amounts of Claims, determined without including any acceptance of the Plan by any insider (as that term is defined in section 101(31) of the Bankruptcy Code), specified under the Bankruptcy Code.

**V.**   **Feasibility—Section 1129(a)(11).**

47.   The Plan satisfies the requirements of section 1129(a)(11) of the Bankruptcy Code.  The financial projections attached to the Disclosure Statement and the other evidence supporting Confirmation of the Plan proffered or adduced by the Debtors at, or prior to, or filed in connection with, the Confirmation Hearing: (a) are reasonable, persuasive, and credible as of the dates such analysis or evidence was prepared, presented, or proffered; (b) utilize reasonable and appropriate methodologies and assumptions; (c) have not been controverted by other evidence; (d) establish that the Plan is feasible and Confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization of the Reorganized Debtors or any successor to the Reorganized Debtors under the Plan; and (e) establish that the Reorganized Debtors will have sufficient funds available to meet their obligations under the Plan.

**W.**   **Payment of Fees—Section 1129(a)(12).**

48.   The Plan satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code.  Article XV.B of the Plan provides for the payment of all fees payable by the Debtors under 28 U.S.C. § 1930(a).

**X.**   **Continuation of Employee Benefits—Section 1129(a)(13).**

49.   The Plan satisfies the requirements of section 1129(a)(13) of the Bankruptcy Code by providing that any "retiree benefits," as such term is defined in section 1114 of the Bankruptcy Code, will be assumed.

**Y.      Non-Applicability of Certain Sections—Sections 1129(a)(14), (15), and (16).**

          50.     Sections 1129(a)(14), 1129(a)(15), and 1129(a)(16) of the Bankruptcy

Code do not apply to these chapter 11 cases.  The Debtors owe no domestic support obligations,

are not individuals, and are not nonprofit corporations.

**Z.      "Cram Down" Requirements—Section 1129(b).**

          51.     The Plan satisfies the requirements of section 1129(b) of the Bankruptcy

Code.  Notwithstanding the fact that the Deemed Rejecting Classes have been deemed to reject

the Plan, the Plan may be confirmed pursuant to section 1129(b)(1) of the Bankruptcy Code.

*First*, all of the requirements of section 1129(a) of the Bankruptcy Code other than section

1129(a)(8) have been met.  *Second*, the Plan is fair and equitable with respect to the Deemed

Rejecting Classes.  The Plan has been proposed in good faith, is reasonable and meets the

requirements that (a) no Holder of any Claim or Equity Interest that is junior to the Deemed

Rejecting Classes will receive or retain any property under the Plan on account of such junior

Claim or Equity Interest and (b) no Holder of a Claim in a Class senior to the Deemed Rejecting

Classes is receiving more than 100% on account of its Claim.  Accordingly, the Plan is fair and

equitable to all Holders of General Unsecured Claims and Equity Interests in the Deemed

Rejecting Classes.

          52.     Further, the Plan is fair and equitable and not unfairly discriminatory with

respect to the treatment of Class 4 General Unsecured Claims and Class 5 Equity Interests in

Debtors, which Classes receive no recovery under the Plan and are deemed to reject the Plan.

The Court finds that Class 4 and Class 5 are not entitled to any recovery under the Plan because

Holders of Senior Secured Notes Claims in Class 3 are not receiving a full recovery under the Plan.

**AA.** **Only One Plan—Section 1129(c).**

53.    The Plan satisfies the requirements of section 1129(c) of the Bankruptcy Code.  The Plan is the only chapter 11 plan filed in each of these chapter 11 cases.

**BB.** **Principal Purpose of the Plan—Section 1129(d).**

54.    The Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.  As evidenced by its terms, the principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act.

**CC.** **Not Small Business Cases—Section 1129(e).**

55.    Section 1129(e) of the Bankruptcy Code does not apply to these chapter 11 cases as these are not small business cases.

**DD.** **Good Faith Solicitation—Section 1125(e).**

56.    The Debtors, the Reorganized Debtors, the Supporting Noteholders, and their Related Persons have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code and in compliance with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules in connection with all of their respective activities relating to support and consummation of the Plan, and solicitation of acceptances of the Plan, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code.

**EE.**    **Satisfaction of Confirmation Requirements.**

57.    Based on the foregoing and all other pleadings and evidence proffered or adduced at or prior to the Confirmation Hearing, the Plan satisfies the requirements for Confirmation set forth in section 1129 of the Bankruptcy Code. Upon Confirmation and the occurrence of the Effective Date, the Plan shall be binding upon all holders of Claims and Equity Interests, including holders of Claims that voted to reject the Plan and holders of Claims and Equity Interests that were deemed to reject the Plan.

**FF.**    **Likelihood of Satisfaction of Conditions Precedent to the Effective Date.**

58.    Each of the conditions precedent to the Effective Date, as set forth in Article X.A of the Plan, has been or is reasonably likely to be satisfied or waived in accordance with Article X.B of the Plan.  The Plan shall not become effective unless and until the conditions set forth in Article X.A of the Plan have been satisfied or waived.

**GG.**    **Implementation.**

59.    All Plan Documents necessary to implement the Plan and all other relevant and necessary documents have been negotiated in good faith and at arm's length, are in the best interest of the Debtors and their Estates, and shall, upon completion of documentation and execution, be valid, binding, and enforceable agreements and shall not be in conflict with any federal or state law.  The Debtors are authorized to take any action reasonably necessary or appropriate to consummate such agreements and the transactions contemplated thereby.

**HH.    Disclosure of Facts.**

60.    The Debtors have disclosed all material facts regarding the Plan, including with respect to consummation of the Plan Documents, and the fact that each applicable Debtor will emerge from its chapter 11 case as a validly existing corporation, limited liability company, partnership, or other form, as applicable, with separate assets, liabilities, and obligations.

**II.    Good Faith.**

61.    The Debtors, the Released Parties, and the Releasing Parties have been and will be acting in good faith if they proceed to: (a) consummate the Plan and the agreements, settlements, transactions, and transfers contemplated thereby; and (b) take the actions authorized and directed by this Confirmation Order to reorganize the Debtors' businesses and effect the other Plan Documents, and the Restructuring Transactions.

## ORDER

BASED ON THE FOREGOING FINDINGS OF FACT AND CONCLUSIONS OF LAW, IT IS ORDERED, ADJUDGED, DECREED, AND DETERMINED THAT:

1.    **Findings of Fact and Conclusions of Law**.  The findings of fact and the conclusions of law set forth in this Confirmation Order constitute findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052, made applicable to this proceeding by Bankruptcy Rule 9014.  All findings of fact and conclusions of law announced by the Court at the Confirmation Hearing in relation to Confirmation are hereby incorporated into this Confirmation Order.  To the extent that any of the following constitutes findings of fact or conclusions of law, they are adopted as such.  To the extent any finding of fact or conclusion of

law set forth in this Confirmation Order (including any findings of fact or conclusions of law announced by the Court at the Confirmation Hearing and incorporated herein) constitutes an order of this Court, it is adopted as such.

2.     **Disclosure Statement / Plan Documents**.  The Disclosure Statement and the Plan Documents, including without limitation, the New Organizational Documents, (i) contain adequate information of a kind generally consistent with the disclosure requirements of applicable non- bankruptcy law, including the Securities Act; (ii) contain "adequate information" (as such term is defined in section 1125(a)(1) and used in section 1126(b)(2) of the Bankruptcy Code) with respect to the Debtors, the Plan, and the transactions contemplated therein; and (iii) are approved in all respects and the Debtors are authorized to consummate each of the Plan Documents to the fullest extent set forth therein.

3.     **Confirmation of the Plan**.  The Plan is approved in its entirety and CONFIRMED under section 1129 of the Bankruptcy Code.

4.     **Objections**.  Any resolution or disposition of objections to Confirmation explained or otherwise ruled upon by the Court on the record at the Confirmation Hearing is hereby incorporated by reference.  All objections and all reservations of rights pertaining to Confirmation or approval of the Disclosure Statement that have not been withdrawn, waived, or settled are overruled on the merits in their entirety, and all withdrawn objections or responses are hereby deemed withdrawn with prejudice.

5.     **Plan Modifications**.  Subsequent to filing the original Plan, the Debtors made certain technical modifications to the Plan, as reflected in the *Debtors' Amended*

27

*Prepackaged Joint Chapter 11 Plan of Reorganization* [Docket No. 194] (the "Plan Modifications"). The Plan Modifications do not materially adversely affect or change the treatment of any Claim or Equity Interest under the Plan. After giving effect to the Plan Modifications, the Plan continues to satisfy the requirements of sections 1122 and 1123 of the Bankruptcy Code. The filing with the Court of the Plan Modifications and the disclosure of the Plan Modifications on the record at the Confirmation Hearing constitute due and sufficient notice thereof. Accordingly, pursuant to section 1127(a) of the Bankruptcy Code and Bankruptcy Rule 3019, the Plan Modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or resolicitation of votes under section 1126 of the Bankruptcy Code, nor do they require that Holders of Claims be afforded an opportunity to change previously cast acceptances or rejections of the Plan. Accordingly, the Plan, as modified, is properly before this Court and all votes cast with respect to the Plan prior to such modification shall be binding and shall apply with respect to the Plan.

6. **Deemed Acceptance of Plan**. In accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all Holders of Claims who voted to accept the Plan (or who are conclusively presumed to accept the Plan) are deemed to have accepted the Plan. No holder of a Claim shall be permitted to change its vote

7. **Binding Effect**. Pursuant to section 1141 of the Bankruptcy Code, effective as of the Confirmation Date, but subject to the occurrence of the Effective Date, and except as expressly provided in the Plan or this Confirmation Order, the terms of the Plan, the final versions of the documents contained in the Plan Supplement, the New Organizational

Documents, and this Confirmation Order are immediately effective and enforceable and deemed binding on the Debtors, the Reorganized Debtors, and any and all parties in interest, Holders of Claims or Equity Interests (regardless of whether such Holders of Claims or Equity Interests have, or are deemed to have, accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan, any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors, any Person or Entity making an appearance in the chapter 11 cases or any other Person in the chapter 11 cases; and the successors and assigns of all of the above listed entities.

8.      **Vesting of Assets in the Reorganized Debtors**.  Except as otherwise provided in the Plan, this Confirmation Order, or in any agreement, instrument, or other document incorporated in the Plan (including the Plan Documents), on the Effective Date, all property in each Estate, other than the Litigation Trust Assets or the Liquidation Trust Assets (as defined below), and any property acquired by any of the Debtors under the Plan shall vest in each respective Reorganized Debtor, free and clear of all Liens, Claims, charges, or other encumbrances.  On and after the Effective Date, except as otherwise provided in the Plan, each Reorganized Debtor may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims, Equity Interests, or Causes of Action without supervision or approval by the Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

9.      **Effectiveness of All Actions**.  All actions contemplated by the Plan, including all actions in connection with the Plan Documents, are hereby effective and authorized

to be taken on, prior to, or after the Effective Date, as applicable, under this Confirmation Order, without further application to, or order of the Court, or further action by the respective directors, officers or equity security holders of the Debtors or the Reorganized Debtors and with the effect that such actions had been taken by unanimous action of such directors and officers.

10.    **Restructuring Transactions**.  The Debtors or Reorganized Debtors, as applicable, are authorized to enter into and effectuate the Restructuring Transactions, including the entry into and consummation of the transactions contemplated by the Plan Documents, and may take any actions as may be necessary or appropriate to effect a corporate restructuring of their respective businesses or a corporate restructuring of the overall corporate structure of the Reorganized Debtors, as and to the extent provided in the Plan.  Any transfers of assets or equity interests effected or any obligations incurred through the Restructuring Transactions are hereby approved and shall not constitute fraudulent conveyances or fraudulent transfers or otherwise be subject to avoidance.  Except as otherwise provided in the Plan, each Reorganized Debtor, as applicable, shall continue to exist after the Effective Date as a separate corporate entity, limited liability company, partnership, or other form, as the case may be, with all the powers of a corporation, limited liability company, partnership, or other form, as the case may be, under the applicable law in the jurisdiction in which such applicable Debtor is incorporated or formed.

11.    **Preservation of Causes of Action**.  Unless particular Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or by a Final Order, in accordance with section 1123(b) of the Bankruptcy Code, the Reorganized Debtors and the Litigation Trust, as applicable, retain and may enforce all

rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, as set forth in the Plan; provided that notwithstanding anything to the contrary in the Plan, the Litigation Trust may only assert Avoidance Actions up until six (6) months after the Effective Date (the "Avoidance Claims Bar Date").  Following the Avoidance Claims Bar Date, the Litigation Trust shall be forever barred, estopped, and enjoined from asserting Avoidance Actions.  The rights of the Reorganized Debtors and the Litigation Trust, as applicable, to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date, subject to the Avoidance Claims Bar Date. The Reorganized Debtors and the Litigation Trust, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan or this Confirmation Order.

12.    **New Secured Debt**.  On the Effective Date, the Reorganized Debtors are authorized to and shall enter into the New Secured Debt, on the terms set forth in the New Secured Debt Documents.  The New Secured Debt is necessary to the consummation of the Plan and the operation of the Reorganized Debtors.  Upon entry of this Confirmation Order, the New Secured Debt (including the transactions contemplated thereby, and all actions to be taken, undertakings to be made, and obligations to be incurred and fees, costs and expenses paid or to be paid by the Debtors or the Reorganized Debtors in connection therewith) shall be deemed approved, to the extent not approved by the Court previously, and the Reorganized Debtors are authorized to execute and deliver those documents necessary or appropriate to obtain the New Secured Debt, including the New Secured Debt Documents, without further notice to or order of

the Court, act or action under applicable law, regulation, order, or rule or vote, consent,

authorization, or approval of any Person, subject to such modifications as are acceptable to the

holders of the New Secured Debt.

             13.     On the Effective Date, all of the Liens and security interests to be granted

in accordance with the New Secured Debt Documents: (a) shall be deemed to be granted;

(b) shall be valid, legal, binding, and enforceable first-priority Liens on, and security interests in,

the collateral granted thereunder in accordance with the terms of the New Secured Debt

Documents; and (c) shall be deemed perfected on the Effective Date, subject only to such Liens

and security interests as may be permitted under the New Secured Debt Documents.  The

granting of such Liens and security interests, the making of loans and extension of credit under

the New Secured Debt Documents, the payment of fees contemplated thereunder, and the

execution and consummation of the New Secured Debt Documents (i) have been and are being

undertaken in good faith, for legitimate business purposes and for reasonably equivalent value,

(ii) reflect the Reorganized Debtors' exercise of prudent business judgment consistent with their

fiduciary duties, (iii) will be deemed not to constitute a fraudulent conveyance, fraudulent

transfer, preferential transfer, will not otherwise be subject to avoidance, or subject to

recharacterization or subordination (including equitable subordination) for any purpose

whatsoever under the Bankruptcy Code or any applicable non-bankruptcy law, and (iv) the

priorities of such Liens and security interests will be as set forth in the New Secured Debt

Documents.  Each party to the New Secured Debt Documents may rely on the provisions of this

Confirmation Order in closing thereon.  The Reorganized Debtors and the persons and entities

granting such Liens and security interests are authorized to make all filings and recordings, and to obtain all governmental approvals and consents necessary to establish and perfect such Liens and security interests under the provisions of the applicable state, provincial, federal, or other law (whether domestic or foreign) that would be applicable in the absence of the Plan and the Confirmation Order (it being understood that perfection shall occur automatically by virtue of the entry of this Confirmation Order and any such filings, recordings, approvals, and consents shall not be required), and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law or desireable to give notice of such Liens and security interests to third parties.  In the event an order dismissing any of these chapter 11 cases is at any time entered, the Liens securing the New Secured Debt shall not be affected and shall continue in full force and effect in all respects, to the extent permitted by law, and shall maintain their priorities and perfected status as provided in the New Secured Debt Documents until all obligations in respect thereof shall have been paid and satisfied in full.

14.     **New Membership Interests**.  On the Effective Date, the Reorganized Debtors are authorized to and shall issue the New Membership Interests, on the terms set forth in the New Organizational Documents.  The New Organizational Documents are necessary to the consummation of the Plan and the operation of the Reorganized Debtors.  Upon entry of this Confirmation Order, the New Organizational Documents (including the transactions contemplated thereby, and all actions to be taken, undertakings to be made, and obligations to be incurred and fees, costs and expenses paid or to be paid by the Debtors or the Reorganized Debtors in connection therewith) shall be deemed approved, to the extent not approved by the

33

Court previously, and the Reorganized Debtors are authorized to execute and deliver those documents necessary or appropriate to issue the New Membership Interests and execute upon the New Organizational Documents, without further notice to or order of the Court, act or action under applicable law, regulation, order, or rule or vote, consent, authorization, or approval of any Person, subject to such modifications as permitted by the New Organizational Documents.

15.     **Directors, Managers and Officers of Reorganized Debtors**.  As of the Effective Date, the New Board will be comprised of the five (5) members designated by the Supporting Noteholders in accordance with the Plan, the New Organizational Documents, and other constituent documents of each Reorganized Debtor.  The designation and appointment of Persons to the New Board may be amended or supplemented prior to the Effective Date, subject to the disclosure of the identity of such Persons.  Except as set forth in the Plan, the New Organizational Documents or this Confirmation Order, the existing directors and managers of the Debtors will be deemed to have resigned on and as of the Effective Date.

16.     As of the Effective Date, the initial officers of the Reorganized Debtors will be the officers of the Debtors existing immediately prior to the Effective Date.  As of the Effective Date, the Reorganized Parent shall be the sole member of Fuse, LLC, and Fuse, LLC shall be the sole member and manager of the Reorganized Debtors, other than Reorganized Parent, FM Networks LLC, and Fuse Finance, Inc. Fuse Holdings, LLC shall be the sole member and manager of FM Networks LLC.  Fuse, LLC shall be the sole shareholder of Fuse Finance, Inc.  Except as set forth in the Plan, any other managers of the Debtors shall be deemed removed as of the Effective Date.

17.     Pursuant to section 1129(a)(5) of the Bankruptcy Code, the Debtors have, to the extent known and reasonably practicable, disclosed in advance of the Confirmation Hearing the identity and affiliations of any Person proposed to serve on the New Board, as well as those Persons that will serve as officers of the Reorganized Debtors.  To the extent any such director or officer is an "insider" under the Bankruptcy Code, the nature of any compensation to be paid to such director or officer has also been disclosed to the extent reasonably practicable. Each such director and officer shall serve from and after the Effective Date pursuant to the terms of the New Organizational Documents and other constituent documents of the Reorganized Debtors.

18.     **Compromise of Controversies.**  In consideration for the distributions and other benefits, including releases, provided under the Plan, the provisions of the Plan constitute a good faith compromise and settlement of all Claims, Equity Interests, and controversies resolved under the Plan and the entry of this Confirmation Order constitutes approval of such compromise and settlement.

19.     **Assumption or Rejection of Contracts and Leases**.  On the Effective Date, each Executory Contract and Unexpired Lease assumed under the Plan, as set forth in the Assumption Notice, shall be deemed assumed, without the need for any further notice to or action, order, or approval of the Bankruptcy Court, under section 365 of the Bankruptcy Code and the payment of Cures, if any, shall be paid in accordance with Article VII.D of the Plan. Each assumed Executory Contract or Unexpired Lease shall include all modifications, amendments, supplements, restatements, or other agreements related thereto, and all rights

35

related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests.  Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the chapter 11 cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease or the validity, priority, or amount of any Claims that may arise in connection therewith.  Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise and full payment of any applicable Cure pursuant to Article VII.D of the Plan shall result in the full release and satisfaction of any Cures, Claims, or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption.

20.    The following Executory Contracts and Unexpired Leases shall not be assumed:  Executory Contracts and Unexpired Leases that (1) have previously expired or terminated pursuant to their own terms or by agreement of the parties thereto; (2) have been rejected by order of the Bankruptcy Court; (3) are the subject of a motion to reject pending on the Effective Date; or (4) are rejected pursuant to the terms of the Plan because they are not identified in the Assumption Notice.  To the extent that any party asserts any damages resulting from the rejection of any Executory Contract or Unexpired Leases, such claim must be filed within **<u>thirty (30) days</u>** of notice of such rejection, or such claim will be forever barred and disallowed against the applicable Reorganized Debtor.  For avoidance of doubt, the deadline for

36

parties to file rejection damage claims with respect to any Executory Contracts or Unexpired Leases rejected pursuant to (4) of this paragraph shall be **thirty (30) days** from the date of notice of such rejection.

21.    **Authorization to Consummate**.  The Debtors are authorized to consummate the Plan after the entry of this Confirmation Order subject to satisfaction or waiver (by the required parties) of the conditions precedent to Consummation set forth in Article X.A of the Plan.  The Plan shall not become effective unless and until the conditions set forth in Article X.A of the Plan have been satisfied or waived.

22.    **Professional Compensation**.  All requests for payment of Professional Fee Claims for services rendered and reimbursement of expenses incurred prior to the Confirmation Date must be filed no later than **thirty (30) days** after the Effective Date.  The Court shall determine the Allowed amounts of such Professional Fee Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Code and the Bankruptcy Court.  The Reorganized Debtors shall pay Professional Fee Claims in Cash in the amounts the Court allows.  From and after the Effective Date, any requirement that Professionals comply with sections 327 through 331 and 1103 (if applicable) of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Reorganized Debtors may employ and pay any Professional or Entity employed in the ordinary course of the Debtors' business without any further notice to or action, order, or approval of the Court.

23.     **Release, Exculpation, Discharge, and Injunction Provisions**.  The release, exculpation, discharge, and injunction provisions set forth in the Plan are approved and authorized in their entirety, and such provisions are effective and binding on all parties and Entities to the extent provided therein; provided that notwithstanding anything to the contrary herein or in the Plan, the Plan definitions of "Exculpated Party" and "Released Party" shall include (i) the Committee, (ii) each member of the Committee (solely in its capacity as a member of the Committee), and (iii) each Related Person of the foregoing entities.  For the avoidance of doubt, the Plan's release, exculpation, discharge, and injunction provisions shall not apply to Fuse Media, Inc. and Fuse Media, LLC.

l.      **Discharge of Claims and Termination of Equity Interests.**

24.     To the fullest extent provided under section 1141(d)(1)(A) and other applicable provisions of the Bankruptcy Code, except as otherwise expressly provided by the Plan or the Confirmation Order, all consideration distributed under the Plan will be in exchange for, and in complete satisfaction, settlement, discharge, and release of, all Claims and Equity Interests of any kind or nature whatsoever against the Debtors or any of their Assets or properties, and regardless of whether any property will have been distributed or retained pursuant to the Plan on account of such Claims or Equity Interests.  Except as otherwise expressly provided by the Plan or the Confirmation Order, upon the Effective Date, the Debtors and their Estates will be deemed discharged and released under and to the fullest extent provided under section 1141(d)(1)(A) and other applicable provisions of the Bankruptcy Code from any and all Claims and Equity Interests of any kind or nature whatsoever, including, but not limited to,

38

demands and liabilities that arose before the Confirmation Date, and all debts of the kind

specified in section 502(g), 502(h), or 502(i) of the Bankruptcy Code.

    m.  **Injunction.**

    25.  Except as otherwise provided in the Plan, from and after the Effective

Date, all Entities are permanently enjoined from commencing or continuing in any manner, any

suit, action or other proceeding, or creating, perfecting or enforcing any lien of any kind, on

account of or respecting any claim, demand, liability, obligation, debt, right, cause of action,

equity interest, or remedy released or to be released, exculpated or to be exculpated, or

discharged or to be discharged pursuant to the Plan or the Confirmation Order.  All injunctions

or stays provided for in the chapter 11 cases under section 105 or 362 of the bankruptcy code, or

otherwise, and in existence on the Confirmation Date, will remain in full force and effect until

the Effective Date.

    26.  **Exemption from Transfer Taxes**.  Pursuant to section 1146(a) of the

Bankruptcy Code, any transfers (whether from a Debtor to a Reorganized Debtor or to any other

Person) of property under the Plan or pursuant to: (a) the issuance, distribution, transfer, or

exchange of any debt, equity security, or other interest in the Debtors or the Reorganized

Debtors; (b) the Restructuring Transactions; (c) the creation, modification, consolidation,

termination, refinancing, and/or recording of any mortgage, deed of trust, or other security

interest, or the securing of additional indebtedness by such or other means; (d) the making,

assignment, or recording of any lease or sublease; (e) the grant of collateral as security for any or

all of the New Secured Debt and the New Membership Interests; or (f) the making, delivery, or

recording of any deed or other instrument of transfer under, in furtherance of, or in connection

with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer

executed in connection with any transaction arising out of, contemplated by, or in any way

related to the Plan, shall not be subject to any stamp tax or similar tax to the fullest extent

contemplated by section 1146(a) of the Bankruptcy Code, and upon entry of the Confirmation

Order, the appropriate state or local governmental officials or agents shall forego the collection

of any such stamp tax or similar tax and accept for filing and recordation of any of the foregoing

instruments or other documents without the payment of any such stamp tax or similar tax.

27.     **Cancellation of Existing Securities and Agreements**.  Except as

otherwise provided in the Plan or any agreement, instrument, or other document incorporated in

the Plan or the Plan Supplement, on the Effective Date: (a) all notes, instruments, certificates,

and other documents evidencing or creating any indebtedness or obligation or giving rise to any

Claims or Equity Interests, including credit agreements and indentures, shall be cancelled and the

obligations of the Debtors and any non-Debtor Affiliate thereunder or in any way related thereto

shall be deemed satisfied in full, cancelled, discharged, and of no force or effect; and (b) the

obligations of the Debtors pursuant, relating, or pertaining to any agreements, indentures,

certificates of designation, bylaws, or certificate or articles of incorporation or similar documents

governing the shares, certificates, notes, bonds, purchase rights, options, warrants, or other

instruments or documents evidencing or creating any indebtedness or obligation of the Debtors

(except such agreements, certificates, notes, or other instruments evidencing indebtedness or

obligations of the Debtors that are specifically Reinstated pursuant to the Plan), as well as any

DOCS_SF:101132.12

obligations of any non-Debtor Affiliate in any way related to the Debtors' obligations, shall be deemed satisfied in full, released, and discharged.

28.    **Documents, Mortgages, and Instruments.**  This Confirmation Order is and shall be binding upon and shall govern the acts of all persons or entities including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state and local officials, and all other persons and entities who may be required, by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any document or instrument.  Each and every federal, state, commonwealth, local, foreign, or other governmental agency is authorized to accept any and all documents, mortgages, and instruments (including financing statements under the applicable uniform commercial code) necessary, useful or appropriate to effectuate, implement, or consummate the Plan, including the Restructuring Transactions, and this Confirmation Order. In addition, subject to the occurrence of the Effective Date, the Senior Secured Notes Trustee shall be deemed to have, effective as of immediately prior to the Effective Date, released all claims against, and security interests granted by, any foreign guarantor under the applicable prepetition debt documents.

29.    **Continued Effect of Stays and Injunction**.  Unless otherwise provided in the Plan or this Confirmation Order, all injunctions or stays in effect in the chapter 11 cases under sections 105 or 362 of the Bankruptcy Code that are in existence on the Confirmation Date shall remain in full force and effect until the Effective Date.

41

30.    **Nonseverability of Plan Provisions Upon Confirmation**.  Each

provision of the Plan is: (a) valid and enforceable in accordance with its terms; (b) integral to the

Plan and may not be deleted or modified without the Debtors' consent and a Court order (and

subject to such other consents and consultation rights set forth in the Plan) in accordance with the

terms set forth in the Plan; and (c) nonseverable and mutually dependent.

31.    **Post-Confirmation Modifications**.  Without need for further order or

authorization of the Court, the Debtors or the Reorganized Debtors, as applicable, are authorized

and empowered to make any and all modifications to any and all documents that are necessary to

effectuate the Plan that do not materially modify the terms of such documents and are consistent

with the Plan (subject to any applicable consents or consultation rights set forth therein).  Subject

to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and

Bankruptcy Rule 3019 and the Plan itself, the Debtors and the Reorganized Debtors expressly

reserve their respective rights to revoke or withdraw, or to alter, amend, or modify materially the

Plan with respect to such Debtor, one or more times after Confirmation and, to the extent

necessary, may initiate proceedings in the Court to so alter, amend, or modify the Plan, or

remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure

Statement, or this Confirmation Order, in such manner as may be necessary to carry out the

purposes and intent of the Plan.  Any such modification or supplement shall be considered a

modification of the Plan and shall be made in accordance with Article XV.D of the Plan.

32.    **Applicable Nonbankruptcy Law**.  To the maximum extent permissible

under applicable law, the provisions of this Confirmation Order, the Plan and related documents,

or any amendments or modifications thereto, shall apply and be enforceable notwithstanding any otherwise applicable nonbankruptcy law.

33.     **Governmental Approvals Not Required**.  To the maximum extent permissible under applicable law, this Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state, federal, or other governmental authority with respect to the dissemination, implementation, or consummation of the Plan and the Disclosure Statement, any certifications, documents, instruments or agreements, and any amendments or modifications thereto, and any other acts referred to in, or contemplated by, the Plan and the Disclosure Statement.

34.     **Exemption from Registration Requirements**.  The offer and issuance of the New Membership Interests to be issued, authenticated and distributed under the Plan to the Holders of Senior Secured Notes Claims shall be exempt from the registration requirements of section 5 of the Securities Act by reason of, without limitation, the exemptions afforded by section 1145 of the Bankruptcy Code, section 3(a)(9) of the Securities Act, section 4(a)(2) of the Securities Act and Rule 506 of Regulation D and/or Rule 701 promulgated under the Securities Act.

35.     **Notices of Confirmation and Effective Date**.  The Reorganized Debtors shall serve notice of entry of this Confirmation Order in accordance with Bankruptcy Rules 2002 and 3020(c) on all Holders of Claims and Equity Interests and notice parties under Bankruptcy Rule 2002 within three (3) Business Days after the date of entry of this Confirmation Order.  As soon as reasonably practicable after the Effective Date, the Reorganized Debtors shall file notice

of the Effective Date and shall serve a copy of the same on the above-referenced parties.  The notice of the Effective Date may be included in the Confirmation Order Notice.  Notwithstanding the above, no notice of Confirmation or Consummation or service of any kind shall be required to be mailed or made upon any Entity to whom the Debtors mailed notice of the Confirmation Hearing, but received such notice returned marked "undeliverable as addressed," "moved, left no forwarding address" or "forwarding order expired," or similar reason, unless the Debtors have been informed in writing by such Entity, or are otherwise aware, of that Entity's new address. The above-referenced notices are adequate under the particular circumstances of these chapter 11 cases and no other or further notice is necessary.

36.    **Failure of Consummation**.  If the Effective Date does not occur, then: (a) the Plan will be null and void in all respects; (b) any settlement or compromise embodied in the Plan, assumption of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan will be null and void in all respects; and (c) nothing contained in the Plan shall (i) constitute a waiver or release of any Claims, Equity Interests, or Causes of Action, (ii) prejudice in any manner the rights of any Debtor, the Committee, or any other Entity, or (iii) constitute an admission, acknowledgement, offer, or undertaking of any sort by any Debtor, the Committee, or any other Entity.

37.    **Waiver of Stay**.  For good cause shown, the stay of this Confirmation Order provided by any Bankruptcy Rule is waived, and this Confirmation Order shall be effective and enforceable immediately upon its entry by the Court.

38.     **References to and Omissions of Plan Provisions**.  References to articles, sections, and provisions of the Plan are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan.  The failure to specifically include or to refer to any particular article, section, or provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such article, section, or provision, it being the intent of the Court that the Plan be confirmed in its entirety, except as expressly modified herein, and incorporated herein by this reference.

39.     **Headings**.  Headings utilized herein are for convenience and reference only, and do not constitute a part of the Plan or this Confirmation Order for any other purpose.

40.     **Effect of Conflict**.  If there is any inconsistency between the terms of the Plan and the terms of this Confirmation Order, the terms of this Confirmation Order shall govern and control.

41.     **Reversal/Stay/Modification/Vacatur of Confirmation Order**.  If any or all of the provisions of this Confirmation Order or the Plan are hereafter reversed, modified, vacated, or stayed by subsequent order of this Court or any other court of competent jurisdiction, such reversal, stay, modification, or vacatur shall not affect the validity or enforceability of any act, obligation, indebtedness, liability, priority, security interest granted or lien incurred or undertaken by the Debtors or the Reorganized Debtors, as applicable, prior to the occurrence of such reversal, stay, modification, or vacatur, including, without limitation, (i) the validity of any obligation, indebtedness or liability incurred by the Debtors or the Reorganized Debtors under the New Secured Debt Documents or the New Organizational Documents, or (ii) the validity and

enforceability of the liens securing the New Secured Debt or the New Membership Interests. Notwithstanding any such reversal, stay, modification, or vacatur of this Confirmation Order, any such act or obligation incurred or undertaken pursuant to, or in reliance on, this Confirmation Order prior to the occurrence of such reversal, stay, modification, or vacatur shall be governed in all respects by the provisions of this Confirmation Order and the Plan. Specifically, notwithstanding any such reversal, stay, modification, or vacatur of this Confirmation Order, any obligation, indebtedness or liability incurred by the Debtors or the Reorganized Debtors under the New Secured Debt Documents (prior to written notice to the respective administrative agent under the New Secured Debt Documents and the New Organizational Documents, as applicable, of any such reversal, stay, modification or vacatur) shall be governed in all respect by the provisions of this Confirmation Order and the Plan, and the holders of the New Secured Debt and the New Membership Interests shall be entitled to all of the rights, remedies, privileges and benefits granted herein and pursuant to the New Secured Debt Documents and the New Organizational Documents.

42.    **Retention of Jurisdiction**.  The Court may, and upon the Effective Date shall, to the full extent set forth in the Plan, retain jurisdiction over all matters arising out of, and related to, this Confirmation Order and these chapter 11 cases, including the matters set forth in Article XIV of the Plan and section 1142 of the Bankruptcy Code; *provided, however*, that, on and subsequent to the Effective Date, this Court shall not retain exclusive jurisdiction over any disputes, rights, claims, interests or controversies under the New Organizational Documents, the

46

New Secured Debt Documents or the exercise of the respective rights or remedies of the parties

thereunder.

    43.  **Resolution of Committee Objections**.  Notwithstanding anything to the

contrary in the Plan or paragraphs 44 and 52 of the findings and conclusions set forth in this

Confirmation Order, in full and final resolution of any objections that could be raised by the

Committee to confirmation and implementation of the Plan and approval of the Disclosure

Statement, the Debtors or the Reorganized Debtors, with the agreement of the Supporting

Noteholders and MSGN Holdings, L.P. (formerly known as MSG Holdings, L.P.), shall: (a)

upon the Effective Date, fund the sum of $375,000 to a liquidating trust (the "Liquidation

Trust"), for the benefit of Holders of Allowed General Unsecured Claims in Class 4 (other than

the Deficiency Claim) under the Plan (such Holders, the "Liquidation Trust Beneficiaries"),

which shall be distributed to the Liquidation Trust Beneficiaries Pro Rata in accordance with the

Liquidation Trust Agreement (as defined below), and (b) upon the earlier to occur of the

consummation of a Sale Transaction (as defined in the Key Employee Retention Agreements) or

the date that is eighteen (18) months after the Effective Date, fund an additional sum of $925,000

(together, items (a) and (b), the "Liquidation Trust Assets") to the Liquidation Trust, for the

benefit of the Liquidation Trust Beneficiaries, which shall be distributed to the Liquidation Trust

Beneficiaries Pro Rata in accordance with the Liquidation Trust Agreement (as defined below).

In light of the foregoing resolution, the Committee's Professionals, advisors, members, and

representatives shall be entitled to file appropriate fee applications and seek allowance by this

Court of their fees and expenses, but shall not be entitled to seek payment in an aggregate

amount that exceeds the sum of $900,000 through the Effective Date; *provided that* no more than $750,000 of such fees and expenses to the extent Allowed by this Court shall be payable by the Debtors or the Reorganized Debtors and any remainder of such fees and expenses to the extent Allowed by this Court shall be payable out of the Liquidation Trust Assets.  As part of the foregoing resolution, the General Unsecured Claim in Class 4 of MSGN Holdings, L.P. (formerly known as MSG Holdings, L.P.) and any predecessor, assign, successor, parent company, subsidiary, or officer and director thereof, in their capacity as such, is Allowed and fixed in the amount of $2,500,000, and the Holder of such Claim shall be treated as a Liquidation Trust Beneficiary with respect to such Claim.

44.    **Liquidation Trust.**  On the Effective Date, the Debtors shall irrevocably transfer and shall be deemed to have irrevocably transferred to the Liquidation Trust all of their rights, title, and interest in and to the Liquidation Trust Assets, and in accordance with section 1141 of the Bankruptcy Code, the Liquidation Trust Assets shall automatically vest in the Liquidation Trust free and clear of all liens, claims, and encumbrances, and such transfer shall be exempt from any transfer, sales, use, or other similar tax.  The transfer of the Liquidation Trust Assets to the Liquidation Trust shall be made for the benefit and on behalf of the Liquidation Trust Beneficiaries.  The Liquidation Trust Beneficiaries shall be treated as the grantors and owners of the Liquidation Trust.  Upon the transfer of the Liquidation Trust Assets, the Liquidation Trust shall succeed to all of the Debtors' rights, title and interest in the Liquidation Trust Assets, and the Debtors will have no further interest in or with respect to the Liquidation Trust Assets.  The Liquidation Trustee shall be a representative of the Debtors' estates and,

notwithstanding anything herein to the contrary, upon the Effective Date, shall succeed to all of the Debtors' rights and defenses with respect to General Unsecured Claims in Class 4.

45.     Prior to the Effective Date, the Debtors shall file with the Bankruptcy Court an agreement in a form reasonably acceptable to the Debtors, the Committee and the Supporting Noteholders (the "Liquidation Trust Agreement") establishing the Liquidation Trust and appointing a trustee (the "Liquidation Trustee").  The Debtors shall submit the Liquidation Trust Agreement to the Bankruptcy Court under certification of counsel, and the Liquidation Trust Agreement may be approved without further notice or hearing.  The Liquidation Trustee shall have all rights and powers set forth in the Liquidation Trust Agreement, including without limitation (i) authority to distribute the Liquidation Trust Assets to beneficiaries of the Liquidation Trust in accordance with the terms of this Order, and (ii) standing to object to and/or resolve any General Unsecured Claim filed against the Debtors.

46.     Any cost or expense associated with the administration of the Liquidation Trust, and any costs or expenses associated with the administration of General Unsecured Claims, in each case from and after the date on which the Bankruptcy Court approves the Liquidation Trust Agreement, shall be borne entirely by the Liquidation Trust out of the Liquidation Trust Assets and shall not be charged to any other assets of the Debtors' estates or the assets of the Reorganized Debtors.  Notwithstanding the foregoing, the Reorganized Debtors shall provide the Liquidation Trustee with reasonable access to books and records necessary to administer and reconcile General Unsecured Claims, and will reasonably cooperate in

responding to requests and inquiries of the Liquidation Trustee regarding General Unsecured Claims during regular business hours.

47.    **Schedule of Claims and Bar Date**.  On or prior to the Effective Date, the Debtors shall file with the Court a schedule of the Holders and amounts all General Unsecured Claims based on the Debtors' books and records.  The Debtors shall include in the notice of the Effective Date a notice of the deadline for parties to file proofs of claim on account of asserted General Unsecured Claims, which deadline shall be sixty (60) days after the Effective Date, and will also enclose a proof of claim form substantially identical to Official Bankruptcy Form 10.

48.    **Limited Continuation of Committee.**  Notwithstanding Article XV.A of the Plan, after the Effective Date, the Committee shall continue in existence and have standing and a right to be heard for the limited purposes of (i) filing and seeking approval of applications for Professional Fee Claims or expense reimbursements for professionals retained by the Committee or members of the Committee and (ii) participating in any appeal of the Confirmation Order, any other appeal to which the Committee is a party, or any other appeal the outcome of which could adversely impact the treatment of Holders of Allowed General Unsecured Claims in Class 4 (other than the Deficiency Claim) under the Plan, in each case to the extent such appeal is pending as of the Effective Date or filed thereafter.  Notwithstanding anything to the contrary in the Plan, but subject to the limitations on the Committee's fees and expenses in paragraph 43 above, the Professionals retained by the Committee shall be entitled to assert Administrative Claims for any fees or expenses incurred after the Effective Date solely with respect to the preparation and filing of any fee application that may be filed by the Committee and

participation in any appeals in which the Committee may participate as provided in this

paragraph, *provided that* such fees and expenses shall be payable solely out of the Liquidation

Trust Assets.

            49.     **Distribution Record Date**.  The Distribution Record Date for purposes of

the Plan shall be June 18, 2019.

DOCS_SF:101132.12